UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
The Roe Corporation, 267 Partners, LLC, Buhm Jung Roe :
:
                                    Petitioners,    :      **Case No.**
:
                 v. :
:
Berhero Pty Limited (T/A Acuity Funding), :
Singapore International Arbitration Centre :
                                Respondents. :
------------------------------------------------------------X

## PETITION TO STAY ARBITRATION

Petitioners The Roe Corporation, 267 Partners, LLC, Buhm Jung Roe ("Mr. Roe," and collectively, "Petitioners") by and through their undersigned counsel, hereby petition this Court to stay an ongoing arbitration between the Parties before Respondent the Singapore International Arbitration Centre ("SIAC") initiated by Respondent Berhero Pty Limited (T/A Acuity Funding) ("Acuity," and collectively "Respondents").

## PARTIES

1. Petitioner The Roe Corporation is a corporation duly authorized and existing under the laws of New York State, with its principal office located at 267 Broadway #2, New York, NY, 10007.

2. Petitioner 267 Partners, LLC, is a limited liability company duly authorized and existing under the laws of New York State, with its principal office located at 267 Broadway #2, New York, NY, 10007.

3. Petitioner Buhm Jung Roe is an individual who is a citizen of New York.

4. Respondent Berhero Pty Limited (T/A Acuity Funding) ("Acuity") is a company duly authorized and existing under the laws of Australia, with its principal office located at Suite 4, Level 10, 423 Pennant Hills Road, Pennant Hills, NSW 2120, Australia.

5. Respondent Singapore International Arbitration Centre is a not-for-profit organization based in Singapore, with its principal office located at 28 Maxwell Road #03-01, Maxwell Chambers Suites, Singapore 069120.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1332(a) this Court has jurisdiction over this matter, as Petitioners are citizens of New York and Respondents Acuity and the Singapore International Arbitration Centre are citizens of Australia and Singapore, respectively, and the amount in controversy is not less than seventy five thousand dollars ($75,000.00).

7. Venue is proper in the Southern District of New York because pursuant to 28 U.S.C. § 1391, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The events at issue here occurred primarily in New York City, and involve a loan agreement between the Parties pertaining to real estate in New York County.

## NATURE OF THE ACTION

8. The instant dispute arises from a fraudulent loan scheme carried out by Respondent Acuity against Petitioners, by which Acuity induced Petitioners to execute an agreement under the pretense that Acuity would facilitate Petitioners' receipt of a two hundred eighty million dollar ($280,000,000.00) loan, pursuant to the terms of a Loan Term Sheet

2

and Cost Agreement ("LTS&CA") dated September 24, 2023. *See Exhibit 1, Loan Term Sheet and Cost Agreement.*

9. Acuity knew that at the time of signing the Loan Term Sheet and Cost Agreement that it had no intention of facilitating a legitimate loan offer from any third party lender. The purpose of the LTS&CA was to induce Petitioners to sign the agreement and pay fees to Acuity without providing the contracted service of facilitating a legitimate offer of funding.

10. This is a fraudulent scheme that Acuity has repeated in multiple instances, evidenced by litigation in multiple jurisdictions.

11. In *Behero Pty Ltd (trading as Acuity Funding) v. Dinsey*, the Queensland Civil and Administrative Tribunal ("QCAT") ordered Acuity to pay Dinsey $11,535.83 as a refund for the brokerage fees Dinsey had paid to Acuity as part of a Loan Term Sheet agreement. This was because Acuity had not produced a legitimate offer of funding per their contract, but rather only a "preliminary document" that the Tribunal held was not a concrete offer of funding. The Tribunal went so far as to describe Acuity's conduct as, "a complete failure from the outset to perform the terms of the contract. The processing fee, by whatever name, was consideration paid for a service never performed." *See Exhibit 2, Order dated October 8, 2013.*

12. In 2011 Acuity failed in its claim for its brokerage fees before the New South Wales Supreme Court in *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011), on the grounds that Acuity only obtained a National Australia Bank discussion paper instead of the conditional loan approval required under the brokerage agreement. *See Exhibit 3, Order Dated April 20, 2011.*

