Signed by AustLII

# Supreme Court
## New South Wales

| | |
|---|---|
| Case Title: | ACN 075 911 410 Pty Ltd v Almaty Pty Ltd |
| Medium Neutral Citation: | [2011] NSWSC 333 |
| Hearing Date(s): | 19 April 2011 |
| Decision Date: | 20 April 2011 |
| Jurisdiction: | |
| Before: | Justice Barrett |
| Decision: | Plaintiff's notice of motion dismissed. Plaintiff to pay third defendant's costs of and incidental to the notice of motion |
| Catchwords: | CONVEYANCING - land titles under the Torrens system - caveats against dealings - application for order extending operation of caveat - plaintiff claims estate or interest as chargee - where plaintiff's attempt to introduce key documents into evidence fails because the documents are not stamped - lack of stamping also means that documents not enforceable as charge - two particular obstacles in any event to finding that documents if in evidence would be the source of the claimed estate or interest as chargee |
| Legislation Cited: | Duties Act 1997, ss 207, 210, 211, 217, 227, 287, 289A, 304<br>Real Property Act 1900, s 74K<br>Uniform Civil Procedure Rules 2005, rule 31.13(3) |
| Cases Cited: | Boral Recycling Pty Ltd v Wake [2009] NSWSC 712 |

Retrieved from AustLII on 28 May 2024 at 14:58:00    Verify version

| | |
|---|---|
| Texts Cited: | |
| Category: | Interlocutory applications |
| Parties: | ACN 075 911 410 Pty Ltd trading as Acuity Funding - Plaintiff<br>Almaty Pty Ltd - First Defendant<br>Bravel Pty Ltd - Second Defendant<br>Project Port Macquarie (Three) Pty Limited - Third Defendant |
| Representation | |
| - Counsel: | Counsel:<br>Mr E G H Cox - Plaintiff<br>Mr J C Giles - Third Defendant |
| - Solicitors: | Solicitors:<br>Mason Black Lawyers - Plaintiff<br>Corrs Chambers Westgarth - Third Defendant |
| File number(s): | 2011/126728 |
| Publication Restriction: | |

# Judgment

1   By its summons filed on 18 April 2011, the plaintiff seeks a declaration that it has an equitable charge over the land in Folio Identifier 3/1112929 of which the first defendant is the registered proprietor.

2   I am now dealing with the plaintiff's accompanying notice of motion claiming an order under s 74K of the *Real Property Act* 1900 that the operation of a caveat lodged by the plaintiff in respect of that land be extended until further order.

Retrieved from AustLII on 28 May 2024 at 14:58:00       Verify version

3   That application came before the court yesterday afternoon, 19 April 2011, the day on which the caveat was due to lapse by virtue of a lapsing notice served by the first defendant. At 3.30pm, with the hearing still in progress, I made an extension order up to 5pm tomorrow, 21 April 2011, to hold the position pending delivery of this judgment.

4   Before turning to the facts, I should mention that the first defendant - the registered proprietor which served the lapsing notice - was served with the notice of motion but did not seek to participate in the argument of the extension application. Rather, opposition to the extension was offered by Project Port Macquarie (Three) Pty Ltd which was joined as third defendant by order made at the start of the hearing. It has an interest in the enjoyment of unfettered title by the first defendant so that the land concerned may be turned to account in a major development project in which both companies (and others) are involved.

5   I should also mention at this early stage that the question posed by s 74K(2) is whether the court is satisfied that the caveator's claim "has or may have substance". The "claim" referred to is, of course, that embodied in the caveat itself, being a claim to an estate or interest in the land concerned. If the court is satisfied in the way I have mentioned, considerations of the balance of convenience will be relevant to the question whether an extending order is in fact made.

6   The caveat was lodged in February 2011. It is dated 15 February 2011. The "claim" thereby made by the plaintiff as caveator is a claim to an estate or interest described as "Charge dated 23 June 2009". That estate or interest is said to exist by virtue of an instrument referred to as "Charge" dated 23 June 2009 between the first defendant as registered proprietor and the plaintiff as caveator.

