Signed by AustLII

# SUPREME COURT OF THE AUSTRALIAN CAPITAL TERRITORY

| | |
|---|---|
| **Case Title:** | **Berhero Pty Ltd v Hinds** |
| **Citation:** | **[2019] ACTSC 378** |
| **Hearing Date:** | 31 May 2019 |
| **Decision Date:** | 31 May 2019 |
| **Before:** | Burns ACJ |
| **Decision:** | See [21] |
| **Catchwords:** | **CIVIL LAW** – APPLICATION IN PROCEEDING – application to extend caveat – whether serious issue to be tried – whether balance of convenience favours extension of caveat – whether applicant required to give undertaking as to damages |
| **Legislation Cited:** | *Land Titles Act 1925* (ACT), s 108 |
| **Parties:** | Berhero Pty Ltd (Applicant) |
| | Paul Francis Hinds (First Respondent) |
| | Melissa Sian Hinds (Second Respondent) |
| | Registrar-General of Land Titles of the Australian Capital Territory (Third Respondent) |
| **Representation:** | **Counsel** |
| | W Buckland (Applicant) |
| | P Christensen (First and Second Respondents) |
| | **Solicitors** |
| | Bradley Allen Love Lawyers (Applicant) |
| | P Christensen (First and Second Respondents) |
| **File Number:** | SC 166 of 2019 |

**BURNS ACJ:**

1. These proceedings were commenced on 8 April 2019 by an Originating Application in which the applicant, Berhero Pty Ltd, sought orders that caveats lodged by it over land, which is set out in the Application, be extended until further order of the Court. It also sought orders that the third respondent, being the Registrar-General of Land Titles of the Australian Capital Territory, be restrained from registering any dealing in respect of those properties.

2. The grounds of the Application were that, on 6 November 2013, the applicant and the first respondent, Paul Francis Hinds, in his personal capacity and as a director of a company to be incorporated at a later time to act as a trustee of Ripley Valley Unit Trust, entered into a written Loan Term Sheet and a written Costs Agreement.

Retrieved from AustLII on 15 May 2024 at 19:32:39 — Verify version

3. It was alleged that the Loan Term Sheet and the Costs Agreement contained the terms for the applicant's engagement as the first respondent's exclusive finance broker for the procurement of a substantial loan facility, the purpose of which was to assist with the acquisition of property. It was further alleged that the terms of the Loan Term Sheet and the Costs Agreement provided that a Processing Fee of $22,000 was payable on execution of the Loan Term Sheet and the Costs Agreement. A Brokerage Fee of 1.75 per cent of the total loan amount was payable once a loan proposal was issued in the terms of the Loan Term Sheet.

4. It was further alleged that the Costs Agreement, at clause 5, provided a charge to the applicant over any or all of the first respondent's properties. Such charge prevented any dealings on the title of those properties until the fees owed to the applicant, including any interest owed on the costs owed, was paid in full.

5. It was further alleged that the first respondent nominated RV Developments Australia Pty Ltd (RVD) as trustee for the RV Developments Australia Unit Trust, to be the borrowing entity under the facility. The first respondent was a sole director of RVD until 11 September 2017 and remains its sole shareholder. On 22 January 2014, the applicant received an Expression Of Interest from ANZ Bank outlining the details of a proposed or potential facility that the Bank was willing to offer to RVD. RVD signed and accepted the Expression Of Interest on 3 February 2014.

6. It was further alleged that the first respondent executed a Commission Statement in his personal capacity and as a director of RVD on 3 February 2014. It is alleged that under the Commission Statement, the first respondent and RVD acknowledged by accepting and signing the Expression Of Interest that the fees, being a total amount of $259,875, were then due and payable to the applicant under the Loan Term Sheet and Costs Agreement. They also agreed that the charge outlined in the Costs Agreement secures the fees, as outlined in the Commission Statement, being the total amount of $259,879, and that RVD and the first respondent would pay the applicant the fees in instalments of $5,500 per month. I will refer to that as the "Instalments".

7. It is further alleged that from 11 October 2013 to October 2015, regular Instalments were paid to the applicant in accordance with the Commission Statement. After October 2015, Instalments were either paid irregularly or not at all.

8. It is further alleged that on 16 February 2016, the applicants sent a letter of demand to the first respondent demanding repayment of $27,500 within seven days of the date of the letter. It is further alleged that on 29 November 2016, the applicant sent an invoice to the first respondent for the outstanding fees, totalling $260,851.87.

9. The applicant alleged that, as at 16 May 2018, it was owed $351,072.28 under the Costs Agreement and Loan Term Sheet, in circumstances where no payments had been received since 12 July 2016 and interest had been accruing in accordance with clause 4 of the Costs Agreement.

10. Between 29 and 30 May 2018, the applicant says that it lodged caveats over properties owned by the first and second respondents in the Australian Capital Territory, pursuant to the charge the first respondent is said to have granted to the applicant under the Loan Term Sheet and Costs Agreement, dated 6 November 2013.

