



# Project Rigel

## Privileged and confidential

For SIAC Arbitration No. 162 of 2024

19 June 2025

# Table of Contents

1.   INTRODUCTION ........................................................................................... 3

2.   GLOBAL WISE INVESTMENTS PTE. LTD. ............................................... 7

3.   LANKAN BAL ............................................................................................14

4.   BERHERO PTY. LIMITED, TRADING AS ACUITY FUNDING ...............19

5.   RANJIT PRITHVIRAJ THAMBYRAJAH ...................................................32

6.   DON INDRAJITH NISSANKA .................................................................38

7.   ELITE CROWN DIAMOND LIMITED .......................................................45

8.   ELITE GLOBAL EQUITY FUND ..............................................................48

9.   ELITE CROWN CAYMAN LIMITED..........................................................51

10.  CONNECTIONS AMONG THE SUBJECTS ...........................................52

# 1.    Introduction

## 1.1.    Background and our instructions

1.1.1.    On 29 April 2024, Berhero Pty. Limited, trading as Acuity Funding (the "**Claimant**", or "**Berhero (Acuity)**") initiated an arbitration against The Roe Corporation, 267 Partners, LLC, and Buhm Jung Roe (collectively referred herein as the "**Clients**") in relation to a loan term sheet and costs agreement dated 24 September 2023 (the "**Matter**").

1.1.2.    Pursuant to the terms of engagement dated 5 June 2025 executed between the Clients and Grant Thornton Singapore Private Limited ("**Grant Thornton**", "**we**", or "**us**"), the Clients have engaged Grant Thornton to conduct open-source intelligence and research on specific parties in connection with the Claimant and the Matter.

1.1.3.    In this regard, the Clients have requested Grant Thornton to perform open-source intelligence to obtain information on the following parties:

    i.    Global Wise Investments Pte. Ltd. ("**Global Wise**");

    ii.    Lankan Bal ("**Lankan**");

    iii.    Berhero (Acuity);

    iv.    Ranjit Prithviraj Thambyrajah ("**Ranjit**");

    v.    Elite Crown Diamond Limited ("**Elite Crown Diamond**");

    vi.    Elite Global Equity Fund ("**Elite Global**");

    vii.    Elite Crown Cayman Limited ("**Elite Crown Cayman**"); and

    viii.    Don Indrajith Nissanka ("**Don**").

These parties shall hereinafter collectively be referred to as the "**Subjects**".

1.1.4.    The open-source intelligence was conducted across the following key areas in relation to the Subjects:

    i.    Corporate and individual background;

    ii.    Ownership and management profile;

    iii.    Operations and financial standing;

    iv.    Reputation and public profile;

    v.    Legal and regulatory matters; and

    vi.    Connections and associations, including political exposure.

## 1.2. General limiting conditions and constraints

### Use of Report

1.2.1. The findings in this report are based on publicly available information obtained through internet searches and open-source intelligence. This report or our services do not constitute any legal opinion or legal advice.

1.2.2. The procedures performed in arriving at the findings in this report do not constitute an audit or a review made in accordance with the Singapore Standards of Auditing or Singapore Standards on Review Engagements or anywhere else; accordingly, no assurance will be expressed in this regard.

1.2.3. The scope of work set out in this report does not amount to an internal audit and shall not be relied upon as the primary basis for assessing the adequacy of the system of internal controls.

1.2.4. This report only sets out information obtained from information search conducted by Grant Thornton. We do not provide any opinion in respect to the business entities or individuals on whom this search has been conducted. The information included in this report has been primarily conducted from public sources in the English language, thus it is difficult to verify all aspects of the information obtained.

1.2.5. Grant Thornton applied professional judgment in selecting the relevant search databases and sources, taking into account the scope of the engagement as well as the location and jurisdiction of the Subjects. While the firm has access to a wide range of data sources, it is not feasible to exhaustively search all of them within a single engagement. It is important to note that other professional services firms may adopt different approaches in selecting databases, which could lead to varying findings.

1.2.6. Some information in this report has been gathered from internet publications as of particular dates denoted in our report. Grant Thornton accepts no liability for any inaccuracies contained within these internet publications, nor do we accept any liability for any opinion expressed by them.

1.2.7. Given that certain information may be either unreported or inaccessible through publicly available online sources, Grant Thornton is unable to guarantee the completeness or accuracy of the information obtained from such sources.

1.2.8. Unless expressly stated, the information contained in this report has not been subject to detailed verification procedures and no document expert has been engaged to independently verify the authenticity of the documents provided to us. No representation is made by Grant Thornton as to the accuracy or completeness of such information from the public domain and nothing contained in this report is or shall be construed as a representation of the future.

1.2.9.   All assumptions made for the purpose of this engagement are premised on information and representations provided by the Clients, relevant external parties and persons in connection with our work. We do not give any representation, warranty, indemnity or undertaking expressly or impliedly as to the accuracy or completeness of such information provided to and used by us in our assignment.

1.2.10.  No reliance should be placed on preliminary draft and/or draft reports issued by us for discussion purposes and Grant Thornton shall not be responsible to any parties who have placed reliance on such preliminary draft and/or draft reports.

1.2.11.  We reserve the right (but we are not under any obligation) to review, alter and amend our report in light of any matters not previously brought to our attention as a result of new developments, which may or may not materially affect our opinion both prior to and subsequent to the date of this report.

**Purpose of Report**

1.2.12.  This report has been prepared for use in the matter of *Berhero Pty Limited (trading as Acuity Funding) v. The Roe Corporation, 267 Partners, LLC, and Buhm Jung Roe* and is intended to be made available to the Tribunal in connection with the arbitration proceedings. In all other respects, this report is confidential. It should not be used, reproduced or circulated for any other purpose, in whole or in part, without our prior consent. No liability is accepted to any person other than the Clients except in so far as any liability arises from the giving of evidence. No other party is entitled to rely on this report for any purpose whatsoever.

1.2.13.  The Clients has appointed Shook Lin & Bok LLP as its external legal counsel to advise them in relation to this Matter.

1.2.14.  This report should not be construed as expressing opinions on matters of law, which are outside our expertise and for the Court to determine. However, it necessarily reflects our understanding thereof.

## 1.3.    Specific limiting conditions and constraints

1.3.1.    This report has not been shown to every person referred to in this report. Had these people been shown this report, they may have comments that could cause us to amend the contents.

1.3.2.    In the course of our work, certain information and documents gathered from open-sourced intelligence/specialist databases were in foreign languages including Vietnamese, Korean, Swedish, and Spanish. We have utilised machine translation tools to translate the relevant content, and do not accept any liability for any potential errors in translation.

1.3.3.    Certain findings in this report were based on publicly available information from research conducted between 6 June and 18 June 2025 in English. Events may have occurred since the issuance of this report which might alter the accuracy of the report.

1.3.4.    Our findings and observations in this report were based on the fieldwork conducted between 6 June and 18 June 2025.



19 June 2025

# 2. Global Wise Investments Pte. Ltd.

## 2.1. Corporate background

| Business profile[1] | |
|---|---|
| **Entity name** | Global Wise Investments Pte. Ltd. |
| **Entity number** | 201605565K |
| **Country of incorporation** | Singapore |
| **Incorporation date** | 4 Mar 2016 |
| **Company type** | Exempt private company limited by shares |
| **Status** | Live |
| **Registered address** | 10 Anson Road, #10-11, International Plaza, Singapore 079903 |
| **Director(s)[2]** | i. Lankan [4 Mar 2016 – Present]<br>ii. Maheskumar S/O Shantilal Purshotam Mehta ("**Maheskumar**") [11 Aug 2023 – Present]<br>iii. Tham Li Ling, Felicia Malkiewicz ("**Felicia**") [1 Sep 2020 – 11 Aug 2023]<br>iv. Thirumany D/O M Ponniah ("**Thirumany**") [4 Mar 2016 – 1 Sep 2020] |
| **Shareholder(s)** | Lankan: 100 shares (100%) |
| **Issued and paid-up share capital** | SGD100 (100 shares) |
| **Business activities** | i. Wholesale trade of a variety of goods without a dominant product<br>ii. Management consultancy services |

**Figure 1 – Corporate information of Global Wise**

We set out our observations in relation to Global Wise's background:

2.1.1. The Singapore Companies Act mandates that all companies are legally required to appoint a company secretary, and the position must not be left vacant for more than six (6) months at any one time[3]. Based on the corporate records of Global Wise[4], we noted that Global Wise currently does not have a company secretary appointed. However, we are unable to determine when the position was vacated.

2.1.2. Global Wise was listed in Accounting and Corporate Regulatory Authority's ("**ACRA**") First Gazette notification published on 4 April 2018[5]. The notification pertains to entities that ACRA intends to strike off. At the expiration of 60 days from the date of the notification (i.e., 3 June 2018), if no objections are raised, the entity is to be struck off from the register of companies[6]. However, as of the date of this report, Global Wise remains listed as active.

i. We were unable to identify further information on Global Wise's inclusion in the notification, nor why it was not subsequently struck off upon expiration of the 60-day period (i.e., 3 June 2018).

---

[1] Refer to Exhibit 1 for the corporate records of Global Wise.
[2] Refer to Exhibit 2 for the register of directors of Global Wise.
[3] Refer to Exhibit 3 for the excerpt Section 171 from the Singapore Companies Act on company secretaries.
[4] Refer to Exhibit 1 for the corporate records of Global Wise.
[5] Refer to Exhibit 4 for ACRA's First Gazette notification dated 4 April 2018.
[6] Refer to Exhibit 5 for ACRA's guide on striking off a local company.

2.1.3. We have identified two (2) corporate websites associated with Global Wise: www.iglobalwise.com, and www.globalwise.me. Both websites are currently inaccessible[7], however based on archived versions of the sites through digital archives, we have made the following observations:

    i. The website iglobalwise.com[8], referenced in Global Wise's social media profiles[9], stated that Global Wise provides *"innovative project financing strategies"* and listed the contact email as *"admin@iglobalwise.com"*; and

    ii. The website globalwise.me[10], which was specified in the footer of the Conditional Letter of Offer for Mortgage Finance dated 20 October 2023 issued by Global Wise[11], displayed only the corporate logo, contact information and company's address. The website also listed the contact email as *"admin@globalwise.me"*.

2.1.4. We sent test emails to both email address:

    i. The contact email address *"admin@iglobalwise.com"* is currently invalid as we received a non-delivery email notification indicating that delivery was unsuccessful[12]; and

    ii. We are unable to confirm the validity of the contact email address *"admin@globalwise.me"* as we did not receive a non-delivery email notification.

2.1.5. The registered business address of Global Wise is shared across multiple entities[13] and corresponds to that of JJ & E Management Pte. Ltd. (**"JJ & E Management"**), a company providing management consulting services[14].

2.1.6. Based on a site visit to the business address on 7 June 2025[15], there was no indication of any physical presence or operational activity by Global Wise at the stated address. Additionally, the company operating at the Global Wise's business address displayed a signboard labelled *"JJ & E"*, which may be associated with JJ & E Management.

2.1.7. Notably, Felicia, a former director of Global Wise, was investigated by the Commercial Affairs Department ("**CAD**") and convicted in connection with her nominee directorships for three (3) companies incorporated by JJ & E Management[16], unrelated to Global Wise. Further details on Felicia and her case are set out in paragraph [2.3.3].

---

[7] Refer to Exhibit 6 for extracts of the Global Wise's corporate websites.
[8] Refer to Exhibit 7 for an extract of the archived website: iglobalwise.com.
[9] Refer to Exhibit 8 and 9 for an extract of Global Wise's Instagram and LinkedIn profile, respectively.
[10] Refer to Exhibit 10 for an extract of the archived website: globalwise.me.
[11] Refer to Conditional Letter of Offer for Mortgage Finance dated 20 October 2023 annexed as Exhibit 2 in the Notice of Arbitration dated 29 April 2024.
[12] Refer to Exhibit 11 for the extract of the email validation result for admin@iglobalwise.com.
[13] Refer to Exhibit 12 for the open-source search engine results for Global Wise's registered business address.
[14] Refer to Exhibit 13 for the business profile extract of JJ & E Management.
[15] Refer to Exhibit 14 for the photographs taken during the site visit conducted on 7 June 2025.
[16] Refer to Exhibit 15 for an extract of the publication by the Singapore Police Force.

2.1.8.   Our review also identified an entity incorporated in the United Kingdom ("**UK**") that previously operated under the name *"Global Wise Investments Pte Ltd"* from 6 August 2018 to 5 April 2019[17]. The entity has since been renamed to Great Winchester Investments Ltd ("**Global Wise UK**"). Corporate records of Global Wise UK indicates that the current director and shareholder is an individual named Valerija Knez from 25 March 2024. Zoaib Ali ("**Zoaib**") was a former director and shareholder from 6 August 2018 to 25 March 2024. Zoaib was also identified to be a current director and shareholder of Elite Crown Diamond. Further details on Elite Crown Diamond are set out in section [7].

## 2.2.   Operations and financial standing

2.2.1.   Global Wise has limited publicly available information regarding its operations, business activities, and projects. In the annual return filed with ACRA for the financial year ended ("**FYE**") 28 February 2021[18], there was no financial information available for our review[19]. The directors (i.e., Lankan and Felicia) declared that Global Wise qualified as a small company under section 205C read with the Thirteenth Schedule.

2.2.2.   In Singapore, a company qualifies as a small company[20] if it is a private company for the whole financial year ("**FY**") and meets any two (2) of the following criteria in each of the two (2) FYs before the current one:

   i.   Its revenue does not exceed SGD10 million for each FY;

   ii.   Its total assets at the end of each FY does not exceed SGD10 million; or

   iii.   It has not more than 50 employees at end of each FY.

2.2.3.   Global Wise's LinkedIn profile[21] indicates an employee size of *"11–50 employees"*, however, only three (3) LinkedIn members are listed as associated with the company: Lankan, an individual named *"D. Smith"*, who is listed as "*CEO at WISE INVESTMENTS*" and another individual identified as *"LinkedIn Member, CEO Wise Investments"*.

   **I.   Business activity in Vietnam**

2.2.4.   On 12 July 2024, Nam Song Hau Petroleum Investment and Trading Joint Stock Company's ("**NSH Petrol**") board of directors formally approved through a Resolution of the Board of Directors[22], a loan arrangement of USD343 million with Global Wise and another entity as

---

[17] Refer to Exhibit 16 for the corporate records of Global Wise UK.
[18] Refer to Exhibit 17 for the filing of annual return by Global Wise for FYE 28 February 2021.
[19] In Singapore, exempt private companies that are solvent are not required to file their financial statements with ACRA. We noted that Global Wise was specified as an exempt private company that is solvent in Exhibit 17, the annual return by Global Wise for FYE 28 February 2021.
[20] Refer to Exhibit 18 for the excerpt from the Singapore Companies Act on the Thirteenth Schedule.
[21] Refer to Exhibit 9 for an extract of Global Wise's LinkedIn profile.
[22] Refer to Exhibit 19 for NSH Petrol's board of directors' resolution dated 12 July 2024.

the lenders, and Berhero (Acuity) as the *"arranger, loan manager, intercreditor agent and security agent"*[23].

i. On 17 July 2024, The LEADER[24] reported that NSH Petrol was seeking a USD343 million loan from Global Wise. As part of the agreement, Berhero (Acuity) will serve as the *"initial underwriter, arranger, loan administrator, agent for the sponsors and security agent"*.

ii. Further details on Berhero's (Acuity) loan and business relationship with NSH Petrol are set out in paragraphs [4.2.10] to [4.2.13].

**II. Business activity in Malaysia**

2.2.5. From court documents in relation to *Berhero v Senibina Sentral Sdn Bhd et al. [2024] NSWSC 459* and *Berhero v Senibina Sentral Sdn Bhd et al. [2024] NSWCA 110*, Global Wise was stated as the proposed lender of a USD210 million loan to Senibina Sentral Sdn Bhd ("**Senibina Sentral**") and Senibina Murni Sdn Bhd ("**Senibina Murni**"). Berhero (Acuity) conducting business as a commercial broker, sought over USD6 million in unpaid fees from the defendants of the proceedings under a loan agreement. Further details on the litigation case are set out in paragraphs [4.5.7] to [4.5.13].

## 2.3. Ownership and management

2.3.1. Global Wise is wholly owned by Lankan, who holds 100 shares of SGD100. Further details on Lankan are set out in Section [3].

### *Former directors*

2.3.2. Global Wise's register of directors notes that Thirumany and Felicia, former directors of Global Wise, have been disqualified from acting as directors of Global Wise effective 9 January and 8 May 2024[25], respectively. No further information was provided on the corporate records as to the reasons for their disqualification.

2.3.3. A publication from the Singapore Police Force website stated that Felicia was investigated by the CAD and convicted on 8 May 2024 of three (3) counts under Section 157(1) of the Companies Act, punishable under Section 157(3)(b), for her acceptance of nominee directorships for three (3) companies, namely Jana United Pte Ltd, Amey Cespa (AWRP) ODC Pte Ltd and Motexo Pte Ltd, during which she failed to exercise reasonable diligence in the discharge of her duties as a director of the three (3) companies. She was sentenced to 16 days' imprisonment and disqualified from being a company director for a period of five (5) years. The said companies received approximately USD2.87 million in fraudulent

---

[23] We were unable to ascertain the reason for the difference between Behero's (Acuity) role as reported in the news article and their role stated in the board resolution.

[24] Refer to Exhibit 20 for an extract of the article published by The LEADER, a Vietnamese online news platform, on 17 July 2024.

[25] Refer to Exhibit 2 for the register of directors of Global Wise.

proceeds into their bank accounts from multiple business email compromise scams perpetrated against foreign victims between January and May 2018[26].

i. These three (3) companies were incorporated by JJ & E Management, who is located at the registered address for Global Wise, however, do not appear to be related to Global Wise apart from their connection with Felicia.

2.3.4. Our review has not identified the rationale or related information surrounding Thirumany's disqualification as a director of Global Wise.

### *Current directors*

2.3.5. Maheskumar, a current director of Global Wise was appointed on 11 August 2023 following Felicia's resignation on the same day[27]. His profile on MarketScreener[28], describes him as the former Executive Director and Head of Business Development at Abterra Ltd.[29] from 2005 to 2012, and a Non-Executive Director at Nath Pulp & Paper Mills Ltd[30] since 2010[31].

2.3.6. According to International Consortium of Investigative Journalists ("**ICIJ**") Offshore Leaks (Panama Papers)[32], he is also indicated as a shareholder of First Reserve Resources Ltd.

## 2.4. Public profile and reputation

2.4.1. Global Wise has a limited public profile, with minimal information available about its operations and affiliations. We noted allegations of scam against Global Wise from online forums, similar to those made against Lankan, Don, Elite Global, and other parties related to the Subjects (i.e., Ali, a director and shareholder of Elite Crown Diamond, and Advisors of Elite Global).

### I. Allegations of scam against Global Wise

2.4.2. We identified user profiles on social media and online forum platforms, namely Reddit, Quora and X alleging fraudulent activities involving Global Wise, with specific reference made to their business address at *"10 Anson Road"*:

ii. An account on Reddit, using the handle *"u/GlobalWiseCriminal"* stated under its profile that *"Global Wise Investments Pre, LTD. 10 Anson Road, #10-11 International Plaza, Singapore is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation."*[33];

iii. An account on Quora, using the handle *"Global Wise Investments Pre LTD Scam Artist"*, stated under its profile that *"Global Wise Investments Pre, LTD. 10 Anson*

---

[26] Refer to Exhibit 15 for an extract of the publication by the Singapore Police Force.
[27] Refer to Exhibit 2 for the register of directors of Global Wise.
[28] MarketScreener is a global financial news and data platform.
[29] Abterra Ltd. was formerly listed on the Singapore Exchange, was delisted effective 24 January 2024. The company was primarily involved in commodity trading, focusing on iron ore and cotton.
[30] Nath Pulp & Paper Mills Ltd is a paper manufacturer based in India.
[31] Refer to Exhibit 21 for an extract of Maheskumar's profile on MarketScreener.
[32] Refer to Exhibit 22 for an extract of Maheskumar's profile on ICIJ Offshore Leaks.
[33] Refer to Exhibit 23 for an extract of the user's profile on Reddit, an online forum, regarding Global Wise.

*Road, #10-11 International Plaza, Singapore is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are and to see to it that no one else is hurt by their FRAUD. Global Wise Investments Pre, LTD. 10 Anson Road, #10-11 International Plaza, Singapore is a Fraud, scammer and currently part of an international scam team destroying people lives and livelihoods."[34]*; and

iv.   An account on X, using the handle *"@WiseLtd36399"* stated under its profile that *"Global Wise Investments Pre, LTD. 10 Anson Road, #10-11 International Plaza, Singapore is part of an elaborate scam which has stolen over 4 million dollars from"[35]*.

2.4.3.   We noted that all three (3) accounts were created in June 2023, and no other comments or posts have been made by the users.

2.4.4.   Our review has not found any references to these allegations in mainstream media sources.

## 2.5.   Litigation, regulatory and political exposure

### I.   Litigation and regulatory actions

2.5.1.   We have not identified any indication that Global Wise has been involved, either as a plaintiff or defendant, in any major litigation, or criminal proceedings in Australia and Singapore[36].

2.5.2.   We have not identified any indication that Global Wise has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

### II.   Insolvency

2.5.3.   We have not identified any insolvency proceedings or petitions filed against Global Wise in Singapore. However, a bankruptcy was filed against Lankan, where he was declared bankrupt on 9 August 2007 and discharged on 13 April 2011. Lankan's bankruptcy proceeding is set out in paragraph [3.4.3].

### III.   Sanctions

2.5.4.   We did not identify any matches for Global Wise based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

### IV.   Political exposure

2.5.5.   We did not identify any indication that Global Wise, and its current shareholders and directors, had political connections or exposure, or that they hold political office or

---

[34] Refer to Exhibit 24 for an extract of the user's profile on Quora, a social question and answer platform, regarding Global Wise.
[35] Refer to Exhibit 25 for an extract of the user's profile on X, an online social networking and microblogging platform, regarding Global Wise.
[36] Refer to Exhibit 26 for litigation searches on Global Wise in Singapore.

government position based on searches conducted across international politically exposed persons ("**PEPs**") and public records research.



19 June 2025

# 3.    Lankan Bal

## 3.1.    Individual background

| Individual profile[37] | |
|---|---|
| Legal name | Lankan Bal |
| Address | 29 Grantham Road, Seven Hills, New South Wales ("**NSW**") 2147 |
| Nationality | Australian |
| Date of birth | 2 Nov 1971 |
| Passport number | PA******* |
| Place of birth | Jaffna, Sri Lanka |
| Education[38] | i.   Murdoch University (1996 – 1999)[39], Bachelor of Science in information technology and business management, multimedia & information technology<br>ii.  Real Estate Institute (2000), Diploma in business management, real estate and business management<br>iii. Aquinas College Western Australia (1989 – 1990), Secondary education |

| Professional career history[40] | | | |
|---|---|---|---|
| **Entity** | **Role** | **Jurisdiction** | **Period** |
| Elite Global | Chief Strategy Officer ("**CSO**") | Cayman Islands | Jul 2021 – Present |
| NSW department of Communities and Justice ("**DCJ**") | Justice of the Peace ("**JP**") | Australia | Jul 2024 – Present |
| Global Wise | Chairman of the Board | Singapore | Mar 2016 – Present |
| Elite Crown Diamond | Director/Investment Manager | UK | Aug 2018 – Present |
| Global Wise Super Pty Ltd ("**Global Wise Super**") | Officer in charge | Australia | Feb 2016 – Present |
| Global Capital Group Pty Ltd ("**Global Capital Group**") | President and Chief Executive Officer ("**CEO**") | Australia[41] | Nov 2011 – Nov 2022 |
| Business International | President and CEO | Not available | 2007 – 2011 |
| Propertynet International | Principal Licensee | Australia | 2000 – 2010 |

**Figure 2 – Individual background of Lankan**

We set out our observations in relation to Lankan's background:

3.1.1.    Based on Lankan's career history listed on his LinkedIn profile, we noted that majority of his roles through his career history after 2011 has been associated with companies where he held directorships and/or shareholdings. Further details on his corporate interest and directorships are set out in Section [3.2].

3.1.2.    Lankan is listed as a JP, according to the online JP public register by the NSW DCJ[42].

---

[37] Refer to Exhibit 27 and 28 for the individual search reports of Lankan in Australia and Singapore, respectively.
[38] Refer to Exhibit 29 for an extract of Lankan's LinkedIn profile.
[39] Refer to Exhibit 30 for an extract of Murdoch University's graduate register.
[40] Refer to Exhibit 29 for an extract of Lankan's experiences on his LinkedIn profile.
[41] From Lankan's LinkedIn profile the jurisdiction was listed as "Globally". We have indicated Australia as based on Global Capital Group's corporate records, the company was incorporated in Australia.
[42] Refer to Exhibit 31 for an extract of the justice peace public register for Lankan.

## 3.2.  Corporate interests and directorships

| S/N | Entity name | Status | Role | Period | Shareholding |
|-----|-------------|--------|------|--------|--------------|
| **Australia**[43] | | | | | |
| 1 | Access Business Pty Ltd ("**Access Business**") | Registered | Director and secretary | 16 Oct 2017 – Present | 1,000 shares |
| 2 | Global Wise Medics Pty Ltd ("**Global Wise Medics**") | Registered | Director | 9 Dec 2014 – Present | 100 shares |
| 3 | Global Wise Super | Registered | Director | 8 Feb 2016 - Present | 1 share |
| **Singapore**[44] | | | | | |
| 4 | Global Wise | Live | Director | 4 Mar 2016 – Present | 100 shares |
| **UK**[45] | | | | | |
| 5 | Elite Crown Diamond | Live | Director | 30 Jun 2019 – Present 31 May 2018 – 28 Feb 2019 | -[46] |

**Figure 3 – Current corporate interests and directorships of Lankan**

3.2.1.   Further details on Lankan's former and current corporate interests and directorships are detailed in **Appendix C**.

### I.  Access Business

3.2.2.   Access Business was incorporated in NSW, Australia, on 16 October 2017. Lankan is the sole shareholder and has been the director and secretary since incorporation[47].

3.2.3.   Access Business is a provider of digital marketing and copywriting services[48]. According to its corporate website, its listed partners include Global Wise, another entity named Access Business, and Captive Events.

3.2.4.   Further, Access Business' LinkedIn profile[49] lists only one (1) associate member, Bal K, who identifies on LinkedIn as *"Digital Marketing Consultant at Access Business Pty Ltd"*[50]. Bal K may be connected to Lankan through familial relations, as they share the same family name.

### II.  Global Wise Medics

3.2.5.   Global Wise Medics was incorporated in NSW, Australia, on 9 December 2014. Lankan and Yoharanee Bal ("**Yoharanee**") are equal shareholders, holding 50% each, and have been the directors since incorporation[51]. Yoharanee may be connected to Lankan through familial relations, as they share the same family name.

---

[43] Refer to Exhibit 27 for the individual search report of Lankan in Australia
[44] Refer to Exhibit 28 for the individual search report of Lankan in Singapore.
[45] Refer to Exhibit 32 for the corporate records of Elite Crown Diamond from Companies House UK.
[46] We noted that Lankan was listed as a person with "significant influence or control" in relation to Elite Crown Diamond from 31 May 2018 to 28 February 2019, and again on 30 June 2019.
[47] Refer to Exhibit 33 for the corporate records of Access Business.
[48] Refer to Exhibit 34 for an extract of the Access Business' corporate website: accessbusiness.com.au.
[49] Refer to Exhibit 35 for an extract of Access Business' LinkedIn profile.
[50] Refer to Exhibit 36 for Bal K's LinkedIn profile.
[51] Refer to Exhibit 37 for the company records of Global Wise Medics.

3.2.6. We noted that there was no information on the nature of Global Wise Medics' business activities on the public domain.

**III.    Global Wise Super[52]**

3.2.7. Global Wise Super was incorporated in NSW, Australia, on 8 February 2016. Lankan and Yoharanee are equal shareholders, holding 50% each, and have been the directors since incorporation.

3.2.8. We noted that there was no information on the nature of Global Wise Super's business activities on the public domain.

**IV.    Global Wise**

3.2.9. Further details on Global Wise are set out in Section [2].

**V.    Elite Crown Diamond**

3.2.10. Further details on Elite Crown Diamond are set out in Section [7].

## 3.3.    Public profile and reputation

3.3.1. Lankan has a limited public profile, primarily reflected in references on his companies' websites.

3.3.2. We noted allegations of scam against Lankan from online forums, similar to those made against Global Wise, Don, Elite Global and other parties related to the Subjects (i.e., Ali, and Advisors of Elite Global). In addition, we also observed accusations involving asset theft and fabrication of identification documents against Lankan's former business partners.

**I.    Allegations of scam against Lankan**

3.3.3. We identified user profiles on social media and online forum platforms, namely Reddit, Quora and X alleging scam and fraudulent activities involving Lankan:

i.    An account on Reddit using the handle *"u/BalLankanFraudster"* stated under its profile that *"Bal Lankan is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation."* [53];

ii.    An account on Quora using the handle *"Bal Lankan Criminal"* stated under its profile that *"Bal Lankan is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are and to see to it that no one else is hurt by their FRAUD. Bal Lankan is a Fraud, scammer and currently part of an international scam team destroying people lives and livelihoods."* [54]; and

---

[52] Refer to Exhibit 38 for the corporate records of Global Wise Super.
[53] Refer to Exhibit 39 for extract of the user's profile on Reddit regarding Lankan.
[54] Refer to Exhibit 40 for extract of the user's profile on Quora regarding Lankan.

    iii.   An account on X using the handle *"@bal_scam81083"* stated that *"Bal Lankan is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation."* [55].

3.3.4.   All three (3) accounts were created in June 2023, and no other comments or posts have been made by the users.

3.3.5.   Our review has not found any references to these allegations in mainstream media sources.

## II.   Allegations of asset theft and fabrication of identification documents against Lankan's former business partners

3.3.6.   Corporate records listed Lankan as a former director and secretary of Global Capital Group from 28 November 2011 to 22 April 2022[56]. As of the date of deregistration of 22 April 2022, he was listed as a former shareholder with 30% shareholdings, while the remaining 70% was owned by Ariana Holding LLC ("**Ariana Holding**").

3.3.7.   Prior to 15 September 2016, Lankan held 100% of Global Capital Group. On 15 September 2016, he transferred 70% of his shareholdings to Ariana Holding[57].

3.3.8.   Ariana Holding, an entity registered in Nevada, United States ("**US**"), was established on 1 August 2013. Murat Akin ("**Murat**") is listed as the current manager of the company[58].

3.3.9.   We identified an anonymously published document titled *"Whistleblowers - Info Rebuttal"* on Scribd.com (a digital document library)[59]. The document was described to be *"a statement of rebuttal"*, rebutting accusations made against Murat, Edvin Muradyan ("**Edvin**", a former manager of Ariana Holding)[60], and Ariana Holding from a website called *The Whistleblowers* in 2016. The accusations appeared to be related to the use of bogus Treasury identification cards to pose as federal traders for *"sophisticated asset thefts"*, and that they were being investigated for terrorism financing.

3.3.10.   The rebuttal statement asserted that the allegations were false and that Murat and Edvin's personal information were provided to an individual named Eddie Tinari, who used it without their knowledge to create the fake identification cards. It further stated that Edvin received threats from an individual named *"Mr. Fioto"*, who claimed that he had *"FBI friends that had already been investigating"* both Edvin and Murat. The document also stated that *"proper authorities"* were alerted regarding these threats against Edvin and Murat.

3.3.11.   We were unable to locate the original publication on *The Whistleblowers* website that contained the initial allegations against Murat, Edvin, and Ariana Holding.

---

[55] Refer to Exhibit 41 for extract of the user's profile on X regarding Lankan.
[56] Refer to Exhibit 42 for the corporate records of Global Capital Group.
[57] Refer to Exhibit 43 for the corporate records of the share transfer of Global Capital Group.
[58] Refer to Exhibit 44 for the corporate records of Ariana Holding.
[59] Refer to Exhibit 45 for an extract of the document titled "Whistleblowers - Info Rebuttal" on Scribd.
[60] Refer to Exhibit 44 for the corporate records of Ariana Holdings.

## 3.4.   Litigation, regulatory and political exposure

### I.   Litigation and regulatory actions

3.4.1.   We have not identified any indication that Lankan has been involved, either as a plaintiff or defendant, in any major litigation, or criminal proceedings in Australia and Singapore[61].

3.4.2.   We have not identified any indication that Lankan has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

### II.   Bankruptcy

3.4.3.   On 20 April 2007, Grenfell Securities Limited filed a creditor's petition for Lankan's bankruptcy. Following this, Lankan was declared bankrupt on 9 August 2007. Lankan's bankruptcy was discharged on 13 April 2011[62].

### III.   Sanctions

3.4.4.   We did not identify any matches for Lankan based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

### IV.   Political exposure

3.4.5.   We did not identify any indication that Lankan had political connections or exposure, or that they hold political office or government position based on searches conducted across international PEPs and public records research.

---

[61] Refer to Exhibit 46 for litigation searches on Lankan in Singapore.
[62] Refer to Exhibit 47 for the national personal insolvency index ("**NPII**") search report of Lankan.

19 June 2025

# 4. Berhero Pty. Limited, trading as Acuity Funding

## 4.1. Corporate background

| Business profile[63] | |
|---|---|
| **Entity name** | Berhero Pty. Limited |
| **Entity number** | 060 065 821 |
| **Country of incorporation** | NSW, Australia |
| **Incorporation date** | 24 May 1993 |
| **Company type** | Australian proprietary company limited by shares |
| **Status** | Live |
| **Registered address** | Suite 7, 265-271 Pennant Hills Road, Thornleigh, NSW 2120 |
| **Director(s)** | i.   Ranjit [21 Jun 2010 – Present]<br>ii.   Janette Thambyrajah [28 Sep 2007 – 22 Jun 2010]<br>iii.   Steven John Whittington [27 Aug 2005 – 28 Sep 2007]<br>iv.   Janette Goswell [29 Jun 1993 – 27 Aug 2005]<br>v.   Clive Arkly [29 Jun 1993 – 20 Dec 1995]<br>vi.   Peter John Truelove [24 May 1993 – 29 Jun 1993]<br>vii.   Ross Alexander Dalgleish [24 May 1993 – 29 Jun 1993] |
| **Shareholder(s)** | i.   Ranjit: 1,000 shares (100%)<br>*Former shareholders*<br>ii.   Janette Thambyrajah<br>iii.   Steven John Whittington<br>iv.   Janette Goswell<br>v.   Blake Andrew Wood<br>vi.   Michael Edward Howarth<br>vii.   Darko Telisman<br>viii.   Robert Keith Bell<br>ix.   Clive Arkly |
| **Issued and paid-up share capital** | AUD1,000 (1,000 shares) |
| **Business activity** | Not available |
| **Trade names[64]** | Acuity Funding [1 Oct 2010 – 27 Oct 2010; 27 Oct 2010 – Present] |

**Figure 4 – Corporate information of Berhero (Acuity)**

We set out our observations in relation to Berhero (Acuity)'s background:

4.1.1. According to its corporate website (acuityfunding.com)[65], Berhero (Acuity) describes itself as a *"Leading International Finance Provider"*, and *"We [They] are the only financial funding and management house offering services and solutions across Infrastructure and Government project funding, Public-Private Partnerships (PPP), specialised securities and International Mortgage Management"*.

4.1.2. We identified another entity, ACN 075 911 410 Pty Ltd ("**ACN 075**", formerly known as Cayden Pty. Limited), which also traded under the name *"Acuity Funding"* from 20 May 2000

---

[63] Refer to Exhibit 48 for the corporate records of Berhero (Acuity).
[64] Refer to Exhibit 49 for an extract of Berhero's trade name registered with the ASIC.
[65] Refer to Exhibit 50 for an extract of the Berhero's (Acuity) corporate website: acuityfunding.com.

to 25 September 2011[66]. Ranjit was a former director of ACN 075 from September 2005 to January 2006 and reappointed again from March 2007 to May 2012[67].

### *Related companies*

4.1.3.  We noted that Berhero (Acuity) is associated with the following companies:

| S/N | Entity name | Entity number | Jurisdiction | Relationship |
|-----|-------------|---------------|--------------|--------------|
| **Related companies**[68,69] | | | | |
| 1 | RV Enterprises (NSW) Pty Ltd ("**RV Enterprises**") | 607 462 251 | Australia | Current associate (25%) |
| 2 | Acuity Funding (Sing) Pte. Ltd. ("**Acuity SG**") | 201932294K | Singapore | Current subsidiary (100%) |
| 3 | Australian Oil Holdings Pty Ltd | 161 270 195 | Australia | Former interests held |
| 4 | Australian Property Finance Pty Ltd | 094 881 240 | Australia | Former interests held |
| 5 | Hexar S.A. Pty Ltd | 639 411 751 | Australia | Former interests held |
| 6 | Ironbark Mortgage Solutions Pty Limited | 109 974 469 | Australia | Former interests held |
| 7 | National Brokers Group Holdings Pty Ltd | 122 059 394 | Australia | Former interests held |
| 8 | National Brokers Group Pty Limited | 094 881 231 | Australia | Former interests held |
| 9 | Vow Financial Holdings Pty Limited | 122 740 327 | Australia | Former interests held |

**Figure 5 – Related companies of Berhero (Acuity)**

## 4.2.  Operations and financial standing

4.2.1.  Berhero's (Acuity) public profile is limited to information available on its own social media platforms such as LinkedIn and Facebook as well as reports detailing its funding and loan arrangements from 2019 to 2024 in jurisdictions such as Vietnam, Uzbekistan, and South Korea.

4.2.2.  Financial information relating to Berhero (Acuity) was not available for our review.

4.2.3.  According to its LinkedIn profile[70], Berhero (Acuity) claims to have active projects across 35 countries and five (5) international offices, namely in Singapore, Ho Chi Minh City, Kathmandu, and the Greater Syndey area. We noted that Berhero (Acuity) did not list the location of its 5th international office. While Berhero's (Acuity) profile indicated an employee size of *"11 – 50 employees"*, only four (4) LinkedIn members currently list Berhero (Acuity) as their current employer. These included Ranjit, Viet Anh Nguyen (**"Viet Anh"**) who identifies as a Director of Global Projects at Acuity Funding[71], a technical lead and an external consultant.

###  I.  Business activities in South Korea

---

[66] Refer to Exhibit 51 for an extract of trading name register of ACN 075.
[67] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.
[68] Refer to Exhibit 52 for Australian Securities and Investments Commission's ("**ASIC**") relational company extract of Berhero (Acuity).
[69] Refer to Exhibit 53 for corporate records of Acuity SG.
[70] Refer to Exhibit 54 for an extract of Berhero's (Acuity) LinkedIn profile.
[71] Refer to Exhibit 55 for an extract of Viet Anh's LinkedIn profile.

4.2.4.    In May 2024, a press release from Hwaseong Urban Development Corporation's corporate website[72] stated that Berhero (Acuity) and Hwaseong Urban Development Corporation had signed an agreement, where both companies will discover and support new businesses such as real estate development and infrastructure construction in Hwaseong City, and provide advice and collaborate on the feasibility and business structure of various development projects. No further details were provided on the agreement and collaboration.

II.    **Business activities in Uzbekistan**

*Loan with NCG Group*

4.2.5.    An article from Yonhap TV[73] stated that on 9 April 2024, Berhero (Acuity) signed a loan approval agreement of USD277 million to provide funding for NCG Group's cement plant project in Uzbekistan. The cement plant construction is scheduled to commence in 2024, with plans to start producing and selling cement by 2027.

III.    **Business activities in Vietnam**

4.2.6.    In a 7 April 2023 article by VnExpress International[74], it was reported that Berhero (Acuity) had been active in Vietnam for three (3) years and has arranged a total of 5 billion (currency not disclosed) in capital through loans and investments, primarily for property and infrastructure. The article also stated that in February 2023 alone, Berhero (Acuity) received six (6) funding requests.

4.2.7.    In a 30 January 2024 article from the Vietnam Investment Review[75], Ranjit stated that Berhero (Acuity) was working on more than five (5) projects in Vietnam at various phases of development.

*Loans to Tin Thanh Group*

4.2.8.    On 26 September 2023, Tuoi Tre News[76], stated that Berhero (Acuity) had signed an agreement for a USD6.4 billion loan to fund Tin Thanh Group's green initiatives in Vietnam and the US. This includes USD1 billion for biomass power plants and grain cultivation in Vietnam, USD1.7 billion for a truck service and retreading factory in South Carolina, US and USD3.7 billion for a green hydrogen plant in the same state.

4.2.9.    Tin Thanh Group is a Vietnamese conglomerate in the renewable energy industry that operates various solar farms, waste processing plants, and biomass energy centres[77].

---

[72] Refer to Exhibit 56 for an extract of the publication dated 22 May 2024 on Hwaseong Urban Corporation's website.
[73] Refer to Exhibit 57 for an extract of the publication dated 10 April 2024 from Yonhap TV, a Korean news platform.
[74] Refer to Exhibit 58 for an extract of the publication dated 7 April 2023 from VnExpress International, a Vietnam news platform.
[75] Refer to Exhibit 59 for an extract of the publication dated 30 January 2024 from Vietnam Investment Review, a Vietnam news platform.
[76] Refer to Exhibit 60 for an extract of the publication dated 26 September 2023 from Tuoi Tre News, a Vietnam online news platform.
[77] Refer to Exhibit 61 for an extract of Tin Thanh Group's profile from CB Insights, a business analytics platform.

### *Loans to NSH Petrol*

4.2.10. An article on Vietnam Investment Review[78] stated that on 27 February 2024 Berhero (Acuity) signed an agreement to provide USD720 million in loans to NSH Petrol, a fuel supplier listed on the Ho Chi Minh Stock Exchange, to finance eight (8) development projects across Vietnam. The agreement signed at Hau Giang People's Committee headquarters, included two (2) funding phases: an initial USD290 million to settle debts, tax arrears and expand projects in Vietnam, and a subsequent USD430 million to fund the construction of new factories and increase working capital to help complete integrated projects in Vietnam.

4.2.11. On 26 April 2024, subsequent to the loans from Berhero (Acuity), NSH Petrol appointed Ranjit and Viet Anh as CEO[79], and deputy CEO in charge of financial investment, respectively[80]. According to Viet Anh's LinkedIn profile, he is a Director of Global Projects at Acuity Funding[81].

4.2.12. On 31 May 2024, The Investor, a Vietnam news publication[82], reported that the State Securities Commission of Vietnam found that between February 2021 and May 2022, four (4) individuals, including Mai Huu Phuc, the son of NSH Petrol's Chairman, engaged in the manipulation of NSH Petrol's share prices, and as a result they were fined VND6 billion. NSH Petrol was reported to have *"encountered cash flow difficulties, continuously extending bond payment periods, high bond maturity pressure, and tax enforcement of trillions of VND (VND1 trillion = $39.28 million). Acuity Funding has agreed to invest $290million in NHS Petro, which is expected to be disbursed in Q2/2024, for the company to pay tax debts, bank debts, provide working capital, and invest in projects."*

4.2.13. On 12 July 2024, NSH Petrol's board of directors formally approved through a Resolution of the Board of Directors[83], a loan arrangement of USD343 million with Global Wise and another entity as the lenders, and Berhero (Acuity) as the *"arranger, loan manager, intercreditor agent and security agent"*[84].

    i. On 17 July 2024, it was reported by The LEADER[85] that NSH Petrol was seeking a USD343 million loan from Global Wise. As part of the agreement, Berhero (Acuity) will serve as the *"initial underwriter, arranger, loan administrator, agent for the sponsors, and security agent"*.

---

[78] Refer to Exhibit 62 for an extract of the publication dated 29 February 2024 from Vietnam Investment Review.
[79] We noted that Ranjit did not disclose his role as NSH Petrol's CEO of financial investment in his LinkedIn profile.
[80] Refer to Exhibit 63 for an extract of the publication dated 27 May 2024 from The Investor.
[81] Refer to Exhibit 55 for an extract of Viet Anh's LinkedIn profile.
[82] Refer to Exhibit 64 for an extract of the publication dated 31 May 2024 from The Investor.
[83] Refer to Exhibit 19 for NSH Petrol's board of directors' resolution dated 12 July 2024.
[84] We were unable to ascertain the reason for the difference between Berhero's (Acuity) role as reported in the news article and their role stated in the board resolution.
[85] Refer to Exhibit 20 for an extract of the article published by The LEADER, a Vietnamese online news platform, on 17 July 2024.

**Loan to Thanh Quang Group**

4.2.14.   On 27 September 2023, the Vietnam News reported that Berhero (Acuity) and Thanh Quang Group signed a funding approval agreement where Berhero (Acuity) would provide up to USD450 million for two (2) cemetery projects in Vietnams[86].

### IV.   Business activities in other jurisdictions

4.2.15.   On 14 June 2019, The Adviser[87] reported that Berhero (Acuity) had secured 18 billion (currency not disclosed) in overseas commercial deals for the first half of 2019, and 2 billion (currency not disclosed) in domestic deals. These included hotel developments in Australia and Singapore, as well as residential and infrastructure projects in Cambodia, Nepal, and Vietnam.

4.2.16.   On 4 September 2019, Money Management[88], an Australian news platform, reported that Berhero (Acuity) was opening new locations in Vietnam, Singapore and Nepal following demands from international clients and having secured 35 billion (currency not disclosed) pipeline of commercial projects in Australia and Southeast Asia.

## 4.3.   Ownership and management

4.3.1.   Berhero (Acuity) is wholly owned by Ranjit, who holds 1,000 ordinary shares of AUD1,000.

4.3.2.   Ranjit is also currently the sole director and secretary of Berhero (Acuity). Further details on Ranjit are set out in Section [5].

## 4.4.   Public profile and reputation

4.4.1.   Berhero (Acuity) has a limited public profile, and we found no adverse media coverage involving the company.

4.4.2.   Berhero (Acuity) received an Export Market Development Grant of AUD60,000 from the Australian Trade and Investment Commission in July 2023[89]. This funding supports Australian businesses to grow their exports to international markets and encourage small to medium-sized enterprises to promote their products and services globally.

## 4.5.   Litigation, regulatory and political exposure

### I.   Litigation and regulatory actions

4.5.1.   We have not identified any indication that Berhero (Acuity) has been involved, either as a plaintiff or defendant, in any major litigation, or criminal proceedings in Singapore[90].

---

[86] Refer to Exhibit 65 for an extract of the article published by Vietnam News on 27 September 2023.
[87] Refer to Exhibit 66 for an extract of the article publicised by The Adviser, an Australian news platform, on 14 June 2019.
[88] Refer to Exhibit 67 for an extract of the article published by Money Management, an Australian news platform, on 4 September 2019.
[89] Refer to Exhibit 68 for an extract of the export market development grant details.
[90] Refer to Exhibit 69 for litigation searches on Global Wise in Singapore.

4.5.2. We have not identified any indication that Berhero (Acuity) has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

4.5.3. Our review of online databases of Australia civil litigation and open-source research identified several recorded legal proceedings that named Berhero and ACN 075 (formerly known as Cayden Pty. Limited), which also previously traded under the name "*Acuity Funding*". Ranjit was a former director, secretary and shareholder of ACN 075. Further details on his role in ACN 075 are set out in **Appendix D**.

4.5.4. We observed that Berhero as well as ACN 075, which previously traded under the name Acuity, has a history of initiating legal proceedings against parties over processing and brokerage fees it claims entitlement to. Notably, Berhero (Acuity) and ACN 075 had lodged caveats on defendants' properties, and relied on discussion paper/ expression of interest issued by financial institutions as evidence of loan arrangements in its claims.

4.5.5. The summaries of these proceedings are outlined below:

| S/N | Case no. | Plaintiff/Appellant/ Applicant | Defendant/Respondent | | Year | Ref. |
|-----|----------|-------------------------------|----------------------|--|------|------|
| | Summary of case details - Berhero | | | | | |
| 1 | 2022/ 00369287 | Berhero Pty Ltd | i. | Hai Nhan Joint Stock Company | 2025 | 4.5.6. |
| 2 | NSWSC 459 | Berhero Pty Ltd | i.<br>ii.<br>iii.<br>iv. | Senibina Sentral Sdn Bhd<br>Senibina Murni Sdn Bhd<br>Dato' Sri Anne Teo<br>Datuk Chris Sw Low | 2024 | 4.5.7. |
| 3 | NSWCA 110 | Berhero Pty Ltd | i.<br>ii.<br>iii.<br>iv. | Senibina Sentral Sdn Bhd<br>Senibina Murni Sdn Bhd<br>Dato' Sri Anne Teo<br>Datuk Chris SW Low | 2024 | 4.5.7. |
| 4 | FCA 1399 | Aquamore Credit Equity Pty Ltd | i.<br>ii.<br>iii.<br>iv. | Christopher Arthur Maroon<br>Allan John Maroon<br>Nadia Maroon<br>Michael John Maroon | 2023 | 4.5.14. |
| 5 | NSWSC 1022 | Berhero Pty Ltd | i.<br>ii.<br><br>iii. | Paul Hinds<br>RV Developments Australia Pty Ltd<br>RV Developments Australia Pty Ltd as Trustee for RV Developments Australia Unit Trust | 2023 | 4.5.17. |
| 6 | NSWSC 1214 | Berhero Pty Ltd | i.<br>ii.<br><br>iv. | Paul Francis Hinds<br>RV Developments Australia Pty Ltd<br>RV Developments Australia Pty Ltd as Trustee for RV Developments Australia Unit Trust | 2023 | 4.5.17. |
| 7 | ACTSC 378 | Berhero Pty Ltd | i.<br>ii.<br>iii. | Paul Francis Hinds<br>Melissa Sian Hinds<br>Registrar-General of Land Titles of the Australian Capital Territory | 2019 | 4.5.17. |

| Summary of case details - Berhero | | | | | |
|---|---|---|---|---|---|
| S/N | Case no. | Plaintiff/Appellant/ Applicant | Defendant/Respondent | Year | Ref. |
| 8 | NSWSC 218 | i. George Koovousis<br>ii. Francesca Koovousis | i. Vrkic, Danny Tony, trustee in bankruptcy of the Estate of Guiliano Fransco<br>ii. Westpac Banking Corporation Limited<br>iii. Berhero Pty Limited<br>iv. Battleship Productions Pty Limited<br>v. Monaco Solicitors Pty Limited | 2014 | 4.5.24. |
| 9 | NSWSC 694 | Perpetual Ltd | Marcel Dagher | 2014 | 4.5.26. |
| | | Marcel Dagher | Berhero Pty Ltd | | |
| 10 | QCATA 311 | Berhero Pty Ltd | Gregory Dinsey | 2013 | 4.5.28. |
| 11 | FCA 586 | Berhero Pty Ltd | Secretary, Department of Human Services and Health | 1994 | 4.5.32. |

**Figure 6 – Litigation cases involving Berhero**

| Summary of case details – ACN 075 formerly trading as Acuity | | | | | |
|---|---|---|---|---|---|
| S/N | Case no. | Plaintiff/Appellant/ Applicant | Defendant/Respondent | Year | Ref. |
| 1 | NSWSC 333 | ACN 075 911 410 Pty Ltd | i. Almaty Pty Ltd<br>ii. Bravel Pty Ltd<br>iii. Project Port Macquarie (Three) Pty Limited | 2011 | 4.5.34. |
| 2 | NSWSC 1219 | Cayden Pty Limited | i. Patrick Nouh<br>ii. Sharon Nouh<br>iii. Joseph Nouh<br>iv. Rita Nouh | 2008 | 4.5.38. |

**Figure 7 – Litigation cases involving ACN 075 formerly trading as Acuity**

### *Berhero Pty Ltd v Hai Nhan Joint Stock Company [2025]*

4.5.6.    The case *Berhero Pty Ltd v Hai Nhan Joint Stock Company* was listed for hearing in the Supreme Court of NSW on 6 June 2025[91]. However, there is no further information on the nature of the dispute or any filings currently available in the public court records or published judgement.

### *Berhero v Senibina Sentral et al. [2024] NSWSC 459[92], Berhero v Senibina Sentral et al. [2024] NSWCA 110[93]*

4.5.7.    On 4 August 2022, Berhero initiated legal proceedings in NSW Supreme Court against Senibina Sentral, Senibina Murni, Dato' Sri Anne Teo and Datuk Chris Sw Low, seeking over USD6 million in unpaid fees under a loan agreement.

4.5.8.    The *"Cost Agreements associated with the Loan Term Sheet"* included a clause entitled *"Security for Fees due to Acuity Funding"*, which refers to the defendants' charging

---

[91] Refer to Exhibit 70 for the NSW's Supreme Court daily court hearing list for 6 June 2025.
[92] Refer to Exhibit 71 for the judgement of Berhero v Senibina Sentral et al. [2024] NSWSC 459.
[93] Refer to Exhibit 72 for the judgement of Berhero v Senibina Sentral et al. [2024] NSWCA 110.

properties in favour of Berhero until all costs, including interest and any other expenses, are paid in full.

4.5.9.   Between July and October 2023, Berhero lodged caveats on properties in Malaysia owned by the defendants. The defendants disputed among others, the validity of the agreement, and Berhero's entitlement to lodge caveats against their properties.

4.5.10.  The defendants also alleged that Berhero engaged in misleading representations about the capacity of Global Wise, the proposed lender of the USD210 million loan, to lend the money sought by the defendants.

4.5.11.  At the defendants' request, subpoenas were issued to the director of Global Wise (unnamed in court documents) who *"resisted production and sought to have the subpoenas set aside"*. The Court rejected the application in November 2023, and the director subsequently produced documents in December 2023. The defendants contended that the produced documents supported their position that *"Global Wise lacks assets and lacked the capacity"* to lend the defendants the USD210 million they sought.

4.5.12.  While proceedings were ongoing in NSW, Berhero initiated four (4) sets of proceedings in Malaysia against the same defendants. The Court granted an anti-suit injunction to restrain Berhero from commencing or continuing legal proceedings in Malaysia concerning the same agreements and ordered Berhero to pay the defendants' cost incidental to the hearing.

4.5.13.  In May 2024, Berhero sought an interlocutory relief in relation to an interlocutory order issued by the NSW Supreme Court on 26 April 2024[94].  The Court determined that the interlocutory order does not prevent Berhero from informing the High Court of Malaya on the status of the NSW Supreme Court proceedings. As of the fieldwork date, no further legal developments had been recorded in the NSW Supreme Court in relation to the matter.

### *Aquamore Credit Equity Pty Ltd v Maroons [2023] FCA 1399* [95]

4.5.14.  Aquamore Credit Equity Pty Ltd, as trustee for the Spring Park Unit Trust ("**Aquamore**") filed creditor's petitions seeking bankruptcy orders against Christopher Arthur Maroon ("**Christopher**"), Allan John Maroon ("**Allan**"), Nadia Maroon ("**Nadia**") and Michael John Maroon (collectively the "**Maroons**"), due to unpaid debts arising from loan defaults. The Maroons were shareholders, and Christopher and Allan were directors of Waterview Developments Pty Ltd ("**Waterview**"). In 2018, Aquamore extended loans to Waterview secured against a property in Point Fredrick, with the Maroons as guarantors. Following Waterview's default, the Supreme Court awarded Aquamore over AUD4.6 million and possession of the property. Berhero was named as a finance broker retained by the Christopher, Allan and Waterview.

---

[94] Refer to Exhibit 72 for the judgement of Berhero v Senibina Sentral et al. [2024] NSWCA 110.
[95] Refer to Exhibit 73 for the judgement of Aquamore v Maroons [2023] FCA 1399.

4.5.15.  In August 2024, the Court granted an extension of time in the bankruptcy proceedings of Nadia[96], noting that the Maroons had initiated separate proceedings against Aquamore, Berhero and their former legal representatives in October 2021. The claims against Berhero included *"damages for negligence, misleading and deceptive conduct claim under s 18 of the Australian Consumer Law being Schedule 2 of the Competition and Consumer Act 2010 (Cth) and breach of contract"*.

4.5.16.  There was no further information on the allegations against Berhero and based on the Federal Court listing, the proceedings appear to remain ongoing as of our fieldwork date.

### *Berhero v Hinds, et al. [2023] NSWSC 1022[97],*
### *Berhero v Hinds, et al. [2023] NSWSC 1214[98],*
### *Berhero v Hinds, et al. [2019] ACTSC 378[99]*

4.5.17.  A Loan Term Sheet and Costs Agreement was entered into between Berhero and Paul Francis Hinds ("**Paul**"), where Berhero was the "*exclusive finance broker for the procurement of a substantial loan facility, the purpose of which was to assist with the acquisition of property*". Berhero alleged that the terms provided that a processing fee of AUD22,000 was payable on the execution of the Loan Term Sheet and the Costs Agreement, and a brokerage fee of 1.75% of the total loan amount was payable *"once a loan proposal was issued in the terms of the Loan Term Sheet"*[100].

4.5.18.  Berhero obtained an Expression of Interest (also known as a discussion paper) from Australian and New Zealand Banking Group Ltd ("**ANZ**") Bank for a loan offer of AUD13.5 million outlining the details of a proposed or potential facility that the Bank was willing to offer, which RV Developments Australia Pty Ltd ("**RVD**", an entity nominated by Paul to be the borrower)[101] signed and accepted.

4.5.19.  Paul purportedly executed a Commission Statement acknowledging that AUD259,875 was due and payable to Berhero. RVD and Paul then agreed to pay Berhero the said fees in AUD5,500 monthly instalments, which were regularly paid to Berhero between October 2013 to October 2015. Instalments were either paid irregularly or not at all after October 2015, and stopped on 12 July 2016[102]. As of August 2023, the fees with interest owed to Berhero was AUD1.2 million (at 2% interest per month)[103].

4.5.20.  Between 29 and 30 May 2018, Berhero stated that it lodged caveats over properties owed by Paul and Melissa Sian Hinds in Australia[104].

---

[96] Refer to Exhibit 74 for the orders of Wengel (Trustee), in the matter of Maroon, a bankrupt [2024] FCA 921.
[97] Refer to Exhibit 75 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1022.
[98] Refer to Exhibit 76 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1214.
[99] Refer to Exhibit 77 for the reasons of judgement of Berhero v Hinds, et al. [2019] ACTSC 378.
[100] Refer to Exhibit 77 for the reasons of judgement of Berhero v Hinds, et al. [2019] ACTSC 378.
[101] Paul was the sole director of RVD until 11 September 2017 and remained as the sole shareholder.
[102] Refer to Exhibit 77 for the reasons of judgement of Berhero v Hinds, et al. [2019] ACTSC 378.
[103] Refer to Exhibit 75 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1022.
[104] Refer to Exhibit 77 for the reasons of judgement of Berhero v Hinds, et al. [2019] ACTSC 378.

4.5.21.   The Court was to determine whether a discussion paper from ANZ Bank to provide an AUD13.5 million facility for a property development met the requirements of the contract between Berhero and Hinds, such that Berhero is entitled to its fee[105].

4.5.22.   The Court determined that *"What the broker delivered was not in substantial compliance with what the brokerage agreement contemplated"*, *"I am not satisfied that the discussion paper was 'in the terms of the Loan Term Sheet' entitling the broker to its fee"*, and *"the discussion paper was so far short of anything useful that it could not be said that the work in the retainer was done"*. Berhero was ordered to refund AUD154,000 in fees already paid, plus interest[106].

4.5.23.   In October 2023, the defendants applied for a special costs order which was eventually dismissed by the Court[107].

### *George Koovousis et al. v Vrkic, Danny Tony, trustee in bankruptcy of the Estate of Guiliano Fransco et al. [2014] NSWSC 218[108]*

4.5.24.   The plaintiffs entered into a contract to purchase land at Rodd Point, Sydney from a registered proprietor, Guiliano Francsco, who has since become bankrupt.

4.5.25.   Berhero, among other defendants, have lodged caveats against the title of the land. The nature of Berhero's security interest or caveats was not mentioned. The Court eventually ordered that fifth defendant, Monaco Solicitors Pty Limited was entitled to the possession of the land as a mortgagee.

### *Perpetual Ltd v Marcel Dagher; Marcel Dagher v Berhero [2014] NSWSC 694[109]*

4.5.26.   Marcel Dagher sought an order from the Court to restrain Perpetual Ltd from auctioning the property at 18 Dennis Street, Greystanes, NSW, Australia. Berhero had a caveat on the property, with a caveatable interest worth about AUD1.8 million. There was no further information on Berhero's caveat being disclosed.

4.5.27.   The Court restrained Perpetual Ltd from selling the property, and ordered Perpetual Ltd to sell the property to Claudia Skaff, Marcel's wife, for AUD580,000.

### *Berhero v Gregory Dinsey [2013] QCATA 311[110]*

4.5.28.   On 19 March 2012, an agreement was executed between Berhero and Gregory Dinsey (*"**Gregory**"*) under which loans were to be provided to Gregory for the purpose to *"refinance ANZ Bank and working capital"*.

---

[105] Refer to Exhibit 75 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1022.
[106] Refer to Exhibit 75 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1022.
[107] Refer to Exhibit 76 for the judgement of Berhero v Hinds, et al. [2023] NSWSC 1214.
[108] Refer to Exhibit 78 for the judgement of George Koovousis et al. v Vrkic, Danny Tony, trustee in bankruptcy of the Estate of Guiliano Fransco et al. [2014] NSWSC 218.
[109] Refer to Exhibit 79 for the judgement of Perpetual Ltd v Marcel Dagher; Marcel Dagher v Berhero [2014] NSWSC 694.
[110] Refer to Exhibit 80 on the judgement for Berhero v Gregory Dinsey [2013] QCATA 311.

4.5.29. Under the agreement, Gregory would pay Berhero a processing fee of AUD22,000, with an initial payment of AUD5,500 *"at the time of signing this [the] Loan Term Sheet and Cost [sic] Agreement"*. Gregory paid AUD11,000 before he *"purported to repudiate the agreement, alleging a total failure of consideration"*.

4.5.30. The court found that Berhero's only offering to Gregory was a *"preliminary document"* that may have been produced a *"factoring facility"* and it was not followed up with a more concrete offer. On 23 May 2013, the Tribunal ordered Berhero to pay Gregory AUD11,536, which was the refund of the brokerage fee paid by Gregory to Berhero with interest.

4.5.31. Berhero filed an appeal in relation to the said order, which was subsequently denied by the Tribunal in October 2013.

### *Berhero v Secretary, Department of Human Services and Health [1994] FCA 586*[111]

4.5.32. In February 1994, Berhero acquired the business carried out at the Penrose Lodge Nursing Home from Woodbend Pty Limited (**"Woodbend"**, where Ranjit was also a former director and secretary from October 1989 to July 1999). Prior to the sale, officers from the Department of Human Services and Health conducted a *"validation (or audit)"* of the nursing home. The validation found that Woodbend failed to pay AUD84,754 in payroll tax, workers compensation premium and superannuation since to 1 July 1993.

4.5.33. The Department of Human Services and Health imposed a *"negative loading"* of AUD84,754. which transferred Woodbend's unpaid obligations to Berhero. The court held that the negative loading cannot be imposed upon Berhero.

### *ACN 075 v Almaty Pty Ltd, et al. [2011] NSWSC 333*[112]

4.5.34. ACN 075, trading as *"Acuity Funding"*[113] claimed that it has an equitable charge over a land of which Almaty Pty Ltd (**"Almaty"**) is a registered proprietor. In February 2011, ACN 075 lodged a caveat based on a *"charge dated 23 June 2009"*, which was purportedly supported by a Loan Term Sheet and Costs Agreement dated 23 June 2009. ACN 075 applied for an order to extend the caveat until further order.

4.5.35. The defendants, which included Almaty, authorised and directed ACN 075 to arrange a loan facility for AUD10.1 million, as outlined in the Loan Term Sheet dated 23 June 2009. The agreement included a processing fee of AUD550 and a brokerage fee of 1.25% of the loan facility plus GST, which amounted to AUD151,500. ACN 075 claimed that the brokerage fee became payable *"by virtue of the grant of the National Australia Bank conditional loan approval in May 2009"*.

---

[111] Refer to Exhibit 81 for the judgement for Berhero v Secretary, Department of Human Services and Health [1994] FCA 586.
[112] Refer to Exhibit 82 for the judgement of ACN 075 v Almaty Pty Ltd, et al. [2011] NSWSC 333.
[113] Refer to Exhibit 51 for an extract of trading name register of ACN 075. ACN 075 was trading under the name *"Acuity Funding"* from 20 May 2000 to 25 September 2011.

4.5.36.  The court found that ACN 075 had not satisfied the court that the claim in its caveat has or may have substance, and failed to tender key documents in admissible form:

i.  The letter from National Australia Bank dated 11 May 2009 headed *"Discussion Paper – 'Sovereign Hills'"* which stated that *"We have reviewed the information provided and our thoughts in regard to potential funding are detailed within this discussion paper ('Paper'). The Paper presents the broad outline of a funding solution for your consideration. Please note that this Paper is not an offer of finance or an offer to provide finance in the future. To obtain a binding commitment from the Bank requires a submission to, and subsequent approval from, the Bank's credit and pricing approving authorities"* and therefore, this letter could not possibly be an offer to loan the funds; and

ii.  The agreements did not bear evidence of payment of stamp duty nor an impressed stamp according to the Duties Act.

4.5.37.  ACN 075's claim was dismissed and the court ordered ACN 075 to pay the third defendant (i.e., Project Port Macquarie (Three) Pty Limited) costs of and incidental to the notice of motion.

### *Cayden Pty Limited v Patrick Nouh, et al. [2008] NSWSC 1219*[114]

4.5.38.  Cayden Pty Limited [115] (**"Cayden"**, trading as Acuity) brought an action against the defendants for unpaid commission of AUD12,485 for mortgage broking and obtaining approval for a loan facility, as well as for enforcement of a charge under a retainer agreement over three (3) properties owned by the defendants.

4.5.39.  Cayden asserted that it was entitled to the fee by securing an approval in principle of a loan from Bankwest, and presented an email from the relationship manager from Bankwest Parramatta Business Centre advising a loan structure, and requested to *"advise if the client wishes to proceed on this basis"*. The court held that the email was not an approval or an approval in principle.

4.5.40.  The defendants sought a cross claim of AUD3,300 of fees which was paid under the retainer agreement.

4.5.41.  The court held that Cayden was not entitled to the fee of AUD12,485, and did not have an entitlement to lodge caveats against the defendants' property, and ordered Cayden to return AUD3,300 to the defendants.

4.5.42.  In 2012, the defendants filed a court application and successfully obtained a winding- up order against Cayden. Further details of the insolvency proceedings against Cayden are set out in paragraphs [4.5.38] and [4.5.42].

---

[114] Refer to Exhibit 83 for the judgement of Cayden Pty Limited v Patrick Nouh, et al. [2008] NSWSC 1219.
[115] Cayden Pty Limited was the former business name of ACN 075 from 2000 to 2011.

### *Legal dispute over unpaid brokerage fees with Salim Mehajer ("Salim")*

4.5.43.   On 12 February 2016, The Australian[116] reported that Salim, former Auburn Deputy Mayor, engaged Berhero (Acuity) to source up to AUD60 million to finance a development project. His companies allegedly failed to pay an agreed AUD1.98 million brokerage fee in June 2015. Instead, a deal was made involving a 5% stake in his properties at 36 - 44 John Street, Lidcombe, and monthly payment of AUD25,000 to Berhero (Acuity). The transfer reportedly did not occur, and Berhero (Acuity) launched a Supreme Court proceeding against Salim and his companies: S.E.T. Services Pty Limited and Sydney Project Group Pty Limited, seeking AUD1.98 million in damages for breach of contract or unpaid debts[117].

4.5.44.   We were unable to identify any publicly available details or published cases regarding the outcome of the legal dispute between Berhero (Acuity) and Salim.

### II.   Insolvency

4.5.45.   In 1996, Berhero underwent insolvency-related proceedings through a deed of arrangement[118]. The Deputy Commissioner of Taxation (Australian Taxation Office) filed an application to wind up the company[119]. According to a report as to the affairs of Berhero dated 10 September 1996 from the appointed receiver and manager[120], Berhero operated a nursing facility known as Penrose Lodge Nursing Home. At the time, National Mutual Trustees Limited, was a secured creditor, with a claim amounting to AUD1.36 million, and an additional 31 unsecured creditors with claims totalling about AUD1.02 million. Berhero ceased its administration in 2001[121] and remained registered.

### III.   Sanctions

4.5.46.   We did not identify any matches for Berhero (Acuity) based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

### IV.   Political exposure

4.5.47.   We did not identify any indication that Berhero (Acuity), and its current shareholders and directors, had political connections or exposure, or that they hold political office or government position, based on searches conducted across international PEPs and public records research,

---

[116] Refer to Exhibit 84 for an article published on The Australian, an Australian newspaper, dated 12 February 2016.
[117] Refer to Exhibit 85 for an article published on The Sydney Morning Herald, an Australian newspaper, dated 8 September 2015.
[118] Refer to Exhibit 86 for Berhero's (Acuity) deed of arrangement dated 29 November 1996.
[119] Refer to Exhibit 87 for Berhero's (Acuity) notification of court action relating to winding up dated 13 February 1996.
[120] Refer to Exhibit 88 for Berhero's (Acuity)'s report as to the affairs dated 10 September 1996 from the appointed receiver and manager.
[121] Refer to Exhibit 89 for Berhero's (Acuity)'s final accounts by scheme administrator/ controller/administrator of deed of company arrangement dated 8 August 2001.

# 5.    Ranjit Prithviraj Thambyrajah

## 5.1.    Individual background

| Individual profile[122] | |
|---|---|
| Legal name | Ranjit Prithviraj Thambyrajah |
| Addresses | 134 David Road, Castle Hill, NSW 2154, Australia |
| Nationality | Australian |
| Date of birth | 22 Sep 1960 |
| Passport number | PA******* |
| Place of birth | Sri Lanka |
| Education | i.    University of Sydney, Land use planning and management/development and project management<br>ii.    University of New England (AU), Law and economics<br>iii.    University of Technology Sydney, Information and technology and computing |

| Professional career history[123] | | | |
|---|---|---|---|
| Entity | Role | Jurisdiction | Period |
| Berhero (Acuity) | Managing Director | Australia | Feb 1984 – Present |
| Global Recordings Network Australia[124] | Board member | Australia | Present |
| Vow Financial | Director | Australia | Jan 2009 – Oct 2011 |
| National Brokers Group | Director | Australia | Dec 2004 – Jan 2009 |
| Nursing Homes | Business owner operator | Australia | 1984 - 1992 |
| P and R Real Estate | Managing Director | Australia | 1981 – 1983 |
| Commonwealth Bank | Cadetship - Finance | Australia | 1979 - 1981 |

**Figure 8 – Individual background of Ranjit**

We set out our observations in relation to Ranjit's background:

5.1.1.    Based on Ranjit's career history listed on his LinkedIn profile, we noted that majority of his roles throughout his career history since 2009 has been associated to companies where he held directorships and/or shareholdings. Further details of his corporate interest and directorships are set out in Section [5.2].

5.1.2.    Ranjit is also listed as a JP, according to the online JP register by the NSW DCJ[125].

## 5.2.    Corporate interests and directorships

| S/N | Entity name | Status | Role | Period | Shareholding |
|---|---|---|---|---|---|
| **Australia[126]** | | | | | |
| 1 | RV Enterprises | Registered | Director | 7 Aug 2015 - Present | - |
| 2 | Berhero (Acuity) | Registered | Director and secretary | 21 Jun 2010 – Present | 1,000 shares |

---

[122] Refer to Exhibit 90 and 91 for the individual search reports of Ranjit in Australia and Singapore.
[123] Refer to Exhibit 92 for an extract of Ranjit's LinkedIn profile.
[124] Refer to Exhibit 93 for an extract of Global Recording Network Australia's entity website. We noted that this role was not reflected in Ranjit's LinkedIn profile.
[125] Refer to Exhibit 94 for an extract of the JP public register for Ranjit.
[126] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.

| S/N | Entity name | Status | Role | Period | Shareholding |
|-----|-------------|--------|------|--------|--------------|
| 3 | Raneil Pty Ltd ("**Raneil**") | Registered | Director and secretary | 29 Apr 2003 - Present | 2 shares |
| Singapore[127] | | | | | |
| 4 | Acuity SG | Live | Director | 26 Sep 2019 - Present | - |

**Figure 9 – Current corporate interests and directorships of Ranjit**

5.2.1.   Further details on Ranjit's former and current corporate interests and directorships are detailed in **Appendix D**.

**I.       RV Enterprises[128]**

5.2.2.   RV Enterprises was incorporated in NSW, Australia, on 4 August 2015. According to corporate records, the current directors of the company are Ranjit, Paul, and Janelle Margaret Leeson ("**Janelle**"). Paul is also the current company secretary. The company's shareholdings are distributed among three (3) entities: Berhero (Acuity) holds 25%, Elle International Pty Ltd ("**Elle International**") holds another 25%, and PH Investments Management Pty Ltd ("**PH Investments**") holds the remaining 50%. PH Investments is wholly owned by Paul[129], and Elle International is wholly owned by Janelle[130].

5.2.3.   We noted that Paul was named as a defendant in legal proceedings initiated by Berhero. Further details on the legal proceeding are set out in paragraphs [4.5.17] to [4.5.23].

5.2.4.   We noted that there was no information on the nature of RV Enterprises' business activities on the public domain.

**II.      Berhero (Acuity)**

5.2.5.   Further details on Berhero (Acuity) are set out in Section [4].

**III.     Raneil[131]**

5.2.6.   Raneil was incorporated in Victoria, Australia, on 29 April 2003. According to corporate records, Ranjit is the current company's director, secretary, and sole shareholder. The company operated under the trading name *"Acuity Home Loans"* from April 2003 to September 2010[132].

5.2.7.   Acuity Home Loans operates as a mortgage broker and shares the same logo, phone number, email and business address as Berhero (Acuity)[133,134].

---

[127] Refer to Exhibit 91 for the individual search report of Ranjit in Singapore.
[128] Refer to Exhibit 95 for the corporate records of RV Enterprises.
[129] Refer to Exhibit 96 for the corporate records of PH Investments.
[130] Refer to Exhibit 97 for the corporate records of Elle International.
[131] Refer to Exhibit 98 for the corporate records of Raneil.
[132] Refer to Exhibit 99 for an extract of Raneil's trade name registered with the ASIC.
[133] Refer to Exhibit 100 for an extract of the website: acuityhomeloans.com.au.
[134] Refer to Exhibit 50 for an extract of the Berhero's (Acuity) corporate website: acuityfunding.com.

IV.      **Acuity SG**

5.2.8.   Acuity SG was incorporated in Singapore on 26 September 2019[135]. According to corporate records, the current directors of the company are Ranjit since incorporation and Cheok Kar Guan since 15 October 2014, and Joanna Yeo as the current secretary since incorporation. Berhero (Acuity) is the sole shareholder of Acuity SG. Acuity SG's principal business activity is registered as management consultancy services.

## 5.3.    Public profile and reputation

5.3.1.   Ranjit has a limited public profile, primarily appearing in media coverage related to Berhero's (Acuity) business operations in Vietnam, Uzbekistan, South Korea and other jurisdictions. Further details on Ranjit and Berhero (Acuity) business operations are set out in Section [4.2].

5.3.2.   He was previously recognised as the top commercial broker by Mortgage Professional Australia in both 2010 and 2011[136]. Ranjit was also quoted in an article by Australian Broker News in 17 June 2013[137], stating that Berhero (Acuity) is one of the broking groups that refuses to offer reverse mortgages, citing concerns over their potential misuse in taking advantage of vulnerable individuals.

I.       **Temporary suspension of departure of Ranjit**

5.3.3.   On 25 April 2025, Tai Chinh Cuoc Song, a Vietnamese finance and life magazine[138], reported that NSH Petrol posted a press release on the company's website stating that Ranjit's departure from Vietnam was temporary suspended at the request of the Tax Department of Hau Giang province. NSH Petrol's press release stated that *"Mr. RPT [Ranjit] has been working as the company's General Director in transactions with banks, some partners on cooperation in importing and trading petroleum, as well as working with lawyers and some other agencies and organisations in Vietnam. Mr. RPT's [Ranjit's] unilateral sending of documents to a number of agencies is a personal action and has no legal basis, directly causing misunderstandings and affecting the company's reputation, as well as causing damage to the company's business operations". [139]*

5.3.4.   No further details were provided regarding the suspension of departure or the underlying matter.

---

[135] Refer to Exhibit 53 for the corporate records of Acuity SG.
[136] Refer to Exhibit 101 for an extract of a publication by Mortgage Professional Australia.
[137] Refer to Exhibit 102 for an extract of an article published on Australian Broker News dated 17 June 2013.
[138] Refer to Exhibit 103 for an extract of an article published on Tai Chinh Cuoc Song dated 25 April 2025.
[139] We noted that Ranjit's role was translated as a General Director of NSH Petrol in the article published by Tai Chinh Cuoc Song, while his role was described as a CEO in Exhibit 63, a publication dated 27 May 2024 from The Investor.

## 5.4. Litigation, regulatory and political exposure

### I. Litigation and regulatory actions

5.4.1.    We have not identified any indication that Ranjit has been involved, either as a plaintiff or defendant, in any major litigation, or criminal proceedings in Australia and Singapore[140].

5.4.2.    In Australia, as Ranjit is the sole director and shareholder of Berhero (Acuity), we noted that Berhero (Acuity) and its related parties were named parties in legal proceedings, as outlined in Section [4.5].

5.4.3.    We have not identified any indication that Ranjit has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

### II. Bankruptcy and insolvency

5.4.4.    On 24 May 1995, Ranjit filed a debtor's petition for his bankruptcy[141]. His occupation on the petition was listed as nursing home consultant and he was also known as *"RAJAH, Ranjit"*. Ranjit's bankruptcy was discharged by law on 25 May 1998.

5.4.5.    We identified several companies associated with Ranjit, where he held corporate interests and/or served as a director, that were subjected to insolvency proceedings:

#### *A.C.N 101 800 748 Pty Ltd*

5.4.6.    Ranjit was the former director and secretary of A.C.N 101 800 748 Pty Ltd ("**ACN 101**")[142], formerly known as Acuity Home Loans Pty Ltd[143].

5.4.7.    ACN 101 was placed into liquidation in 2011[144] following a winding-up application filed by Fairfax Radio Network Pty Ltd under section 459P[145]. According to the liquidator's statement and financial accounts, the company had one (1) unsecured creditor of AUD73,123[146]. ACN 101 was deregistered in December 2012[147].

#### *ACN 075*

5.4.8.    Ranjit was the former director, secretary and shareholder of ACN 075[148], formerly known as Fantastic Carnival Pty Ltd, and Cayden Pty Ltd[149]. The entity name *"Cayden Pty. Limited"*

---

[140] Refer to Exhibit 104 for litigation searches on Ranjit in Singapore.
[141] Refer to Exhibit 105 for NPII search report of Ranjit.
[142] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.
[143] Refer to Exhibit 106 for the company summary of ACN 101.
[144] Refer to Exhibit 107 for ACN 101's presentation of accounts and statement for May to October 2012.
[145] Refer to Exhibit 108 for ACN 101's notification of court action relating to winding-up.
[146] Refer to Exhibit 107 for ACN 101's presentation of accounts and statement for May to October 2012.
[147] Refer to Exhibit 106 for the company summary of ACN 101.
[148] Refer to Exhibit 90 for individual search report of Ranjit in Australia.
[149] Refer to Exhibit 109 for the company summary of ACN 075.

and *"Cayden Pty Limited"* was used from 20 May 2000 to 16 June 2011[150]. We are unable to determine the dates used for Fantastic Carnival Pty Ltd.

5.4.9.   ACN 075 was placed into liquidation in 2012[151] following a winding-up application filed by Patrick Nouh, Sharon Nouh, Joseph Nouh and Rita Nouh under section 459P[152]. According to the liquidator's statement and financial accounts, the company had five (5) unsecured creditors of AUD593,083[153]. ACN 075 was deregistered in August 2017[154].

### Magnolia Grove Investments Pty Ltd

5.4.10.  Ranjit was the former director of Magnolia Grove Investments Pty Ltd ("**Magnolia Grove**") from 26 February 2004 to 13 February 2012[155].

5.4.11.  Magnolia Grove was placed into liquidation in 2008[156]. According to the liquidator's statement and financial accounts in 2011[157], the company had three (3) unsecured creditors of AUD778,275. Magnolia Grove was deregistered on 13 February 2012[158].

### Woodbend

5.4.12.  Ranjit was the former director and secretary from 11 October 1989 to 10 July 1999, and a former shareholder of Woodbend[159]. Woodbend was placed into liquidation from 1994 to 1999[160]. The company was subsequently deregistered on 10 July 1999[161].

### Murlvent Pty Ltd

5.4.13.  Ranjit was the former director, secretary and shareholder of Murlvent Pty Ltd ("**Murlvent**"). Murlvent was placed into liquidation from 1993 to 1996[162]. The company was subsequently deregistered on 23 January 1997[163].

### III.   Sanctions

5.4.14.  We did not identify any matches for Ranjit based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

---

[150] Refer to Exhibit 51 for an extract of trading name register of ACN 075.
[151] Refer to Exhibit 110 for ACN 075's presentation of accounts and statement for April to June 2017.
[152] Refer to Exhibit 111 for ACN 075's notification of court action relating to winding-up.
[153] Refer to Exhibit 110 for ACN 075's presentation of accounts and statement for April to June 2017.
[154] Refer to Exhibit 109 for the company summary of ACN 075.
[155] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.
[156] Refer to Exhibit 112 for Magnolia Grove's notification of appointment or cessation of an external administrator.
[157] Refer to Exhibit 113 for Magnolia Grove's presentation of accounts and statement for November 2011.
[158] Refer to Exhibit 114 for company summary of Magnolia Grove.
[159] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.
[160] Refer to Exhibit 115 for Woodbend's accounts and statement by liquidator.
[161] Refer to Exhibit 116 for company summary of Woodbend.
[162] Refer to Exhibit 117 for Murlvent's accounts and statement by liquidator.
[163] Refer to Exhibit 118 for company summary of Murlvent.

## IV. Political exposure

5.4.15. We did not identify any indication that Ranjit had political connections or exposure, or that they hold political office or government position based on searches conducted across PEPs and public records research.



19 June 2025

# 6. Don Indrajith Nissanka

## 6.1. Individual background

| Individual profile | |
|---|---|
| **Legal name** | Don Indrajith Nissanka |
| **Address** | Not available |
| **Nationality** | American |
| **Date of birth** | 5 Feb 1966 |
| **Passport number** | Not available |
| **Place of birth**[164] | Colombo, Sri Lanka |
| **Education**[165] | i. University of Central Missouri (1990 – 1992), Master of Science for engineering/industrial management<br>ii. University of Central Missouri (1987 – 1990), Bachelor of Science for industrial engineering and technology management |

| Professional career history[166] | | | |
|---|---|---|---|
| **Entity** | **Role** | **Jurisdiction** | **Period** |
| Elite Global | CEO | Cayman Islands | Mar 2021 – Present |
| Neighborhood Power Corporation[167] | CSO | Hawaii, US | Jan 2018 – Present |
| Solar Tree Capital LLC (**"Solar Tree"**) | Managing Partner | Hawaii, US | Sep 2020 – Present |
| Elite Crown Diamond | Director | UK | Jan 2020 – Present |
| Exergonix Inc (**"Exergonix"**) | Founder, President and CEO | Missouri, US | Jan 2010 – 2021 |
| Kokam America Inc (**"Kokam America"**) | Founder, President and CEO | Missouri, US | 2005 – 2010 |
| EnerSys | Director of Aerospace and Defense | Pennsylvania, US | 2002 – 2005 |
| Invensys | Global Manager of Aviation and Defense | UK | 1999 – 2002 |
| Hawker Powersource, Inc. | Plant Operations Manager | Missouri, US | 1995 – 1999 |
| Gates Corporation | Quality Engineer | Missouri, US | 1992 – 1995 |
| University of Central Missouri (**"UCM"**) | Mathematics Instructor<br>Conference Operations Manager | Missouri, US | 1991 – 1993<br>1988 – 1991 |

**Figure 10 – Individual background of Don**

6.1.1. Based on Don's career history listed on his LinkedIn profile, we noted that majority of his roles held after 2005 was associated with companies where he held directorships and/or shareholdings, i.e., Kokam America, Exergonix, Elite Crown Diamond, and Elite Global. Further details of his corporate interest and directorships are set out in Section [5.2].

---

[164] Refer to Exhibit 119 for the transcript of a biographical video on YouTube by the University of Central Missouri, with the YouTube website: https://www.youtube.com/watch?v=DNYJkRdepOw
[165] Refer to Exhibit 120 for an extract of Don's LinkedIn profile.
[166] Refer to Exhibit 120 for an extract of Don's LinkedIn profile.
[167] We noted that Don's LinkedIn profile listed him as the CSO of Neighborhood Power Corporation from January 2018 to present. This was in reference to an entity incorporated in Hawaii, US. Corporate records of Neighborhood Power Inc states that Don is currently a Treasurer and director of Neighborhood Power Inc, which is a separate entity incorporated in Nevada, US.

## 6.2. Corporate interests and directorships

| S/N | Entity name | Status | Role | Period | Shareholding |
|---|---|---|---|---|---|
| **Cayman Islands** | | | | | |
| 1 | Elite Global[168] | Live | Director | Present | - |
| **UK** | | | | | |
| 2 | Elite Crown Diamond[169] | Live | Director | 30 Jun 2019 – Present<br>31 May 2018 – 28 Feb 2019 | -[170] |
| **US** | | | | | |
| 3 | Neighborhood Power Inc[171] | Active | Treasurer and director | Present | - |
| 4 | Nissanka Associates LLC[172] | Active | Registered agent and organiser | 26 Mar 2003 - Present | - |
| 5 | Exergonix[173] | Dissolved | President and director | 28 Jan 2010 – Not available[174] | - |
| 6 | Kokam America[175] | Dissolved | Vice President/ President and director | 15 Sep 2005 – 2008/2009[176] | - |

**Figure 11 – Current and former corporate interests and directorships of Don**

## 6.3. Public profile and reputation

6.3.1. Don has a limited public profile, primarily appearing in company websites describing his leadership roles and some media coverage related to his role as the President and CEO of Exergonix, and as an alumnus of the University of Central Missouri.

6.3.2. In 2006, Don was awarded the distinguished international alumni award by the University of Central Missouri, which recognises alumni who have achieved professional distinction[177].

6.3.3. In April 2012, Don provided testimony as the President and CEO of Exergonix, before the US Senate Committee on Commerce, Science, and Transportation. His testimony highlighted the importance of retaining manufacturing jobs in US to preserve innovation and the shortage of skilled workers in engineering and advanced manufacturing. He shared his personal journey from an intern at Gates Energy to founder of Exergonix, and his commitment to creating high-tech jobs in the US. His remarks were part of the hearing titled *"Promoting American Competitiveness: Filling Jobs Today and Training Workers for Tomorrow"*[178].

---

[168] Refer to Exhibit 121 for the director details for Elite Global.
[169] Refer to Exhibit 122 for an extract of the company officers and persons with significant control of Elite Crown Diamond.
[170] We noted that Don was listed as a person with *"significant influence or control"* in relation to Elite Crown Diamond from 31 May 2018 to 28 February 2019, and again on 30 June 2019.
[171] Refer to Exhibit 123 for corporate records of Neighborhood Power Inc.
[172] Refer to Exhibit 124 for the corporate records and filings of Nissanka Associates LLC.
[173] Refer to Exhibit 125 for the corporate records and filings of Exergonix.
[174] Exergonix was dissolved on 5 November 2019, we were unable to determine the date Don ceased as the President, and director of the company.
[175] Refer to Exhibit 127 for the corporate records and filings of Kokam America.
[176] We noted that Don was listed as the director
[177] Refer to Exhibit 126 for the list of distinguished international alumni recognised by the University of Central Missouri and Exhibit 119 UCM Distinguished Alumni 2006 - Don Nissanka for the YouTube video by UCM featuring Don.
[178] Refer to Exhibit 128 for written testimony by Don to the US Senate Committee on Commerce, Science, and Transportation.

6.3.4. We noted allegations of scam against Don on various online forums, similar to those made against Global Wise, Lankan, Elite Global, and other parties related to the Subjects. Additionally, there are accusations linking him to individuals who have been charged with accounting fraud and involvement in multi-level marketing ("**MLM**") and Ponzi/pyramid schemes.

### I. Allegations of scam against Don

6.3.5. We identified user profiles on platforms Reddit, Quora and Medium alleging fraudulent activities involving Don:

i. An account on Reddit using the handle *"u/donnissanka"* stated under its profile that *"Don Nissanka is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation"*[179];

ii. An account on Quora using the handle *"DON INDRAJITH NISSANKA Fraudster"*, stated under its profile that *"DON INDRAJITH NISSANKA is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are and to see to it that no one else is hurt by their FRAUD. DON INDRAJITH NISSANKA is a Fraud, scammer and currently part of an international scam team destroying people lives and livelihoods."*[180];

iii. An account on Medium using the handle *"Don Nissanka scam artist"* stated that *"Don Nissanka is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation"*[181].

6.3.6. The accounts on Reddit and Quora were created in June 2023, and no other comments or posts have been made by all three (3) users. Information about the creation date of the user account on Medium was not available.

6.3.7. Our review has not found any references to these allegations in mainstream media sources.

6.3.8. Separate profiles was also discovered on Quora, Behance and Adobe Lightroom alleging that Don *"owes money to everyone"*:

i. A user identifying as *"Don Nissanka"* created a space tilted *"Don Nissanka Owes Money to Everyone"*[182]. The user account on Quora was created in May 2018, and no other comments or posts have been made by the user;

---

[179] Refer to Exhibit 129 for extract of the user's profile on Reddit regarding Don.
[180] Refer to Exhibit 130 for extract of the user's profile on Quora regarding Don.
[181] Refer to Exhibit 131 for extract of the user's profile on Medium regarding Don.
[182] Refer to Exhibit 132 for extract of the user's profile on Quora regarding Don.

    ii.    Another user *"Don Nissanka Owes Money to Everyone"* was identified on Behance, a social networking website. The user account was created on September 2018[183]; and

    iii.    A user account named *"Don Nissanka Owes Money to Everyone"* was also identified on Adobe Lightroom[184]. Information about the creation date of the user account was not available.

6.3.9.    We also identified a website with the address *"issuu.com/donnissankasteal"*, however, the page is no longer accessible[185].

6.3.10.    A user posted on the blog Scam Survivors in November 2024[186], what appeared to be an email in relation to a project funding loan from Don. The email included the following contact details in the signature: email address of donnissanka1966@gmail.com and contact number of +1 (936) 994-2274. The email was labelled as a *"loan scam"*.

6.3.11.    Don was also the subject of an episode of *Storic True Crime*[187], an online podcast hosted by a former UK police detective who now runs her own investigative firm. Don was described in the podcast as a *"career criminal masquerading as a businessman"*.

    i.    The episode featured an alleged victim, an English businessman named Nigel, and detailed claims of a *"large-scale con"* involving convertible loans, fake companies and addresses. According to the podcast, Don persuaded Nigel and others to invest in an energy project, convincing Nigel to personally loan 5 million (currency not specified) to Exergonix under the assurance it would be repaid within a short period. However, the loan was never repaid. Instead, it was alleged that Don diverted the funds to settle personal debts and finance unrelated ventures. This podcast was uploaded to YouTube on 9 June 2023.

**II.    Allegations of scam against Don, Exergonix and Global Power**

6.3.12.    A blog site titled *"Exergonix pourquoi ? rendez nous notre argent"* (translated to English as: Exergonix why? Give us back our money) [188] had multiple posts on 17 July 2017 alleging that Don was involved with a scam operation alongside three (3) other individuals named Nigel Sandor Allan ("**Nigel**"), Arve Evensen ("**Arve**")[189], and Jarle Thorsen ("**Jarle**")[190].

    i.    According to the posts, investors were purportedly convinced to invest in Global Power Pte Ltd ("**Global Power**") with the expectation that 50% of their funds would

---

[183] Refer to Exhibit 133 for an extract of the user's profile on Behance regarding Don.
[184] Refer to Exhibit 134 for extract of the user's profile on Adobe Lightroom.
[185] Refer to Exhibit 135 for an extract of the website "issuu.com/donnissankasteal".
[186] Refer to Exhibit 136 for extract of the blog post on Scam Survivors.
[187] Refer to Exhibit 137 for an extract of the transcript of the podcast.
[188] Refer to Exhibit 138 for an extract of the website: mimoo19dzexergonix.blogspot.com.
[189] Refer to Exhibit 139 for an extract of the website: https://mimoo19dzexergonix.blogspot.com/2017/07/owners-of-this-scam-4-nigel-sandor.html.
[190] Refer to Exhibit 140 or an extract of the website: https://mimoo19dzexergonix.blogspot.com/2017/07/owners-of-this-scam-5-jarle-thorsen_17.html.

be directed to Exergonix for projects in the US. However, the poster claimed that Don later stated that there were no investor funds available in Exergonix.

6.3.13. A WordPress blog titled *"Exergonix XECpower"*[191] dated 23 July 2017, featured a series of posts alleging that global investors contributed approximately EUR10 million to Exergonix projects for 1.5% weekly interest, facilitated through Global Power, a company incorporated in Singapore. The blog further claims that Don and Arve were central figures in managing and promoting these investments, and asserts that they eventually exited the scene with EUR5.8 million of investor funds.

6.3.14. An article on BehindMLM[192] reported that Power On Network (an entity purportedly owned by Global Power)[193] allegedly established a sham partnership with Exergonix to lend legitimacy to its ponzi scheme by associating with the US based renewable energy company[194].

6.3.15. On 20 June 2017, Exergonix's website released an announcement that Exergonix had terminated its relationship with Global Power Pte. Ltd. d/b/a PowerOnXpress, Nigel Sandor Allan, Bjorn Thomas ("**Bjorn**"), and Jarle Thorsen on 9 May 2017, as a result of Global Power's multiple breaches of agreement with Exergonix. The announcement stated that Nigel, Bjorn, and Jarle repeatedly refused to provide Exergonix with information regarding the financial health and legal compliance of Global Power, left Exergonix with no choice but to terminate the relationship[195].

6.3.16. Exergonix also stated its plans to initiate legal proceedings against Global Power, Nigel, Jarle, and Bjorn for alleged interference with its business relationships and the resulting damages[196].

6.3.17. Our review of the individuals purportedly involved in the scam indicated the following:

   i.   Jarle was reportedly convicted of accounting fraud in Norway in 2004, and has been linked to several pyramid scheme, including Unaico, PlexPay, World Games Inc., and World Wide Alliance[197]; and

   ii.  Similarly, Nigel has been associated with OneCoin, a fraudulent cryptocurrency scheme, and pyramid style schemes such as Crypto 888, and Brilliant Carbon[198,199]; and

---

[191] Refer to Exhibit 141 for an extract of the website xecpower.wordpress.com.
[192] BehindMLM is an independent online publication that provide investigative reporting on MLM companies and related business practices.
[193] Refer to Exhibit 142 for extract of the publication on BehindMLM dated 13 October 2016.
[194] Refer to Exhibit 143 for an extract of the publication on BehindMLM dated 26 June 2017.
[195] Refer to Exhibit 144 for the announcement by Exergonix dated 20 June 2017.
[196] Refer to Exhibit 143 for an extract of the publication on BehindMLM dated 26 June 2017.
[197] Refer to Exhibit 145 for an extract of the article dated 17 June 2010 on Realtid, an independent Swedish news platform.
[198] Refer to Exhibit 146 for an extract of the article dated 12 September 2023 on Expansion, a Spanish digital news outlet.
[199] Refer to Exhibit 142 for an extract of the publication on BehindMLM dated 13 October 2016.

      iii.    Bjorn was also purportedly associated with Crypto888, from a Facebook post by *"Scammer Alert"*, stating that Bjorn's *"Most known scams: Crypto888"*[200].

## 6.4.    Litigation, regulatory and political exposure

### I.    Litigation and regulatory actions

6.4.1.    We identified the following cases involving Don and Exergonix as set out below:

*Mazuma Credit Union v. Exergonix and Don, Case No. 57-148-Y-00158-13 (American Arbitration Association)[201],*

*Mazuma Credit Union v. Exergonix and Don, Case No. 4:14-cv-00995 (US District Court for the Western District of Missouri)[202].*

*Mazuma Credit Union v. Exergonix, Inc. et al. Case No. 1516-CV00675 (Missouri Courts)[203].*

*Mazuma Credit Union v. Exergonix, Inc. et al. Case No. 1516-CV00675-01 (Missouri Courts)[204]*

6.4.2.    On or about 5 October 2011, Exergonix entered into a Loan Agreement, Credit Agreement and Security Agreement with Mazuma Credit Union ("**Mazuma**") and drew the sum of USD980,000 on the line of credit. Don personally guaranteed the loan. As of the Maturity Date, Exergonix owed USD1,036,004 (which included the sum on the line of credit, interest and late fees)[205].

6.4.3.    When both Exergonix and Don defaulted their obligations under the agreements for a substantial period of time, Mazuma commenced an arbitration proceeding seeking and award against both Exergonix and Don.

6.4.4.    As of 30 June 2014, the amount owed jointly by Exergonix and Don was USD1,052,362, which would increase USD167 each day after 31 July 2014. In September 2014, the arbitrator granted summary judgement in favour of Mazuma, holding Exergonix and Don jointly liable for USD1,052,362 and additional costs[206]. On 6 November 2014, Mazuma filed a motion to enforce the arbitration award from 15 September 2014 (refer to Case No. 57-148-Y-00158-13 above)[207]. The petition was voluntarily dismissed without prejudice on 22 January 2015 and the case was administratively closed[208].

---

[200] Refer to Exhibit 147 for an extract of a Facebook post on Scammer Alert dated 28 November 2016.
[201] Refer to Exhibit 148 for the judgement in relation to Mazuma Credit Union v. Exergonix, Inc. et al, Case No. 57-148-Y-00158-13 (American Arbitration Association).
[202] Refer to Exhibit 149 for the case for the motion to enforce arbitration award in relation to Mazuma Credit Union v Exergonix, Inc. et al, Case No. 4:14-cv-00995 (US District Court for the Western District of Missouri).
[203] Refer to Exhibit 150 for the docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. et al. Case No. 1516-CV00675 (Missouri Courts).
[204] Refer to Exhibit 151 for the docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. et al. Case No. 1516-CV00675-01 (Missouri Courts).
[205] Refer to Exhibit 148 for the judgement in relation to Mazuma Credit Union v. Exergonix, Inc. et al, Case No. 57-148-Y-00158-13 (American Arbitration Association).
[206] Refer to Exhibit 148 for the judgement in relation to Mazuma Credit Union v. Exergonix, Inc. et al, Case No. 57-148-Y-00158-13 (American Arbitration Association).
[207] Refer to Exhibit 152 for the motion by Mazuma to enforce the arbitration award.
[208] Refer to Exhibit 149 for the case docket in relation to Mazuma Credit Union v. Exergonix, Inc. et al, Case No. 4:14-cv-00995 (US District Court for the Western District of Missouri).

6.4.5.   Subsequently on 12 January 2015, Mazuma filed a second matter in the Missouri courts seeking enforcement of the arbitration award. On 1 May 2015, the courts entered a default judgment confirming the arbitration award issued on 15 September 2014, which Don and Exergonix contested to have the judgement set aside[209]. This case was re-opened under another petition on 5 October 2015 and eventually dismissed by Mazuma on 4 January 2016.[210]

***Nigel v. Exergonix Inc., Case no. 2115-CV04585 (Jackson County Circuit Court, Missouri)[211]***

6.4.6.   On 12 October 2017, Nigel filed a lawsuit against Exergonix *"seeking damages for fraud, attachment, and sought temporary and permanent injunctive relief against Exergonix."*[212]. On 21 December 2018, Exergonix executed and delivered to Nigel a Settlement Agreement specifying that Exergonix agreed to pay Nigel the sum of USD4,417,828 within six months of the date of that agreement.

6.4.7.   According to court documents, Exergonix defaulted on its payment obligations under the Settlement Agreement by 15 May 2019. Subsequently, on 30 August 2022, the court entered a default judgement in Nigel's favour for the total Settlement Amount of USD4,417,828.

**II.   Sanctions**

6.4.8.   We did not identify any matches for Don based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

**III.   Political exposure**

6.4.9.   We did not identify any indication that Don had political connections or exposure, or that they hold political office or government position based on searches conducted across international PEPs and public records research.

---

[209] Refer to Exhibit 150 for the docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. Eel al. Case No. 1516-CV00675 (Missouri Courts).
[210] Refer to Exhibit 151 for the docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. Eel al. Case No. 1516-CV00675-01 (Missouri Courts).
[211] Refer to Exhibit 153 for the docket entries in relation to Nigel v. Exergonix Inc., case no. 2115-CV04585 (Jackson County Circuit Court, Missouri).
[212] Refer to Exhibit 154 for the docket entries in relation to Nigel v Exergonix case no. 17160CV24484 (Missouri Courts).

19 June 2025

# 7. Elite Crown Diamond Limited

## 7.1. Corporate background

| Business profile[213] | |
|---|---|
| **Entity name** | Elite Crown Diamond Limited |
| **Entity number** | 10009926 |
| **Country of incorporation** | UK |
| **Incorporation date** | 17 Feb 2016 |
| **Company type** | Private limited company |
| **Status** | Active |
| **Registered address** | 85 Great Portland Street, First Floor, London, W1W 7LT |
| **Director(s)** | i.  Zoaib [17 Feb 2016 – Present] <br> ii.  Lankan[214] [31 May 2018 – 28 Feb 2019; 30 Jun 2019 – Present] <br> iii.  Don[215] [31 May 2018 – 28 Feb 2019; 30 Jun 2019 – Present] <br> iv.  Zaheer Muneer [17 Feb 2016 – 19 Mar 2016] |
| **Shareholder(s)[216]** | i.  Ali: 100% [2 Apr 2016 – Present]; <br> 50% [17 Feb 2016 – 2 Apr 2016] <br> ii.  Zaheer Muneer: 50% [17 Feb 2016 – 2 Apr 2016] |
| **Issued and paid-up share capital** | 100 shares (GBP100) |
| **Business activities** | Other service activities not elsewhere classified |

**Figure 12 – Corporate information of Elite Crown Diamond**

## 7.2. Operations and financial standing

7.2.1. Elite Crown Diamond has filed its financial statements under the micro-entity accounts since FY2018, where a company qualifies as a micro-entity if it meets at least two (2) of the following criteria: an annual turnover of GBP1 million or less, balance sheet of GBP500,000 or less, or 10 employees or fewer. Micro-entities are permitted to submit abridged accounts that do not need to be audited, and prepare simpler accounts including a balance sheet with less financial information[217].

7.2.2. We set out a summary of the financial information for Elite Crown Diamond[218] as follows:

| Description (GBP) | FY2024 | FY2023 | FY2022 | FY2021 | FY2020 | FY2019 | FY2018 | FY2017 |
|---|---|---|---|---|---|---|---|---|
| **Fixed assets** | 1,876 | 2,501 | 3,335 | 4,446 | 1,936 | 646 | 862 | - |
| **Current assets** | 9,712 | 8,446 | 15,011 | 12,109 | 4,823 | 1,018 | 860 | 35,266 |
| **Current liabilities** | (5,795) | (4,509) | (6,344) | (4,143) | (2,353) | (718) | (1,046) | (35,215) |

---

[213] Refer to Exhibit 32 for the corporate records of Elite Crown Diamond from Companies House UK.
[214] We noted that Lankan was listed as a person with "significant influence or control" in relation to Elite Crown Diamond from 31 May 2018 to 28 February 2019, and again on 30 June 2019.
[215] We noted that Don was listed as a person with "significant influence or control" in relation to Elite Crown Diamond from 31 May 2018 to 28 February 2019, and again on 30 June 2019.
[216] Refer to Exhibit 155 for the shareholding records of Elite Crown Diamond. We noted that Lankan and Don were listed as persons with *"significant influence or control"* from 31 May 2018 to 28 February 2019, and again on 30 June 2019.
[217] Refer to Exhibit 156 for the extract on the definition of micro-entities from www.gov.uk.
[218] Refer to Exhibit 157 to 164 for the financial records for Elite Crown Diamond from FY2017 to FY2024.

| Description (GBP) | FY2024 | FY2023 | FY2022 | FY2021 | FY2020 | FY2019 | FY2018 | FY2017 |
|---|---|---|---|---|---|---|---|---|
| **Non-current liabilities** | (3,497) | (5,860) | (7,325) | (10,318) | - | - | - | - |
| **Net assets (liabilities)** | **2,296** | **578** | **4,677** | **2,094** | **4,406** | **946** | **676** | **51** |

**Figure 13 – Financial information of Elite Crown Diamond**

7.2.3. According to the company's financial statements for FY2017[219], its principal activity was described as *"Educational support services"*. This appears inconsistent with descriptions found on the company's Facebook profile [220], where it identifies as an *"Investment management company"* and a *"fully regulated fund focused on providing capital assistance for project financing in various operating verticals"*.

## 7.3.    Public profile and reputation

7.3.1. Elite Crown Diamond has limited public profile, with minimal information available regarding its operations, business activities and projects. We noted allegations of scam on online forums, similar to those made against Global Wise, Lankan, Don, Elite Global and Advisors of Elite Global.

7.3.2. We identified a Facebook profile named *"Elite Crown Diamond"* [221] that shares the same street address *"85 Great Portland Street, London, United Kingdom"* as the company. The profile showed minimal activity, with only two (2) posts dated 22 and 23 May 2021.

7.3.3. The corporate website (elitecrowndiamond.com) listed on the Facebook profile is currently inactive[222]. An archived version of the website captured on 4 April 2022[223], featured a website describing the company as a *"Socially Responsible Opportunity with Significant Investment Return & Indisputable Socioeconomic and Environmental Benefits"*, with a *"focus on clean energy, environment and socioeconomic projects around the world"*. The archived website and searches conducted on open media sources do not indicate any specific investment projects or operations by Elite Crown Diamond.

7.3.4. Furthermore, the contact email (info@elitecrowndiamond.com) provided on the Facebook profile and corporate website is currently invalid[224].

### I.    Allegations of scam against director and shareholder

7.3.5. We identified user profiles on platforms such as Reddit and F6S alleging scam and fraudulent activities involving Ali:

---

[219] Refer to Exhibit 157 for the financial record for Elite Crown Diamond for FY2017.
[220] Refer to Exhibit 165 for an extract of Elite Crown Diamond's Facebook profile.
[221] Refer to Exhibit 165 for an extract of Elite Crown Diamond's Facebook profile.
[222] Refer to Exhibit 166 for an extract of the Elite Crown Diamond's corporate website: elitecrowndiamond.com.
[223] Refer to Exhibit 167 for an extract of the archived website of elitecrowndiamond.com.
[224] Refer to Exhibit 168 for an extract of the email validation result for info@elitecrowndiamond.com.

    i.    An account on Reddit using the handle u/ZoaibAli stated in its profile that *"Zoaib Ali is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. Zoaib Ali scam artist"*[225]. The account was created in June 2023;

    ii.    An account on F6S, a startup networking platform, using the handle *"Zoaib Ali Fraudster"* stated that *"Zoaib Ali stole millions from investors and partners"* and *"Zoaib Ali is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are and to see to it that no one else is hurt by their FRAUD. Zoaib Ali is a Fraud, scammer and currently part of an international scam team destroying people lives and livelihood."*[226]. Information about the creation date of the user account on F6S was not available.

7.3.6.    Both accounts did not have any other comments or posts made. Our review has not found any references to these allegations in mainstream media sources.

## 7.4.    Litigation, regulatory and political exposure

### I.    Litigation and regulatory actions

7.4.1.    Our review did not identify any indication of notable disputes, illegal or unethical business practices, or adverse media involving Elite Crown Diamond in the public domain.

7.4.2.    We have not identified any indication that Elite Crown Diamond has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

### II.    Sanctions

7.4.3.    We did not identify any matches for Elite Crown Diamond based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

### III.    Political exposure

7.4.4.    We did not identify any indication that Elite Crown Diamond, and its current shareholders and directors, had political connections or exposure, or that they hold political office or government position based on searches conducted across international PEPs and public records research.

---

[225] Refer to Exhibit 169 for extract of the user's profile on Reddit regarding Ali.
[226] Refer to Exhibit 170 for extract of the user's profile on F6S regarding Ali.

19 June 2025

# 8. Elite Global Equity Fund

## 8.1. Corporate background

| Business profile[227] | |
|---|---|
| **Entity name** | Elite Global Equity Fund |
| **Entity number** | 373703 |
| **Country of incorporation** | Cayman Islands |
| **Incorporation date** | 23 Mar 2021 |
| **Company type** | Exempt |
| **Status** | Active |
| **Registered address** | P. O. Box 799, Two Artillery Court, 2nd Floor, 161 Shedden Road, Grand Cayman KY1-1103, Cayman Islands |
| **Director(s)** | i.   Don (Present)<br>ii.  Kanika Green ("**Kanika**") (Present) |
| **Initial subscriber** | Corporate Management Solutions (Cayman) Ltd. |
| **Authorised share capital** | KYD41,000 |
| **Business activities** | Investment Fund – Regulated Mutual Fund |

**Figure 14 – Corporate information of Elite Global**

We set out our observations in relation to corporate background of Elite Global:

8.1.1. Elite Global was listed as a registered mutual fund with the Cayman Islands Monetary Authority ("**CIMA**") under license number 1959812[228], effective as of 1 April 2022. Under the Mutual Funds Act[229], to register a company as a mutual fund with CIMA, each investor must make a minimum initial investment of KYD80,000 unless the fund is licensed or falls under specific exemptions.

8.1.2. Kanika was described as a director and legal advisor, advising on the establishment, launch and maintenance of the fund[230]. Her LinkedIn profile also lists her as the Managing Director and Founder of Corporate Management Solutions (Cayman) Ltd[231].

## 8.2. Public profile and reputation

8.2.1. Elite Global has limited public profile, with minimal information available regarding its operations, business activities and projects. We noted allegations of scam from online forums were made against Elite Global and its Advisors, similar to those made against Global Wise, Lankan, Don, and Ali.

---

[227] Refer to Exhibit 171 for the corporate records of Elite Global.
[228] Refer to Exhibit 172 for Elite Global's registration number.
[229] Refer to Exhibit 173 for the Cayman Islands Investment Funds frequently asked questions, extracted from cima.ky.s
[230] Refer to Exhibit 174 for an extract of the profile of Kanika from Elite Global's corporate website.
[231] Refer to Exhibit 175 for an extract of Kanika's LinkedIn profile.

19 June 2025

**I.      Allegations of scam against Elite Global and its advisors**

8.2.2.   We identified user profiles on platforms such as Reddit and Quora alleging fraudulent activities involving Elite Global's Advisors[232]: Charles Schellhorn ("**Charles**") and Brent Franzel ("**Brent**"):

i.      An account on Reddit using the handle u/CharlesSchellhorn stated in its profile that *"Charles Schellhorn is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are"*[233]; and

ii.     An account on Quora using the handle *"Brent Franzel Scam Artist"*, stated in its profile that *"Brent Franzel is part of an elaborate scam which has stolen over 4 million dollars from an investor on a scam operation. We are writing this commentary in order to expose them for who they are and to see to it that no one else is hurt by their FRAUD. Brent Franzel is a Fraud, scammer and currently part of an international scam team destroying people lives and livelihoods."* [234]

8.2.3.   Both accounts were created in June 2023, and no other comments or posts have been made by both users. Our review has not found any references to these allegations in mainstream media sources.

8.2.4.   A negative review on Elite Global was also posted on Scamadviser.com[235], a platform that helps users assess the legitimacy of websites. The reviewer alleged that they lost all their money to the platform, and was scammed out of their investment capital. The post mentioned *"I lost all my money to the scam platform. At least everyone should be careful and stop being deceived by all these brokers and account managers. They scammed me out of $67,800 of my investment capital. They kept on requesting extra funds before a withdrawal request could be accepted and processed. In the end, I lost all my money. All efforts to reach out to their customer support desk had declined. A very big thank you to Spa_ce_tel-ca-pi-\tal for helping me navigate a scam broker and get back my funds."*

8.2.5.   We noted that the same user posted similar negative reviews for five (5) different financial service websites all on the same day 20 August 2024[236]. Each review promoted the services of Spacetel Capital.

---

[232] Refer to Exhibit 176 for extract of Elite Global's advisors.
[233] Refer to Exhibit 177 for extract of the user's profile on Reddit regarding Charles.
[234] Refer to Exhibit 178 for extract of the user's profile on Quora regarding Brent.
[235] Refer to Exhibit 179 for an extract of the profile of Elite Global on the website: scamadviser.com.
[236] Refer to Exhibit 180 for an extract of similar reviews on the website: scamadviser.com.

## 8.3. Litigation, regulatory and political exposure

### I. Litigation and regulatory actions

8.3.1.   Our review did not identify any indication of notable disputes, illegal or unethical business practices, or adverse media involving Elite Global in the public domain.

8.3.2.   We have not identified any indication that Elite Global has been the subject of publicly announced regulatory, enforcement, and disciplinary actions by Australia's and Singapore's regulatory bodies. Refer to **Appendix A** for the list of Australia's and Singapore's regulatory bodies consulted.

### II. Sanctions

8.3.3.   We did not identify any matches for Elite Global based on sanctions screening conducted across various international watchlists and databases. Refer to **Appendix B** for the list of international watchlists and databases consulted.

### III. Political exposure

8.3.4.   We did not identify any indication that Elite Global, and its current shareholders and directors, had political connections or exposure, or that they hold political office or government position based on searches conducted across international PEPs and public records research.



# 9. Elite Crown Cayman Limited

## 9.1. Corporate background

9.1.1. We did not identify any entity named Elite Crown Cayman from the Cayman Islands General Registry[237].

9.1.2. We noted that Solar Tree was incorporated in Delaware, US on 19 October 2016[238], and registered to transact business in Hawaii on 20 April 2020. Based on the corporate records for Solar Tree, Elite Crown Cayman was listed as a member of Solar Tree since 1 April 2021. The entity applied for a *"Certificate of Cancellation"* on 6 June 2023[239] and is currently cancelled.

9.1.3. Don's LinkedIn profile lists himself as the Managing Partner of Solar Tree from September 2020 to present.

9.1.4. We were unable to identify any entity with the same name in US states where Don had a history of incorporating other entities, such as Delaware, Missouri, Nevada, and Hawaii.

9.1.5. Our extended search in Singapore, UK, and Australia also did not identify any entity with the same name.

---

[237] Refer to Exhibit 181 for an extract of the search results from the Cayman Islands General Registry.
[238] Refer to Exhibit 182 for an extract of the application for certificate of authority for Solar Tree.
[239] Refer to Exhibit 183 for an extract of the company details for Solar Tree from the Business Registration Division, Department of Commerce & Consumer Affairs.

# 10. Connections among the Subjects

10.1.1. We set out an illustration of the identified connections among the Subjects below and in **Appendix E**:



**Note:**
[1]: We noted two (2) instances where Global Wise served as the lender with Acuity acting as the arranger and appearing to be a loan facilitator to NSH Petrol, Senibina Sentral and Senibina Murni.

**Figure 15 – Relationship map**

### I. Connections between Lankan and Ranjit

10.1.2. We observed that Lankan and Ranjit are connected through business dealings between their respective companies, Global Wise and Berhero (Acuity). Lankan has been a director and the sole shareholder of Global Wise since its incorporation in March 2016, while Ranjit is the current sole shareholder, director, and founder of Berhero (Acuity).

10.1.3. We outline the business dealings between Global Wise and Berhero (Acuity) below:

   i.   Global Wise was reportedly engaged in a business arrangement with Berhero (Acuity) in relation to a USD343 million loan sought by NSH Petrol, by which Berhero (Acuity) was appointed as the arranger, loan manager, sponsor and security agent; and

   ii.  Global Wise was also a purported lender of a USD210 million facility to Senibina Sentral, where Berhero (Acuity) appeared to be the facility agent for the said loan under a loan facilitation agreement with Senibina Sentral.

10.1.4. Based on Lankan's LinkedIn activity, Lankan appears to be acquainted with Ranjit as evidenced by his interactions with Ranjit's posts[240].

---

[240] Refer to Exhibit 184 and Exhibit 185 for an extract of Lankan's LinkedIn activities.

**II.  Connection between Lankan and Don**

10.1.5.  We observed that Lankan and Don are connected through their respective roles in Elite Global and Elite Crown Diamond:

    i.  Lankan has served as the CSO of Elite Global since July 2021[241], while Don has held the position of CEO since March 2021[242]. Don also currently serves as a director of Elite Global[243].

    ii.  Don and Lankan both served as directors of Elite Crown Diamond during the same periods: from 31 May 2018 to 28 February 2019, and again from 30 June 2019 to present[244].

10.1.6.  Based on Lankan's LinkedIn activity, Lankan appears to be acquainted with Don as evidenced by his interactions with Don's posts[245].

---

[241] Refer to Exhibit 29 for an extract of LinkedIn profile of Lankan.
[242] Refer to Exhibit 120 for an extract of LinkedIn profile of Don.
[243] Refer to Exhibit 171 for the corporate records of Elite Global.
[244] Refer to Exhibit 32 for the corporate records of Elite Crown Diamond from Companies House UK.
[245] Refer to Exhibit 184 and Exhibit 185 for an extract of Lankan's LinkedIn activities.

# Appendix A

## Australia's and Singapore's regulatory bodies consulted

Searches were conducted across the regulatory bodies listed below:

| S/N | Regulatory bodies |
| --- | --- |
| **Australia** | |
| 1 | Australian Prudential Regulation Authority Disqualification Register |
| 2 | Australian Securities & Investments Commission for Banned and Disqualified Persons |
| 3 | Australian Securities & Investments Commission for Enforceable Undertakings |
| 4 | Australian Securities & Investments Commission Public Warning Notices |
| 5 | Australian Securities & Investments Commission Infringement Notices Register |
| **Singapore** | |
| 1 | Accounting and Corporate Regulatory Authority's List of Registered Filing Agents and Registered Qualified Individuals with Registration Cancelled/Suspended |
| 2 | Corrupt Practices Investigation Bureau |
| 3 | Inland Revenue Authority of Singapore |
| 4 | Institute of Singapore Chartered Accountants |
| 5 | Ministry of Home Affairs Singapore Restriction or Detention Orders |
| 6 | Monetary Authority of Singapore Investor Alert List |
| 7 | Monetary Authority of Singapore Terrorism (Suppression of Financing) Act List |
| 8 | Singapore Exchange Public Disciplinary Actions |
| 9 | Singapore Police Force |



# Appendix B

## International watchlists and databases consulted

Searches were conducted across the various international watchlists and databases listed below:

| S/N | International watchlist and databases |
|---|---|
| 1 | European Union Consolidated Sanction List |
| 2 | Her Majesty Treasury Consolidated Sanction List of Financial Sanctions Target in the UK (Individual) |
| 3 | Her Majesty Treasury Consolidated Sanction List of Financial Sanctions Target in the UK (Entity) |
| 4 | Hong Kong Independent Commission Against Corruption Wanted Persons List |
| 5 | Hong Kong Monetary Authority Disciplinary Action List |
| 6 | Hong Kong Police Wanted Persons List |
| 7 | Hong Kong Securities and Futures Commission Cold Shoulder Order List |
| 8 | Hong Kong Securities and Futures Commission Disqualification Order List |
| 9 | Hong Kong Securities and Futures Commission Enforcement News List |
| 10 | Hong Kong Securities and Futures Commission Investor Alert List |
| 11 | Hong Kong Securities and Futures Commission People Subject to Arrest Warrants List |
| 12 | Interpol Wanted Person List |
| 13 | ISIL (Da'esh) & Al-Qaida Sanctions List |
| 14 | Japan Financial Service Agency Freezing Assets List |
| 15 | Ministry of Home Affairs Malaysia Unlawful Activities List |
| 16 | Office of Foreign Assets Control's Specially Designated Nationals and Blocked Persons and Consolidated Sanctions List |
| 17 | Office of the Registrar of Indigenous Corporations Register of Disqualified Officers |
| 18 | Sanction and Restriction against Russia - Singapore Ministry of Foreign Affairs |
| 19 | Switzerland State Secretariat for Economic Affairs Consolidated Sanction List |
| 20 | The Denied Persons List by the Bureau of Industry and Security |
| 21 | United Nations 1988 Sanctions List |
| 22 | United Nations Consolidated Sanction List (Entity) |
| 23 | United Nations Consolidated Sanction List (Individual) |
| 24 | World Bank Listing of Ineligible Firms and Individuals |

# Appendix C

## Corporate interest and directorships of Lankan

The following outlines Lankan's current and former shareholdings and/or directorships:

| S/N | Entity name | Status | Entity number | Role | Period | Shareholding |
|-----|-------------|--------|---------------|------|--------|--------------|
| **Australia[246]** | | | | | | |
| 1 | Access Business Pty Ltd | Registered | 622 285 983 | Director and secretary | 16 Oct 2017 – Present | 1,000 shares |
| 2 | Global Wise Medics Pty Ltd | Registered | 603 291 907 | Director | 9 Dec 2014 – Present | 100 shares |
| 3 | Global Wise Super Pty Ltd | Registered | 610 633 988 | Director | 8 Feb 2016 - Present | 1 share |
| 4 | Stewa International Pty Ltd | Deregistered (6 Nov 2022) | 641 658 960 | Director and secretary | 12 Jun 2020 – 6 Nov 2022 | Ceased (1,000 shares) |
| 5 | Global Property Development Pty. Ltd. | Registered | 602 749 422 | Director and secretary | 7 Nov 2014 – 9 Nov 2015 | - |
| 6 | Global Capital Group Pty. Ltd. | Deregistered (22 Apr 2022) | 154 498 361 | Director and secretary | 28 Nov 2011 – 22 Apr 2022 | Ceased (30 shares) |
| 7 | Business Point Pty Ltd | Deregistered (3 Apr 2015) | 134 113 296 | Director and secretary | 19 Oct 2011 – 3 Apr 2015 | - |
| 8 | NSW Property Net International Toongabbie Pty Ltd | Deregistered (4 Feb 2008) | 098 126 562 | Director | 18 Jan 2006 – 15 Aug 2007 | - |
| 9 | Blue Lagoon Village Pty Ltd | Deregistered (9 Dec 2007) | 105 591 893 | Director and secretary | 18 Jul 2003 – 13 Mar 2006 | - |
| 10 | Cook Developers Pty Ltd | Deregistered (8 Jan 2006) | 105 332 429 | Director and secretary | 30 Jun 2003 – 8 Jan 2006 | - |
| 11 | OM Pty Ltd | Deregistered (7 Nov 2010) | 105 166 532 | Director and secretary | 19 Jun 2003 – 5 Aug 2007 | Ceased (60 shares) |
| 12 | Active Property Investment Pty Ltd | Deregistered (13 Feb 2012) | 102 266 866 | Director | 20 Sep 2002 – 11 Nov 2003 | Ceased (1 share) |
| 13 | Realtor Group Pty Ltd | Deregistered (16 Aug 2009) | 100 040 177 | Director and secretary | 26 Mar 2002 – 15 Aug 2007 | Ceased (1 share) |
| **Singapore[247]** | | | | | | |
| 14 | Global Wise Investments Pte. Ltd. | Live | 201605565K | Director | 4 Mar 2016 – Present | 100 shares |
| 15 | Eminova Capital Group Pte. Ltd. | Struck off (N/A) | 201306735G | Director | 15 Dec 2014 – 8 Feb 2021 | Ceased (380,000 shares) |

[246] Refer to Exhibit 27 for the individual search report of Lankan in Australia
[247] Refer to Exhibit 28 for the individual search report of Lankan in Singapore.

19 June 2025

| S/N | Entity name | Status | Entity number | Role | Period | Shareholding |
|-----|-------------|--------|---------------|------|--------|--------------|
| UK[248] | | | | | | |
| 16 | Elite Crown Diamond Limited | Live | 10009926 | Director | 30 Jun 2019 - Present | - |



---

[248] Refer to Exhibit 32 for the company records of Elite Crown Diamond from Companies House UK.

19 June 2025

# Appendix D

## Corporate interest and directorships of Ranjit

The following outlines Ranjit's current and former shareholdings and/or directorships:

| S/N | Entity name | Status | Entity number | Role | Period | Shareholding |
|-----|-------------|--------|---------------|------|--------|--------------|
| Australia[249] | | | | | | |
| 1 | RV Enterprises (NSW) Pty Ltd | Registered | 607 462 251 | Director | 7 Aug 2015 - Present | - |
| 2 | Berhero Pty. Ltd | Registered | 060 065 821 | Director and secretary | 21 Jun 2010 - Present | 1,000 shares |
| 3 | Raneil Pty Ltd | Registered | 104 541 997 | Director and secretary | 29 Apr 2003 - Present | 2 shares |
| 4 | Knowledge Capital Funds Pty Ltd | Deregistered (2 Mar 2025) | 637 021 991 | Director and secretary | 24 Oct 2019 – 2 Mar 2025 | Ceased (100 shares) |
| 5 | Acuity Lending Pty. Ltd. | Deregistered (20 Dec 2017) | 605 535 153 | Director and secretary | 28 Apr 2015 – 20 Dec 2017 | Ceased (10 shares) |
| 6 | The Mortgage Professionals Pty Limited | Registered | 138 671 075 | Director | 2 Feb 2010 – 25 Oct 2011 | - |
| 7 | Vow Financial Group Pty Ltd | Registered | 135 411 120 | Director | 2 Feb 2010 – 25 Oct 2011 | - |
| 8 | Vow Financial Holdings Pty Limited | Registered | 122 740 327 | Director | 2 Feb 2010 – 25 Oct 2011 | - |
| 9 | Yellow Brick Road Aggregation Pty Ltd | Registered | 138 789 161 | Director | 2 Feb 2010 – 25 Oct 2011 | - |
| 10 | Construction Middle East Pty. Limited | Deregistered (17 Feb 2011) | 140 204 075 | Director | 26 Oct 2009 – 17 Feb 2011 | Ceased (51 shares) |
| 11 | Sky High Construction International Pty Ltd | Deregistered (28 Oct 2012) | 137 054 374 | Director | 12 May 2009 – 28 Oct 2012 | Ceased (1 share) |
| 12 | National Brokers Group Leasing Pty Limited | Registered | 125 870 859 | Director | 8 Jun 2007 – 25 Oct 2011 | - |
| 13 | Australian Premium Livestock Pty Ltd | Deregistered (27 Jul 2011) | 125 196 072 | Director and secretary | 2 May 2007 – 27 Jul 2011 | Ceased (1 share) |
| 14 | Jakim Muis Halal Traders Pty Ltd | Deregistered (18 Mar 2008) | 124 990 441 | Director and secretary | 19 Apr 2007 – 18 Mar 2008 | Ceased (1 share) |
| 15 | Jakim Muis Pty Ltd | Deregistered (1 Dec 2010) | 124 990 469 | Director and secretary | 19 Apr 2007 – 1 Dec 2010 | Ceased (1 share) |
| 16 | Australian Mortgage Line Pty Limited | Registered | 124 155 844 | Director | 27 Feb 2007 – 14 Jun 2007 | - |
| 17 | Select Mortgage Finance Pty Ltd | Registered | 069 205 214 | Director | 1 Nov 2006 – 25 Oct 2011 | - |
| 18 | Vow Financial Planning Pty Limited | Deregistered (6 Feb 2023) | 076 129 578 | Director | 1 Nov 2006 – 25 Oct 2011 | - |
| 19 | National Brokers Group Holdings Pty Ltd | Registered | 122 059 394 | Director | 5 Oct 2006 – 25 Oct 2011 | - |

---

[249] Refer to Exhibit 90 for the individual search report of Ranjit in Australia.

| S/N | Entity name | Status | Entity number | Role | Period | Shareholding |
|-----|-------------|--------|---------------|------|--------|--------------|
| **Australia**[249] | | | | | | |
| 20 | National Brokers Group Pty Limited | Registered | 094 881 231 | Director | 24 Nov 2005 – 25 Oct 2011 | - |
| 21 | Finance Analysis Services of Australia Pty Limited | Deregistered (6 Feb 2023) | 093 126 393 | Director | 24 Nov 2005 – 25 Oct 2011 | - |
| 22 | Australian Property Finance Pty Ltd | Deregistered (6 Feb 2023) | 094 881 240 | Director | 24 Nov 2005 – 25 Oct 2011 | - |
| 23 | Ironbark Mortgage Solutions Pty Limited | Registered | 109 974 469 | Director | 24 Nov 2005 – 25 Oct 2011 | - |
| 24 | ACN 075 911 410 Pty Ltd | Deregistered (13 Aug 2017) | 075 911 410 | Director<br><br>Secretary | 22 Sep 2005 – 31 Jan 2006<br>14 Mar 2007 – 30 May 2012<br>22 Sep 2005 – 30 May 2012 | Ceased (100 shares) |
| 25 | Westag Holdings Pty Ltd | Deregistered (27 Jan 2013) | 110 946 702 | Director and secretary | 13 Sep 2004 – 28 May 2012 | Ceased (2 shares) |
| 26 | Arc Corporation (WA) Pty Ltd | Deregistered (14 Jan 2007) | 109 321 075 | Director and secretary | 31 May 2004 – 7 Sep 2004 | Ceased (50 shares) |
| 27 | A.C.N 109 242 631 Pty Ltd | Deregistered (27 Jul 2011) | 109 242 631 | Director and secretary | 25 May 2004 – 27 Jul 2011 | - |
| 28 | Acuity Evangelical Foundation Limited | Deregistered (1 Sep 2011) | 108 684 019 | Director | 8 Apr 2004 – 1 Sep 2011 | - |
| 29 | Magnolia Grove Investments Pty Ltd | Deregistered (13 Feb 2012) | 108 145 624 | Director and secretary | 26 Feb 2004 – 13 Feb 2012 | - |
| 30 | Financial Holdings Group Pty Limited | Deregistered (16 Dec 2007) | 105 690 408 | Director | 11 Sep 2003 – 23 Mar 2004 | - |
| 31 | Integrated Lending (Victoria) Pty Limited | Deregistered (1 Jun 2008) | 105 635 550 | Director | 11 Sep 2003 – 23 Mar 2004 | - |
| 32 | Integrated Lending Pty Ltd | Deregistered (1 Jun 2008) | 103 500 527 | Director | 11 Sep 2003 – 23 Mar 2004 | - |
| 33 | Australian Reverse Mortgages Pty Limited | Deregistered (23 Dec 2007) | 105 762 105 | Director | 11 Sep 2003 – 23 Mar 2004 | - |
| 34 | A.C.N 105 134 496 Pty Ltd | Deregistered (3 Feb 2011) | 105 134 496 | Director<br>Secretary | 17 Jun 2003 – 7 Aug 2007<br>17 Jun 2003 – 3 Feb 2011 | Ceased (1 share) |
| 35 | Crow Services Pty Ltd | Deregistered (26 Jan 2014) | 101 800 766 | Director and secretary | 26 Nov 2002 – 26 Jan 2014 | Ceased (50 shares) |
| 36 | Acuity Commercial Loans Pty Ltd | Deregistered (14 Apr 2006) | 101 895 541 | Director and secretary | 2 Sep 2002 – 14 Apr 2006 | - |
| 37 | A.C.N. 101 800 748 Pty Ltd | Deregistered (23 Dec 2012) | 101 800 748 | Director and secretary | 23 Aug 2002 – 20 Jul 2010 | - |
| 38 | Rawidea Pty. Limited | Deregistered (4 Mar 1996) | 060 229 889 | Director and secretary | 29 Jun 1993 – 4 Mar 1996 | - |
| 39 | V.I.P. Pools Pty. Limited | Deregistered (24 Jun 1993) | 003 938 485 | Director and secretary | 10 Mar 1990 – 24 Jun 1993 | - |
| 40 | Woodbend Pty. Limited | Deregistered (10 Jul 1999) | 003 865 129 | Director and secretary | 11 Oct 1989 – 10 Jul 1999 | Ceased (1 share) |
| 41 | Devopu Pty. Limited | Deregistered (24 Jun 1993) | 003 692 760 | Director and secretary | 3 Feb 1989 – 24 Jun 1993 | - |
| 42 | Sydney Rest & Nursing Homes Pty Ltd | Deregistered (8 Dec 1992) | 002 645 356 | Director and secretary | Not available – 10 Nov 1988 | - |
| 43 | Lifpool Pty Ltd | Deregistered (14 Jan 2007) | 003 124 829 | Director | 5 Sep 1986 – 3 Dec 1992 | Ceased (60 shares) |

| S/N | Entity name | Status | Entity number | Role | Period | Shareholding |
|-----|-------------|--------|---------------|------|--------|--------------|
| Australia[249] | | | | | | |
| | | | | Secretary | 5 Sep 1986 – 18 Dec 1992 | |
| 44 | Jesmond Aged Care Pty Limited | Registered | 002 787 180 | Director | Not available – 18 Dec 1986 | - |
| 45 | Murlvent Pty Ltd | Deregistered (23 Jan 1997) | 002 948 423 | Director and secretary | 17 Jul 1985 – 23 Jan 1996 | Ceased (1 share) |
| 46 | Nemutu Pty Ltd | Deregistered (4 Mar 1994) | 002 420 475 | Director and secretary | 2 Jun 1982 – 4 Mar 1994 | - |
| Singapore[250] | | | | | | |
| 47 | Acuity Funding (Sing) Pte. Ltd. | Live | 201932294K | Director | 26 Sep 2019 - Present | - |

---

[250] Refer to Exhibit 91 for the individual search report of Ranjit in Singapore.

# Appendix E

## Relationship map

The following illustrates the connections between the Subjects:



<u>**Note:**</u>
[1]: We noted two (2) instances where Global Wise served as the lender with Acuity acting as the arranger and appearing to be a loan facilitator to NSH Petrol, Senibina Sentral and Senibina Murni.

# Glossary

The following abbreviations are used in this report:

| Abbreviation | Description |
|---|---|
| Access Business | Access Business Pty Ltd |
| ACN 075 | ACN 075 911 410 Pty Ltd |
| ACN 101 | A.C.N 101 800 748 Pty Ltd |
| ACRA | Accounting and Corporate Regulatory Authority |
| Acuity SG | Acuity Funding (Sing) Pte. Ltd. |
| Allan | Allan John Maroon |
| Almaty | Almaty Pty Ltd |
| ANZ | Australian and New Zealand Banking Group Ltd |
| Aquamore | Spring Park Unit Trust |
| Ariana Holding | Ariana Holding LLC |
| Arve | Arve Evensen |
| ASIC | Australian Securities and Investments Commission |
| Bjorn | Bjorn Thomas |
| Brent | Brent Franzel |
| CAD | Commercial Affairs Department |
| Cayden | Cayden Pty Limited |
| CEO | Chief Executive Officer |
| Charles | Charles Schellhorn |
| Christopher | Christopher Arthur Maroon |
| CIMA | Cayman Islands Monetary Authority |
| Claimant or Berhero (Acuity) | Berhero Pty. Limited, trading as Acuity Funding |
| Clients | The Roe Corporation, 267 Partners, LLC and Buhm Jung Roe, collectively |
| CSO | Chief Strategy Officer |
| DCJ | Department of Communities and Justice |
| Don | Don Indrajith Nissanka |
| Edvin | Edvin Muradyan |
| Elite Crown Cayman | Elite Crown Cayman Limited |
| Elite Crown Diamond | Elite Crown Diamond Limited |
| Elite Global | Elite Global Equity Fund |
| Elle International | Elle International Pty Ltd |
| Exergonix | Exergonix Inc |
| Felicia | Tham Li Ling, Felicia Malkiewicz |
| FY | Financial year |
| FYE | Financial year ended |
| Global Capital Group | Global Capital Group Pty Ltd |
| Global Power | Global Power Pte Ltd |
| Global Wise | Global Wise Investments Pte. Ltd |
| Global Wise Medics | Global Wise Medics Pty Ltd |
| Global Wise Super | Global Wise Super Pty Ltd |
| Global Wise UK | Great Winchester Investments Ltd |
| Grant Thornton, we, or us | Grant Thornton Singapore Private Limited |
| Gregory | Gregory Dinsey |
| ICIJ | International Consortium of Investigative Journalists |
| Janelle | Janelle Margaret Leeson |
| Jarle | Jarle Thorsen |
| JJ & E Management | JJ & E Management Pte. Ltd. |
| JP | Justice of the Peace |
| Kanika | Kanika Green |
| Kokam America | Kokam America Inc |
| Lankan | Lankan Bal |
| Magnolia Grove | Magnolia Grove Investments Pty Ltd |
| Maheskumar | Maheskumar S/O Shantilal Purshotam Mehta |

19 June 2025

| Abbreviation | Description |
|---|---|
| Maroons | Christopher, Allan, Nadia, and Michael John Maroon, collectively |
| Matter | Loan term sheet and costs agreement dated 24 September 2023 |
| Mazuma | Mazuma Credit Union |
| MLM | Multi-level marketing |
| Murat | Murat Akin |
| Murlvent | Murlvent Pty Ltd |
| Nadia | Nadia Maroon |
| Nigel | Nigel Sandor Allan |
| NPII | National personal insolvency index |
| NSH Petrol | Nam Song Hau Investment and Trading Joint Stock Company |
| NSW | New South Wales |
| Paul | Paul Francis Hinds |
| PEPs | Politically exposed persons |
| PH Investments | PH Investments Management Pty Ltd |
| Raneil | Raneil Pty Ltd |
| Ranjit | Ranjit Prithviraj Thambyrajah |
| RV Enterprises | RV Enterprises (NSW) Pty Ltd |
| RVD | RV Developments Australia Pty Ltd |
| Salim | Salim Mehajer |
| Senibina Murni | Senibina Murni Sdn Bhd |
| Senibina Sentral | Senibina Sentral Sdn Bhd |
| Solar Tree | Solar Tree Capital LLC |
| Subjects | Global Wise, Lankan, Berhero (Acuity), Ranjit, Elite Crown Diamond, Elite Global, Elite Crown Cayman, and Don, collectively |
| Thirumany | Thirumany D/O M Ponniah |
| UCM | University of Central Missouri |
| UK | United Kingdom |
| US | United States |
| Viet Anh | Viet Anh Nguyen |
| Waterview | Waterview Developments Pty Ltd |
| Woodbend | Woodbend Pty Ltd |
| Yoharanee | Yoharanee Bal |

19 June 2025

# List of exhibits

The following exhibits form part of this report:

| Exhibit | Description |
|---------|-------------|
| Exhibit 1 | Corporate records of Global Wise |
| Exhibit 2 | Register of directors of Global Wise |
| Exhibit 3 | Excerpt Section 171 from the Singapore Companies Act on company secretaries |
| Exhibit 4 | ACRA's First Gazette Notification dated 4 April 2018 |
| Exhibit 5 | ACRA's guide on striking off a local company |
| Exhibit 6 | Extracts of the Global Wise's corporate websites |
| Exhibit 7 | Extract of the archived website: iglobalwise.com |
| Exhibit 8 | Extract of Global Wise's Instagram profile |
| Exhibit 9 | Extract of Global Wise's LinkedIn profile |
| Exhibit 10 | Extract of the archived website: globalwise.me |
| Exhibit 11 | Extract of the email address validation result for admin@iglobalwise.com |
| Exhibit 12 | Open-source search engine results for Global Wise's registered business address |
| Exhibit 13 | Business profile extract of JJ & E Management |
| Exhibit 14 | Photographs taken during the site visit conducted on 7 June 2025 |
| Exhibit 15 | Extract of the publication by the Singapore Police Force |
| Exhibit 16 | Corporate records of Global Wise UK |
| Exhibit 17 | Filing of annual return by Global Wise for FYE 28 February 2021 |
| Exhibit 18 | Excerpt from the Singapore Companies Act on the Thirteenth Schedule |
| Exhibit 19 | NSH Petrol's board of directors' resolution dated 12 July 2024 |
| Exhibit 20 | Extract of the article published by The LEADER, a Vietnamese online news platform, on 17 July 2024 |
| Exhibit 21 | Extract of Maheskumar's profile on MarketScreener |
| Exhibit 22 | Extract of Maheskumar's profile on ICIJ Offshore Leaks |
| Exhibit 23 | Extract of the user's profile on Reddit regarding Global Wise |
| Exhibit 24 | Extract of the user's profile on Quora regarding Global Wise |
| Exhibit 25 | Extract of the user's profile on X regarding Global Wise |
| Exhibit 26 | Litigation searches on Global Wise in Singapore |
| Exhibit 27 | Individual search reports of Lankan in Australia |
| Exhibit 28 | Individual search reports of Lankan in Singapore |
| Exhibit 29 | Extract of Lankan's LinkedIn profile |
| Exhibit 30 | Extract of Murdoch University's graduate register |
| Exhibit 31 | Extract of the justice peace public register for Lankan |
| Exhibit 32 | Corporate records of Elite Crown Diamond from Companies House UK |
| Exhibit 33 | Company records of Access Business |
| Exhibit 34 | Extract of the Access Business' corporate website: accessbusiness.com.au |
| Exhibit 35 | Extract of Access Business' LinkedIn profile |
| Exhibit 36 | Bal K's LinkedIn profile |
| Exhibit 37 | Company records of Global Wise Medics |
| Exhibit 38 | Company records of Global Wise Super |
| Exhibit 39 | Extract of the user's profile on Reddit regarding Lankan |
| Exhibit 40 | Extract of the user's profile on Quora regarding Lankan |
| Exhibit 41 | Extract of the user's profile on X regarding Lankan |
| Exhibit 42 | Corporate records of Global Capital Group |
| Exhibit 43 | Corporate records of the share transfer of Global Capital Group |
| Exhibit 44 | Corporate records of Ariana Holding |
| Exhibit 45 | Extract of the document titled "Whistleblowers - Info Rebuttal" on Scribd |
| Exhibit 46 | Litigation searches on Lankan in Singapore |
| Exhibit 47 | NPII search report of Lankan |
| Exhibit 48 | Corporate records of Berhero (Acuity) |
| Exhibit 49 | Extract of Berhero's trade name registered with the ASIC |
| Exhibit 50 | Extract of the Berhero's (Acuity) corporate website: acuityfunding.com |

19 June 2025

| Exhibit | Description |
|---|---|
| Exhibit 51 | Extract of trading name register of ACN 075 |
| Exhibit 52 | ASIC's relational company extract of Berhero (Acuity) |
| Exhibit 53 | Corporate records of Acuity SG |
| Exhibit 54 | Extract of Berhero's (Acuity) LinkedIn profile |
| Exhibit 55 | Extract of Viet Anh's LinkedIn profile |
| Exhibit 56 | Extract of the publication dated 22 May 2024 on Hwaseong Urban Corporation's website |
| Exhibit 57 | Extract of the publication dated 10 April 2024 from Yonhap TV, a Korean news platform |
| Exhibit 58 | Extract of the publication dated 7 April 2023 from VnExpress International, a Vietnam news platform |
| Exhibit 59 | Extract of the publication dated 30 January 2024 from Vietnam Investment Review |
| Exhibit 60 | Extract of the publication dated 26 September 2023 from Tuoi Tre News, a Vietnam online news platform |
| Exhibit 61 | Extract of Tin Thanh Group's profile from CB Insights, a business analytics platform |
| Exhibit 62 | Extract of the publication dated 29 February 2024 from Vietnam Investment Review |
| Exhibit 63 | Extract of the publication dated 27 May 2024 from The Investor |
| Exhibit 64 | Extract of the publication dated 31 May 2024 from The Investor |
| Exhibit 65 | Extract of the article published by Vietnam News on 27 September 2023 |
| Exhibit 66 | Extract of the article publicised by The Adviser, an Australian news platform, on 14 June 2019 |
| Exhibit 67 | Extract of the article published by Money Management, an Australian news platform, on 4 September 2019 |
| Exhibit 68 | Extract of the export market development grant details |
| Exhibit 69 | Litigation searches on Global Wise in Singapore |
| Exhibit 70 | NSW's Supreme Court daily court hearing list for 6 June 2025 |
| Exhibit 71 | Judgement for Berhero v Senibina et al. [2024] NSWSC 459 |
| Exhibit 72 | Judgement for Berhero v Senibina et al. [2024] NSWCA 110 |
| Exhibit 73 | Judgement of Aquamore v Maroons [2023] FCA 1399 |
| Exhibit 74 | Orders of Wengel (Trustee), in the matter of Maroon, a bankrupt [2024] FCA 921 |
| Exhibit 75 | Judgement of Berhero v Hinds, et al. [2023] NSWSC 1022 |
| Exhibit 76 | Judgement of Berhero v Hinds, et al. [2023] NSWSC 1214 |
| Exhibit 77 | Reasons of judgement of Berhero v Hinds, et al. [2019] ACTSC 378 |
| Exhibit 78 | Judgement of George Koovousis et al. v Vrkic, Danny Tony, trustee in bankruptcy of the Estate of Guiliano Fransco et al. [2014] NSWSC 218 |
| Exhibit 79 | Judgement of Perpetual Ltd v Marcel Dagher; Marcel Dagher v Berhero [2014] NSWSC 694 |
| Exhibit 80 | Judgement for Berhero v Gregory Dinsey [2013] QCATA 311 |
| Exhibit 81 | Judgement for Berhero v Department of Human Services and Health [1994] FCA 586 |
| Exhibit 82 | Judgement of ACN 075 v Almaty Pty Ltd, et al. [2011] NSWSC 333 |
| Exhibit 83 | Judgement of Cayden Pty Limited v Patrick Nouh, et al. [2008] NSWSC 1219 |
| Exhibit 84 | Article published on The Australian, an Australian newspaper, dated 12 February 2016 |
| Exhibit 85 | Article published on The Sydney Morning Herald, an Australian newspaper, dated 8 September 2015 |
| Exhibit 86 | Berhero's (Acuity) deed of arrangement dated 29 November 1996 |
| Exhibit 87 | Berhero's (Acuity) notification of court action relating to winding up dated 13 February 1996 |
| Exhibit 88 | Berhero's (Acuity)'s administrator report dated 16 October 1996 from the appointed receiver and manager |
| Exhibit 89 | Berhero's (Acuity)'s final accounts by scheme administrator/ controller/administrator of deed of company arrangement dated 8 August 2001 |
| Exhibit 90 | Individual search report of Ranjit in Australia |
| Exhibit 91 | Individual search report of Ranjit in Singapore |
| Exhibit 92 | Extract of Ranjit's LinkedIn profile |
| Exhibit 93 | Extract of Global Recording Network Australia's entity website |
| Exhibit 94 | Extract of the JP public register for Ranjit |
| Exhibit 95 | Corporate records of RV Enterprises |
| Exhibit 96 | Corporate records of PH Investments |
| Exhibit 97 | Corporate records of Elle International |
| Exhibit 98 | Corporate records of Raneil |
| Exhibit 99 | Extract of Raneil's trade name registered with the ASIC |
| Exhibit 100 | Extract of the website: acuityhomeloans.com.au |
| Exhibit 101 | Extract of a publication by Mortgage Professional Australia |
| Exhibit 102 | Extract of an article published on Australian Broker News dated 17 June 2013 |

19 June 2025

| Exhibit | Description |
|---------|-------------|
| Exhibit 103 | Extract of an article published on Tai Chinh Cuoc Song dated 25 April 2025 |
| Exhibit 104 | Litigation searches on Ranjit in Singapore |
| Exhibit 105 | NPII search report of Ranjit |
| Exhibit 106 | Company summary of ACN 101 |
| Exhibit 107 | ACN 101's presentation of accounts and statement for May to October 2012 |
| Exhibit 108 | ACN 101's notification of court action relating to winding-up |
| Exhibit 109 | Company summary of ACN 075 |
| Exhibit 110 | ACN 075's presentation of accounts and statement for April to June 2017 |
| Exhibit 111 | ACN 075's notification of court action relating to winding-up |
| Exhibit 112 | Magnolia Grove's notification of appointment or cessation of an external administrator |
| Exhibit 113 | Magnolia Grove's presentation of accounts and statement for November 2011 |
| Exhibit 114 | Company summary of Magnolia Grove |
| Exhibit 115 | Woodbend's accounts and statement by liquidator |
| Exhibit 116 | Company summary of Woodbend |
| Exhibit 117 | Murlvent's accounts and statement by liquidator |
| Exhibit 118 | Company summary of Murlvent |
| Exhibit 119 | Transcript of a biographical video on YouTube by the University of Central Missouri, with the YouTube website: https://www.youtube.com/watch?v=DNYJkRdepOw |
| Exhibit 120 | Extract of Don's LinkedIn profile |
| Exhibit 121 | Director details for Elite Global |
| Exhibit 122 | Extract of the company officers and persons with significant control of Elite Crown Diamond |
| Exhibit 123 | Corporate records of Neighborhood Power Inc |
| Exhibit 124 | Corporate records and filings of Nissanka Associates LLC |
| Exhibit 125 | Corporate records and filings of Exergonix |
| Exhibit 126 | Corporate records and filings of Kokam America |
| Exhibit 127 | List of distinguished international alumni recognised by the University of Central Missouri and Exhibit 119 UCM Distinguished Alumni 2006 - Don Nissanka for the YouTube video by UCM featuring Don |
| Exhibit 128 | Written testimony by Don to the US Senate Committee on Commerce, Science, and Transportation |
| Exhibit 129 | Extract of the user's profile on Reddit regarding Don |
| Exhibit 130 | Extract of the user's profile on Quora regarding Don |
| Exhibit 131 | Extract of the user's profile on Medium regarding Don |
| Exhibit 132 | Extract of the user's profile on Quora regarding Don |
| Exhibit 133 | Extract of the user's profile on Behance regarding Don |
| Exhibit 134 | Extract of the user's profile on Adobe Lightroom |
| Exhibit 135 | Extract of the website "issuu.com/donnissankasteal" |
| Exhibit 136 | Extract of the blog post on Scam Survivors |
| Exhibit 137 | Extract of the transcript of the podcast |
| Exhibit 138 | Extract of the website: mimoo19dzexergonix.blogspot.com |
| Exhibit 139 | Extract of the website: https://mimoo19dzexergonix.blogspot.com/2017/07/owners-of-this-scam-4-nigel-sandor.html |
| Exhibit 140 | Extract of the website: https://mimoo19dzexergonix.blogspot.com/2017/07/owners-of-this-scam-5-jarle-thorsen_17.html |
| Exhibit 141 | Extract of the website xecpower.wordpress.com |
| Exhibit 142 | Extract of the publication on BehindMLM dated 13 October 2016 |
| Exhibit 143 | Extract of the publication on BehindMLM dated 26 June 2017 |
| Exhibit 144 | Announcement by Exergonix dated 20 June 2017 |
| Exhibit 145 | Extract of the article dated 17 June 2010 on Realtid, an independent Swedish news platform |
| Exhibit 146 | Extract of the article dated 12 September 2023 on Expansion, a Spanish digital news outlet |
| Exhibit 147 | Extract of a Facebook post on Scammer Alert dated 28 November 2016 |
| Exhibit 148 | Judgement in relation to Mazuma Credit Union v. Exergonix, Inc. et al, Case No. 57-148-Y-00158-13 (American Arbitration Association) |
| Exhibit 149 | Case for the motion to enforce arbitration award in relation to Mazuma Credit Union v Exergonix, Inc. et al, Case No. 4:14-cv-00995 (US District Court for the Western District of Missouri) |
| Exhibit 150 | Docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. Eel al. Case No. 1516-CV00675 (Missouri Courts) |

19 June 2025

| Exhibit | Description |
|---------|-------------|
| Exhibit 151 | Docket filings in relation to Mazuma Credit Union v. Exergonix, Inc. Eel al. Case No. 1516-CV00675-01 (Missouri Courts) |
| Exhibit 152 | Motion by Mazuma to enforce the arbitration award |
| Exhibit 153 | Docket entries in relation to Nigel v. Exergonix Inc., case no. 2115-CV04585 (Jackson County Circuit Court, Missouri) |
| Exhibit 154 | Docket entries in relation to Nigel v Exergonix case no. 17160CV24484 (Missouri Courts) |
| Exhibit 155 | Shareholding records of Elite Crown Diamond |
| Exhibit 156 | Extract on the definition of micro-entities from www.gov.uk |
| Exhibit 157 | Financial records for Elite Crown Diamond for FY2017 |
| Exhibit 158 | Financial records for Elite Crown Diamond for FY2018 |
| Exhibit 159 | Financial records for Elite Crown Diamond for FY2019 |
| Exhibit 160 | Financial records for Elite Crown Diamond for FY2020 |
| Exhibit 161 | Financial records for Elite Crown Diamond for FY2021 |
| Exhibit 162 | Financial records for Elite Crown Diamond for FY2022 |
| Exhibit 163 | Financial records for Elite Crown Diamond for FY2023 |
| Exhibit 164 | Financial records for Elite Crown Diamond for FY2024 |
| Exhibit 165 | Extract of Elite Crown Diamond's Facebook profile |
| Exhibit 166 | Extract of the Elite Crown Diamond's corporate website: elitecrowndiamond.com |
| Exhibit 167 | Extract of the archived website of elitecrowndiamond.com |
| Exhibit 168 | Extract of the email validation result for info@elitecrowndiamond.com |
| Exhibit 169 | Extract of the user's profile on Reddit regarding Ali |
| Exhibit 170 | Extract of the user's profile on F6S regarding Ali |
| Exhibit 171 | Corporate records of Elite Global |
| Exhibit 172 | Elite Global's registration number |
| Exhibit 173 | Cayman Islands Investment Funds frequently asked questions, extracted from cima.ky.s |
| Exhibit 174 | Extract of the profile of Kanika from Elite Global's corporate website |
| Exhibit 175 | Extract of LinkedIn profile of Kanika's LinkedIn profile |
| Exhibit 176 | Extract of Elite Global's advisors |
| Exhibit 177 | Extract of the user's profile on Reddit regarding Charles |
| Exhibit 178 | Extract of the user's profile on Quora regarding Brent |
| Exhibit 179 | Extract of the profile of Elite Global on the website: scamadviser.com |
| Exhibit 180 | Extract of similar reviews on the website: scamadviser.com |
| Exhibit 181 | Extract of the search results from the Cayman Islands General Registry |
| Exhibit 182 | Extract of the application for certificate of authority for Solar Tree |
| Exhibit 183 | Extract of the company details for Solar Tree from the Business Registration Division, Department of Commerce & Consumer Affairs |
| Exhibit 184 | Extract of Lankan's LinkedIn activities |
| Exhibit 185 | Extract of Lankan's LinkedIn activities |

# List of appendices

The following appendices form part of this report:

| Appendix | Description |
|---|---|
| Appendix A | Australia's and Singapore's regulatory bodies consulted |
| Appendix B | International and watchlists and databases consulted |
| Appendix C | Corporate interest and directorships of Lankan |
| Appendix D | Corporate interest and directorships of Ranjit |
| Appendix E | Relationship map |



19 June 2025

_____

Lynn-Yin Tan, Partner
for and on behalf of Grant Thornton Singapore Private Limited

<mark>[18]</mark> June 2025



*[End of Report]*