<u>IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES OF
THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE
(6TH EDITION, 1 AUGUST 2016)</u>

SIAC Arbitration No. 162 of 2024

Between

**BERHERO PTY LIMITED (T/A ACUITY FUNDING)**
(Australian Business No. 32 060 065 821)

…*Claimant*

And

**1.    THE ROE CORPORATION**
(DOS ID No. 2859163)

…*1st Respondent*

**2.    267 PARTNERS LLC**
(DOS ID No. 5606747)

…*2nd Respondent*

**3.    BUHM JUNG ROE**
(United States of America Passport No. 570672279)

…*3rd Respondent*

---

## STATEMENT OF DEFENCE

---

<u>COUNSEL FOR THE CLAIMANT</u>

**WONGPARTNERSHIP LLP**

12 Marina Boulevard
#28-01 MBFC Tower 3
Singapore 018982

Tiong Teck Wee / Samuel Teo / Donny Trinh

File ref:
KSY/TITW/STWK/DTBD/202400005

<u>COUNSEL FOR THE RESPONDENTS</u>

**SHOOK LIN & BOK LLP**

1 Robinson Road
#18-00 AIA Tower
Singapore 048542

David Chan / Daryl Fong / Denise Yong /
Mo Fei

File ref: DCN/DYF/DYY/MOF/2241019

<u>SOLE ARBITRATOR</u>

**Stuart Isaacs, KC**
9 Raffles Place, Level 57 and 58 Republic Plaza
Singapore 048619

Dated this 24th day of February 2025

## TABLE OF CONTENTS

1. **INTRODUCTION** ...................................................................................... **3**
    1.1. Preliminaries ................................................................................... 3
2. **DRAMATIS PERSONAE** ........................................................................ **3**
    2.1. The Claimant ................................................................................... 3
    2.2. The Respondents ............................................................................. 4
    2.3. Global Wise ..................................................................................... 5
3. **SUMMARY OF DEFENCE** ..................................................................... **5**
    3.1. Claim pleaded by Acuity ................................................................ 5
    3.2. The Respondents' defences ............................................................ 6
4. **RELEVANT FACTS TO THE DISPUTE** ............................................... **7**
    4.1. Events leading up to the execution of the LTS&CA ....................... 7
    4.2. Express terms of the LTS&CA ....................................................... 9
    4.3. Terms implied into the LTS&CA ................................................. 11
    4.4. The Conditional Offer .................................................................. 12
    4.5. Events after the Conditional Offer .............................................. 20
5. **THE RESPONDENTS' DEFENCES** ...................................................... **21**
    5.1. Acuity is not entitled to the Fund Arrangement Fee or Late Payment Interest under the express terms of the LTS&CA ............................................................ 21
    5.2. The LTS&CA has been terminated by reason of Acuity's breach of the Implied Terms ........................................................................................................ 22
    5.3. The LTS&CA are void or voidable for unilateral mistake in fact ............................. 23
    5.4. The LTS&CA are voidable and have been rescinded by reason of Acuity's fraudulent misrepresentation ...................................................................................... 25
6. **CONCLUSION** ........................................................................................ **27**

1.      **<u>INTRODUCTION</u>**

1.1.    <u>Preliminaries</u>

1.1.1.    This is the 1st, 2nd, and 3rd Respondents' (collectively, the "**Respondents**") Statement of Defence (the "**Defence**") in SIAC Arbitration No. 162 of 2024 (this "**Arbitration**").

1.1.2.    Unless otherwise stated, the terms and definitions used in the Claimant's Statement of Claim dated 13 January 2025 ("**SOC**") are adopted herein strictly for convenience and without any admission to the accuracy thereof.

1.1.3.    This Defence is filed without prejudice to the Respondents' rights to:

      (a)    request for production of documents in this Arbitration; and

      (b)    to plead further to the allegations in the SOC after such discovery has been provided in the Arbitration.

2.      **<u>DRAMATIS PERSONAE</u>**

2.1.    <u>The Claimant</u>

2.1.1.    The Claimant ("**Acuity**") is an Australian private company trading with the business name "Acuity Funding".[1]

2.1.2.    Mr. Ranjit Prithviraj Thambyrajah ("**Mr. Thambyrajah**") is the Managing Director of Acuity as well as its sole shareholder, sole director and company secretary.[2]

---

[1] **R-001**, Acuity's profiles on the Australian Business Register and Australian Securities & Investments Commission ("**ASIC**")
[2] **R-002**, Mr. Thambyrajah's profile on eSearch (register of information maintained by an ASIC-approved information broker)

2.1.3.    Mr. Viet Anh Nguyen ("**Mr. Nguyen**") is an individual who holds himself out, in his emails with the Respondents, to be the "Director (Vietnam)" of Acuity, but is not a registered director of Acuity.[3]

2.1.4.    Dr. John Hwang Gi Sun ("**Dr. Hwang**") is an individual in respect of whom Acuity has represented, in correspondence with the Respondents, to be a business associate of Acuity.[4]

2.1.5.    By reason of the above, [2] of the SOC is admitted.

2.2.    <u>The Respondents</u>

2.2.1.    The 1st Respondent ("**Roe Corp**") is a corporation incorporated in New York, The United States of America.[5] Roe Corp is owned by the 3rd Respondent and his three children, who each hold 25% of its shares.[6] Roe Corp is in the business of real estate and, amongst others, develops or redevelops real estate projects in New York for profit.

2.2.2.    The 2nd Respondent ("**267LLC**") is a limited liability company incorporated in New York, the United States of America.[7] 267LLC is solely owned by the 3rd Respondent.[8] 267LLC owns the land and the property situated at 267 Broadway, New York, United States, NY 10007 ("**267 Broadway**"), which is planned to be redeveloped by Roe Corp ("**Project**"). The Project involves a demolition of the existing property at 267 Broadway to make way for the construction of a large-scale super luxury condo at the premises, with both retail units and residential apartments.[9]

---

[3] **R-003**, Acuity's profile on eSearch (ASIC Approved Information Broker). See also **C-002**, email from Mr. Nguyen to Dr. Hwang and the Respondents
[4] **R-004**, Letter from WongPartnership LLP ("**WongPartnership**") (acting as counsel for Acuity) to the Respondents' American counsel Amini LLC ("**Amini**") dated 26 February 2024
[5] **C-002**, Department of State Division of Corporations Entity Information on Roe Corp
[6] **C-003**, Table of shareholding for Roe Corp as of 10 October 2023
[7] **C-004**, Department of State Division of Corporations Entity Information on 267LLC
[8] **C-003**, Table of shareholding for 267LLC as of 10 October 2023
[9] **R-005**, Screengrab of The Roe Corporation's portfolio, accessible at https://www.roecorp.com/portfolio

2.2.3.    The 3rd Respondent ("**Mr. Roe**") is a citizen of the United States of America. Mr. Roe is the President and Chief Executive Officer of Roe Corp as well as the President and sole shareholder of 267LLC.[10]

2.2.4.    By reason of the above, [3]-[5] of the SOC are admitted.

2.2.5.    Mr. Park Sungwoo ("**Mr. Park**") was at all material times a consultant providing services to Mr. Roe.

2.3.    Global Wise

2.3.1.    Global Wise Investments Pte. Ltd. ("**Global Wise**") is a company incorporated in Singapore bearing Unique Entity Number 201605565K with its registered address at 10 Anson Road, #10-11, International Plaza, 079903 Singapore.[11] Global Wise is the entity which issued the Conditional Offer, the alleged loan offer which features in Acuity's claim in this Arbitration.[12]

2.3.2.    Mr. Bal Lankan ("**Mr. Lankan**") is the Chairman and sole shareholder of Global Wise, as well as one of its two directors.[13]

3.    **SUMMARY OF DEFENCE**

3.1.    Claim pleaded by Acuity

3.1.1.    Acuity's claim in this Arbitration is premised on the LTS&CA, pursuant to which it claims that the Fund Arrangement Fee and Late Payment Interest are due and payable by the

---

[10] **C-002**, Scan of Mr. Roe's passport page and Department of State Division of Corporations Entity Information on Roe Corp and **C-004**, Department of State Division of Corporations Entity Information on 267LLC
[11] **R-006**, Singapore Accounting and Corporate Regulatory Authority ("**ACRA**") business profile of Global Wise dated 22 April 2024
[12] SOC at [14] and **C-008**, Conditional Offer
[13] **R-007**, ACRA people profile of Mr. Lankan dated 23 April 2024 and **R-006**, ACRA business profile of Global Wise dated 22 April 2024

Respondents to Acuity.[14] Acuity's case is that it was only contractually obliged to introduce, organise, arrange or obtain loan funds for the Project[15] and that it would be immediately entitled to payment (i.e. the Fund Arrangement Fee and Late Interest Payment) upon one of the following conditions set out at Clause 4 of the Costs Agreement ("**CA**") being satisfied:

    (a)    A loan is conditionally approved to the Respondents in the terms of the Loan Term Sheet ("**LTS**");

    (b)    A discussion paper is issued in accordance with the terms of the LTS;

    (c)    A terms sheet is issued in accordance with the terms of the LTS; or

    (d)    A loan proposal is issued in accordance with the terms of the LTS.[16]

3.1.2.    Acuity further alleges that the Conditional Offer issued by Global Wise was arranged by Acuity and that Acuity thereby performed its obligations as required in Clause 4 of the CA.[17]

3.2.    <u>The Respondents' defences</u>

3.2.1.    The Respondents' defences in this Arbitration are summarised as follows:

    (a)    The Conditional Offer is not issued in accordance with the terms of the LTS and Acuity and Acuity's procurement of the Conditional Offer does not discharge its obligations pursuant to Clause 4 of the CA. Acuity is therefore not entitled to the Fund Arrangement Fee and Late Interest Payment under the LTS&CA;

---

[14] SOC at [19]-[20]
[15] SOC at [7a]
[16] SOC at [9]-[10]
[17] SOC at [14]

(b)    Acuity is in breach of and/or has not fulfilled its contractual obligations under terms implied in fact into the LTS&CA, such that:

    (i)    Acuity is not entitled to the Fund Arrangement Fee and Late Payment Interest; and

    (ii)    Acuity has breached conditions of the LTS&CA, and the breaches have caused the Respondents to be deprived of substantially the whole of the benefit of the LTS&CA, such that the Respondents are entitled to and have validly terminated the LTS&CA;

(c)    Further and/or in the alternative, the LTS&CA are void due to a unilateral mistake at common law on the Respondents' part as to a fundamental term of the LTS&CA of which Acuity had actual knowledge;

(d)    Further and/or in the further alternative, the LTS&CA are voidable and the Respondents have rescinded the LTS&CA due to a unilateral mistake in equity on the Respondents' part as to a fundamental term of the LTS&CA, of which Acuity had constructive knowledge and in relation to which Acuity has engaged in unconscionable conduct; and

(e)    Further and/or in the further alternative, the LTS&CA are voidable and the Respondents have rescinded the LTS&CA by virtue of Acuity's fraudulent misrepresentation.

## 4.    RELEVANT FACTS TO THE DISPUTE

4.1.    Events leading up to the execution of the LTS&CA

4.1.1.    In or around July 2023, the Respondents were seeking funding for the Project. Such funding would include a construction loan of up to around USD 280 million ("**Intended Loan**").

4.1.2.    On or about 26 July 2023, the Respondents were introduced to Acuity by Mr. Park and subsequently engaged in email correspondence with Acuity's representatives, Dr. Hwang and Mr. Nguyen, regarding funding for the Project.[18]

4.1.3.    By way of an email dated 6 September 2023, Mr. Park wrote to Mr. Nguyen to state *inter alia* that the Respondents did not have sufficient capital to develop the Project, due to another "Midtown Manhattan Project."[19] Acuity was therefore made aware that the Respondents required the Intended Loan to fund the Project as the Respondents did not have sufficient funds to finance the Project on their own.

4.1.4.    By way of letter dated 24 September 2023, Mr. Nguyen provided a draft of the LTS&CA to the Respondents.[20]

4.1.5.    Pursuant to Clause 3 of the draft CA read with Clause 5 of the draft LTS,[21] Acuity represented to the Respondents that it would introduce, organise, arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS (the "**Representation**"). The relevant clauses provide as follows:[22]

<u>**LTS**</u>

| | | |
|---|---|---|
| 5 | Purpose: | A loan to assist The Roe Corporation (DOS ID: 2859163) and 267 Partners, LLC, (DOS ID: 5606747) for the development of the Project Tribeca Manhattan Super Luxury Condo Project, 265-267 Broadway, New York, NY United States 10007 [(the "**Purpose**")] |

---

[18] **C-002**, Email from Dr. Hwang to Mr. Park and Mr. Nguyen, with Mr. Roe in copy, dated 26 July 2023
[19] **R-009**, Email from Mr. Park to Mr Nguyen dated 6 September 2023 at pp. 7-8
[20] **C-005**, LTS&CA
[21] **C-005**, LTS&CA
[22] **C-005**, LTS&CA

**CA**

| | | |
|---|---|---|
| 3. | Exclusive Agency | The Applicants [the Respondents] engage the facilitator [Acuity] to the exclusion of all others unless otherwise stated in this document, for the purposes of either introducing, organising, arranging or obtaining loan funds in the sum described in clause 3 of the Loan Term Sheet, ('the advance') for the purpose as set forth in clause 5 of the Loan Term Sheet ('the purpose'). … |

4.1.6.    On or about 30 September 2023, Mr. Roe signed and executed the LTS&CA on behalf of the Respondents.[23] The Respondents aver that the Representation was operative in the mind of Mr. Roe in executing the LTS&CA on behalf of the Respondents. The Respondents further aver that the Respondents therefore entered into the LTS&CA in reliance on the Representation.

4.1.7.    By reason of the above, [6] of the SOC is admitted save that the LTS&CA was executed on or around 30 September 2023.

4.2.    Express terms of the LTS&CA

4.2.1.    Clause 12 of the LTS and Clause 4 of the CA provide as follows:[24]

**LTS**

| Clause | Subtitle | Description |
|---|---|---|
| 1 | Borrowers: | 1. The Roe Corporation (DOS ID: 2859163) |
| 2 | Guarantors: | 1. The Roe Corporation (DOS ID: 2859163)<br>2. 267 Partners, LLC, (DOS ID: 5606747)<br>3. Mr Buhm Jung Roe |
| 3 | Loan Amount: | **Loan amount to be up to approximately USD 280,000,000** to be drawn down in tranches ... |
| …<br>12 | Fund Arrangement Fees | **Fund Arrangement Fee of 4% plus VAT/GST/Etc (if required to be collected) of the loan amount as described in point 3 of this Loan Term Sheet and point 4 of the Cost Agreement**. This fee |

---

[23] **R-009**, Email from Mr. Park to Mr. Nguyen dated 30 September 2023 and Mr. Nguyen's reply email with *inter alia* Mr. Roe and Mr. Thambyrajah in copy dated 29 September 2023 at p. 5
[24] **C-005**, LTS&CA

**LTS**

| Clause | Subtitle | Description |
|---|---|---|
| | | represents only the fee due to Berhero Pty Ltd t/as Acuity Funding.<br><br>PLUS<br><br>Transfer of 50% of all types of share of the project holding entity and any Project Company/ Project Management entities that might be set up in the future for the developments [("**Project Shares**")] to a nominated entity by Berhero Pty Ltd trading as Acuity Funding. These shares are to be net of all liabilities.<br>…<br><div align="right">[emphasis added]</div> |

**CA**

**Between**
Berhero Pty Limited trading as Acuity Funding
(the "facilitator")
**And**
Mr Buhm Jung Roe
President
The Roe Corporation
DOS ID: 2859163
267 Broadway, 2nd Floor, New York, NY, United States, 10007
267 Partners, LLC,
DOS ID: 5606747
267 Broadway, 2nd Floor, New York, NY, United States, 10007
(the applicants")

| Clause | Title | Description |
|---|---|---|
| 4. | Fee Amounts | A total non-refundable processing fee of USD 100,000 due upon signing of this Loan Term Sheet and Costs Agreement.<br><br>**In the event that the loan is conditionally approved to the Applicants, or a discussion paper is issued or a terms sheet is issued or a loan proposal is issued in the terms of the Loan Term Sheet, then the Fund Arrangement Fees set forth in clause 12 of the Loan Term Sheet ("Fund Arrangement Fee") shall become immediately due and payable by the Applicants to the facilitator.**<br>…<br><br>**If the fund arrangement fee is not immediately paid to the facilitator then interest will accrue on the fund arrangement fee at 2% per month, calculated daily and compounded and capitalised at the end of each month, from the** |

> **date that the fees become due and payable ("interest")** and the applicants will be liable to pay the interest to the facilitator on the fund arrangement fee until the whole of the amount due and payable including interest is paid by the Applicants to the facilitator.
>
> …
>
> [emphasis added]

4.2.2.    [7]-[14] of the SOC are also admitted insofar as they accurately reproduce the terms of the LTS&CA.

4.3.    <u>Terms implied into the LTS&CA</u>

4.3.1.    The Respondents aver that the following terms are implied in fact into the LTS&CA:

(a)    That Acuity would procure a conditionally-approved loan, or a discussion paper or a terms sheet or a loan proposal in the terms of the LTS from a lender that was ready, willing and able to provide the Intended Loan to the Respondents;

(b)    At the time that the conditionally-approved loan, discussion paper or terms sheet or loan proposal in the terms of the LTS was procured by Acuity, the lender would be in a position to demonstrate or prove to the Respondents that they were ready, willing and able to provide the Intended Loan; and/or

(c)    That Fund Arrangement Fee would only become due and payable to Acuity upon Acuity procuring a conditionally-approved loan, or a discussion paper or a terms sheet or a loan proposal in the terms of the Loan Term Sheet from a lender that was ready, willing and able to provide the Intended Loan to the Respondents

(collectively, the "**Implied Terms**", each an "**Implied Term**").

4.3.2.    The Respondents aver that a gap in the LTS&CA arises without the Implied Terms and that the Implied Terms will provide business efficacy to the transaction between Acuity and the

Respondents. The Respondents further aver that the stated purpose of the LTS&CA cannot be achieved without the Implied Terms being implied into the LTS&CA:

(a)    The Purpose of the LTS&CA was for Acuity to introduce, organise, arrange or obtain loan funds to fund the Project. We repeat paragraph [4.1.5] above.

(b)    The Implied Terms were not expressly provided for in the LTS&CA and the parties did not contemplate the Implied Terms prior to the execution of the LTS&CA.

(c)    There is a gap in the LTS&CA in that the Purpose cannot be fulfilled without the imposition of the Implied Terms.

(d)    The Implied Terms are necessary in the business or commercial sense to fill the aforesaid gap in the LTS&CA and to give the contract business efficacy. Without the Implied Terms, the Purpose of the LTS&CA would be rendered nugatory.

4.3.3.    The Respondents aver that it is commercially unreasonable and/or legally unsustainable for the Respondents to be required to pay the Fund Arrangement Fee and Late Payment Interest in circumstances where Acuity procures a conditionally-approved loan, or a discussion paper or a terms sheet or a loan proposal in the terms of the LTS from a lender that was not ready, willing and able to provide the Intended Loan to the Respondents. The Respondents further aver that Acuity's procurement of a lender that was not ready, willing and able to provide the Intended Loan would not be in accordance with the Purpose.

4.4.    The Conditional Offer

4.4.1.    By way of an email dated 24 October 2023,[25] Mr. Nguyen provided the Respondents with a "Conditional Letter of Offer for Mortgage Finance" dated 20 October 2023 i.e., the Conditional Offer.[26] The Conditional Offer was addressed to the Respondents, care of Acuity, issued by Global Wise and purportedly signed by Mr. Lankan as Chairman of Global Wise.

4.4.2.    The Respondents aver that the Conditional Offer was not issued in accordance with the terms of the LTS.

**<u>Particulars</u>**

(a)    Under "Conditions Precedent" in the Conditional Offer, sixteen different conditions precedent would be required to be fulfilled "prior to provision of funding" ("**Conditions Precedent**"). The Conditions Precedent are not present in the LTS.

(b)    Under "Other Conditions" in the Conditional Offer, several other drawdown conditions ("**Drawdown Conditions**") would need to be met for each drawdown on the loan, i.e. requirements for the loan monies to be disbursed.[27] The Drawdown Conditions are not present in the LTS.

(c)    Under "Terms and Conditions" in the Conditional Offer, the borrower (i.e. Roe Corp) would have been required to drawdown on the loan within ninety days of the date of acceptance (i.e. the Conditions Precedent and Drawdown Conditions would need to be satisfied within the timeframe) or the Conditional Offer would be withdrawn. This requirement is not present in the LTS.

---

[25] **R-009**, Email from Mr. Nguyen to Mr. Park with *inter alia* Mr. Roe and Mr. Thambyrajah in copy dated 24 October 2023 at p. 1
[26] **C-008**, Conditional Offer
[27] **C-008**, Conditional Offer

(d)     The Conditional Offer requires security in the form of "Personal Guarantees from any shareholders of The Roe Corporation (DOS ID: 2859163) with a shareholding greater than 9% of total shares". The LTS only provided for "Personal guarantees from Mr Buhm Jung Roe and any associated companies to this transaction for total loan debt."

A comparison of the terms of the Conditional Offer and the LTS is appended hereto at **Annex A**.

4.4.3.    To date, the Respondents have not accepted the Conditional Offer.

4.4.4.    The Respondents aver that the terms of the Conditional Offer are commercially unreasonable and/or unworkable.

<u>**Particulars**</u>

(a)     Seven of the Conditions Precedent were to be unilaterally satisfied by Global Wise as the "Lender/Funds Provider" and/or external third parties, i.e. the Respondents would not have control over when and how these Conditions Precedent would be satisfied:

(i)     The valuation report would need to be prepared and found to be satisfactory by Global Wise in all respects;

(ii)    The loan/security documentation would need to be perfected or executed to the full satisfaction of Global Wise and/or its legal advisers;

(iii)   Global Wise would need to conduct satisfactory credit reference checks;

(iv)    Global Wise would need to be satisfied with all relevant consultants, contractors, sub-contractors and all associated contractual arrangements, presumably in respect of the Project;

(v)    Global Wise would need to accept and appoint a quantity surveyor and its report would need to be vetted and found to be acceptable by Global Wise in all respects;

(vi)    The builder would need to be approved by Global Wise after further due diligence on the building company; and

(vii)    Third party civil and structural engineering reports would need to be provided and accepted by Global Wise.

(b)    However, Roe Corp as the borrower under the Conditional Offer would have been required to draw down on the loan within only 90 days of the date of acceptance or the Conditional Offer would be withdrawn.

(c)    The Conditional Offer also provides that USD 450,000 would be payable to Global Wise upon acceptance of the Conditional Offer, with USD 2,350,000 payable to Global Wise on first drawdown of funds under the Conditional Offer.

(d)    As such, the Conditional Offer would have required the Respondents to pay USD 2,800,000 to Global Wise, on top of the Fund Arrangement Fee and Late Payment Interest to be paid to Acuity, without having obtained any loan monies from Global Wise.

4.4.5.    The Respondents aver that, at the time that the Conditional Offer was issued:

(a)    Global Wise did not have the funds required to provide the Intended Loan;[28]

(b)    Global Wise was unable to demonstrate or prove to the Respondents that it either: (i) had secured the funds from any party; or (ii) would be able to procure such funds for the purpose of the Intended Loan;[29]

(c)    Global Wise had no track record of having provided financing comparable to the size of the Intended Loan;

(d)    Global Wise did not intend for the Respondents to be able to draw down on the Intended Loan pursuant to the Conditional Offer; and

(e)    Global Wise was not therefore a lender who was ready, willing and able to provide the Intended Loan.

4.4.6.    The Respondents aver that Acuity has consistently demonstrated, in its past dealings with other entities in similar positions to the Respondents, that Acuity was unable to follow through on its promises to procure loans from lenders that were ready, willing and able to provide the agreed-upon loans with those entities.

## Particulars

(a)    Acuity had previously failed in its claim for its brokerage fees in an arbitration which was the subject matter of *Berhero Pty Ltd (trading as Acuity Funding) v Dinsey* [2013] QCATA 311 (Queensland Civil and Administrative Tribunal). In those proceedings, Acuity only provided the would-be borrower with a preliminary document that was never followed up with a more concrete offer.

---

[28] **R-008**, Letter from WongPartnership (acting as counsel for Global Wise) to Amini dated 18 March 2024
[29] *Ibid.*

The Tribunal held that fees paid under the brokerage agreement were for a service that was never performed.[30]

(b)   Acuity failed in its claim for its brokerage fees before the New South Wales Supreme Court in *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011), on the grounds that Acuity only obtained a National Australia Bank discussion paper instead of the conditional loan approval required under the brokerage agreement.[31]

(c)   Acuity failed in its claims for its brokerage fees before the New South Wales Supreme Court in *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019)[32] and *Berhero Pty Ltd v Hinds* [2023] NSWSC 1022 (30 August 2023)[33], on the grounds that Acuity had only obtained an "Expression of Interest" from ANZ Bank which was not sufficient to entitle Acuity to payment of its fees. The relevant brokerage agreement obliged Acuity to obtain finance for the purchase of a plot of land, and what Acuity delivered was not in substantial compliance with what the brokerage agreement required.

(d)   Additionally, in SIAC Arbitration No. ARB 946/20/JZH between claimants Acuity and Global Wise and four Vietnamese respondents who required a loan to construct and develop a property, the 1st respondent therein entered into a loan brokerage agreement with Acuity and subsequently a facility agreement with Global Wise, arranged by Acuity. However, the 1st respondent was unable to pay

---

[30] **R-010**, *Berhero Pty Ltd (trading as Acuity Funding) v Dinsey* [2013] QCATA 311
[31] **R-011**, *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011)
[32] **R-012**, *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019)
[33] **R-013**, *Berhero Pty Ltd v Hinds* [2023] NSWSC 1022 (30 August 2023)

Acuity's fund arrangement fee and Global Wise's front-end fee and no loan monies were disbursed.[34]

4.4.7.    To date, the Respondents have not entered into a loan agreement with Global Wise and/or any other party for the provision of the Intended Loan to the Respondents and/or obtained the funds representing the Intended Loan pursuant to any loan agreement with Global Wise and/or any other party.

4.4.8.    The Respondents further aver that Acuity attempted to pressure the Respondents to accept the Conditional Offer despite the differences in terms between the Conditional Offer and the LTS.

## Particulars

(a)    By way of an email dated 31 October 2023, Mr. Nguyen provided the Respondents with drafts of a "Deed of Agreement confirming our commission" and "the Addendum in relation to the proposed escrow account and drawdown".[35]

(b)    The draft "Deed of Agreement" dated 23 October 2023 ("**Draft DOA**") provided for the Respondents to, *inter alia*:[36]

(i)    "acknowledge and accept the terms and conditions precedent contained in the [Conditional Offer]";

---

[34] **R-014**, Singapore International Arbitration Centre ("**SIAC**") Final Award No. 068 of 2022 and **R-015**, SIAC Correction to Final Award No. 068(a) of 2022

[35] **R-016**, Email from Mr. Nguyen to Mr. Park and Mr. Roe, with *inter alia* Dr. Hwang and Mr. Thambyrajah in copy, dated 31 October 2023, at p. 1

[36] **R-016,** Draft "Deed of Agreement" dated 23 October 2023 attached to the email dated 31 October 2023 from Mr. Nguyen to Mr. Park, at pp. 2-4

(ii)     "acknowledge that if there exist any difference in the terms, conditions or nature of the funding between the [Conditional Offer] and the [LTS & CA] that these are acceptable to [the Respondents] and both documents remain valid and enforceable."

(c)     The draft "Addendum" dated 1 November 2023 ("**Draft Addendum**") required the Respondents to acknowledge and agree to, *inter alia*, "The [Draft DOA] being executed immediately".[37]

(d)     By way of an email dated 23 November 2023, Mr. Nguyen wrote to the Respondents to state that "a Letter of Demand for fee payment and the cancellation of [the Conditional Offer] will be issued…To avoid the event, we must receive a copy of a fully signed [Conditional Offer]".[38]

(e)     By way of a letter dated 29 November 2023 to the Respondents, Acuity demanded, amongst others, that the Respondents confirm that they would be proceeding by *inter alia*:

(i)     "signing the lapsed [Conditional Offer] with a written request for an extension of time"; and

(ii)     "signing the [Draft DOA] or make [sic] full payment of Acuity's fees and transfer of the shares now due to [Acuity]".[39]

---

[37] **R-016**, Draft "Addendum" dated 1 November 2023 attached to the email dated 31 October 2023 from Mr. Nguyen to Mr. Park, at pp. 5-7
[38] **R-017**, Email from Mr. Nguyen to Mr. Park, with *inter alia* Mr. Roe, Dr. Hwang and Mr. Thambyrajah in copy, dated 23 November 2023
[39] **R-018**, Email sent by Mr. Thambyrajah to Mr. Roe and Mr. Park on or about 29 November 2023, attaching *inter alia* Letter from Acuity to the Respondents dated 29 November 2023 entitled "Letter AF291123" at pp. 3-4

4.5.    <u>Events after the Conditional Offer</u>

4.5.1.    By way of an email dated 16 February 2024, Mr. Park informed Dr. Hwang that the Respondents intended to proceed on the basis that the LTS&CA would be null and void and to "start again" as Mr. Roe could "reconsider getting a new loan that would be mutually beneficial if [Acuity] provide[d] him [with] its track record and sources of fund[s]" ("**Termination Email**").[40]

4.5.2.    By way of letters dated 29 January 202[41] and 20 February 2024[42] from the Respondents' legal counsel Amini LLC to WongPartnership LLP (counsel for Global Wise), the Respondents stated that "[w]ithout any visible business or activity that justifies the arrangement Global Wise is allegedly claiming to have the wherewithal for, much more would be required in due diligence before [the Respondents] would entertain any proposal from them, much less pay in advance" and requested for:

(a)    a detailed history of Global Wise's business and activities, with specific references to verifiable comparable lending arrangements to the one it has proposed here; and

(b)    proof that Global Wise has the funds it has claimed.

(collectively, the "**Requested Information**")

---

[40] **R-019**, Email from Mr. Park to Dr. Hwang dated 15 February 2024
[41] **R-020**, Letter from Amini to WongPartnership (acting as counsel for Global Wise) dated 29 January 2024
[42] **R-021**, Letter from Amini to WongPartnership (acting as counsel for Global Wise) dated 20 February 2024

4.5.3.    By way of letter from WongPartnership LLP to Amini LLC dated 18 March 2024,[43] Global Wise responded to *inter alia* the letters from Amini LLC dated 29 January 2024 and 20 February 2024. However, Global Wise failed and/or refused and/or neglected to provide the Requested Information.

4.5.4.    Global Wise was not a lender who was ready, willing and able to provide the Intended Loan to the Respondents at the time the Conditional Offer was made. Acuity has nevertheless claimed for the Fund Arrangement Fee, Late Payment Interest and Project Shares from the Respondents. [15]-[18] of the SOC are admitted.

## 5.    THE RESPONDENTS' DEFENCES

5.1.    Acuity is not entitled to the Fund Arrangement Fee or Late Payment Interest under the express terms of the LTS&CA

5.1.1.    The Respondents aver that the terms of the Conditional Offer materially differ from the terms of the LTS, such that the Conditional Offer was not issued in terms of the LTS.

## Particulars

(a)    Paragraphs [4.4.2]-[**Error! Reference source not found.**] and [4.4.5] above are repeated

5.1.2.    The Respondents therefore aver that the Fund Arrangement Fee was not immediately due and payable on 20 October 2023 by the Respondents or at all:[44]

## Particulars

---

[43] **R-008**, Letter from WongPartnership (acting as counsel for Global Wise) to Amini dated 18 March 2024
[44] SOC at [14]

(a)     Pursuant to Clause 4 of the CA,[45] the Fund Arrangement Fee is only immediately due and payable "[i]n the event that the loan is conditionally approved to the Applicants, or a discussion paper is issued or a terms sheet is issued or a loan proposal is issued in the terms of the Loan Term Sheet".

(b)     The Conditional Offer[46] was not issued "in the terms of the Loan Term Sheet".

5.1.3.    [14] of the SOC is therefore denied insofar as it alleges that the Fund Arrangement Fee was immediately due and payable on 20 October 2023 and that the Late Payment Interest accrued from 21 October 2023. [19] of the SOC is also denied.

5.2.    <u>The LTS&CA has been terminated by reason of Acuity's breach of the Implied Terms</u>

5.2.1.    The Respondents aver that Acuity breached and/or failed to fulfil the conditions imposed by the Implied Terms as:

(a)     Global Wise was not a lender who was ready, willing and able to provide the Intended Loan to the Respondents at the time the Conditional Offer was made. Acuity is therefore in breach of the Implied Term pleaded at [4.3.1(a)];

(b)     Global Wise was not a lender that was in a position to demonstrate or prove to the Respondents that they were ready, willing and able to provide the Intended Loan at the time the Conditional Offer was made. Acuity is therefore in breach of the Implied Term pleaded at [4.3.1(b)]; and

---

[45] **C-005**, LTS&CA
[46] **C-008**, Conditional Offer

(c)     Acuity has not fulfilled the conditions of the Implied Term pleaded at [4.3.1(c)], such that Acuity is not entitled to the Fund Arrangement Fee and Late Payment Interest.

**<u>Particulars</u>**

(a)     Paragraphs [4.3]-[**Error! Reference source not found.**] above are repeated.

5.2.2.    The Respondents further aver that:

(a)     The Implied Terms are conditions of the LTS&CA and a breach of and/or a failure to fulfil the Implied Terms would cause the Respondents to be deprived of substantially the whole of the benefit of the LTS&CA; and

(b)     As such, following Acuity's breach of and/or a failure to fulfil the Implied Terms, the Respondents are entitled to terminate the LTS&CA and have done so by way of the Termination Email (see [4.5.1] above).

5.3.     <u>The LTS&CA are void or voidable for unilateral mistake in fact</u>

5.3.1.    In the alternative, the Respondents aver that they mistakenly believed, in entering into the LTS&CA, that the Implied Terms were part of the LTS&CA ("**Mistake**").

5.3.2.    The Respondents aver that the Mistake relates to the subject matter and/or fundamental terms of the LTS&CA.

**<u>Particulars</u>**

(a)     Paragraph [4.3.2] above is repeated.

5.3.3.    The Respondents aver that at all material times, Acuity had actual and/or constructive knowledge of the Mistake and that a reasonable person in Acuity's situation would have known that the Respondents were operating under the Mistake in entering into the LTS&CA.

**Particulars**

(a)    Paragraph [4.1.3] above is repeated. Acuity was aware, prior to the execution of the LTS&CA, that the Respondents did not have sufficient funds to finance the Project on their own and needed the Intended Loan to fund the Project.

(b)    Acuity was therefore aware that the Respondents required a loan offer from a lender that was ready, willing and able to provide the Intended Loan to the Respondents.

(c)    Following from (b) above, Acuity was aware that the Respondents were operating under the Mistake, i.e. that under the terms of the LTS&CA, Acuity would procure a conditionally approved loan, or a discussion paper or a terms sheet or a loan proposal in the terms of the LTS from a lender that was ready, willing and able to provide the Intended Loan to the Respondents, and that the Fund Arrangement Fee would only become due and payable to Acuity upon Acuity procuring the same.

5.3.4.    The Respondents also aver that Acuity had engaged in unconscionable conduct in relation to the Mistake.

**Particulars**

(a)    Acuity had deliberately not brought the suspicion of a possible mistake to the attention of the Respondents; and

(b)     Paragraph [4.4.5] above is repeated. After the LTS&CA was signed, Acuity sought to pressure the Respondents into accepting the Conditional Offer.

5.3.5.     As such, the Respondents aver that:

(a)     Following from [5.3.35.3.3] above, the LTS&CA are void at common law; and

(b)     Following from [5.3.35.3.1**Error! Reference source not found.**] above, the LTS&CA are voidable in equity and the Respondents have, by way of the Termination Email,[47] rescinded the LTS&CA.

5.3.6.     [11] of the SOC is therefore denied insofar as Acuity claims that it is indisputable that the LTS&CA was a valid, binding and enforceable agreement. [19] is also denied.

5.4.     <u>The LTS&CA are voidable and have been rescinded by reason of Acuity's fraudulent misrepresentation</u>

5.4.1.     Further and/or in the alternative to [4.2.25.2] and [5.3] above, the Respondents aver that the LTS&CA are voidable and have been rescinded by reason of Acuity's fraudulent misrepresentation and that Acuity is not entitled to enforce the LTS&CA.[48]

5.4.2.     The Respondents aver that the Representation induced the Respondents to enter into the LTS&CA.

**Particulars**

(a)     Paragraph [4.1.5] and [4.1.7] above are repeated.

---

[47] **R-019**, Termination Email
[48] **R-019**, Termination Email

5.4.3.    The Respondents aver that the Representation was false and that Acuity did not intend, at the time the Representation was made, to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project.

5.4.4.    The Respondents aver that Acuity made the Representation whilst knowing it to be false, or without belief in its truth, or reckless as to whether the Representation was true or false.

### **Particulars**

(b)    Acuity's *modus operandi* in respect of its previous clients is materially similar to its conduct in its dealings with the Respondents:

(i)    Paragraph [4.4.6] above is repeated.

(ii)    First, Acuity would represent to borrower(s) and/or guarantor(s) that it would be able to secure a loan for an intended purpose.

(iii)    On the basis of such representations, the borrower(s) and/or guarantor(s) would enter into a loan brokerage / fund arrangement agreement for the purposes of securing a loan. The loan brokerage / fund arrangement agreement would provide for Acuity to be entitled to a disproportionate sum as a fund arrangement / brokerage fee.

(iv)    However, Acuity would either (i) only provide a preliminary document that was never followed up with a more concrete offer such that there would ever be any hope of refinancing, or (ii) a loan offer which would provide for the lender to be entitled to a commercially unreasonable front-end fee prior to any loan drawdown.

       (v)    Acuity would then claim for its fund arrangement / brokerage fee against the borrower(s) and/or guarantor(s), regardless of whether the loan / funds sought actually materialised.

       (vi)    If the borrower(s) and/or guarantor(s) enter into the loan / facility agreement with the lender, the lender would then claim for its front-end fee, regardless of whether the loan / funds sought actually materialised.

  (c)    Acuity's *modus operandi* demonstrates:

       (i)    That Acuity did not intend and was never able to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project; and

       (ii)    That Acuity had made the Representation whilst knowing it to be false, or without belief in its truth, or reckless as to whether the Representation was true or false.

5.4.5.    The Respondents aver that they have, by way of the Termination Email,[49] rescinded the LTS&CA.

## 6.    **CONCLUSION**

6.1.1.    The Respondents deny each paragraph of the SOC and all of the claims of the SOC as if the same were set out herein and traversed *seriatim* and no admissions are made as to any fact, law or any other matter asserted in the SOC, save where expressly stated otherwise above.

---

[49] **R-019**, Termination Email

6.1.2.    The Respondents aver that Acuity is not entitled to any of the reliefs sought in the SOC and that Acuity's claim in this Arbitration must be dismissed with costs.


Dated this 24th day of February 2025


**SHOOK LIN & BOK LLP**
**SOLICITORS FOR THE RESPONDENTS**