## IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE (6TH EDITION, 1 AUGUST 2016)

SIAC Arbitration No. 162 of 2024

Between

**BERHERO PTY LIMITED (T/A ACUITY FUNDING)**
(Australian Business No. 32 060 065 821)

...*Claimant*

And

1. **THE ROE CORPORATION**
   (DOS ID No. 2859163)

   ...*1st Respondent*

2. **267 PARTNERS LLC**
   (DOS ID No. 5606747)

   ...*2nd Respondent*

3. **BUHM JUNG ROE**
   (United States of America Passport No. 570672279)

   ...*3rd Respondent*

---

## RESPONDENTS' DOCUMENT REQUESTS

---

| COUNSEL FOR THE CLAIMANT | COUNSEL FOR THE RESPONDENTS |
|---|---|
| **WONGPARTNERSHIP LLP** | **SHOOK LIN & BOK LLP** |
| 12 Marina Boulevard | 1 Robinson Road |
| #28-01 MBFC Tower 3 | #18-00 AIA Tower |
| Singapore 018982 | Singapore 048542 |
| | |
| Tiong Teck Wee / Samuel Teo / Frederick Teo / Donny Trinh | David Chan / Daryl Fong / Denise Yong / Mo Fei |
| | |
| File ref: | File ref: |
| KSY/TITW/STWK/DTBD/202400005 | DCN/DYF/DYY/MOF/2241019 |

## SOLE ARBITRATOR

**Stuart Isaacs, KC**
9 Raffles Place, Level 57 and 58 Republic Plaza
Singapore 048619

Dated this 29th day of April 2025

1.  The Respondents submit this request for document production in the form of a Stern Schedule for the Tribunal's determination in accordance with paragraph 12.6 and Annex A of the Procedural Order No. 1 dated 16 December 2024 ("**PO1**") and the Procedural Timetable appended to Procedural Order No. 2 dated 23 February 2025 ("**PO2**").

2.  Unless otherwise stated, the Stern Schedule below adopts all defined abbreviations and terms used in the pleadings filed in SIAC Arbitration No. 162 of 2024, including in the Statement of Reply dated 24 March 2025 ("**Reply**").

3.  The term "document" in the Stern Schedule below shall include without limitation, and without prejudice to the definition of "Document" contained in the International Bar Association Rules on the Taking of Evidence in International Arbitration as referred to at paragraph 12.2 of PO1, document, internal and external correspondence, emails, letters, facsimiles, reports, minutes, transcripts, video and audio recordings, text messages, messages exchanged on messaging platforms (including but not limited to, WhatsApp, Viber, Telegram, Signal, iMessage, WeChat, Facebook, Twitter / X, etc.), drafts, presentations, memoranda, studies, analyses, notes, diaries, calendars, preparatory papers, talking points, pitch books, speeches, financial statements, proposals and records, in whichever form, and in any media however stored, including without limitation on paper, electronic data files, audio recordings and video recordings.

4.  Requests for documents which are electronic in nature shall be for copies of the documents in their original native formats e.g. emails shall be produced in .msg formats.

5.  All references to a "document" include any translations of that document in the possession, custody or control ("**PCC**") of the Respondents and all previous versions of that document (including drafts, marked up versions, and/or versions with comments) in whichever form, certified or not, and in any media however stored.

6.  The phrase "relating to" means having any connection, association, or concern with, or any relevance, relation, pertinence or applicability to, or any implication for or bearing upon the subject matter of the request herein.

7. "Control" over a document includes any situation where a party has a right of access to the document.

8. Documents "sent" to or "received" by a person or party shall include documents copied or blind-copied to a person or party.

9. The documents requested herein are not in the Respondents' PCC.

10. Each of the requests herein relates to specific documents or specific categories of documents that are reasonably believed to exist and to be in the Claimant's PCC. The Claimant believes that the documents requested are in the Claimant's PCC because the requested documents: (i) were authored or received by the Claimant; and/or (ii) are documents which the Claimant would be expected to maintain; and/or (iii) have been referred to by the Claimant in their pleadings.

11. Insofar as any request for a category of documents includes documents already disclosed by the Claimant or Respondents in this arbitration, the request extends only to those documents in the category that have not previously been disclosed by the Claimant or Respondents.

12. Where, at any time following its production of documents requested herein or other response to the requests herein, the Claimant learn that their production or response was incomplete or incorrect, the Claimant shall immediately supplement or correct that production or response.

13. The Respondents reserve their rights to make further requests for production of documents in appropriate circumstances.

| Request Number | 1 | |
|---|---|---|
| **Description of Documents or Category of Documents Requested** | Global Wise's accounts and bank statements for the months of October 2023 to March 2024 | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that:<br><br>    1.1. the Implied Terms are part of the LTS&CA; and<br><br>    1.2. the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) did not have the funds required to provide the Intended Loan, (b) was unable to demonstrate that it had either secured funds from any party for the purpose of the Intended Loan or that it would be able to procure such funds and (c) did not intend for the Respondents to be able to draw down on the Intended Loan.<br><br>2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that:<br><br>    2.1. Global Wise continued to engage with the Respondents on the terms of the Conditional Offer even after solicitors were engaged; and<br><br>    2.2. Global Wise is a legitimate and credible lender who frequently works together with Acuity on project financing and puts together financing from its investors.<br><br>3. Though Acuity has pleaded that Global Wise is "*backed by investors*", Global Wise's accounts and bank statements would show if they had secured the funds/investments required to provide the Intended Loan.<br><br>4. The documents requested are therefore relevant and material to the disputed issues of whether Global Wise was a lender who was ready, willing and able to provide the Intended Loan, at the time of the Conditional Offer dated 20 October 2023 and | **C-008** (Conditional Offer)<br><br>Defence at [4.3], [4.4.5], **R-008** (Letter from WongP dated 18 March 2024)<br><br>Reply at [67], [96]-[98], **C-034** (Letter from Global Wise to Acuity dated 30 October 2024) |
| | **Comments** | | |

| | | | |
|---|---|---|---|
| | | the subsequent correspondence in which Acuity and/or Global Wise pressured the Respondents to accept the Conditional Offer.<br><br>5.    The documents requested are not in the Respondents' PCC.<br><br>6.    The documents requested ought to be in Acuity's PCC in view of Acuity's pleaded position on Global Wise's ability to lend, Acuity's alleged business as a loan broker, and Acuity's pleaded position that they "*frequently work together on project financing opportunities*" – whether because they were procured in the course of Acuity's due diligence into Global Wise's ability to lend, or because Acuity is able to obtain such documents from Global Wise as a long-time business partner/collaborator. In fact, Acuity has disclosed (**C-034**) a letter from Global Wise to Acuity which states that "*Thank you for your recent inquiry regarding the funding activities initiated by Global Wise Investments. We are pleased to provide the following information as a summary of the projects for which Global Wise Investments has facilitated and initiated funding arrangements.*" For the same reasons, it would not be unreasonably burdensome for Acuity to produce the documents requested. | |
| **Claimant's Response/Objections** | | 1.    Acuity objects to this request.<br><br>2.    The Respondents have not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules on Taking of Evidence in International Arbitration 2020 ("**IBA Rules**")).<br>    a.    It is pleaded at [98(a)] of Acuity's Statement of Reply dated 24 March 2025 ("**Reply**") that "*Global Wise is a private credit financier backed by investors*" and that "*Global Wise would put together the financing from its investors*". It is therefore clear that Global Wise does not provide financing from its own funds, but funds sourced from its investors.<br>    b.    Further, as far as Acuity is aware and based on Acuity's experience working with Global Wise, Global Wise's investors will usually disburse funds directly to the lender and the funds do not flow through Global Wise.<br>    c.    As such, the documents requested will not show if Global Wise was ready, willing, and able to provide financing for Project Tribeca.<br>    d.    Further, the Respondents have not shown that their request for Global Wise's accounts and bank statements for the period **November 2023 to March 2024** | |

is relevant and material to their own allegation that Global Wise was not ready, willing, and able to provide financing for Project Tribeca *at the time the Conditional Offer was issued on __20 October 2023__* (which they are not).

e. For the avoidance of doubt, Acuity denies that it and/or Global Wise had allegedly "*pressured the Respondents to accept the Conditional Offer*". Section II(C), [45], and [114] of the Reply are repeated.

3. Further, the documents requested are not in Acuity's Possession, Custody or Control ("**PCC**").

a. Acuity and Global Wise are separate and distinct legal entities and are not related companies. As can be seen from **R-003** (Acuity's profile on eSearch) and **R-006** (ACRA business profile of Global Wise), Acuity and Global Wise do not have common shareholders or directors and are not entities that are legally related.

b. Acuity does not have access to Global Wise's accounts and bank statements and is not able to compel Global Wise to produce the same.

c. Further, Global Wise's accounts and bank statements (like those of any corporation) are commercially confidential (see Art 9(2)(e) of the IBA Rules).

4. Nothing in [6] of the Respondents' comments above suggest that the documents requested are in Acuity's PCC. In particular:

a. That Acuity and Global Wise are long time business partners and frequently work together on project financing opportunities does not mean that Acuity has access to Global Wise's accounts and bank statements and/or is able to compel Global Wise to produce the same (which Acuity does not and is not able to).

b. The letter from Global Wise to Acuity at **C-034** unlike Global Wise's accounts and bank statements, is not a document that is in Global Wise's exclusive possession, custody and/or control. Further, Acuity has specifically obtained Global Wise's permission to disclose this letter.

5. The burden of proof lies on the Respondents but the Respondents have not adduced a single iota of evidence to prove their case that Global Wise was not ready, willing, and able to provide financing for Project Tribeca. In contrast, Acuity has pleaded and provided supporting evidence to show that Global Wise was in fact ready, willing and able to do so. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As

|  |  |  |  |
|---|---|---|---|
|  | | opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed.***" [1] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made. |  |
|  | 6. | As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "***the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept.*** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties**.*"[2] |  |
| **Respondents' comments on Claimant's objections** | 1. | The Respondents submit that the Reply does not, as Acuity argues, make it "*clear that Global Wise does not provide financing from its own funds, but funds sourced from its investors*" and does not state that "*Global Wise's investors will usually disburse funds directly to the lender* [sic] *and the funds do not flow through Global Wise*". |  |
|  | 2. | This is in fact contrary to Acuity's pleaded position that Global Wise is a "*private credit financier*" (Reply at [67a], [98a]) and a "*Lender/Funds Provider*" (**C-008**, Conditional Offer) that was "*ready and willing to provide funding*" (Reply at [96]), which suggests that the funds were to originate from Global Wise, as opposed to Global Wise merely arranging for a loan to be provided by another party. Indeed, if no funds would flow through Global Wise, **it would merely be acting as a broker and not a lender**. Further, Acuity has represented on multiple |  |

---

[1] Tobias Zuberbühler, Dieter Hofmann, et al., *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration* (Second Edition), (Schulthess Juristische Medien AG 2022) ("***IBA Rules Commentary***") at [135], **Annex A**.

[2] Nathan D. O'Malley, *Rules of Evidence in International Arbitration: An Annotated Guide* (Second Edition), (Informa Law from Routledge 2019) ("***Rules of Evidence in International Arbitration***") at [3.30] and [3.31], **Annex B**.

occasions that Global Wise was a <u>lender</u> who was ready, willing and able to <u>lend</u> the Intended Loan, including in the Conditional Offer where Global Wise is designated as the lender with no reference being made in the same document to other lenders or sources of funds.

3. In light of Acuity's position that Global Wise does not receive monies from its investors or disburse monies to the borrower, and its statements would not show any funds flowing through Global Wise such that the bank statements would not show that Global Wise was ready, willing and able to provide financing for the Project (at [2a]-[2c] of the Claimant's response to Request Number 1 above), the Respondents will not be pursuing this request further.

4. The Respondents however wish to address the specific objections raised by Acuity as follows.

5. **First**, in respect of the objection that the documents are not in Acuity's PCC – it is reasonable to presume that the documents requested are within Acuity's <u>control</u>. Based on the documents disclosed thus far, it is apparent that Global Wise would provide documents evidencing ability to fund upon request by Acuity (e.g. **C-034**), presumably in view of their close business relationship, notwithstanding that they are separate business entities.

6. As commented at [143] of the *IBA Rules Commentary*, "*<u>Parties to arbitration are expected to obtain requested documents from</u> related corporate entities or <u>parties with whom they have a relationship, such as distributors or agents. It has been rightly suggested that the expression of "possession, custody or control" should be interpreted widely and that a (contractual or other) right to obtain documents is also sufficient.</u>*"

7. We also highlight that WongP has represented/is representing both Acuity and Global Wise in the dispute which is the subject of this Arbitration (e.g. **R-008**, Letter from WongP to Amini dated 18 March 2024, in which WongP admits to acting as counsel for Global Wise).

8. **Second**, Acuity's reliance on the Respondents' burden of proof in this Arbitration to object to production of documents is misplaced.

9.     As remarked at [132] of *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)* ("**IBA Rules Commentary**"), "*the wording of the Rules does not include any requirement of the burden of proof, which is interpreted as a deliberate omittance.*" The same paragraph further quotes from another academic text: "<u>*the fact that a party bears the burden of proof on an issue does not suggest that it will be able to prevail on that issue absent relevant and material documents; its counterparty may, if material (and adverse) documents are not disclosed, be able to prevail by selectively presenting other documents or evidence. It is both illogical and unfair to deny a party disclosure of documents otherwise subject to disclosure, merely because it does not bear the burden of proof with respect to the underlying issues to which the document is relevant*</u>".

10.     The conclusion reached by the authors of the *IBA Rules Commentary*, after discussing the various views on this issue of burden of proof in discovery at [130]-[133] is to adopt "*a more nuanced view of the burden of proof issue ... [we do] not consider anymore that the party submitting a request to produce must bear the burden of proof for the factual allegations it envisages to prove with the requested documents*" and the arbitral tribunal would only usually not allow requests "*linked **only** to factual allegations of the other party but the requesting party must have brought forward, or show that it intends to bring, own allegations that should be supported by the requested documents*".

11.     Acuity's quote from [135] of the *IBA Rules Commentary* is therefore taken out of context and must be read with [134] which provides that "*the arbitral tribunal should carefully <u>check that the requesting party has identified specific allegations for which it requires the requested documents to support such allegations</u>. If this is not the case, the arbitral tribunal should decline the request. Equally, <u>a party should not generally be allowed to request documents **merely** to disprove allegations made by the other party. Rather, the requesting party must have made own allegations, which, if proven, would disprove the other party's allegation</u>.*"

12.     In this case, it is clear that the requested documents were not <u>merely</u> being requested to disprove Acuity's allegations, but also to prove the Respondents' own allegations that Global Wise was not ready, willing and able to fund the Intended Loan.

| | | |
|---|---|---|
| | 13. Acuity also appears to have quoted the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)* ("**Annotated Guide**") out of context. [3.31] of the *Annotated Guide* provides that "*As noted under article 3.1 above, the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession.*" The "*presumption*" that Acuity is seeking to rely on is therefore referring to the operation of Article 3.1 of the IBA Rules, which requires parties to produce documents at the first instance, separate from the Article 3.3 mechanism of the Request to Produce, which is intended to supplement the first instance discovery, where "*sufficient evidence has not been voluntarily supplied by the parties.*" The Respondents are submitting these Requests to Produce precisely because Acuity has not voluntarily supplied documents which are relevant and material to the issues in dispute.<br><br>14. The *Annotated Guide* when read as a whole in fact considers that the discovery process under the IBA Rules (albeit the older version i.e. the 2010 Rules) is not as restrictive as the civil law document disclosure standard (at [3.32]) and that while the IBA Rules are not intended to be as wide as the Anglo-American-style document discovery (at [3.30]), "*practice has shown that under the standard of article 3.3, <u>categories of documents may be produced without it leading to general discovery</u>.*"<br><br>15. **Third**, Acuity also appears to have conflated the issue of burden of proof with a fishing expedition. However, it is clear from [108]-[109] of the *IBA Rules Commentary* that merely requesting for documents which are relevant and material and in the counterparty's PCC would not be a fishing expedition, and as long as the nature of the documents sought are identified with some specificity and general time frame, they may qualify as a permissible narrow and specific category of documents:<br><br>    *109 The drafters of the Rules did not want to open the door to "fishing expeditions".* <u>**Yet, it was understood that a party may be unable to specifically identify documents although they may well be relevant and material and should be produced**</u>. *In fact, "all members of the 1999 Working Party and of the 2010 Review Subcommittee, from common law and civil law countries alike, recognised that <u>arbitrators would generally accept such requests if they were carefully tailored to*</u> | |

|  |  |  |
|---|---|---|
|  | *produce relevant and material documents".*<br><br>*110 This can be illustrated by the following example: <u>If the termination by notice of one party (B) of a joint venture agreement is an issue in an arbitration, the other party (A) will know that the board of directors of the party B must have made the decision to terminate the joint venture agreement in the course of a meeting at a date close to the date of the notice, that certain documents must have been prepared for the board's consideration of the decision to terminate and that minutes must have been taken concerning the decision.</u> **<u>In this case the requesting party A is unable to identify the dates or the authors of such documents, but it is still able to identify with some specificity the nature of the documents being sought and the general time frame in which the documents would have been prepared. Such a request may qualify as a "narrow and specific category of documents</u>"** *as set forth in Art. 3(3)(a)(ii).*<br><br>16. The Respondents therefore submit that Acuity's objections do not have any merit and the categories of documents requested in these Requests to Produce are permissible under the IBA Rules. |  |
| **Tribunal's Decision** |  |  |

| Request Number | 2 | | |
|---|---|---|---|
| **Description of Documents or Category of Documents Requested** | Documents relating to due diligence conducted by Acuity on Global Wise for the purposes of the Intended Loan or relating to Acuity's past dealings with Global Wise, including all relevant correspondence in which due diligence documents were transmitted or delivered to Acuity, prior to the issuance of the Conditional Offer dated 20 October 2023 | | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that:<br><br>  1.1. the Implied Terms are part of the LTS&CA;<br><br>  1.2. the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) did not have the funds required to provide the Intended Loan, (b) was unable to demonstrate that it had either secured funds from any party for the purpose of the Intended Loan or that it would be able to procure such funds and (c) did not intend for the Respondents to be able to draw down on the Intended Loan;<br><br>  1.3. Acuity had represented that it would introduce, organise, arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; and<br><br>  1.4. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project. | **C-005** (LTS&CA), **C-008** (Conditional Offer)<br><br>Defence at [4.3], [4.4.5], [5.2], **R-008** (Letter from WongP dated 18 March 2024)<br><br>Reply at [67], [96]-[98], **C-034** (Letter from Global Wise to Acuity dated 30 October 2024) |
| | **Comments** | 2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that:<br><br>  2.1. Global Wise continued to engage with the Respondents on the terms of the Conditional Offer even after solicitors were engaged; and<br><br>  2.2. Global Wise is a legitimate and credible lender who frequently works together with Acuity on project financing and puts together financing from its | |

|  |  |  |  |
|---|---|---|---|
|  |  | investors. | |
|  |  | 3. The documents requested are therefore relevant and material to the disputed issues of: | |
|  |  | 3.1. whether Global Wise was a lender who was ready, willing and able to provide the Intended Loan, at the time of the Conditional Offer dated 20 October 2023; and | |
|  |  | 3.2. whether Acuity had conducted due diligence on Global Wise with the intention to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project. | |
|  |  | 4. The documents requested are not in the Respondents' PCC. | |
|  |  | 5. The documents requested are also clearly within Acuity's PCC and it would not be unreasonably burdensome for Acuity to produce the documents requested. | |
| **Claimant's Response/Objections** | | 1. Acuity objects to this request. | |
|  |  | 2. The Respondents have not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules). Whether Acuity had carried out due diligence on Global Wise for the purposes of providing financing for Project Tribeca and/or in its past dealings with Global Wise where they had worked together on project financing opportunities is neither relevant nor material to whether Global Wise was ready, willing and able to provide financing for Project Tribeca. | |
|  |  | 3. The documents requested are also not of a narrow and specific category. The Respondents have not specified what are the purported "*documents relating to due diligence*" and "*all relevant correspondence*" requested. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "**a request for "any and all documents", references** | |

*to lengthy time frames, and/or "relating" to a broad description of subject matter will mostly be considered too broad*". [3] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed**.*"

4.  In any case, the documents requested do not exist. Acuity did not conduct formal due diligence on Global Wise for the purposes of providing financing for Project Tribeca and/or in its past dealings with Global Wise where they had worked together on project financing opportunities. This is because prior to working together with Global Wise on project financing opportunities, Acuity was a SWIFT service provider for Global Wise for projects where Global Wise had provided financing. In this context, Acuity had witnessed first-hand Global Wise's access to funds from its investors.

5.  Further, and as pleaded at [98] of the Reply:
    a.  Acuity was aware that Global Wise was backed by investors including the Elite group of companies, and that Global Wise's Chairman, Mr Lankan Bal, is also a director of Elite Crown Diamond Ltd and the Chief Strategy Officer of Elite Global Equity Fund, an entity regulated by the Cayman Monetary Authority.
    b.  Acuity was further aware that in his capacity as Chairman of Global Wise, Mr Lankan Bal would present potential project financing opportunities to Elite for funding (including those sourced by Acuity) and would advise and assist Elite to manage the same.
    c.  Acuity was also aware that the Elite group of companies had a strong capital base as among other things, Elite Global Equity Fund had written to Acuity (and Global Wise) to state that they "*can allocate up to $1 billion towards financing projects within [Vietnam and the United States]*" and had attached a portfolio report from Caprock Merchant showing that the Elite group of companies had funds in excess of USD2.9 billion and an All Accounts Balances Report from Wells Fargo showing that Elite Crown Cayman Limited (also part of the Elite group of companies) had a balance of more than USD2 billion.

---

[3] *IBA Rules Commentary* at [106], **Annex A**.

d.   Apart from the Elite group of companies, Global Wise also had other investors and had successfully funded other projects in Vietnam (together with Acuity) and in Africa.

6.   In the premises, Acuity did not see the need to and did not carry out formal due diligence on Global Wise, as there was no reason for Acuity to believe that Global Wise would not have funds to provide financing for Project Tribeca and/or the other project financing opportunities that Acuity worked on with Global Wise.

7.   The burden of proof lies on the Respondents but the Respondents have not adduced a single iota of evidence to prove their case that Global Wise was not ready, willing, and able to provide financing for Project Tribeca. In contrast, Acuity has pleaded and provided supporting evidence to show that Global Wise was in fact ready, willing and able to do so. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed.**"* [4] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

8.   As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "***the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept.** Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering*

---

[4] *IBA Rules Commentary* at [135], **Annex A**.

| | |
|---|---|
| | *important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties**."*[5] |
| **Respondents' comments on Claimant's objections** | 1.    In light of Acuity's response, i.e. that the documents requested do not exist and Acuity did not conduct formal due diligence on Global Wise for the purposes of providing financing for the Project and/or in its past dealings with Global Wise where they had worked together on project financing opportunities, the Respondents are no longer pursuing this request.<br><br>2.    The Respondents however wish to address the objection raised by Acuity in respect of the narrowness and specificity of the document request as follows.<br><br>    2.1.   The full text of [106] of the *IBA Rules Commentary* (from which Acuity has selectively quoted) reads: "*The exact meaning of "narrow and specific" is a matter of interpretation, under the 2020 Rules as well as under the previous Rules. It has been suggested that "narrow and specific" should be understood "to mean narrowly tailored, i.e. reasonably limited in time and subject matter in view of the nature of the claims and defences advanced in the case". Requiring that a request is limited in time and subject matter provides a measurable frame. Moreover, the above interpretation makes clear that the test depends on the specific issues raised in a case. A request should aim at the production of a document which relates to certain specific issues in the arbitration, not a broad description of a claim or a general contention. For example, a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description or subject matter will mostly be considered too broad.*"<br><br>    2.2.   In this instance, the documents requested pertain to a very narrow subject matter i.e. the <u>due diligence conducted</u> by Acuity on Global Wise <u>specifically for the purposes of the Intended Loan</u> or specifically relating to Acuity's past dealings with Global Wise insofar as they relate to the due diligence for the Intended Loan. The phrase "*all relevant correspondence*" merely refers to the correspondence by which such due diligence documents were transmitted, which is itself a narrow and specific category. As it is not within the | |

---

[5] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

|  | | Respondents' knowledge as to when the due diligence was conducted, and Acuity may have relied on due diligence conducted a few years prior, it can only be presumed that such due diligence occurred prior to the issuance of the Conditional Offer dated 20 October 2023.<br><br>3.    In respect of [7] and [8] of Acuity's objections to Request Number 2, the Respondents repeat paragraphs [8] to [16] of the Respondents' comments at Request Number 1 above. | |
| **Tribunal's Decision** | | | |

| Request Number | 3 | |
|---|---|---|
| **Description of Documents or Category of Documents Requested** | Documents relating to Acuity's due diligence conducted on the Respondents prior to the execution of the LTS&CA on or around 30 September 2023 | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1.  The Respondents have pleaded *inter alia* that:<br><br>1.1.  Acuity had represented that it would introduce, organise, arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; and<br><br>1.2.  At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project. | **C-005** (LTS&CA)<br><br>Defence at [5.2]<br><br>Reply at [119] |
| | **Comments** | 2.  Acuity has pleaded *inter alia* that it was not its intention to introduce a lender to the Respondents which would be ready, willing and able to provide funds.<br><br>3.  The documents requested are relevant and material to the disputed issue of whether Acuity had the intention to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project, as Acuity must have conducted thorough due diligence on the Respondents if it indeed had such intention.<br><br>4.  The documents requested are, insofar as they consist of documents not provided by the Respondents to Acuity, not in the Respondents' PCC.<br><br>5.  The documents requested are also clearly within Acuity's PCC and it would not be unreasonably burdensome for Acuity to produce the documents requested. | |
| **Claimant's Response/Objections** | | 1.  Acuity objects to this request.<br><br>2.  The documents requested are in the Respondents' own PCC (see Art 3(c) of the IBA Rules). As admitted by the Respondents, the documents requested include documents that were "*provided by the Respondents to Acuity*" and documents "*in the Respondents' PCC*". | |

3. Insofar as the Respondents are requesting for documents falling within what is described that have not been "*provided by the Respondents to Acuity*" and are not "*in the Respondents' PCC*", the Respondents have not identified, and it is not clear what these documents are. The Respondents' document request is therefore not of a narrow and specific category of documents (see Art 3(a)(ii) of the IBA Rules).

4. Further, the Respondents have not specified what are the purported "*documents relating to Acuity's due diligence*" requested. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "***a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description of subject matter will mostly be considered too broad***".[6] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed**.*"

5. The Respondents have also not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules).
    a. At the outset, it bears highlighting that [2] of the Respondents' comments above is incorrect. Acuity did not plead that it was not its intention to introduce a lender to the Respondents which would be ready, willing and able to provide funds. What Acuity pleaded (at [119] of its Reply) is that "*Acuity did not make any representation (much less false representation) to the Respondents that any lender that it introduced to them would be ready, willing and able to provide funds (although it certainly was not Acuity's intention to introduce a lender to the Respondents who was not capable of doing so)*".
    b. The Respondents have not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*":
        i. Whether Acuity had carried out due diligence on the Respondents is neither relevant nor material to whether Acuity intended to procure a

---

[6] *IBA Rules Commentary* at [106], **Annex A**.

|  |  |  |
|---|---|---|
|  | lender which was ready, willing and able to provide financing for Project Tribeca. | |

    ii.    The Respondents have not pleaded that Acuity did not carry out due diligence on the Respondents and that this shows that Acuity allegedly did not intend to procure a lender which was ready, willing and able to provide financing for Project Tribeca. The Respondents have also not pleaded that whether Acuity carried out due diligence on the Respondents would show whether Acuity intended to procure a lender which was ready, willing and able to provide financing for Project Tribeca.

6.    In any case, it is clear from the documents that have been disclosed that Acuity did carry out due diligence on the Respondents – see for example, in **C-002**, **C-003**, **C-004**, **C-014**, **C-015**, **C-016**, **C-018**, **C-021**, **R-009**. Further, as pleaded by the Respondents themselves at [4.1.2] of their Defence, "*the Respondents were introduced to Acuity by Mr. Park **and subsequently engaged in email correspondence with Acuity's representatives, Dr. Hwang and Mr. Nguyen, regarding funding for the Project***".

7.    The burden of proof lies on the Respondents but the Respondents have not adduced a single iota of evidence to prove their case that Acuity did not intend to procure a lender which was ready, willing and able to provide financing for Project Tribeca. In contrast, Acuity has pleaded and provided supporting evidence to show that Global Wise was in fact ready, willing and able to do so. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed.**"* [7] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

8.    As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "***the presumption in***

---

[7] *IBA Rules Commentary* at [135], **Annex A**.

| | |
|---|---|
| | *arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept. Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, for which sufficient evidence has not been voluntarily supplied by the parties.*"[8] |
| **Respondents' comments on Claimant's objections** | 1. The Respondents are requesting for documents on due diligence conducted by Acuity on the Respondents <u>which are not in the Respondents' PCC</u>, and which <u>have not already been disclosed</u> in these proceedings. |
| | 2. We repeat [8] to [16] of the Respondents' comments at Request Number 1 above and highlight that the "*categories of documents may be produced*", "*a party may be unable to specifically identify documents although they may well be relevant and material and should be produced*" and the requests need not be as specific as the civil law standard i.e. to identify specific documents. |
| | 3. We further highlight [2.1] of the Respondents' comments at Request Number 2 above and highlight that the exact meaning of narrow and specific is a matter of interpretation. We therefore submit that the documents requested are sufficiently narrow and specific in subject matter i.e. due diligence conducted on the Respondents. |
| | 4. The Respondents have already submitted on how the due diligence documents would be probative of Acuity's intention, which is a disputed issue, and are therefore relevant and material. As pleaded at [5.2] of the Defence, "*Acuity did not intend, at the time the Representation was made, to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project.*" It is also undeniable that Acuity has pleaded at [119] its Reply that "*it certainly was not Acuity's intention to introduce a lender to the Respondents who was not capable of* [providing funds]". |

---

[8] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

| | | |
|---|---|---|
| | 5. The Respondents submit that it is reasonable to presume, given the nature of the Project and the USD 280 million loan required, that Acuity ought to have conducted extensive due diligence on the prospective borrowers prior to the introduction of any prospective lender, beyond what was disclosed by the Respondents to Acuity (which have also been disclosed in these proceedings). The extent of due diligence undertaken is therefore relevant and material to the pleaded and disputed issue of whether Acuity had the intention to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project. | |
| | 6. Crucially, Acuity's objection does not state whether such due diligence documents exist (insofar as they do not consist of what has already been disclosed) and does not object on the grounds that such documents are not in their PCC. | |
| | 7. In respect of [7] and [8] of Acuity's objections, we again refer to our submissions at paragraphs [5] to [16] of the Respondents' comments at Request Number 1 above. | |
| **Tribunal's Decision** | | |

| Request Number | 4 | |
|---|---|---|
| **Description of Documents or Category of Documents Requested** | Document(s) evidencing or demonstrating that funds for the Intended Loan had been secured by Global Wise as of the Conditional Offer dated 23 October 2023 | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that:<br><br>1.1. the Implied Terms are part of the LTS&CA;<br><br>1.2. the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) did not have the funds required to provide the Intended Loan, (b) was unable to demonstrate that it had either secured funds from any party for the purpose of the Intended Loan or that it would be able to procure such funds and (c) did not intend for the Respondents to be able to draw down on the Intended Loan;<br><br>1.3. Acuity had represented that it would introduce, organise, arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; and<br><br>1.4. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project. | **C-005** (LTS&CA), **C-008** (Conditional Offer)<br><br>Defence at [4.3], [4.4.5], [5.2], **R-008** (Letter from WongP dated 18 March 2024)<br><br>Reply at [67], [96]-[98], **C-034** (Letter from Global Wise to Acuity dated 30 October 2024) |
| | **Comments** | 2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that:<br><br>2.1. Global Wise continued to engage with the Respondents on the terms of the Conditional Offer even after solicitors were engaged; and<br><br>2.2. Global Wise is a legitimate and credible lender who frequently works together with Acuity on project financing and puts together financing from its investors. | |

|  |  | 3. The documents requested are therefore relevant and material to the issues of:<br><br>    3.1. whether Global Wise was a lender who was ready, willing and able to provide the Intended Loan, at the time of the Conditional Offer dated 20 October 2023 and the subsequent correspondence in which Acuity and/or Global Wise pressured the Respondents to accept the Conditional Offer; and<br><br>    3.2. whether Acuity had conducted its due diligence with the intention to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project.<br><br>4. The documents requested are not in the Respondents' PCC.<br><br>5. The documents requested ought to be in Acuity's PCC in view of Acuity's pleaded position on Global Wise's ability to lend, Acuity's alleged business as a loan broker, and Acuity's pleaded position that they "*frequently work together on project financing opportunities*" – whether because the documents requested were procured in the course of Acuity's due diligence into Global Wise's ability to lend, or because Acuity is able to obtain such documents from Global Wise as a long-time business partner/collaborator. For the same reasons, it would not be unreasonably burdensome for Acuity to produce the documents requested. |  |
| **Claimant's Response/Objections** |  | 1. Acuity objects to this request.<br><br>2. The documents requested do not exist.<br>    a. It is pleaded at [98(a)] of Acuity's Reply that "*Global Wise is a private credit financier backed by investors*" and that "*Global Wise would put together the financing from its investors*". It is therefore clear that Global Wise does not provide financing from its own funds, but funds sourced from its investors.<br>    b. In this connection, it is clear from the terms of the Conditional Offer that funding was subject to satisfaction of the Conditions Precedent, including satisfactory due diligence by Global Wise (and its investors) on the Respondents.<br>    c. Given that the Respondents never signed the Conditional Offer, due diligence on the Respondents was never carried out, and no funds were "*secured*" for the financing of Project Tribeca as it were. |  |

d.    This is in line with the prevailing practice in the private credit market whereby funds are not earmarked nor set aside for a particular project until satisfactory due diligence is completed. This is also consistent with the practice in the funds and/or private equity funds market where funds may be available for investment based on certain agreed parameters without necessarily specifying the projects towards which the funds are to be deployed.

e.    However, this does not detract from the fact that Global Wise, with the support of its investors who had access to funds (see [98] of the Reply), would have been and was ready, willing and able to provide financing for Project Tribeca, *if* the Respondents had signed the Conditional Offer and satisfactory due diligence was completed.

3.    The requested documents are also not in Acuity's PCC. Acuity's Responses/Objections to the Respondents' Document Request Number 1 above are repeated. Further:

a.    Acuity and Global Wise are separate and distinct legal entities and are not related companies. As can be seen from **R-003** (Acuity's profile on eSearch) and **R-006** (ACRA business profile of Global Wise), Acuity and Global Wise do not have common shareholders or directors and are not entities that are legally related.

b.    Acuity does not have access to the requested documents which would be in Global Wise's exclusive PCC, and Acuity is not able to compel Global Wise to produce the same. Any documents that Acuity has disclosed in this arbitration which is in Global Wise's PCC are also in Acuity's PCC and/or have been disclosed with Global Wise's consent.

c.    The requested documents are also commercially confidential to Global Wise (see Art 9(2)(e) of the IBA Rules).

d.    Nothing in [5] of the Respondents' comments above suggest that the documents requested are in Acuity's PCC.

     i.    Acuity's Responses/Objections to the Respondents' Document Request Number 1 above are repeated.

    ii.    That Acuity and Global Wise are long time business partners and frequently work together on project financing opportunities does not mean that Acuity has access to the requested documents and/or is able to compel Global Wise to produce the same (which Acuity does not and is not able to).

4. The documents requested are also not of a narrow and specific category. The Respondents have not specified what are the specific documents requested. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "**_a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description of subject matter_** *[which applies equally to a request for documents "evidencing or demonstrating" a broad subject-matter]* **_will mostly be considered too broad_**". [9] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed.**"

5. The burden of proof lies on the Respondents but the Respondents have not adduced a single iota of evidence to prove their case that Global Wise was not ready, willing, and able to provide financing for Project Tribeca. In contrast, Acuity has pleaded and provided supporting evidence to show that Global Wise was in fact ready, willing and able to do so. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed.**"[10] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

6. As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "**_the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept._** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules]*

---

[9] *IBA Rules Commentary* at [106], **Annex A**.
[10] *IBA Rules Commentary* at [135], **Annex A**.

| | |
|---|---|
| | *as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties**.*"[11] |
| **Respondents' comments on Claimant's objections** | 1. As Acuity has confirmed at [2c] of their response that the documents requested do not exist and no funds were secured by Global Wise from third parties for the Project, the Respondents will not be pursuing their request in respect of this category of documents and will respond to Acuity's other statements/submissions at the appropriate stage of these proceedings.<br><br>2. However, the Respondents highlight that Acuity's position as set out at [2a] of its objection above, i.e. that Global Wise does not provide financing from its own funds, is wholly inconsistent with its pleaded position that Global Wise is a "*private credit financier*" (Reply at [67a], [98a]) and a "*Lender/Funds Provider*" (**C-008**, Conditional Offer) that was "*ready and willing to provide funding*" (Reply at [96]).<br><br>3. In respect of [3] of Acuity's objection above, i.e. that the requested documents are also not in Acuity's PCC, we highlight that Acuity has <u>unequivocally</u> stated at [2] of its objection above that "The documents requested do not exist." Given that the documents requested would originate from Global Wise, that Acuity has taken the unequivocal position that the documents do not exist speaks to Acuity's ability to obtain documents and information from Global Wise. This is consistent with the fact that Acuity has already disclosed documents originating from Global Wise in this arbitration and betray Acuity's position that it does not have PCC over documents originating from Global Wise. As submitted at [5] to [7] of the Respondents' comments at Request Number 1 above:<br><br>    3.1. It is reasonable to presume that the documents requested are within Acuity's <u>control as</u> based on the documents disclosed thus far, it is apparent that Global Wise would provide documents evidencing ability to fund upon request by Acuity (e.g. **C-034**), presumably in view of their close business relationship, notwithstanding that they are separate business entities. | |

---

[11] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

| | |
|---|---|
| | 3.2. As commented at [143] of the *IBA Rules Commentary*, "*Parties to arbitration are expected to obtain requested documents from related corporate entities or parties with whom they have a relationship, such as distributors or agents. It has been rightly suggested that the expression of "possession, custody or control" should be interpreted widely and that a (contractual or other) right to obtain documents is also sufficient*."<br><br>3.3. It is also highlighted that WongP has represented/is representing both Acuity and Global Wise in the dispute which is the subject of this Arbitration (e.g. **R-008**, Letter from WongP to Amini dated 18 March 2024, in which WongP admits to acting as counsel for Global Wise).<br><br>4. In respect of [4] of Acuity's objection above, i.e. that the documents are not narrow and specific, we repeat our submissions (at [8] to [16] of the Respondents' comments at Request Number 1 above and [2.1] of the Respondents' comments at Request Number 2 above) that:<br><br>4.1. The exact meaning of narrow and specific is a matter of interpretation, and the test depends on the specific issues raised in a case.<br><br>4.2. "*categories of documents may be produced*", "*a party may be unable to specifically identify documents although they may well be relevant and material and should be produced*" and the requests need not be as specific as the civil law standard i.e. to identify specific documents.<br><br>4.3. If a requesting party is able to identify the nature of documents being sought with some specificity and a general time frame, such a request may qualify as narrow and specific. | |
| **Tribunal's Decision** | | |

| Request Number | 5 | |
|---|---|---|
| **Description of Documents or Category of Documents Requested** | Documents evidencing or demonstrating that Global Wise had, at the time of the Conditional Offer dated 20 October 2023, the regulatory licenses, approvals, exemptions and/or exclusions necessary to conduct its activities as a "*private credit financier backed by investors*", and all relevant correspondence in which such documents were transmitted to Acuity | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that:<br><br>  1.1. the Implied Terms are part of the LTS&CA;<br><br>  1.2. the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) was unable to demonstrate that it would be able to procure funds from any party for the purpose of the Intended Loan, (b) had no track record of having provided financing comparable to the size of the Intended Loan, and (c) did not intend for the Respondents to be able to draw down on the Intended Loan;<br><br>  1.3. Acuity had represented that it would introduce, organise arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; and<br><br>  1.4. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project.<br><br>2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that Global Wise is a legitimate and credible lender who frequently works together with Acuity on project financing and puts together financing from its investors.<br><br>3. Private equity lenders in Singapore (even those which are not banks or publicly listed companies) are subject to regulatory requirements e.g. obtaining a license to conduct financing business under the Finance Companies Act, obtaining a license to conduct a moneylending business, or exemptions/exclusions from the same. | C-005 (LTS&CA), **C-008** (Conditional Offer)<br><br>Defence at [4.3], [4.4.5], [5.2], **R-008** (Letter from WongP dated 18 March 2024)<br><br>Reply at [67], [96]-[98], **C-034** (Letter from Global Wise to Acuity dated 30 October 2024) |

|  |  | 4. The documents requested are therefore relevant and material to the disputed issues of: |  |
|---|---|---|---|
|  |  | 4.1. the legitimacy and credibility of Global Wise as a lender; and |  |
|  |  | 4.2. whether Acuity had conducted its due diligence with the intention to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project |  |
|  |  | 5. The documents requested are not in the Respondents' PCC. |  |
|  |  | 6. The documents requested ought to be in Acuity's possession, power and custody in view of Acuity's pleaded position on Global Wise's ability to lend, Acuity's alleged business as a loan broker, and Acuity's pleaded position that they "*frequently work together on project financing opportunities*" – whether because they were procured in the course of Acuity's due diligence into Global Wise's ability to lend, or because Acuity is able to obtain such documents from Global Wise as a long-time business partner/collaborator. For the same reasons, it would not be unreasonably burdensome for Acuity to produce the documents requested. |  |
|  | **Comments** |  |  |
| **Claimant's Response/Objections** |  | 1. Acuity objects to this request. |  |
|  |  | 2. The Respondents have not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules). <br> a. The Respondents have not pleaded the relevant "*regulatory licenses, approvals, exemptions and/or exclusions*" necessary for Global Wise to carry on its business as a private credit financier (which it is denied that any were necessary). The Respondents have also not pleaded that Global Wise did not have the relevant "*regulatory licenses, approvals, exemptions and/or exclusions*" to carry on its business as a private credit financer and therefore, Global Wise was not a ready, willing and/or able to provide financing for Project Tribeca. As such, whether Global Wise requires and/or has the required "*regulatory licenses, approvals, exemptions and/or exclusions*" is not an issue in dispute and the documents requested are neither relevant to the case nor material to its outcome. <br> b. Insofar as the Respondents have referred to the Finance Companies Act 1967 ("**Act**"), this plainly does not apply to Global Wise as a private credit financier: |  |

|  | i. The Act applies only to companies carrying out "financing business". |
|---|---|

<table>
<tr><td></td><td>

i. The Act applies only to companies carrying out "financing business".

ii. "Financing business" is defined under s 2 of the Act as the business of:

    1. borrowing money from the public, by acceptance of deposits and issuing certificates or other documents acknowledging or evidencing indebtedness to the public and undertaking to repay the money on call or after an agreed maturity period; and

    2. lending money to the public or to a company deemed to be related to the finance company by virtue of s 6 of the Companies Act 1967 (called in this Act the related company) on the basis that the public or the related company undertakes to repay the money, whether within an agreed period of time or not, or by instalments.

iii. Global Wise is neither in the business of borrowing money from the public and/or lending money to the public or to related companies (as defined under s 6 of the Companies Act 1967).

c. For completeness, the Moneylenders Act 2008 also does not apply to Global Wise. This is because the Moneylenders Act 2008 does not apply to "*excluded moneylenders*" which include among others, "*any person who lends money solely to (A) corporations*". Global Wise is only in the business of lending money to corporations.

d. Should the Respondents in their response to Acuity's Responses/Objections to this document request raise and/or refer to any other statutory instrument, legislation, subsidiary legislation, rules and regulations promulgated under any legislation and/or subsidiary legislation, and/or any other rules, regulations, guidelines or similar instruments, Acuity reserves its right to respond to the same.

3. In any case, the documents requested are not in Acuity's PCC. [3] of Acuity's Responses/Objections to the Respondents' Document Request Number 4 above is repeated.

4. The documents requested are also not of a narrow and specific category. The Respondents have not specified what are the specific documents requested. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "***a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description of subject matter** [which applies equally to a request for documents "evidencing or demonstrating" a broad subject-matter] **will mostly be considered too broad**".* [12]  Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **requests for broad categories of "all documents" which are not narrowly focussed to particular***

</td></tr>
</table>

---

[12] *IBA Rules Commentary* at [106], **Annex A**.

| | |
|---|---|
| | *issues and timelines are unlikely to be allowed*." |
| | 5. The burden of proof lies on the Respondents but the Respondents have not adduced a single iota of evidence to prove their case that Global Wise was not ready, willing, and able to provide financing for Project Tribeca. In contrast, Acuity has pleaded and provided supporting evidence to show that Global Wise was in fact ready, willing and able to do so. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed**.*" [13] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made. |
| | 6. As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "***the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept.*** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties***."[14] |
| **Respondents' comments on Claimant's objections** | 1. In light of the positions taken at [2b] and [2c] of Acuity's response to Request Number 5 above, i.e. that Global Wise does not borrow or lend monies to the public, we will not be pursuing this request. |
| | 2. However, the Respondents highlight that Acuity's position as set out at [2b] of its response above, in particular that Global Wise does not actually lend monies, entirely contradicts its pleaded position as well as its representations to the Respondents, including via the Conditional Offer in which Global Wise is stated to be the "*Lender/Funds Provider*", that <u>Global Wise is a lender and not merely a broker</u>. We refer to and repeat [1]-[2] of the Respondents' comments at Request Number 1 above. |
| | 3. In respect of [3] of Acuity's objections (i.e. that the documents requested are not in Acuity's PCC), we refer to and repeat our submissions at paragraphs [5]-[7] of the Respondents' comments at Request |

---

[13] *IBA Rules Commentary* at [135], **Annex A**.
[14] *Rules of Evidence in International Arbitration: An Annotated Guide* at [3.30] and [3.31], **Annex B**.

| | |
|---|---|
| | Number 1 above and [3] of the Respondents' comments at Request Number 4 above.<br><br>4.    In respect of [4] to [6] of Acuity's objections, we refer to and repeat our submissions at paragraphs [8] to [16] of the Respondents' comments at Request Number 1 above and [2.1] of the Respondents' comments at Request Number 2 above. |
| **Tribunal's Decision** | |

| Request Number | 6 |
|---|---|
| Description of Documents or Category of Documents Requested | Documents evidencing loan monies being disbursed to borrowers of projects allegedly funded by Global Wise prior to the Conditional Offer dated 20 October 2023, which may include but not be limited to the projects set out in the letter from Global Wise to Acuity dated 30 October 2024 disclosed at **C-034** |

| Justification, including Relevance and Materiality According to Requesting Party | Ref. to Pleadings, Submissions, Exh., WS. or ER. | | |
|---|---|---|---|
| | | 1. The Respondents have pleaded *inter alia* that: | **C-008** (Conditional Offer) |
| | | 1.1. the Implied Terms are part of the LTS&CA; and | Defence at [4.3], [4.4.5] [5.2], **R-008** (Letter from WongP dated 18 March 2024) |
| | | 1.2. the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) did not have the funds required to provide the Intended Loan, (b) was unable to demonstrate that it would be able to procure funds from any party for the purpose of the Intended Loan, (c) had no track record of having provided financing comparable to the size of the Intended Loan, and (d) did not intend for the Respondents to be able to draw down on the Intended Loan. | Reply at [67], [96]-[98], **C-034** (Letter from Global Wise to Acuity dated 30 October 2024) and **C-035** (Offer letter from Global Wise dated 7 April 2022) |
| | | 2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that Global Wise is a legitimate and credible lender which "*has successfully funded other projects in Vietnam (together with Acuity) and in Africa*". In support of this assertion, Acuity has provided: | Defence at [4.6.6(d)], **R-014** (SIAC Final Award) |
| | | 2.1. a letter from Global Wise to Acuity dated 30 October 2024 with "*a summary of the projects for which Global Wise Investments has facilitated and initiated funding arrangements*", with details of such projects redacted. The letter also states that $21 million has been disbursed for a total of 7 projects (**C-034**); and | |
| | | 2.2. a letter from Global Wise dated 7 April 2022 titled "Conditional Letter of Offer for Mortgage Finance (AEEPH)" for a loan of USD 80 million and with details of the addressee/offeror redacted (**C-035**). | |
| | | 3. The documents provided by Acuity fall far short of conclusive proof that Global | |

|  |  | Wise has funded other projects, much that it has less provided loans of a similar scale/size as the Intended Loan. No loan/facility agreements or evidence of fund transfers for such projects have been disclosed. As pleaded by the Respondents, SIAC Arbitration No. ARB 946/20/JZH is a case where the Conditional Offer was accepted, but no loan monies were ever disbursed. |  |
|  |  | 4. The documents requested would therefore be relevant and material to the disputed issue of Global Wise's alleged track record as a lender who was at the time of the Conditional Offer able to provide the Intended Loan. |  |
|  |  | 5. The documents requested are not in the Respondents' PCC. |  |
|  |  | 6. The documents requested ought to be in Acuity's possession, power and custody, whether because they were procured in the course of Acuity's due diligence into Global Wise's ability to lend, or because Acuity is able to obtain such documents from Global Wise as a long-time business partner/collaborator of Global Wise, and it would not be unreasonably burdensome for Acuity to produce the documents requested. |  |
|  | **Comments** |  |  |
| **Claimant's Response/Objections** |  | 1. Acuity objects to this request. |  |
|  |  | 2. The documents requested are not in Acuity's PCC. [3] of Acuity's Responses/Objections to the Respondents' Document Request Number 4 above is repeated. |  |
|  |  | 3. The Respondents have also not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules).<br>a. At no point in time after the Conditional Offer was issued on 20 October 2023 until Amini's letter dated 29 January 2024 did the Respondents raise any issues with Global Wise's track record (see [66] of the Reply).<br>b. In any case, Global Wise's track record is neither relevant nor material to whether Global Wise was ready, willing and able to provide financing for the Project. |  |
|  |  | 4. The documents requested are also not of a narrow and specific category. The Respondents have not specified what are the specific documents requested. As opined by the learned authors of the |  |

authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "**_a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description of subject matter_** *[which applies equally to a request for documents "evidencing" a broad subject-matter]* **_will mostly be considered too broad_**". [15] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed.**"

5. The burden of proof lies on the Respondents, but the Respondents have not adduced a single iota of evidence to prove their case that Global Wise was not ready, willing, and able to provide financing for Project Tribeca. The burden does not lie on Acuity to provide "*conclusive proof*" that is has funded other projects and/or funded other projects of similar size and/or is ready, willing and able to provide financing for Project Tribeca. In any case, Acuity has gone above and beyond and has pleaded and provided supporting evidence to show that Global Wise had a track record of funding other projects and was in fact ready, willing and able to provide financing for Project Tribeca. The Respondents' document request is therefore nothing more than a fishing expedition which should not be allowed. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to produce an allegation it made and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed.**"* [16] The same should also apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

6. As further opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "**_the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept._** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties**.*" [17]

---

[15] *IBA Rules Commentary* at [106], **Annex A**.
[16] *IBA Rules Commentary* at [135], **Annex A**.
[17] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

| Respondents' comments on Claimant's objections | 1. The Respondents submit that the documents requested are clearly relevant and material to issues in dispute. It is specifically pleaded at [4.4.5(c)] of the Defence that Global Wise had no track record of having provided financing comparable to the size of the Intended Loan. Whether Global Wise's track record was raised prior to the commencement of this Arbitration is immaterial. |
|---|---|
| | 2. The Respondents refer to and repeat our submissions at paragraphs [8] to [16] of the Respondents' comments at Request Number 1 above and [2.1] of the Respondents' comments at Request Number 2 above and further submit that the documents requested pertain to a very specific and narrow category i.e. evidence of loan monies being disbursed in respect of the projects which were allegedly funded by Global Wise prior to the Conditional Offer dated 20 October 2023. |
| | 3. The Respondents also refer to and repeat [5] to [7] of the Respondents' comments at Request Number 1 above and [3] of the Respondents' comments at Request Number 4 above and submit that the documents requested are in Acuity's control. |
| **Tribunal's Decision** | |

| Request Number | 7 |
|---|---|
| Description of Documents or Category of Documents Requested | Documents disclosed by Acuity at exhibits **R-008**, **C-032** and **C-033** in their native electronic format |

| Justification, including Relevance and Materiality According to Requesting Party | Ref. to Pleadings, Submissions, Exh., WS. or ER. | | |
|---|---|---|---|
| | | 1. The Respondents have pleaded *inter alia* that:<br><br>   1.1.  the Implied Terms are part of the LTS&CA; and<br><br>   1.2.  the Implied Terms have been breached and/or not fulfilled as Global Wise was not a lender that was ready, willing and able to provide the Intended Loan to the Respondents and/or was not in a position to demonstrate or prove as such to the Respondents. At the time that the Conditional Offer was issued, Global Wise (a) did not have the funds required to provide the Intended Loan, (b) was unable to demonstrate that it would be able to procure funds from any party for the purpose of the Intended Loan, (c) had no track record of having provided financing comparable to the size of the Intended Loan, and (d) did not intend for the Respondents to be able to draw down on the Intended Loan<br><br>   1.3.  the Implied Terms have been breached and/or not fulfilled. At the time that the Conditional Offer was issued, Global Wise was unable to demonstrate or prove to the Respondents that it would be able to procure the funds for the purpose of the Intended Loan.<br><br>2. Acuity has pleaded *inter alia* that Global Wise was ready, willing and able to provide funding for the Project given that Global Wise is a legitimate and credible lender which is backed by various investors.<br><br>3. In support of this assertion, Acuity has provided the following exhibits:<br><br>   3.1.  **R-008**: a screenshot of a Deutsche Bank tear sheet in the name of "British Jordanian Group Ltd";<br><br>   3.2.  **C-032**: a Caprock Merchant portfolio report in the name of "Elite Crown Cayman Limited"; | **C-008** (Conditional Offer)<br><br>Defence at [4.3], [4.4.5] [5.2], **R-008** (Letter from WongP dated 18 March 2024)<br><br>Reply at [67], [96]-[98], **C-032** (Letter from Elite to Acuity dated 19 September 2024) and **C-033** (Letter from Global Wise to Acuity dated 15 May 2019) |

|  |  | 3.3. **C-032**: a Wells Fargo SGSR Statutory Trust All Accounts Balances Report in the name of "Elite Crown Cayman Limited"; and |  |
|  |  | 3.4. **C-033**: a redacted screenshot of the Bank of Ireland account statement. |  |
|  |  | 4. The documents requested are relevant and material to the disputed issue of whether Global Wise was as a lender who was at the time of the Conditional Offer able to provide the Intended Loan. |  |
|  |  | 5. The documents requested are not in the Respondents' PCC. |  |
|  |  | 6. The documents requested are also clearly within Acuity's PCC, given that they have disclosed the exhibits. |  |
|  |  | 7. The documents requested ought to be in Acuity's possession, power and custody, whether because they were procured in the course of Acuity's due diligence into Global Wise's ability to lend, or because Acuity is able to obtain such documents from Global Wise (and from Elite) as a long-time business partner/collaborator of Global Wise, and it would not be unreasonably burdensome for Acuity to produce the documents requested. In fact, Acuity has disclosed a letter from Elite Crown Diamond Ltd to Acuity with purported proof of funds (**R-008**), a letter from Elite Global Equity Fund to Acuity with purported proof of capacity to support financing of projects (**C-032**), as well as a letter from Global Wise (**C-033**) purportedly to inform Acuity about potential investor sources with funds. |  |
|  | **Comments** |  |  |
| **Claimant's Response/Objections** |  | 1. Acuity objects to this request. |  |
|  |  | 2. At the outset, it is unclear what is the purported "*native electronic format*" of the documents requested that the Respondents are referring to. The documents enclosed to **R-008**, **C-032** and **C-033** were provided to Acuity in the format already disclosed and Acuity has disclosed them in the format in which they were provided. |  |
|  |  | 3. The Respondents have also not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of |  |



| | | |
|---|---|---|
| | | the IBA Rules). The Respondents have not explained how the purported "*native electronic format*" of the documents requested are relevant to the case and material to its outcome **over and above** the format in which they have already been disclosed, and they are not. |
| | 4. | In any case, the documents requested (if they even exist) are not in Acuity's PCC. These are documents that would be in Elite's PCC and Acuity does not have access to these documents and/or is not able to compel Elite to produce these documents. There is nothing in [7] of the Respondents' comments above which suggest that the documents requested are in Acuity's PCC. That Acuity is able to disclose the documents in their current format does not mean that Acuity has access to and/or is able to compel Elite to produce the requested documents (if they even exist), and/or that the requested documents are in Acuity's PCC. |
| **Respondents' comments on Claimant's objections** | 1. | As set out at [4] of the Respondents' Document Requests dated 17 April 2025, "*Requests for documents which are electronic in nature shall be for copies of the documents in their original native formats e.g. emails shall be produced in .msg formats.*" |
| | 2. | Procedural Order No. 1 dated 16 December 2024 further provides at 12.11 that "*Documents produced pursuant to a Document Request shall be exchanged electronically, in native format where available and among the Parties only.*" |
| | 3. | As the documents requested were provided in the form of a bundle of factual exhibits, the metadata of such documents have been erased. The Respondents are therefore requesting for native electronic copies from which the metadata of such documents may be inspected. |
| | 4. | If Acuity does not currently possess such the original native electronic copies which contain such metadata, it is within their power and control to obtain such documents from Global Wise or Elite and paragraph [5] of the Respondents' comments at Request Number 1 above is repeated. Even if Acuity is unable to obtain such original copies from Global Wise or Acuity, native electronic copies of the emails by which the documents were transmitted to Acuity (i.e. in .msg format) can be provided to the Respondents for their inspection. |
| | 5. | It cannot be disputed that such documents are relevant and material to the issues in dispute given that Acuity has provided these documents in support of their case. As the Respondents have alleged *inter alia* that Global Wise was not a lender ready, willing and able to provide the Intended Loan, had no track record of having provided financing comparable to the size of the Intended Loan, and did not intend for the Respondents to be able to draw down on the Intended Loan, it must be open to the |

| | |
|---|---|
| | Respondents to inspect the documents disclosed thus far which allegedly support Acuity's case. |
| **Tribunal's Decision** | |

| Request Number | 8 | | |
|---|---|---|---|
| **Description of Documents or Category of Documents Requested** | Correspondence and communications between Acuity's employees and associates *inter se* relating to the Project, Mr Roe, Roe Corp, 267 Partners prior to the commencement of this Arbitration | | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that:<br><br>1.1. the Respondents had mistakenly believed, in entering into the LTS&CA that the Implied Terms were part of the LTS&CA i.e. the Mistake;<br><br>1.2. at all material times, Acuity had actual and/or constructive knowledge of the Mistake; and<br><br>1.3. Acuity had engaged in unconscionable conduct in relation to the Mistake, by deliberately not bringing the suspicion of a possible mistake to the Respondents' attention and in seeking to pressure the Respondents into accepting the Conditional Offer;<br><br>1.4. Acuity had represented that it would introduce, organise arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation;<br><br>1.5. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project; and<br><br>1.6. Acuity had made the Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false.<br><br>2. Acuity has pleaded *inter alia* that:<br><br>2.1. it could not possibly have had actual and/or constructive knowledge of the Mistake;<br><br>2.2. it did not seek to pressure the Respondents into accepting the Conditional | Defence at [5.3], [5.4]<br><br>Reply at [113], [114], [120] |

| | | |
|---|---|---|
| | | Offer; and |
| | | 2.3. the Representation was not false as it had introduced Global Wise to the Respondents. |
| | | 3. The documents requested are relevant and material to the disputed issues of: |
| | | 3.1. whether Acuity had actual and/or constructive knowledge of the Mistake; |
| | | 3.2. whether Acuity had sought to pressure the Respondents into accepting the Conditional Offer; and |
| | | 3.3. whether Acuity had made the Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false. |
| | | 4. The documents requested are not in the Respondents' PCC. |
| | | 5. It also cannot be disputed that the documents requested in Acuity's possession, power and custody and that it would not be unreasonably burdensome for Acuity to produce the documents requested. |
| | **Comments** | |
| **Claimant's Response/Objections** | | 1. Acuity objects to this request. |
| | | 2. The documents requested are not of a narrow and specific category. The Respondents have not specified what are the specific documents requested. In particular, the Respondents have not specified who are the "*associates*" referred to. |
| | | 3. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "***a request for "any and all documents", references to lengthy time frames,*** |

and/or *"relating"* to a broad description of subject matter *[which applies equally to a request for documents "evidencing" a broad subject-matter]* **will mostly be considered too broad**". [18] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and* **requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed**."

4.  Further, the burden of proof lies on the Respondents to prove their allegations as set out at [3] of their comments above. However, the Respondents have not adduced a single iota of evidence to prove any of these allegations. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made and requests the counterparty to produce the relevant evidence,* **this request should normally be dismissed.**" [19] The same should apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

5.  Laid bare, the Respondents' document request is nothing more than an opportunistic attempt to trawl through Acuity's cupboard to look for material to prove its own allegations when it has no evidence and has not been able to adduce any evidence to support its own allegations. This is offensive to fundamental principles of document production in the context of international commercial arbitrations and should not be allowed.

6.  As opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "**the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept.** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record,* **for which sufficient evidence has not been voluntarily supplied by the parties.**" [20]

7.  In any case, apart from bare and unsubstantiated assertions, the Respondents have also not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules).

---

[18] *IBA Rules Commentary* at [106], **Annex A**.
[19] *IBA Rules Commentary* at [135], **Annex A**.
[20] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

<table>
<tr><td></td><td>

a. The Respondents have not shown that the requested documents will in fact shed light on the allegations at [3] of the Respondents' comments above.

b. The Respondents have not even established a *prima facie* case that Acuity had allegedly sought to pressure the Respondents into accepting the Conditional Offer. As seen from Section II, [45] and [115] of the Reply, Acuity did not in fact pressure the Respondents into accepting the Conditional Offer.

c. The Respondents have also not established a *prima facie* case that Acuity was aware of the purported Mistake and had made the purported Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false. Apart from bare and unsubstantiated assertions, the Respondents have not adduced an iota of evidence to show that they were labouring under the purported Mistake and/or that Acuity was purportedly aware of the purported Mistake. The Respondents have also not adduced any evidence whatsoever to show that Global Wise was not ready, willing and able to provide financing for Project Tribeca and therefore that the purported Representation was untrue (much less that Acuity had made the purported Representation knowing it to be untrue).

d. Further, the Respondents' document request is for up until *the commencement of this Arbitration*.

  i. The Respondents have not explained how the documents requested between the time the Conditional Offer was issued on 20 October 2023 and the commencement of this arbitration on 30 April 2024 are relevant and material.

  ii. This period of time also includes the period of time when parties had engaged solicitors and the parties' solicitors had started exchanging correspondence from 8 January 2024 onwards. The documents requested falling within this period of time and leading up to the exchange of correspondence between the parties' solicitors from 8 January 2024 onwards would therefore be covered by litigation privilege.

</td></tr>
<tr><td>

**Respondents' comments on Claimant's objections**

</td><td>

1. The Respondents refer to and repeat our submissions at paragraphs [8] to [16] of the Respondents' comments at Request Number 1 above and highlight that the "*categories of documents may be produced*", "*a party may be unable to specifically identify documents although they may well be relevant and material and should be produced*" and the requests need not be as specific as the civil law standard i.e. to identify specific persons. We further highlight [2.1] of the Respondents' comments at Request Number 2 above and highlight that the exact meaning of narrow and specific is a matter of interpretation. In this case, it is sufficiently narrow and specific to limit the documents requested to the subject matter of the Project and the Respondents prior to the commencement of this Arbitration.

2. It is further the Claimant who has represented Dr. Hwang to be a "business associate" rather than an

</td></tr>
</table>

employee, which justifies the inclusion of any such "associates" who may have been involved in correspondence involving the Project and the Respondents within the provided time frame in the document request.

3. The Respondents have also demonstrated a *prima facie* case that:

   3.1. At [5.3.3] and [4.1.3] of the Defence: <u>Acuity must have been aware, based on *inter alia* its knowledge that the Respondents did not have sufficient funds to finance the Project on their own, that the Respondents were operating under the Mistake,</u> i.e. that under the LTS&CA, that they would obtain a loan offer from a lender that was ready willing and able to provide the Intended Loan, and that the Fund Arrangement Fee would only be payable upon Acuity procuring the same.

   3.2. At [5.4.3]-[5.4.4] and [4.4.6] of the Defence: Acuity has been involved in previous cases where it had represented to borrowers that it would be able to secure a loan for an intended purpose, yet the loan never materialised. In one such case, i.e. *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024), the purported lender was also Global Wise. <u>Such a pattern of conduct, we submit, shows that Acuity did not intend and was never able to procure a lender who was ready, willing and able to provide the Intended Loan</u> to the Respondents.

4. In view of these pleaded facts which make out at least a *prima facie* case in respect of Acuity's knowledge (of the Mistake) and intention (in making the Representation), it is apparent that the requested documents are relevant and material to the issues in dispute, and that Acuity should produce these documents.

5. The Respondents are not seeking production of correspondence which are protected by litigation privilege. However, the category of documents requested pertains to correspondence and communications between Acuity's employees and associates (not its solicitors) *inter se*, and would presumably include documents not covered by litigation privilege.

| | |
|---|---|
| **Tribunal's Decision** | |

| Request Number | 9 | |
|---|---|---|
| **Description of Documents or Category of Documents Requested** | Correspondence and communications between Acuity (including but not limited to Dr. Hwang) and Global Wise relating to the Project, Mr Roe, Roe Corp, 267 Partners, prior to the commencement of this Arbitration | |

| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that: | Defence at [5.3], [5.4] |
|---|---|---|---|
| | |   1.1. the Respondents had mistakenly believed, in entering into the LTS&CA that the Implied Terms were part of the LTS&CA i.e. the Mistake; | Reply at [113], [114], [120] |
| | |   1.2. at all material times, Acuity had actual and/or constructive knowledge of the Mistake; and | |
| | |   1.3. Acuity had engaged in unconscionable conduct in relation to the Mistake, by deliberately not bringing the suspicion of a possible mistake to the Respondents' attention and in seeking to pressure the Respondents into accepting the Conditional Offer; | |
| | |   1.4. Acuity had represented that it would introduce, organise arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; | |
| | |   1.5. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project; and | |
| | |   1.6. Acuity had made the Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false. | |
| | | 2. Acuity has pleaded *inter alia* that: | |
| | |   2.1. it could not possibly have had actual and/or constructive knowledge of the Mistake; | |
| | |   2.2. it did not seek to pressure the Respondents into accepting the Conditional | |

| | | |
|---|---|---|
| | | Offer; and |
| | | 2.3. the Representation was not false as it had introduced Global Wise to the Respondents. |
| | | 3. The documents requested are relevant and material to the disputed issues of: |
| | | 3.1. whether Acuity had actual and/or constructive knowledge of the Mistake; |
| | | 3.2. whether Acuity had sought to pressure the Respondents into accepting the Conditional Offer; and |
| | | 3.3. whether Acuity had made the Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false. |
| | | 4. The documents requested are not in the Respondents' PCC. |
| | | 5. It also cannot be disputed that the documents requested in Acuity's possession, power and custody and that it would not be unreasonably burdensome for Acuity to produce the documents requested. |
| | **Comments** | |
| **Claimant's Response/Objections** | | 1. Acuity objects to this request and repeats its Response/Objections to the Respondents' Document Request 9 as set out above. |
| | | 2. Further, whilst the requested documents may be in Acuity's possession and custody, they also belong to Global Wise. Acuity is therefore not in a position to disclose the requested documents without Global Wise's consent. These documents are also commercially confidential to Global Wise. |
| **Respondents' comments on Claimant's objections** | | 1. The Respondents refer to and repeat their submissions in respect of Request Number 8 above. |
| | | 2. The Respondents submit that Acuity's assertion of commercial confidentiality is not a valid ground for objection and refer to Article 3.13 of the IBA Rules which provides that "*Any Document submitted or produced by a Party or non-Party in the arbitration and not otherwise in the public* |

| | |
|---|---|
| | *domain shall be kept confidential by the Arbitral Tribunal and the other Parties, and shall be used only in connection with the arbitration.*" |
| **Tribunal's Decision** | |

| Request Number | 10 |
|---|---|
| **Description of Documents or Category of Documents Requested** | Any and all documents filed in proceedings involving Acuity (including former corporate interests of Mr. Thambyrajah trading as "Acuity Funding") and/or Global Wise and Acuity's loan brokerage clients (former or current), in respect of disputes arising from previous loan brokerage agreements entered into between Acuity and its loan brokerage clients, including but not limited to proceedings in/relating to: <br><br>1. *Berhero Pty Ltd (trading as Acuity Funding) v Dinsey* [2013] QCATA 311 <br>2. *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011) <br>3. *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019) <br>4. *Berhero Pty Ltd v Hinds* [2023] NSWSC 1022 (30 August 2023) <br>5. SIAC Arbitration No. ARB 946/20/JZH <br>6. *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219 <br>7. *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024) <br>8. *Aquamore Credit Equity Pty Ltd v Maroon* [2023] FCA 1399 (14 November 2023) <br>9. *Wengel (Trustee), in the matter of Maroon, a bankrupt* [2024] FCA 921 (15 August 2024) |

| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | 1. The Respondents have pleaded *inter alia* that: <br><br>   1.1. Acuity had represented that it would introduce, organise arrange or obtain loan funds to fund the Project in accordance with the purpose stated in clause 5 of the LTS i.e. the Representation; <br><br>   1.2. At the time the Representation was made, Acuity did not intend to procure a lender which was ready, willing and able to provide the Intended Loan to the Respondents for the Project; <br><br>   1.3. Acuity had made the Representation whilst knowing it to be false, without belief in its truth, or reckless as to whether the Representation was true or false; <br><br>   1.4. Acuity has consistently demonstrated, in its in past dealings with other entities in similar positions to the Respondents, that Acuity was unable to follow through on its promises to procure loans from lenders that were ready, willing and able to provide the agreed-upon loans with those entities; and | Defence at [4.4.6], [5.4], **R-010** to **R-015** (past Australian Court judgments and arbitration award in SIAC Arbitration No. ARB 946/20/JZH) <br><br>Reply at [100]-[103] |

1.5. Acuity's *modus operandi* in respect of its previous clients is materially similar to its conduct in its dealings with the Respondents and demonstrates that (a) Acuity did not intend and was never able to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project and (b) Acuity had made the Representation whilst knowing it to be false, or without belief in its truth, or reckless as to whether the Representation was true or false.

2. The Respondents have, at [4.4.6] of the Defence, identified 4 Australian court judgements and 1 arbitration award which were issued in respect of disputes arising from Acuity's loan brokerage agreements with its clients and wherein Acuity was unable to follow through on its promises to procure loans from lenders that were ready, willing and able to provide the agreed-upon loans with those entities:

2.1. **R-010**: *Berhero Pty Ltd (trading as Acuity Funding) v Dinsey* [2013] QCATA 311

2.2. **R-011**: *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011

2.3. **R-012**: *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019)

2.4. **R-013**: *Berhero Pty Ltd v Hinds* [2023] NSWSC 1022 (30 August 2023)

2.5. **R-014** and **R-015**: SIAC Arbitration No. ARB 946/20/JZH

3. Acuity has pleaded *inter alia* that "*Acuity's* [sic] *assertion is plainly untrue*" and the cases do not show that Acuity has in the past been unable to procure loans from lenders that were ready, willing and able to provide the loans.

4. The Respondents have further identified the following Australian court judgments (copies of which are annexed hereto) issued in respect of or referring to disputes arising from Acuity (or a predecessor of Acuity)'s loan brokerage agreements with its clients:

4.1. *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219: Cayden Pte Limited (later known as ACN 075 911

410 PTY LTD) ("**Cayden**") was an Australian private company also trading as "Acuity Funding" before it was cancelled/deregistered on or about 2 June 2017. Mr. Thambyrajah was also a director and shareholder of Cayden. Cayden entered into a loan brokerage agreement with the defendants and claimed that they had procured a loan proposal from a lender which was an approval in principle of a loan upon which their right to payment of a ree arose. However, the court therein held that the loan proposal "*departed in a number of respects from what had been applied for*" and which was on "*a recognisably different basis*" than the loan sought by the defendants.

4.2. *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024): Acuity entered into a loan brokerage agreement with the defendants and claimed for unpaid fees. The defendants have contended *inter alia* that the lender, Global Wise, was not a genuine lender capable of providing the loans sought, that Acuity had engaged in misleading representations about Global Wise's capacity to lend the monies sought, and that documents produced by Global Wise support their position that Global Wise lacks assets and the capacity to lend the defendants the USD 210 million sought. These proceedings appear to be ongoing.

4.3. *Aquamore Credit Equity Pty Ltd v Maroon* [2023] FCA 1399 (14 November 2023) and *Wengel (Trustee), in the matter of Maroon, a bankrupt* [2024] FCA 921 (15 August 2024): These judgments refer to proceedings commenced by the Maroons (comprising of a bankrupt Ms Nadia Maroon and her sons, all of whom are shareholders in a company Waterview Developments Pty Ltd ("**Waterview**")) against, *inter alia*, Acuity and Aquamore Credit Equity Pty Ltd, a lender who had entered into facility agreements with the Maroons and Waterview. Acuity is described as a finance broker retained by Waterview and Ms Nadia Maroon's sons, against whom the Maroons are claiming damages for negligence, misleading and deceptive conduct, and breach of contract. These proceedings which appear to be ongoing.

5. The documents requested are relevant and material to the disputed issues of:

5.1. whether Acuity has in its past dealings been unable to follow through on its promises to procure loans from lenders that were ready, willing and able to provide the agreed-upon loans;

<table>
<tr><td></td><td></td><td>

5.2. whether Acuity did not intend and was never able to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project; and

5.3. whether Acuity had made the Representation whilst knowing it to be false, or without belief in its truth, or reckless as to whether the Representation was true or false.

6. The documents requested are not in the Respondents' PCC.

7. It also cannot be disputed that the documents requested are in Acuity's PCC and that it would not be unreasonably burdensome for Acuity to produce the documents requested.

</td><td></td></tr>
</table>

| | **Comments** | |
|---|---|---|
| **Claimant's Response/Objections** | | 1. Acuity objects to this request. |

2. The documents requested are not of a narrow and specific category. The Respondents have not specified what are the specific documents requested.

3. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "**_a request for "any and all documents", references to lengthy time frames, and/or "relating" to a broad description of subject matter_** *[which applies equally to a request for documents "evidencing" a broad subject-matter]* **_will mostly be considered too broad_**". [21] Order 12.2 of PO 1 also provides that "*[t]he Parties are reminded that this is an international arbitration conducted under the IBA rules and **_requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed_**.*"

4. Further, the burden of proof lies on the Respondents to prove their allegations as set out at [5] of their comments above. None of the cases referred to by the Respondents, including the ones identified at [4] of the Respondents' comments above, show that Acuity has in its past dealings not been able to and/or did not intend to secure a lender that was ready, willing and able to provide

---

[21] *IBA Rules Commentary* at [106], **Annex A**.

|  | financing to the lender. |
|---|---|
|  | a. *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219 concerned an application by Cayden Pty Limited t/as Acuity Funding claiming the balance of commission payable by the defendants payable for work done under a retainer by the defendants of the plaintiff. There, the Court found that the quantum of the loan offered was insufficient to meet the purposes for which the loan term sheet had been entered into.[22] Additionally, the Court found that the retainer document expressly contained special conditions which had to be met, which were conditions precedent to the plaintiff's entitlement of fees, and that the plaintiff had not proven that such special conditions had been met.[23] This was not a case concerning whether the lender introduced by Acuity was ready, willing, and/or able to provide the loan. In fact, the lender introduced by Acuity had in fact provided funds. |
|  | b. *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024) concerned the defendants' application for orders restraining Acuity from continuing proceedings commenced in Malaysia against the defendants or commencing further proceedings against the defendants arising out of the same circumstances.[24] In granting the orders sought by the defendants, the Court found that the balance of convenience requires the Court to intervene to restraint Acuity's pursuit of the Malaysian proceedings "*to protect the integrity of the proceedings in [the Australian] Court*".[25] There was nothing in this case about whether Acuity was not able to and/or did not intend to secure a lender ready, willing, and/or able to provide funds. |
|  | c. *Aquamore Credit Equity Pty Ltd v Maroon* [2023] FCA 1399 (14 November 2023) and *Wengel (Trustee), in the matter of Maroon, a bankrupt* [2024] FCA 921 (15 August 2024) concerned applications under the Australian Bankruptcy Act. Acuity is not even a party to these proceedings. The judgments only make cursory references to Acuity. Again, this was not a case concerning whether the lender introduced by Acuity was ready, willing, and/or able to provide the loan. |
|  | 5. As opined by the learned authors of the authoritative textbook on the IBA Rules, *IBA Rules of Evidence: Commentary on the IBA Rules on the Taking of Evidence in International Arbitration (Second Edition)*, "*[i]f a party alleges that the counterparty failed to prove an allegation it made* |

---

[22] *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219 at [13].

[23] *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219 at [14].

[24] *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024) at [1].

[25] *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024) at [97].

*and requests the counterparty to produce the relevant evidence, **this request should normally be dismissed**.*" [26] The same should apply equally to where a party fails to adduce evidence to prove an allegation that it has made.

6.    Laid bare, the Respondents' document request is nothing more than an opportunistic attempt to trawl through Acuity's cupboard to look for material to prove its own allegations when it has no evidence and has not been able to adduce any evidence to support its own allegations. This is offensive to fundamental principles of document production in the context of international commercial arbitrations and should not be allowed.

7.    As opined by the learned authors of the *Rules of Evidence in International Arbitration: An Annotated Guide (Second Edition)*, "***the presumption in arbitration is that a party will establish its case based largely (if not entirely) on the documents within its own possession. Thus, a wide-ranging discovery process that allows a party to substantiate its case by "discovering" the primary evidence to support its arguments is not compatible with this threshold concept.*** *Indeed, it is more accurate to view disclosure under article 3.3 [of the IBA Rules] as a limited process aimed at filling gaps or providing assistance in covering important, but identifiable issues raised by the factual record, **for which sufficient evidence has not been voluntarily supplied by the parties***."[27]

8.    In any case, apart from bare and unsubstantiated assertions, the Respondents have also not shown that the documents requested are and the documents requested are not "*relevant to the case and material to its outcome*" (see Art 3.3(b) and Art 9.2(a) of the IBA Rules).
    a.    Whether Acuity was in past dealings able to secure a lender ready, willing and able to provide funds is irrelevant to whether Acuity was able to do so for Project Tribeca.
    b.    The Respondents have not even established a *prima facie* case in respect of their allegations at [5] of their comments above. [102] and [103] of the Reply, [4] above, and [7] of Acuity's Response/Objections to the Respondents' Document Request Number 8 above are repeated.
    c.    The Respondents have also not shown that **all** of the documents filed in these cases are relevant and material. These would include lists of documents, interlocutory applications, which are obviously irrelevant and immaterial to the present case.

9.    Further, the documents filed in SIAC Arbitration No. ARB 946/20/JZH ("**Arbitration**") are

---

[26] *IBA Rules Commentary* at [135], **Annex A**.
[27] *Rules of Evidence in International Arbitration* at [3.30] and [3.31], **Annex B**.

| | |
|---|---|
| | confidential (see Rule 39 of the SIAC Rules 2016, and also Art 9(2)(e) of the IBA Rules). It is also trite that there is a general obligation of confidentiality in arbitration.[28] Whilst it appears that the Respondents have obtained a copy of the arbitral award made in the Arbitration by filing a request for inspection of the case file in HC/OA 685/2022 which was an action in the Singapore Courts seeking recognition and enforcement of the arbitral award, this does not mean that confidentiality over all other documents filed in the Arbitration has been waived and/or lost. Any disclosure of the other documents filed in the Arbitration would necessarily require the consent of among others, the respondents in that Arbitration who are not parties to this arbitration. The blatant disregard for fundamental principles of international commercial arbitration by the Respondents in this case is troubling to say the least. |
| | 10.  Finally, it would be unreasonably burdensome for Acuity to have to produce the requested documents. Based on the dates of the cases referred to alone, the requested documents date back to **at least more than 17 years ago**, with the earliest judgment being issued in 2008. |
| | 11.  This only serves to reinforce the point that the Respondents' document request is nothing more than a fishing expedition, designed to oppress and put undue pressure on Acuity. |
| **Respondents' comments on Claimant's objections** | 1.  The Respondents refer to and repeat the submissions at paragraphs [6] to [14] of the Respondents' comments at Request Number 1 above and highlight that the "*categories of documents may be produced*", "*a party may be unable to specifically identify documents although they may well be relevant and material and should be produced*" and the requests need not be as specific as the civil law standard i.e. to identify specific documents. We further highlight [2.2] of the Respondents' comments at Request Number 2 above and highlight that the exact meaning of narrow and specific is a matter of interpretation. In this case, it is sufficiently narrow and specific to limit the documents requested to dispute resolution proceedings with a specific subject matter and between specific persons/groups of persons. |
| | 2.  The Respondents have already explained in its justification why the documents requested are relevant and material to disputed issues, including of Acuity's *modus operandi* in respect of its previous clients. |
| | 3.  Acuity's submissions made in respect of the cases cited by the Respondents do not detract from the obvious and disturbing pattern of Acuity becoming embroiled in disputes with former clients |

---

[28] *AAY and others v AAZ* [2011] 1 SLR 1093 at [55], **Annex C**.

seeking to borrow monies for specific purposes, Acuity being engaged to procure such loans, such loans failing to materialise (albeit for slightly different reasons in each case), and Acuity nevertheless seeking to claim fees. Specifically:

3.1. In respect of *Cayden Pty Limited trading as Acuity Funding v Patrick Nouh & 3 ors* [2008] NSWSC 1219, it is not stated in the judgement that the lender introduced by Acuity had provided funds, as Acuity has stated at [4a] of its objection, and this case is *prima facie* an instance of Acuity failing to procure a ready, willing and able lender for the loan sought.

3.2. *Berhero Pty Ltd v Senibina Sentral SDN BHD* (2024) NSWSC 459 (26 April 2024) is an ongoing dispute which specifically involves <u>similar allegations of Global Wise's capability to provide the loans sought</u>.

3.3. *Aquamore Credit Equity Pty Ltd v Maroon* [2023] FCA 1399 (14 November 2023) and *Wengel (Trustee), in the matter of Maroon, a bankrupt* [2024] FCA 921 (15 August 2024) refer to separate but related proceedings to which Acuity is a party, which, based on references to it in the published judgments (that it involves claims of misleading and deceptive conduct), would be relevant and material to establishing Acuity's *modus operandi* in respect of its previous clients.

4.   In respect of the other cases pleaded in the Respondents' Defence, it suffices at this stage to remark that they are relevant and material to the disputed issues as set out in the Respondents' justification for this request:

4.1. *Berhero Pty Ltd (trading as Acuity Funding) v Dinsey* [2013] QCATA 311: Acuity admits that Dinsey's claim was that the offer was not what he contracted for as it was only a preliminary offer – clearly an instance where the purported lender was not ready, willing and/or able to provide the loan.

4.2. *ACN 075 911 410 Pty Ltd v Almaty Pty Ltd* [2011] NSWSC 333 (20 April 2011): This was a case where the discussion paper was stated to not be an offer for finance and there was no conditional loan approval – i.e. the purported lender was not ready, willing and/or able to provide the loan.

4.3. *Berhero Pty Ltd v Hinds* [2019] ACTSC 378 (31 May 2019) and *Berhero Pty Ltd v Hinds* [2023] NSWSC 1022 (30 August 2023): It was explicitly noted in this case that the purported loan offer document had conditions precedent which may operate in practice to restrict the

|  | funding available and the "Purpose" of the finance sought by the clients – "*purchase of land and develop the site*" – could not be achieved without a substantial contribution of funds by the clients and "*Given the large funding shortfall, Mr Green was of the opinion that the discussion paper was not sufficient*" for the "Purpose".<br><br>4.4. SIAC Arbitration No. ARB 946/20/JZH (the "**Fulland arbitration**"): This was a case where the borrowers accepted the conditional offer but still could not benefit from either the brokerage agreement with Acuity or the offer from Global Wise due to their inability to pay the upfront fees. If the issue of upfront payment had not been raised at the New York Meeting, the Respondents would have been in a similar situation as the Fulland arbitration respondents.<br><br>5. In respect of Acuity's argument that documents filed in the Fulland arbitration are confidential, we refer to Article 3.13 of the IBA Rules with provides that the confidentiality requirement applies "*except and to the extent that disclosure may be required of a Party to fulfil a legal duty, protect or pursue a legal right, or enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority.*" Acuity's objection on this ground therefore cannot stand.<br><br>6. Lastly, the Respondents submit that it would not be unduly burdensome for Acuity to provide the documents. Acuity has not provided any reason why they would be *unreasonably* burdensome save that some cases date back to years ago. If the documents exist and are in Acuity's PCC, there is no reason why it would be *unreasonably* burdensome for Acuity to retrieve such documents, especially if they are stored in electronic format. |
|---|---|
| **Tribunal's Decision** |  |