Exhibit C

## IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE (6TH EDITION, 1 AUGUST 2016)

SIAC Arbitration No. 162 of 2024

Between

**BERHERO PTY LIMITED (T/A ACUITY FUNDING)**
(Australian Business No. 32 060 065 821)

...*Claimant*

And

1.  **THE ROE CORPORATION**
    (DOS ID No. 2859163)

    ...*1st Respondent*

2.  **267 PARTNERS LLC**
    (DOS ID No. 5606747)

    ...*2nd Respondent*

3.  **BUHM JUNG ROE**
    (United States of America Passport No. 570672279)

    ...*3rd Respondent*

---

## RESPONSE TO NOTICE OF ARBITRATION AND COUNTERCLAIM

---

| COUNSEL FOR THE CLAIMANT | COUNSEL FOR THE RESPONDENTS |
|---|---|
| **WONGPARTNERSHIP LLP** | **SHOOK LIN & BOK LLP** |
| 12 Marina Boulevard #28-01 Marina Bay Financial Centre Tower 3 Singapore 018982 | 1 Robinson Road #18-00 Robinson Road Singapore 048542 |
| Koh Swee Yen S.C. Tiong Teck Wee Samuel Teo Donny Trinh | David Chan Daryl Fong Denise Yong |
| File ref: KSY/TITW/STWK/DTBD/202400005 | File ref: DCN/DYF/DYY/2241019 |

Dated this 29th day of May 2024

1. <u>**INTRODUCTION**</u>

1.1. <u>Preliminaries</u>

1.1.1. This Response to the Notice of Arbitration and Counterclaim (hereinafter the "**Response**") is filed on behalf of The Roe Corporation ("**1st Respondent**"), 267 Partners LLC ("**2nd Respondent**") and Mr. Buhm Jung Roe ("**3rd Respondent**") (collectively, the "**Respondents**"), pursuant to Rule 4.1 of the Arbitration Rules of the Singapore International Arbitration Centre effective as of 1 August 2016 ("**SIAC Rules**").

1.1.2. The Respondents set out below their brief response to the Claimant's Notice of Arbitration dated 29 April 2024 (the "**NOA**").

2. <u>**PARTIES**</u>

2.1. <u>The Claimant</u>

2.1.1. The Claimant is a company incorporated in Australia. Mr. Ranjit Thambyrajah is the Managing Director of the Claimant.

2.2. <u>The Respondents</u>

2.2.1. The 1st Respondent is a corporation incorporated in New York, The United States of America bearing New York Department of State Identification Number 2859163 with its registered address at 267 Broadway, 2nd Floor, New York, NY, United States, 10007 ("**267 Broadway**").

2.2.2. The 2nd Respondent is a limited liability company incorporated in New York, The United States of America bearing New York Department of State Identification Number 5606747 with its registered address at 267 Broadway.

2.2.3.    The 3rd Respondent is a citizen of the United States of America. The 3rd Respondent is the President of the 1st Respondent and the sole managing member of the 2nd Respondent.

2.2.4.    The Respondents are represented in these proceedings by M/s Shook Lin & Bok LLP. The contact details of the solicitors having conduct of the matter are set out as follows:

| | |
|---|---|
| Name of Solicitors: | Mr. David Chan / Mr. Daryl Fong / Ms. Denise Yong |
| Address: | 1 Robinson Road, #18-00 AIA Tower, Singapore 048542 |
| Telephone: | + 65 6439 0616 / +65 6439 0629 / +65 6439 0638 |
| Email: | david.chan@shooklin.com / daryl.fong@shooklin.com / denise.yong@shooklin.com |

2.2.5.    All notices and documents to be served on the Respondents in the arbitration should be directed and addressed to and served on the Respondents' solicitors in these proceedings.

## 3.    BRIEF STATEMENT OF DEFENCE

### 3.1.    Preliminaries

3.1.1.    The Respondents wholly deny the allegations made and reliefs sought by the Claimant in the NOA. It is the Respondents' position that they are the victims of a fraud perpetrated by the Claimant and its associates, including Mr. Ranjit Thambyrajah, Global Wise Investments Pte. Ltd. ("**Global Wise**") and Global Wise's Chairman, Mr. Bal Lankan.

3.1.2.    We set out below a brief background on the nature and circumstances of the Respondents' Response without any limitation to the Respondents' case in this arbitration and without prejudice to their rights to amend, supplement, and/or modify the Respondents' defences, claims and reliefs sought in this Response, whether in the Statement of Defence and Counterclaim or otherwise.

3.2.    <u>The Project</u>

3.2.1.    The 1st and 2nd Respondents are managed and represented by the 3rd Respondent. Mr. Park Sungwoo ("**Mr. Park**") is a consultant of the 3rd Respondent.

3.2.2.    The 1st and 2nd Respondents own the land and the property situated at 267 Broadway. In or around July 2023, the Respondents were seeking funding to redevelop the property at 267 Broadway and build a super luxury condo at the premises ("**Project**"). Such funding would include a construction loan of up to around USD 180 million ("**Intended Loan**") as well as equity investment of around USD 45 million.

3.3.    <u>The Loan Term Sheet and Costs Agreement</u>

3.3.1.    On or around 26 July 2023, Mr. Park was introduced to the Claimant by one Dr. John Hwang Gi Sun, subsequent to which Mr. Park and the Claimant's representatives engaged in email correspondence regarding funding for the Project.

3.3.2.    By way of letter dated 24 September 2023, the Claimant's Mr. Viet Anh Nguyen ("**Mr. Nguyen**") provided a draft Loan Term Sheet ("**LTS**") and Costs Agreement ("**CA**") to Mr. Park, with the 3rd Respondent in copy.

3.3.3.    Pursuant to the terms of the draft LTS, the Respondents authorised the Claimant to "arrange the loan facility" for the Project.

3.3.4.    The CA provided *inter alia* that:

(a)    The 1st and 2nd Respondents were to engage the Claimant to the exclusion of all others for the purposes of "introducing, organising, arranging or obtaining loan funds [of up to approximately USD 280 million] for the purpose [of assisting the 1st and 2nd Respondents for the development of the Project]";

(b)    The 1st and 2nd Respondents were to pay a "total non-refundable processing fee of USD 100,000 due upon signing of [the LTS and CA]" ("**Processing Fee**");

(c)    The 1st and 2nd Respondents were to pay a "Fund Arrangement Fee of 4% plus VAT/GST/Etc (if required to be collected) of the loan amount" ("**Fund Arrangement Fee**") "PLUS Transfer of 50% of all types of share [sic] of the project holding entity and any Project Company/ Project Management entities that might be set up in the future for the developments to a nominated entity by [the Claimant]" ("**Project Shares**") "in the event that the loan is conditionally approved to [the 1st and 2nd Respondents], or a discussion paper is issued or a terms sheet is issued or a loan proposal is issued in the terms of the [LTS]"; and

(d)    If the Fund Arrangement Fee was not immediately paid, interest would accrue at 2% per month.

3.3.5.    The LTS and the CA were executed on or about 29 September 2023.

3.3.6.    On or about 2 October 2023, the Claimant issued its invoice no. AF231003 to the Respondents for a "total facilitation and processing fee of USD 100,000 due on signing and acceptance of this Loan Term Sheet and Costs Agreement dated 24th September 2023". On or about 5 October 2023, the 2nd Respondent made payment on the invoice in the amount of USD 100,000.

3.4.    <u>The Conditional Letter of Offer</u>

3.4.1.    By way of an email dated 25 October 2023, the Claimant's Mr. Nguyen provided the 3rd Respondent and Mr. Park with a copy of a document titled "Conditional Letter of Offer for Mortgage Finance" and dated 20 October 2023 ("**Conditional Offer**").

3.4.2.    The Conditional Offer was addressed to the Respondents, care of the Claimant, issued by "Global Wise Investments Pte. Ltd." ("**Global Wise**") and signed by one Mr. Bal Lankan (Australian Passport No. PA4587155), in his capacity as Chairman of Global Wise.

3.4.3.    The Respondents have not to date executed or accepted the Conditional Offer.

3.4.4.    On or about 6 November 2023, the Claimant issued its invoice no. AF002837 to the Respondents for USD 11,200,000, being the Fund Arrangement Fee ("**Invoice**").

3.5.    <u>The Respondents' Defence</u>

3.5.1.    Unless expressly admitted, the Respondents deny each paragraph of the NOA and all of the claims of the NOA.

3.5.2.    The Respondents specifically reject the averments at [20] of the NOA that:

(a)    the LTS and the CA are valid and binding on the Respondents; and

(b)    the Respondents have acknowledged or admitted the same.

3.5.3.    It is the Respondents' position that the Claimant is not entitled to claim reliefs sought based on the LTS and the CA as, *inter alia*:

    (a)    the Claimant has breached certain implied term(s) of the LTS and the CA; and

    (b)    alternatively, the LTS and the CA are void due to a unilateral mistake at common law on the Respondents' part as to a fundamental term of the LTS and the CA.

3.5.4.    In respect of [3.5.3(a)], the Respondents aver that the following terms were implied in fact in the LTS and the CA:

    (a)    the Claimant would act for the Respondents in securing a loan for the Project in good faith and without any conflict of interest;

    (b)    the Claimant would secure a loan from a lender which was ready, willing and able to provide the Intended Loan to the Respondents; and

    (c)    any payment to the Claimant would only become due and payable upon a loan being secured for the Project i.e. the Respondents entering into a loan agreement and/or obtaining funds pursuant to a loan agreement with a lender which was ready, willing and able to provide the Intended Loan.

3.5.5.    The Respondent further avers that it is necessary for the aforementioned terms to be implied in fact into the LTS and CA to give effect to the parties' true intentions and that Global Wise was not, at the time the Conditional Letter of Offer was received by the Claimant, ready, willing and able to provide the Respondents with the Intended Loan.

3.5.6.    In respect of [3.5.3(b)] above, the Respondents aver that:

(a)    the Respondents believed that it was a term of the LTS and the CA that the Claimant would procure a loan from a lender which was ready, willing and able to provide the Intended Loan to the Respondents (“**Mistake**”); and

(b)    the Claimant had actual knowledge of the Mistake.

## 4.    BRIEF NATURE AND CIRCUMSTANCES OF THE RESPONDENTS' COUNTERCLAIM

4.1.1.    The Respondents' counterclaims against the Claimant are founded in:

(a)    fraudulent misrepresentation;

(b)    negligent misrepresentation;

(c)    unilateral mistake in equity;

(d)    breach of contract; and/or

(e)    unlawful means conspiracy.

4.2.    Misrepresentation

4.2.1.    The Claimant represented to the Respondents that it would secure the Intended Loan to assist the 1st and 2nd Respondents for the development of the Project i.e. from a lender which was ready, willing and able to provide the Intended Loan (“**Representation**”).

4.2.2.    The Representation was false as the Claimant did not intend, at the time the Representation was made, to procure a lender who was ready, willing and able to provide the Intended Loan to the Respondents for the Project.

4.2.3.    The Claimant had made the Representation whilst knowing it to be false or reckless as to whether the Representation was true or false. Alternatively, the Claimant had made the Representation without reasonable belief in the truth of the Representation.

4.2.4.    The Respondents were materially induced by and had acted on the Representation in signing the LTS and the CA.

4.2.5.    In view of the Claimant's false Representation, the Respondents are entitled to (a) recission of the LTS and the CA and (b) damages incurred as a result of the false Representation.

4.3.    <u>Unilateral mistake in equity</u>

4.3.1.    In the alternative to [3.5.3(b)] and [3.5.6] above, the Claimant had at least constructive knowledge of the Mistake and had engaged in unconscionable conduct in relation to the Mistake, including but not limited to:

(a)    seeking to enforce onerous terms of the LTS and the CA;

(b)    attempting to pressure the 1st and 2nd Respondents into accepting the Conditional Offer; and/or

(c)    demanding payment of the Fund Arrangement Fee and 50% of the Project Shares when the Claimant was aware that it was in breach of the terms of the LTS and CA.

4.3.2.    Consequentially, (a) the LTS and the CA are voidable at the Respondents' election for mistake and (b) the Claimants are liable to make restitution of the Processing Fee in the amount of USD 100,000 to the Respondents.

4.4.    Breach of contract

4.4.1.    The Respondents repeat [3.5.3(a)] and [3.5.4] above. The Respondents aver that the Claimant has breached the terms implied in fact into the LTS and CA.

4.4.2.    The Respondents further aver that the implied terms were conditions of the LTS and/or the CA, such that the breach(es) have caused the Respondents to be deprived of substantially the whole of the benefit of the LTS and the CA.

4.4.3.    In view of the Claimant's breach(es), (a) the Respondents are entitled to terminate the LTS and the CA and (b) the Claimant is liable for all losses and damages resulting from such breach(es). In the alternative, the Respondents are entitled to recovery of the Processing Fee paid, on the basis of a total failure of consideration of the LTS and the CA.

4.5.    Unlawful means conspiracy

4.5.1.    The Respondents further aver that the Claimant, Mr. Ranjit Thambyrajah, Global Wise and Mr. Bal Lankan had conspired by unlawful means to defraud and cause loss to the Respondents.

4.5.2.    By reason of the above, the Respondents are entitled to counterclaim for all losses and damages resulting from the unlawful means conspiracy.

4.6.     Loss and/or damage suffered by the Respondents

4.6.1.   By reason of the foregoing, the Respondents suffered the following heads of loss and/or damage:

(a)      USD 100,000, being the Processing Fee paid by the Respondents to the Claimants pursuant to the LTS and the CA, as described at [3.3.4(b)] and [3.3.6] above; and

(b)      Loss of profits on the Project.

**5.       RELIEFS SOUGHT**

5.1.1.   The Respondents seek the following reliefs:

(a)      In respect of [3.5.3(a)] above, a declaration that the Claimant is not entitled to seek reliefs pursuant to the LTS and the CA;

(b)      In respect of [3.5.3(b)] above, a declaration that the LTS and the CA are void for mistake;

(c)      In respect of [4.2] above:

(i)      recission of the LTS and the CA; and

(ii)     damages incurred as a result of the false Representation in an amount to be assessed;

(d)      In respect of [4.3] above, a declaration that the LTS and the CA are voidable at the Respondents' election for mistake;

(e)      In respect of [4.4] above:

(i)      a declaration that the LTS and the CA are terminated at the election of the Respondents;

(ii)      damages incurred as a result of the breach(es) in an amount to be assessed; and

(iii)      in the alternative to (ii) above, restitution of the Processing Fee in the amount of USD 100,000 on the grounds of total failure of consideration;

(f)      In respect of [4.5] above, damages incurred as a result of the conspiracy in an amount to be assessed;

(g)      Costs of the arbitration;

(h)      Interest;

(i)      Such further orders, damages, declarations or other relief as the Tribunal may deem to be appropriate or necessary.

5.1.2.      For the avoidance of doubt, the claims and reliefs sought by the Respondents in this arbitration are strictly without prejudice to their rights to bring further claims and/or seek further reliefs.

## 6.      THE ARBITRATION CLAUSE

6.1.1.      The arbitration agreement referred to at [32] of the NOA (the "**Arbitration Clause**") is applicable to the present dispute.

## 7.        GOVERNING LAW

7.1.1.        As set out in the Arbitration Clause, the governing law is Singapore law.

## 8.        THE SEAT OF ARBITRATION

8.1.1.        The Arbitration Clause does not provide for the seat of the arbitration. The Respondents take the position that the appropriate seat of the arbitration should be Singapore.

## 9.        LANGUAGE OF THE ARBITRATION

9.1.1.        The Arbitration Clause does not provide for the language of the arbitration. The Respondents take the position that the language of the arbitration should be English.

## 10.        APPOINTMENT OF ARBITRATORS

10.1.1.        The Arbitration Clause does not provide for the number of arbitrators. The Respondents propose that a sole arbitrator be appointed for this arbitration with the arbitrator to be mutually agreed upon by all parties, failing which the sole arbitrator shall be appointed by the President of the Court of Arbitration of SIAC.

## 11.        PAYMENT OF THE REQUISITE FILING FEES

11.1.1.        Pursuant to the SIAC Schedule of Fees and Rule 4.1(e) of the SIAC Rules, the Respondents have paid the amount of S$2,000, being the filing fee for the Respondents' counterclaim, via bank transfer.

12. <u>**RESERVATIONS**</u>

12.1.1.   The Respondents reserve the right to amend, supplement, abandon and/or add to the matters, claims and reliefs stated and made herein.

13. <u>**CONFIRMATION OF SERVICE**</u>

13.1.1.   The Respondents confirm that a copy of this Response has been served on the Claimant *via* email to their solicitors (at <u>sweeyen.koh@wongpartnership.com</u> / <u>teckwee.tiong@wongpartnership.com</u> / <u>samuel.teo@wongpartnership.com</u> / <u>baduong.trinh@wongpartnership.com</u>) on 29 May 2023.


Dated this 29th day of May 2024


**COUNSEL FOR THE RESPONDENTS**
**SHOOK LIN & BOK LLP**