3

13. In 2019 Acuity failed in its claims for its brokerage fees before the New South Wales Supreme Court under similar circumstances in *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019). *See Exhibit 4, May 31, 2019 Order.*

14. In the case at hand, the stated purpose of the Loan Term Sheet Agreement was for Acuity to facilitate a loan for The Roe Corporation to develop a luxury condo project in Tribeca, New York. Acuity acknowledged that this was the purpose of the loan in the LTS & CA itself. *See Exhibit 1, LTS & CA.*

15. The Loan Term Sheet Agreement provided that Acuity would introduce, organize, arrange or obtain loan funds to fund the Project in accordance with the purpose stated in the Loan Term Sheet Agreement. Upon a Conditional Offer from a legitimate lender as per the stated purpose of the agreement, Petitioner was to pay Acuity a Fund Arrangement Fee of 4% of the total loan amount.

16. This fee was only payable upon the existence of a legitimate loan offer and loan funds available in the amount of $280,000,000.00. The 4% fee was not payable should there be only a letter citing a conditional offer but no actual ability by a lender to provide tangible funding. This outcome would have directly contradicted the purpose of the LTS&CA.

17. Pursuant to the LTS&CA, Petitioners paid one hundred thousand dollars ($100,000.00) as a non-refundable processing fee to Acuity on the basis that Acuity would facilitate the loan.

18. On October 20, 2023 Acuity issued a Conditional Letter of Offer for the amount of $280,000,000 citing Global Wise Investment Pty Ltd ("Global Wise") as the lender/fund provider. *See Exhibit 5, Conditional Letter of Offer.*

19. Global Wise has limited publicly available information and its last financial return filed with the Accounting and Corporate Regulatory Authority of Singapore ("ACRA"), where it is registered, was in 2021. All active companies, including private companies, must file an annual return with ACRA and these filings are publicly available. Therefore, Global Wise is not in compliance with ACRA and is not acting as a legitimate, active company, as it has failed to file annual returns for the last 3 years. (*See https://www.acra.gov.sg/how-to-guides/setting-up-a-local-company/what-you-have-to-file-each-year*).

20. In its last filing in 2021, Global Wise filed as a small company, which means that it had met two of the following three criteria:

    a. Its revenue does not exceed SGD10 million (approximately 8 million USD) for each FY;

    b. Its total assets at the end of each FY does not exceed SGD10 million (approximately 8 million USD); or

    c. It has not more than 50 employees at end of each FY. *See Exhibit 6, Grant Thornton Report.*

21. There are no other financial documents or information available that indicate that Global Wise had the ability to fund a $280 million loan.

22. Acuity had full knowledge of Global Wise's filing status as a small company and its lack of compliance with ACRA under its obligations pursuant to the LTS & CA. *See Exhibit 1, LTS & CA.*

23. Despite Petitioners' persistent requests for the same, Acuity failed to provide any information to Petitioners regarding Global Wise's ability to fund the loan, instead

referring to a separate company ("Elite Crown Diamond") as the fund provider. Elite Crown Diamond, as per its 2024 filings with applicable regulators (*See Exhibit 6, Grant Thornton Report*), has net assets of approximately GBP 2,296. Not only does this invalidate the Conditional Offer, since Acuity admits that Global Wise was not the lender, but it also highlights Acuity's intentional fraud, as Acuity was or should have been aware per the public filings, that Elite Crown Diamond had no ability to fund a loan for $100,000, let alone the $280 million loan at issue in this case. *See Exhibits 6 and 7, Grant Thornton Report and Letter Dated March 18, 2024.*

24. Pursuant to the LTS & CA, any dispute between the Parties arising out of the LTS & CA was required to be submitted to arbitration before the Singapore International Arbitration Centre.

25. At all times, Acuity was aware of Mr. Roe's advanced age and infirmity, and the likelihood that he would be unable to travel to Singapore to participate in any arbitration proceeding to give testimony. Acuity selected the SIAC as the forum for arbitration knowing that arbitration in Singapore would be severely disadvantageous to Petitioners.

## FACTUAL BACKGROUND

26. On April 9, 2024, Acuity initiated an arbitration proceeding against Petitioners (the "Singapore Arbitration") by filing a Notice of Arbitration with the SIAC, naming The Roe Corporation, 267 Partners, LLC, and Mr. Roe as Respondents. *See Exhibit 8, Notice of Arbitration.*

27. On or about January 13, 2025, Acuity filed its Statement of Claim, seeking relief in the amount of $11,200,000.00 from Petitioners for the Fund Arrangement Fee contemplated in the LTS & CA, along with the transfer of shares in the Tribeca Project.

6

28. On February 24, 2025, The Roe Corporation, 267 Partners, LLC, and Mr. Roe filed their Statement of Defence in response to the Statement of Claim. *See Exhibit 9, Statement of Defence.*

29. A final evidentiary hearing in the Singapore Arbitration is scheduled to commence during the week of July 21, 2025.

30. On June 5, 2025, The Roe Corporation retained Grant Thornton to investigate Global Wise, Acuity, and other related entities and individuals relevant to the loan transaction at issue.

31. On June 19, 2025, Grant Thornton provided its investigative report to Petitioners, which confirmed Petitioners' suspicions that the LTS & CA was fraudulent from formation, and that the Conditional Offer from Global Wise was also illegitimate, if not entirely fraudulent. *See Exhibit 6, Grant Thornton Report.*

32. Thus, as Acuity fraudulently induced Petitioners to enter into the LTS & CA and pay a $100,000.00 deposit to Acuity, the arbitration clause contained within the LTS & CA is not a valid and binding agreement, and this Court should issue an Order staying the Singapore Arbitration.

## COUNTS ALLEGED

### COUNT ONE:

### DECLARATORY JUDGEMENT THAT THE LTS & CA IS INVALID

33. Petitioners re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 32 as if fully set forth herein.

34. Petitioners allege that the LTS & CA is invalid because Acuity never intended to fulfill their obligations to Petitioners outlined in the purpose of the agreement, which was to

facilitate a legitimate loan offer from a lender ready, willing, and able to provide loan funds to Petitioners in the amount of $280,000,000.00. Petitioners further allege that Acuity entered the agreement with full knowledge that they would not be able to perform, and that Acuity has executed the same fraudulent scheme with respect to numerous other prospective borrowers with the same effect of no legitimate funding being secured for any parties involved. *See Exhibits 2, 3, and 4, Prior Adjudications.*

35. Petitioners allege that due to Acuity's fraudulent inducement, the entire agreement, including the arbitration agreement contained therein, is invalid.

36. Under New York law, the elements of Common Law Fraud are 1) a material misrepresentation, 2) knowledge of falsity, 3) Intent to induce reliance, 4) Justifiable Reliance, 5) Resulting damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979, 883 N.Y.S.2d 147, 150, 12 N.Y.3d 553, 559 [NY, 2009].

37. Petitioner alleges that 1) Acuity knowingly misrepresented to the Roe Corporation that it could and would facilitate the contracted-for loan when it had no ability to do so and had failed to do so in prior identical transactions, 2) that Acuity knew that it could not secure a legitimate lender to provide the funds and that Global Wise did not have the ability to provide the loan amount, 3) that Acuity made these misrepresentations to induce Petitioners to execute the LTS & CA for the purpose of collecting an initial deposit from Petitioners and later initiating arbitration against Petitioners for the Fund Arrangement Fee, as it had done with respect to numerous prospective borrowers on prior occasions, 4) that the Roe Corporation reasonably relied on the representation that Acuity would facilitate the loan for them, given that was the entire purpose of the agreement and their relationship with Acuity, and 5) that the Roe Corporation lost $100,000 in a deposit to

Acuity and has incurred significant legal fees due to the ensuing arbitration in regard to the fraudulent agreement.

38. This Court has authority to grant a declaratory judgment determining that the Loan Term Sheet and Cost Agreement is invalid due to common law fraud pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

39. By reason of the foregoing, the court should issue a judgment declaring the LTS & CA invalid.

## COUNT TWO:
## STAY THE ARBITRATION IN SINGAPORE

40. Petitioners re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41. The arbitration agreement between the Parties contained within the LTS & CA, which required any and all disputes between the Parties arising therefrom be submitted to arbitration before the SIAC, was procured by Acuity's fraud, and thus is not a valid and binding arbitration agreement.

42. The arbitration clause is furthermore part and parcel of Acuity's scheme to defraud Petitioners, as Acuity has demonstrated a consistent pattern of defrauding similarly situated prospective borrowers by inducing them to enter into similar loan agreements, failing to provide or facilitate the contemplated loan funding, and then initiating arbitration against the prospective borrower for a fund arrangement fee on the basis of fraudulent conditional loan offers from third-party lenders.

43. Here, Acuity selected the SIAC as the forum for arbitration in part because Acuity knew that Mr. Roe, an essential witness as the signatory to the LTS & CA on behalf of

Petitioners, would be unable to attend a hearing in Singapore to give testimony due to his age and infirmity.

44. This Court has authority to enjoin an international arbitration where the Parties to that arbitration have not entered into a valid and binding arbitration agreement. *See CRT Cap. Grp. v. SLS Cap., S.A.*, 63 F. Supp. 3d 367, 376 (S.D.N.Y. 2014) ("The Court therefore may enjoin an arbitration proceeding governed by the New York Convention when the parties "have not entered into a valid and binding arbitration agreement" or when the claims are "not within the scope of an arbitration agreement."") *See also Arc Elec. & Mech. Contractors Corp. v. Invensys Bldg. Sys., Inc.*, 2 A.D.3d 314, 316, 770 N.Y.S.2d 299, 301 (2003) ("It is also well settled that in those instances where a challenge is made to the validity of the arbitration clause itself, such as fraud in the inducement, the issue is for the court to decide.")

45. By reason of the foregoing, Petitioners thus request that this Court issue an Order permanently enjoining the Singapore Arbitration.

## COUNT THREE:
## FRADULENT INDUCEMENT (RETURN OF $100,000 DEPOSIT)

46. Petitioners re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47. Respondent Acuity was aware that it would not be able to perform under the LTS & CA prior to formation of the agreement, and made material misrepresentations to Petitioners, as detailed above, in order to induce Petitioners to enter into the LTS & CA.

48. Acuity's purpose in its fraudulent inducement of Petitioners was to collect a non-refundable processing fee and a further Fund Arrangement Fee from Petitioners.

49. Upon information and belief, Acuity knew that there would be no legitimate loan offer made to Petitioners by either Global Wise or another third party lender. Acuity has repeated this pattern in multiple other transactions of a similar nature.

50. Petitioners entered into the LTS & CA in reliance on Acuity's fraudulent misrepresentations and paid Acuity for a service that Petitioners did not receive and that Acuity never intended to provide.

51. Therefore, Petitioners were fraudulently induced to enter the contract and their deposit of one hundred thousand dollars ($100,000) should be returned.

**WHEREFORE,** Petitioner respectfully requests that this Court issue an Order:

A. Declaring the LTS & CA, including the arbitration agreement contained therein, to be invalid due to Respondent Acuity's fraudulent inducement of Petitioners.

B. Staying the ongoing arbitration before the SIAC.

C. Awarding Petitioner the return of the one hundred thousand dollar ($100,000) deposit they paid to Acuity and any such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 2, 2025

Respectfully submitted,

CONWAY & CONWAY
Kevin P. Conway (6946)
*Counsel for Petitioner*
99 Park Avenue, Suite 810
New York, New York 10016
Tel: (212) 938-1080
Fax (212) 938-1207