7   The instrument thus referred to is, in reality, a combination of two related instruments both dated 23 June 2009, one headed "Loan Term Sheet" and the other headed "Costs Agreement". While they are, in this way, separate

Retrieved from AustLII on 28 May 2024 at 14:58:00                                   Verify version

Signed by AustLII

instruments, they are connected by the fact that the second refers to the first and that the two together occupy eight pages numbered sequentially from 1 to 8.

8   By the first of the two documents, three parties, of which one is the first defendant "as trustee for the Higgins Families Unit Trust", authorised and directed the plaintiff to "arrange the loan facility as set out in the Loan Term Sheet above". That first document referred to itself and the accompanying Costs Agreement as "the entire agreement between the parties as to the subject matter". The relevant subject matter was a loan facility of $10.1 million of a certain description. The Loan Term Sheet referred to a "processing fee" of $550 and a "brokerage fee" of "1.25% plus GST". It is reasonable to infer that the reference here is to 1.25% of $10.1 million, that is, $151,500.

9   The accompanying Costs Agreement contained a further agency provision. It then made detailed provision as to "fee amounts", including that the brokerage fee already mentioned would become immediately due and payable on the grant of conditional approval of a loan as specified, whether through the plaintiff's intermediation, through "another agency" or "directly by the applicants".

10  Then followed the provision said to create the charge (which I shall call "the charging clause"):

> "Bravel Pty Limited, and Almaty Pty Limited as Trustee for The Higgins Families Unit Trust No. 1 and Maurice John Higgins hereby charges over any or all of Bravel Pty Limited, and Almaty Pty Limited as Trustee for The Higgins Families Unit Trust No. 1 and Maurice John Higgins property in favour of the facilitator until the costs owed including any interest owed on those costs is paid in full and Bravel Pty Limited, and Almaty Pty Limited as Trustee for The Higgins Families Unit Trust No. 1 and Maurice John Higgins authorises the facilitator to lodge a caveat over any or all of Bravel Pty Limited, and Almaty Pty Limited as Trustee for The Higgins Families Unit Trust No. 1 and Maurice John Higgins property noting the facilitator's interest in Bravel Pty Limited, and Almaty Pty Limited as Trustee for The Higgins Families Unit Trust No. 1 and Maurice John Higgins property and preventing any

Retrieved from AustLII on 28 May 2024 at 14:58:00                                                                     Verify version

> dealings on the title of the property until the fees owed to the facilitator including any interest owed on the costs owed is paid in full."

11  It is not suggested by the plaintiff that any approval of a $10.1 million loan as described in the documents I have mentioned came to be enjoyed by the potential borrower parties to the documents of 23 June 2009. Rather, reference is made to a set of documents (Loan Term Sheet and Costs Agreement) dated 20 February 2009 in corresponding form between the same parties concerning a loan of $33.2 million to be sought by the plaintiff for the same borrower parties, including the first defendant.

12  The plaintiff contends that a conditional approval, as contemplated by the part of the 20 February 2009 documents corresponding with that outlined at paragraph [9] above, was forthcoming from the National Australia Bank in May 2009 and that, in terms of those 20 February 2009 documents, a fee of 1.25% of $33.2 million - that is, on my calculations some $415,000 (plus GST) - not only became payable but also became secured pursuant to the charging clause in the 20 February 2009 documents corresponding with that in the 23 June 2009 document set out in full above.

13  The plaintiff, however, goes further. It says that the brokerage fee that became payable under the 20 February 2009 documents by virtue of the grant of the National Australia Bank conditional loan approval in May 2009 was also picked up by and came to be secured by the charging clause in the 23 June 2009 documents. This step is essential to the plaintiff's contention that the sum payable under the 20 February 2009 documents is secured by the charge to which the caveat relates.

14  An immediate question is whether, as a matter of construction, the 23 June 2009 charging clause in truth extends so as to secure any prior indebtedness (that is, indebtedness already in existence at 23 June 2009) for fees payable under the 20 February 2009 documents. Other questions also arise - not the least of them is whether events happened such as to

Retrieved from AustLII on 28 May 2024 at 14:58:00  Verify version

create indebtedness for any brokerage fee under the 20 February 2009 documents. First, however, it is necessary to address a stamp duty issue.

15 The plaintiff's case is that land of the first defendant is effectively charged with the payment of money by operation of the 23 June 2009 and, in particular, the charging clause. On that basis, there is a "mortgage" within s 205 of the *Duties Act* 1997 being a mortgage which, of course, affects land in New South Wales. Neither of the documents mentioned bears any evidence of the payment of stamp duty. Neither carries an impressed stamp as referred to in s 287(1) of the *Duties Act* nor any endorsement of the kind mentioned in s 289A. There is simply no marking of any relevant kind. Having regard to s 304 of the *Duties Act*, I therefore reserved the question whether either should be admitted into evidence.

16 A related issue arises under s 211 of the *Duties Act* which is in these terms:

> "A mortgage on which duty is required by this Chapter to be paid is unenforceable to the extent of any amount secured by the mortgage on which duty has not been paid."

17 It is common ground that the charging clause in the 23 June 2009 documents applies to the land of the first defendant in respect of which the caveat was lodged. It is also common ground - or, at least, not disputed - that the charging clause cannot cause the land to be encumbered so as to cause an estate or interest in it to be enjoyed by the plaintiff if the charging clause is, to use the word found in s 211, "unenforceable". An enforceable right to resort to the land as security is crucial to the existence of the estate or interest as chargee claimed by the plaintiff in its caveat.

18 As McDougall J explained in *Boral Recycling Pty Ltd v Wake* [2009] NSWSC 712, any stamping that may in future occur cannot operate in a retrospective way to create, as at the date of the caveat, any interest that would have existed by virtue of the charge had it then been enforceable.

Signed by AustLII

Retrieved from AustLII on 28 May 2024 at 14:58:00   Verify version

19  The desire that the documents of 23 June 2009 be in evidence is the desire of the plaintiff. It is only through those documents, coupled with other evidence, that the plaintiff could begin to make good its contention that it has the estate or interest claimed in the caveat or, at least, that its claim may have substance. The person liable to pay duty on a mortgage is the mortgagor: *Duties Act*, s 207. The mortgagor, being the first defendant, did not appear on the hearing of the notice of motion. Nor did the plaintiff, being the mortgagee, proffer the "usual undertaking by person not liable" in accordance with rule 31.13(3) of the *Uniform Civil Procedure Rules* 2005. It follows that, if a liability to duty exists in respect of the two documents together, the court is precluded by s 304 of the *Duties Act* from having regard to those documents in determining the plaintiff's interlocutory claim. And if that is in truth the position, the claim necessarily fails.

20  The plaintiff relies on the fact that the caveat itself has been stamped. It bears an Office of State Revenue stamp showing that, on 18 February 2011, duty of $5 was paid by reference to an "Initial Amount" of $16,000. Given that a *Real Property Act* caveat as such is not otherwise liable to stamp duty, it may be inferred that the caveat was stamped pursuant to s 227 of the *Duties Act*:

> **Unregistered mortgages protected by caveats (anti-avoidance provision)**
>
> (1) A caveat under the *Real Property Act 1900* in which an estate or interest is claimed under an unregistered mortgage is chargeable with duty.
>
> (2) The amount of duty is:
> (a) if the mortgage is chargeable, but not stamped, with mortgage duty-the same amount as is chargeable on the mortgage, or
> (b) if the mortgage is stamped, or is not chargeable, with mortgage duty-$50.
>
> (3) The person liable to pay the duty is the mortgagor.

> (4) This section does not apply to a caveat lodged in respect of a mortgage that is exempt from mortgage duty under Part 4."

21  The stamp on the caveat, considered in the light of s 227 and the provisions of s 210 as to rates of duty on mortgages, indicates that duty has been paid on the caveat in an amount that would have been chargeable on a mortgage securing, at its first execution, not more than $16,000.

22  I was not directed to any provision of the *Duties Act* which, as it were, deems a mortgage which has itself not been stamped to be stamped with the duty in fact impressed on a caveat related to the mortgage in the way relevant to the operation of s 227. Indeed, the terms of s 227 itself seem to emphasise the separateness of the caveat and the mortgage. Thus, for example, in a case where the mortgage is chargeable but not stamped, the amount for which the caveat is "chargeable with duty" is "the same amount as is chargeable on the mortgage". There is thus clear recognition of the co-existence of an amount of duty chargeable on the mortgage and an amount of duty chargeable on the caveat, with both amounts being the same and with separate charges for the two being imposed.

23  An immediate reaction is to think that provisions with respect to collateral securities may operate. Under s 217 a "collateral mortgage" is chargeable with a minimum duty of $50. The definition of "collateral mortgage" in the Act's dictionary is:

> "'collateral mortgage' means a mortgage that secures all or part of the same money as another mortgage, instrument of security or mortgage package."

24  It is, to my mind, not possible to see how the documents of 23 June 2009 secure the same money as "another mortgage, instrument of security or mortgage package", when it is the caveat that is put forward as the "mortgage, instrument of security or mortgage package" securing the money in question. This is because the caveat, of its nature - and as

Signed by AustLII

recognised by s 227 - does not "secure" anything and is not a "mortgage", "instrument of security" or "mortgage package".

25 The overall conclusion with respect to stamp duty is that the Loan Term Sheet and Costs Agreement of 23 June 2009 attract a liability to ad valorem stamp duty as a "mortgage" and that that liability is not removed or reduced because the caveat has been stamped in the way that it has; but that there is a remote possibility (which I am inclined to think does not really exist at all) that, because of the stamping of the caveat, the Loan Term Sheet and Costs Agreement of 23 June 2009 are chargeable with a minimum duty of $50 under s 217. Either way, the fact that the Loan Term Sheet and Costs Agreement of 23 June 2009 have not been stamped at all and no undertaking under rule 31.13(3) has been given means that, under s 304 of the *Duties Act*, the court cannot receive or have regard to those documents.

26 It follows that the plaintiff, by failing to get into evidence the key documents on which it relies, has failed to make out its case for the grant of interlocutory relief by way of an order for the extension of the caveat. The plaintiff cannot show that the claim in the caveat has or may have substance unless it proves the content of the documents of 23 June 2009 and this, for the reasons I have given, it has not done.

27 I propose nevertheless to consider briefly the merits of the case and, for that purpose, to assume that the plaintiff and the first defendant became parties to and remained bound by both the Loan Term Sheet and Costs Agreement of 20 February 2009 and the Loan Term Sheet and Costs Agreement of 23 June 2009.

28 Central to the plaintiff's case is the proposition that, in the charging clause of the 23 June 2009 documents, the words "the costs owed including any interest owed on those costs" and "the fees owed to the facilitator including any interest owed on the costs owed" refer to not only costs, fees and interest the liability for which is created by the 23 June 2009 documents

Retrieved from AustLII on 28 May 2024 at 14:58:00　　　　　　　　　　　　　　　　　　　　　　　　Verify version

themselves but also costs, fees and interest any liability for which had earlier been created by the 20 February 2009 documents.

29  The argument is, in my view, quite untenable. The 20 February 2009 documents created a contractual liability in the first defendant, among others, for costs, fees and interest and caused that liability to be owed to the plaintiff in connection with services to be rendered by the plaintiff regarding a loan of $33.2 million. The charging clause in the 20 February 2009 documents clearly referred and attached to that liability. When the 23 June 2009 documents came to be executed in relation to a quite separate loan of $10.1 million, the charging clause in the 20 February 2009 documents was still in full force and operation between the parties. The plaintiff was entitled to look to that charging clause as the source of its security interest in the first defendant's land as regards the costs, fees and interest payable under the 20 February 2009 documents. There was accordingly no rational basis on which the parties could have intended the charging clause in the 23 June 2009 documents to confer precisely the same security interest over precisely the same land in respect of precisely the same indebtedness.

30  The 23 June 2009 documents brought into existence a new liability of the first defendant for fees, costs and interest. The 20 February 2009 security could not, in terms, apply to that new liability. It was to put that new liability on the same secured footing as the pre-existing 20 February 2009 liability that the charging clause was included in the 23 June 2009 documents.

31  In short, each set of documents created security for the liability for fees, costs and interest that that set of documents itself created and there was not anything in the second set causing the security it created to extend also to the pre-existing liability sourced in the first set; nor, given the fact that the subject matter of the security was precisely the same in each case, was there a need for any form of cross-collateralisation. If someone had said to the plaintiff in June 2009, "You should ensure that the security you are taking for the fees, costs and interest payable under this new

- 10 -

agreement extends also to those payable under the February documents", the answer would have been. "There is no need at all for that: we already have for those fees precisely the security we are now obtaining for the new fees; and it is over precisely the same property".

32  The central argument in the plaintiff's case on the merits therefore would have failed had the plaintiff been successful in placing the documents of 23 June 2009 before the court.

33  Had the application been considered on its merits, the plaintiff would also have been defeated by another insuperable obstacle to which I now turn.

34  Assume, contrary to the conclusion just stated, that the payment obligation under the 20 February 2009 documents was secured by the charging clause in the 23 June 2009 documents. The liability for unpaid fees, costs and interest under the 20 February 2009 documents was, in reality, a contingent liability in the sense that no payment of the "brokerage fee' of 1.25% of the loan amount of $33.2 million (plus GST) was "immediately due and payable" except "in the event that the loan is conditionally approved to the Applicants in the terms of the Loan Term Sheet, or an [sic] Conditional Approval is secured through another agency or directly by the applicants". The meaning of "conditionally approved" and "Conditional Approval" was explained thus:

> "Conditionally approved means a letter of offer to loan the Applicants funds which is from a financier and which is in the terms of the Loan Term Sheet but which is subject to: a) an acceptable valuation; and b) satisfactory credit checks of the Applicants; and c) proof of suitable serviceability; and d) acceptance by the Underwriter; and e) verification of all documentation provided and f) suitable levels of pre sales."

35  As noted above, the plaintiff says that a "Conditional Approval", as defined, was given by National Australia Bank in May 2009. It relies on a letter from that bank to the plaintiff dated 11 May 2009 headed "Discussion Paper -

Signed by AustLII

'Sovereign Hills'". The letter runs to six pages. It begins by referring to the plaintiff's client's project and continues:

> "We have reviewed the information provided and our thoughts in regard to potential funding are detailed within this discussion paper ('Paper'). The Paper presents the broad outline of a funding solution for your consideration. Please note that this Paper is not an offer of finance or an offer to provide finance in the future. To obtain a binding commitment from the Bank requires a submission to, and subsequent approval from, the Bank's credit and pricing approving authorities."

36  Obviously, therefore, this letter, according to its own unambiguous terms, was not an "offer" of anything, whether conditional or unconditional. It could not possibly be regarded as "a letter of offer to loan the Applicants funds", as referred to in the definition of "Conditionally approved".

37  The plaintiff has not satisfied the court that the claim in its caveat dated 15 February 2011 has or may have substance. The plaintiff's failure to tender key documents in admissible form was fatal to its claim. Even if that matter had not caused the plaintiff to fail, its case would have foundered on each of the two other insurmountable obstacles I have mentioned. The third defendant raised other matters in support of the proposition that the court should dismiss the plaintiff's claim to have the operation of the caveat extended. In view of the position reached, it is not necessary to address these.

38  The plaintiff's notice of motion filed on 18 April 2011 is dismissed. The plaintiff will pay the third defendant's costs of and incidental to the notice of motion.

**********

Retrieved from AustLII on 28 May 2024 at 14:58:00    Verify version