11. On 1 April 2019, the applicant was served with five lapsing notices of the caveats lodged on 31 May 2018 by the Land Titles Office. I will refer to these as the "Lapsing

2

Notices". In its Application, the applicant maintained that it is currently owed the sum of $454,149.42, inclusive of interest at the rate of 2 per cent per month, calculated daily and compounded and capitalised at the end of each month. The applicant also maintained that it has a caveatable interest in the property secured as a charge, which was provided to the applicant by the first respondent pursuant to clause 5 of the Costs Agreement.

12. An affidavit dated 5 April 2019 was affirmed by Mr Ranjit Prithviraj Thambyrajah as the sole director of the applicant company. Next to the affidavit is a copy of the alleged Loan Term Sheet and the Costs Agreement. Clause 4 of the Costs Agreement provides that on the signing of the Agreement, the applicants (that is, with respect to the Cost Agreement, the company to be incorporated as the Trustee for a Unit Trust, to be known as Ripley Valley Unit Trust, and Mr Hinds, as an individual) would pay to the facilitator (the facilitator being described as the applicant company in the present proceedings, Berhero Pty Ltd, trading as Acuity Funding) a non-refundable Processing Fee in the sum set forth in clause 11 of the Loan Term Sheet.

13. Clause 11 of the Loan Term Sheet provides for a repayment of $22,000 including GST. Clause 4 of the Costs Agreement then goes on to provide that in the event the loan is conditionally approved to the applicants, or a discussion paper is issued, or a terms sheet is issued, or a loan proposal is issued in the terms of the Loan Term Sheet, then the Brokerage Fee, set out in clause 12 of the Loan Term Sheet, becomes immediately due and payable by the applicants to the facilitator.

14. It is the claim made by Berhero Pty Ltd, as applicant in respect of the present Application, that the second triggering event, being a discussion paper was issued, occurred such that the first respondent, as party to the Costs Agreement, is required to pay the Brokerage Fee as set out in clause 12 of the Loan Term Sheet.

15. It is clear from the submissions made by Mr Christensen on behalf of the first and second respondents that there is a dispute as to whether the document which was issued by the ANZ Bank, and which is attached as an exhibit to the affidavit of Mr Thambyraiah at page 15, constitutes a discussion paper for the purposes of clause 4 of the Costs Agreement.

16. It is accepted that it is not part of my function in determining the present Application to make a final determination on the proper interpretation of the documents which are annexed to the affidavit of Mr Thambyraiah and, in particular, clause 4 of the Costs Agreement. It is accepted that my function is to determine whether there is a claim of substance that has been raised. Specifically, whether the applicant has a caveatable interest with respect to the properties and, if so, to determine whether the balance of convenience favours the extension of the caveats.

17. As I indicated in argument with Mr Christensen, it is possible that the term, "discussion paper" in clause 4 of the Costs Agreement, has a particular meaning with regard to banking and finance and that the meaning of those words in clause 4 may be coloured by that particular meaning in that area of commerce. No evidence of that has been put before me. On the plain reading of the clause, utilising plain English, and on a plain reading of the Expression Of Interest document dated 22 January 2014 from the ANZ Bank, there appears to be a very strong case that the document from the ANZ Bank constitutes a discussion paper for the purposes of clause 4 of the Costs Agreement.

Signed by AustLII
Retrieved from AustLII on 15 May 2024 at 19:32:39    Verify version

18. It is not disputed that the applicant was entitled to lodge a caveat over the relevant properties with regard to any amounts that may be legitimately owing under the Costs Agreement. In other words, it is not a matter of dispute that the Costs Agreement provides for the applicant to lodge caveats over property in which the first respondent has an interest, in order to protect amounts that may be owing under that Agreement.

19. I am satisfied that there is a serious issue to be tried. The question is whether the balance of convenience favours the extension of the caveat. In my opinion, it does. There are significant amounts which are alleged to be owing under the Agreement, and no repayments have been made for some time. I am satisfied that there is a strong case on behalf of the applicant for ultimate recovery.

20. The final question is whether the applicant should be required to give an undertaking as to damages. In my opinion, it should not be so required. Without an undertaking as to damages the applicant, in my view, has a strong case for the continuation of the caveats. In any event, there is some protection for the registered proprietor provided by s 108 of the *Land Titles Act 1925* (ACT).

**Orders**

21. I make the following orders:

    (a) I make formal orders in accordance with Order 3 of the orders sought in the originating Application;

    (b) I direct that a copy of the formal orders are to be served on the third respondent at the earliest opportunity;

    (c) The first and second respondents are to pay the applicant's costs for the proceedings, as agreed or as assessed.

I certify that the preceding twenty-one [21] numbered paragraphs are a true copy of the Reasons for Judgment of his Honour Justice Burns

Associate:

Date: