# Exhibit D

**IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION RULES OF THE SINGAPORE INTERNATIONAL ARBITRATION CENTRE (6th EDITION, 1 AUGUST 2016 (the "SIAC Rules")**

ARB 162/24

BETWEEN:

Berhero Pty Ltd (t/a Acuity Funding)

**Claimant**

**-** and –

(1) The Roe Corporation

(2) 267 Partners LLC

(3) Mr Buhm Jung Roe

**Respondents**

**PROCEDURAL ORDER 1**

**Tribunal:**

Mr Stuart Isaacs KC

**Dated 16 December 2024**

## 1.    INTRODUCTION

1.1    The Tribunal makes this Procedural Order No. 1 ("**PO1**") following due consideration of the Parties' submissions and consultation with the Parties.

## 2.    INTERPRETATION

2.1    In the interpretation of this PO1, unless the context otherwise requires:

(i)        words importing the singular shall include the plural and *vice versa*; and

(ii)       a reference to a paragraph or Section is a reference to a paragraph or Section contained in this PO1.

2.2    A Party may, whilst notifying the other Parties, make a request in writing to the Tribunal to provide the Parties with an interpretation of any provision contained in this PO1.

2.3    Subject to the agreement of the Parties, to the extent that this PO1 is inconsistent with a mandatory provision of law governing this Arbitration (namely, Singapore law) or with the SIAC Rules, that mandatory provision shall prevail.

## 3.    APPLICATION

3.1    Procedural Orders made by the Tribunal shall remain in force unless expressly amended or terminated.

## 4.    PROCEDURAL TIMETABLE

4.1    The Parties shall comply with the procedural timetable attached as Annex B to this PO1 and any further procedural order regarding the procedural timetable (the "**Procedural Timetable**"), unless otherwise ordered by the Tribunal. The Tribunal shall have authority to amend the Procedural Timetable from time to time, upon application by a Party or on its own motion, after consulting the Parties.

4.2    All deadlines referred to in this PO1 or in any subsequent order or direction of the Tribunal shall be complied with by 23.59 Singapore time on the day of the expiration of the relevant time limit.

4.3    Extensions of time may be agreed between the Parties, subject to the confirmation of the Tribunal and so long as they do not materially affect later dates in the timetable. Applications for extensions of time which are not agreed should be made to the Tribunal with a written statement as to why the extension of time is required and for what period of time. Save in exceptional circumstances, applications for extensions of time shall be made to the Tribunal at least seven days prior to the expiry of the relevant deadline.

4.4    If a Party fails, within the prescribed time, to present its case or comply with the directions of the Tribunal at any stage of the proceedings, the Tribunal may, of its own motion or at the request of a Party, after reasonable notice to the Parties, proceed with the Arbitration and make an Award.

## 5.    COMMUNICATIONS

5.1    If requested, the Parties will promptly acknowledge receipt of any email transmitting correspondence or serving documents.

All communications by email shall be deemed to have been safely received unless the sender receives a bounce-back or the addressee promptly informs the sender that the email (or attached document) is partly or wholly illegible, or its attachment is missing.

5.2    Unless ordered, the Tribunal does not require hard copies of any filings made by the Parties. If hard copies are required by the Tribunal at any stage, these should be dispatched by courier

to the Tribunal at the address provided within three business days of the corresponding deadline or any subsequent request.

5.3     For all communications connected with this Arbitration, the contact address and details for the Parties are as follows:

**Claimant:**

Name:       WongPartnership LLP
Address:    12 Marina Boulevard Level 28, Singapore 018982
Tel No:     +65 6416 8112 / 6416 3747 / 6517 8731 / 6517 3704
Fax No:     +65 6532 5722
Attention:  Mr Tiong Teck Wee / Mr Samuel Teo / Mr Frederick Teo / Mr Donny Trinh
Email:      teckwee.tiong@wongpartnership.com / samuel.teo@wongpartnership.com
            frederick.teo@wongpartnership.com / baduong.trinh@wongpartnership.com

**Respondents:**

Name:       Shook Lin & Bok LLP
Address:    1 Robinson Road #18-00, AIA Tower, Singapore 048542
Attention:  Mr David Chan / Mr Daryl Fong / Ms Denise Yong
Email:      david.chan@shooklin.com / daryl.fong@shooklin.com /
            denise.yong@shooklin.com

5.4     All filings, together with attachments, shall be supplied by e-mail to all e-mail addresses identified above and such other e-mail addresses as may be advised during the course of the proceedings unless the Parties otherwise advise. If this proves impossible or impractical due to the number or size of attachments, these files should be sent via a secured File Transfer Protocol ("**FTP**") site on the relevant date as fixed in the Procedural Timetable.

5.5     The Tribunal may additionally request that the Parties also provide, by e-mail to all such e-mail addresses:

(i)     searchable (through optical character recognition) portable document format ("**.pdf**") versions of all filings. To facilitate citations and word processing, briefs and other larger filings shall also be filed in Microsoft Word Document ("**.docx**") and preceded by a table of contents;

(ii)    searchable .pdf versions of all exhibits, including the translation of any exhibit not in English. If it is not reasonably practicable to provide a searchable .pdf, it shall be acceptable to provide scans of exhibits; and

(iii)   searchable .pdf versions or scans of any legal authority.

5.6     The Parties and their representatives shall not engage in any oral or written communications with the Tribunal *ex parte* in connection with the subject matter of the arbitration proceedings.

5.7     The Parties shall first try to decide any procedural issues that arise between themselves and communicate any solutions to such issues to the Tribunal. If the Parties fail to reach an

agreement, any Party may write to the Tribunal indicating the issue and the Parties' point of disagreement.

5.8     The Parties shall send copies of correspondence between them to the Tribunal only if it pertains to a matter in which the Tribunal is required to take some action or to be apprised of a relevant event.

## 6.     PROCEDURAL DIRECTIONS

6.1     The Parties shall comply with all procedural directions and rulings given by the Tribunal. If one of the Parties fails to observe a time limit or to adhere to the procedural rules as set forth in this PO1 or any subsequent Procedural Order without giving sufficient reasons for such default or non-compliance, the Tribunal may disregard the factual allegations, denials and offers of evidence submitted in such manner, but is not bound to do so.

## 7.     PLEADINGS, WRITTEN SUBMISSIONS, EVIDENCE AND LEGAL AUTHORITIES

7.1     A common law-style pleadings system shall be adopted in this Arbitration in accordance with the timelines set out in the Procedural Timetable.

7.2     Each party's pleadings shall be fully particularised and shall set out in full detail:

(i)      a statement of facts supporting each claim;

(ii)     the legal grounds or arguments supporting each claim; and

(iii)    the relief claimed.

7.3     Each Party's submissions should be fully particularised, including detailed allegations of fact and law and accompanied by the factual exhibits and legal authorities upon which the respective Party relies.

7.4     Pleadings and written submissions shall be divided into consecutively numbered paragraphs.

7.5     The Tribunal reserves the right to set the length of pleadings and written submissions if it decides it is appropriate.

7.6     Each document referred to in the pleadings and written submissions must be clearly identified.

7.7     In general, a Party may not include anything in a responsive pleading or written submission which should have been included in its original pleading or written submission. For the avoidance of doubt, this provision does not exclude any documents, evidence or information which came to the attention of a Party after it has filed its original pleading or written submission, nor any arguments which are based upon any such documents, evidence or information.

7.8     No further pleadings or written submissions may be made after the last date stipulated in the Procedural Timetable for each of them, unless a Party makes a prior application to the Tribunal

demonstrating exceptional circumstances that prevented it from making this earlier, and the Tribunal so orders.

7.9    All witness statements (if any), expert reports (if any) and evidence upon which a Party relies should be filed in accordance with the Procedural Timetable.

7.10   All evidence submitted to the Tribunal shall be deemed to be authentic and complete, including evidence submitted in the form of copies, unless a Party disputes its authenticity or completeness or the Party submitting the evidence indicates the respects in which any document is incomplete.

7.11   All factual exhibits and legal authorities shall be submitted in complete form (including all attachments or enclosures) unless they are voluminous and submitting an extract or extracts of the document does not distort its meaning, in which case the submitting Party shall indicate in the exhibit list in which respect the extract is incomplete.  If the other Party requests that the full factual exhibit or legal authority is provided, the submitting Party shall either provide it to the Tribunal and the other Party without delay or seek orders from the Tribunal regarding a reasonable alternative to full production.

7.12   In accordance with paragraph 4.2 above, pleadings and accompanying evidence shall be filed by 23.59 Singapore time on the date set out in the Procedural Timetable.

7.13   If requested by the Tribunal or the other Party, hard copies of the same, excluding any Factual Exhibits and Legal Authorities but including any witness statements and expert reports, shall be provided by registered mail or courier service, to be dispatched within two business days of the electronic submission date in double-sided A5 paper format which is spiral bound (except for Excel documents) or in such other format as the Tribunal or the other Party may request.

## 8.    WITNESSES

8.1    Evidence of witnesses of fact shall be adduced in written witness statements and oral evidence in accordance with this Section. Any person may present evidence as a witness, including a Party or a Party's officer, employee, or other representative.

8.2    For each witness, a written and signed witness statement shall be submitted to the Tribunal. Where in exceptional circumstances a Party is unable to obtain such a statement from a witness, the evidence of that witness shall be admitted only with permission of the Tribunal and in accordance with its directions.

8.3    Each witness statement shall:

(i)     set out the name and present address of the witness, a description of his or her past and present relationship with any of the Parties, counsel, or the Tribunal and a description of the witness's position and qualifications, if relevant to the dispute or to the contents of the statement;

(ii)     begin with a summary of matters intended to be established by the witness;

(iii)    detail the facts on which the witness's testimony is offered and, if applicable, the source of the witness's knowledge;

(iv)    confirm that the witness is available and willing to attend for examination at an oral hearing if required to do so;

(v)     contain an affirmation of the truth of the statement; and

(vi)    be signed and dated by the witness.

8.4     Each document referred to by a witness must be clearly identified by its exhibit number assigned in accordance with paragraph 10.3 below and a copy shall be produced with the witness statement (if the document has not already been submitted into evidence).

8.5     If the Tribunal determines that a hearing is necessary, the requirements for the testimony of witnesses will be determined by the Tribunal, after having consulted the Parties.

8.6     The Parties are to give notice as to which of the other Party's witnesses it wishes to cross examine by the date specified in the Procedural Timetable.

8.7     Each Party is responsible for ensuring the presence of its witnesses in respect of which one of more of the other Parties have given notice that it wishes to cross-examine.

8.8     Witness statements shall stand as that witness' direct testimony.

8.9     If a witness does not appear despite being called, the weight of his or her evidence may be reduced or it may be disregarded altogether, in the discretion of the Tribunal, depending upon the reasons for the witness not attending.

8.10    In all matters pertaining to the evidence of witnesses of fact not expressly provided for in this paragraph 8, the Tribunal and the parties shall be guided by the IBA Rules on the Taking of Evidence in International Arbitration 2020 (the "**IBA Rules**").

## 9.     EXPERTS

9.1     Evidence of expert witnesses shall be adduced in written expert reports and oral evidence in accordance with this Section. Each Party may retain, and submit evidence of, one or more experts, limited to one expert per subject matter. The Tribunal may, on its own initiative or at the request of a Party, appoint one or more experts. The Tribunal shall consult with the Parties on the selection, terms of reference and conclusions of any Tribunal-appointed expert. The Tribunal may, on its own initiative or at the request of any Party, take oral evidence of any expert. The procedural rules set out in the above Section 8 shall apply by analogy.

9.2     If the Tribunal determines that a hearing is necessary, the requirements for the testimony of experts will be determined by the Tribunal, after having consulted the Parties.

9.3 An expert report shall contain the expert's opinion and shall include information relating to their expertise, a statement of all the facts on which that opinion is based, including identifying (by their exhibit numbers assigned in accordance with paragraph 10.3 below) all documents relied upon by the expert in arriving at his or her opinion, and the method, evidence and information used in arriving at the expert's conclusions. Copies of all documents on which the expert has relied shall be produced with the expert report, if not already submitted into evidence by any Party.

9.4 The Parties are to seek to agree a list of issues for the experts before any rebuttal expert reports are prepared.

9.5 The Tribunal may order a meeting of the experts of a like discipline at any time on a without prejudice basis.

9.6 In all matters pertaining to the evidence of expert witnesses not expressly provided for in this paragraph 9, the Tribunal and the parties shall be guided by the IBA Rules and the Chartered Institute of Arbitrators' Guidelines for Experts.

## 10. NAMING CONVENTIONS

10.1 The Parties shall endeavour not to submit electronic files with large file names to enable the opening, copying and transferring of files on any PC or Mac.

10.2 File names shall contain first the date of the filing, followed by the Party's name initial and a brief description of what the document is and its date ("YYYY.MM.DD - C - [Brief Description]" for Claimant; "YYYY.MM.DD - R - [Brief Description]" for Respondent).

10.3 Each Party shall submit, together with each filing, an index that identifies the date, author and nature of any relevant document for all Exhibits produced by it as well as providing an Exhibit number for each Exhibit with three digits in the manner Exhibit C-XXX, Exhibit R-XXX (for the Claimant's and Respondents' factual exhibits, respectively) and Exhibit CL-XXX and RL-XXX (for the Claimant's and Respondents' legal authorities, respectively). The Parties shall ensure the index is updated with each new filing. The factual exhibits and legal authorities should be listed chronologically.

10.4 Witness statements shall be numbered discretely from other filings and properly identified as such (i.e., "CWS-[Surname of Witness]-XX" (Claimant's witness statements) and "RWS-[Surname of Witness]-XX" (Respondents' witness statements)).

10.5 The reports prepared by Party-appointed experts shall be numbered discretely from other filings and properly identified as such (i.e., "CER-[Expert Surname]-XX" (Claimant's expert reports); "RER-[Expert Surname]-XX" (Respondents' expert reports)).

10.6 The parties shall avoid producing additional copies of documents already submitted into evidence as Factual Exhibits or Legal Authorities but shall instead use the reference numbers already assigned.

## 11. TRANSLATION AND INTERPRETERS

11.1 Since the Parties have agreed that the language of the arbitration is English, any document, including all factual exhibits, legal authorities, witness statements and expert reports submitted to the Tribunal by a Party in any language other than English shall be accompanied by a translation into the English language. Translations need not be certified, unless ordered by the Tribunal or requested by the opposing Party with the approval of the Tribunal. It shall not be improper for counsel to provide their own translations, provided that such circumstance is indicated. English translations shall be submitted simultaneously with the original text.

11.2 For ease of reference, any translations shall, to the extent feasible, follow the same pagination, page layout and formatting as the original.

11.3 Documents that are voluminous or technical (including legal authorities) may be produced with only the relevant parts translated, clearly indicating the original pagination. Any partial translation must not misrepresent the overall content of the document. If a Party objects to the partial translation, and the Parties cannot agree to a compromise, the Tribunal may order a full translation.

11.4 Documents produced by a Party pursuant to a Document Request (as defined at paragraph 12.1 of this PO1) shall be accompanied by an English translation in accordance with this paragraph 11.

11.5 Translations shall be considered correct unless their accuracy is expressly and promptly challenged by the other Party within 28 days of receipt. If any translation remains disputed despite the Parties' efforts to reach agreement, the Tribunal may require that the translation be made by a sworn translator, including a translator appointed by the Tribunal itself.

11.6 Any witness giving oral evidence at the Evidentiary Hearing may give such evidence in his or her mother tongue, in whole or in part, provided that consecutive interpretation into English is provided by the Party presenting the witness. Any Party intending to present oral evidence from a witness in a language other than English shall notify the Tribunal and the other Parties in accordance with the Procedural Timetable and shall be responsible for providing suitable consecutive interpretation of such evidence into English. The Parties are encouraged, on grounds of efficiency, to consider engaging a common interpreter(s) at the hearing and sharing the costs of such interpreter(s), subject to the Tribunal's eventual decision on costs.

11.7    The costs of any translation or interpretation are to be borne initially by the Party producing the document or presenting the witness (as the case may be), without prejudice to the decision of the Tribunal as to the ultimate allocation of the costs of the arbitration.

## 12.    DOCUMENT PRODUCTION

12.1    Each Party may submit a Request to Produce Documents ("**Document Request**") on the date(s) set out in the Procedural Timetable, without copying the Tribunal on their Document Requests.

12.2    All Document Requests must identify each document or specific category of documents sought with precision and establish the *prima facie* relevance and materiality of each document or of each specific category of documents sought in such a way that the other Party and the Tribunal are able to refer to factual allegations in the pleadings filed by the Parties to date. This shall not prevent a Party from referring to upcoming factual allegations provided such factual allegations are made or at least summarised in the Document Request. In other words, the requesting Party must make it clear with reasonable particularity what facts/allegations each document (or category of documents) sought is intended to establish. The Parties are reminded that this is an international arbitration conducted under the IBA Rules and requests for broad categories of "all documents" which are not narrowly focussed to particular issues and timelines are unlikely to be allowed. Similarly, the Tribunal notes that it is sometimes useful to offer word searches to narrow the request and in order to ensure the Stern Schedule (of which a template comprises Annex A to this PO1) is not overly unwieldy, where possible a key should be used to ensure specific objections do not need to be repeated.

12.3    A Party may object to one or more requests in any of the other Party's Document Requests on the basis of the objections set forth in Article 9(2) or 9(3) of the IBA Rules or a failure to satisfy any of the requirements in Article 3(3) of the IBA Rules, or any other basis it may deem relevant, by the date set out in the Procedural Timetable. This should again not be copied to the Tribunal.

12.4    If a Party does not object to the opposing Party's Document Request, it shall produce the responsive documents by the time limit set out in the Procedural Timetable.

12.5    In the event of an objection to a Document Request, the other Party may reply to the objection by the date set out in the Procedural Timetable.

12.6    The Document Request, objection and reply shall be in the form of a Stern Schedule in accordance with the template provided in Annex A to this PO1. Only the completed Stern Schedule should be provided to the Tribunal.

12.7    The Tribunal shall decide on the objections as soon as reasonably possible. Its decision on production may take into consideration, among other things, the Parties' burden of proof and

all other applicable legal standards, provisions and doctrines, including the need for adequate measures to protect legitimate interests such as (without limitation) legal privilege and confidentiality.

12.8    The Tribunal's decisions will be based on the Stern Schedules submitted by the Parties, noting that the Tribunal will not re-formulate Document Requests which are insufficiently precise.

12.9    If and to the extent that the Tribunal grants a contested Document Request, each Party shall produce the documents to the other Party or Parties by the date fixed by the Tribunal.

12.10   In the event that a Party fails to comply with an order for production of documents, the Tribunal may draw an adverse inference from such failure, including an adverse inference as to the likely content of the documents in question.

12.11   Documents produced pursuant to a Document Request shall be exchanged electronically, in native format where available and among the Parties only.  They shall not be produced to the Tribunal and shall form part of the record only if and when they are submitted by a Party as exhibits in the arbitration.

12.12   No inter-counsel communications regarding document production issues should be provided to the Tribunal unless an order or direction is required from the Tribunal.

12.13   The Tribunal may, of its own initiative and at any time, direct any of the Parties to produce documents relevant to the issues in the arbitration which are in their possession or under their control.

12.14   Nothing in this PO1 prevents a Party from asking for specific documents or compliance taking place earlier than the date specified. The Parties may submit further Documents Requests at any other time in the arbitration with the Tribunal's permission.

## 13.    NEW ALLEGATIONS AND/OR EVIDENCE

13.1    Absent specific circumstances and permission by the Tribunal, the Parties shall not be allowed to submit new factual allegations or evidence after the date specified in the Procedural Timetable.

13.2    The use of demonstrative exhibits (such as charts, tabulations, etc.) is allowed at any hearing, provided that no new evidence is contained therein, and that the source in the record is clearly identified. Any Party intending to use a demonstrative exhibit shall provide a copy to the other Parties' counsel as early as reasonably practicable before the hearing and normally at least 24 hours beforehand. The Party intending to use a demonstrative exhibit shall be responsible for ensuring that it can be viewed and that a record of it can be kept. Demonstrative exhibits shall be consecutively numbered and labelled "CD-XXX" if submitted by the Claimant and "RD-XXX" if submitted by the Respondent.

## 14. AGREED BUNDLE OF DOCUMENTS

14.1 An Agreed Bundle of Documents (the "**Hearing Bundle**") shall be provided by the Parties to the Tribunal before the Evidentiary Hearing in paper and electronic format, as may be required by the Tribunal, indexed and hyperlinked with cross-references (see below) and paginated. Subject to later directions of the Tribunal after receiving submissions from the Parties, the Hearing Bundle shall contain:

(i) the Pleadings and Procedural Orders;

(ii) the Witness Statements (if any);

(iii) the Expert Reports (if any);

(iv) all documents upon which the Parties intend to rely in a consolidated section of the Hearing Bundle, arranged in chronological order and cross-referenced to the numbers of the Parties' respective exhibits;

(v) the legal authorities upon which the Parties intend to rely, in chronological order; and

(vi) tabs between each item, save for (iv).

14.2 Documents in sections (i), (ii) and (iii) of the Hearing Bundle shall be cross-referenced as necessary to the documents in section (iv).

14.3 The inclusion of any document in the Hearing Bundle shall be taken as confirmation by the Parties that no challenge of any kind is raised as to its authenticity, authorship or the identity of the recipient, as the case may be, without prejudice to the right of any Party to dispute the relevance or truth of the content of any such document.

14.4 Any documents in respect of which authenticity or admissibility is challenged shall be included in a separate bundle and the Tribunal will rule on them, having heard the Parties at the hearing or at such time in advance of the hearing as the Tribunal deems appropriate.

14.5 If so ordered after hearing submissions from the Parties, the Hearing Bundle shall also contain (i) an agreed Core bundle, (ii) a Chronology (as far as possible agreed), and (iii) an agreed *Dramatis Personae*.

## 15. PRE-HEARING CONFERENCE

15.1 14 days before the Pre-Hearing Video Conference Call set out in the Procedural Timetable (the "**PHC**"), the Parties will provide the Tribunal with an Agreed and Non-Agreed Legal and Factual List of Issues and a Statement of Agreed Facts. In the event the Parties are unable to reach agreement on an Agreed List of Issues, it may be issued by the Tribunal after hearing submissions from the Parties at the PHC.

15.2 The PHC will consider further pre-Hearing procedural steps, including but not limited to the List of Issues if not then agreed by the Parties, together with the content, format and preparation of the Hearing Bundle and the conduct of the Evidentiary Hearing. The date for the PHC will be at a venue (whether physical or virtual or hybrid) and date determined by the Tribunal after consultation with the Parties in due course.

## 16. EVIDENTIARY HEARING

16.1 The Evidentiary Hearing shall take place in the format and at a venue and date determined by the Tribunal after consultation with the Parties.

16.2 The Evidentiary Hearing shall be transcribed by court reporters providing a live electronic (draft) transcript and same day electronic (final) transcript. The provision of a hard copy of the transcript will be considered at the PHC. The costs of the court reporters are to be advanced in equal shares by the Claimant on the one part and by the Respondents on the other part, without prejudice to the decision of the Tribunal as to which Party or Parties shall ultimately bear those costs and in what amount.

16.3 Unless otherwise determined and subject to the overriding need for equal treatment of the Parties and the affording to each Party of a reasonable opportunity to advance its case and respond to the case against it, the principle of equality of time at the Evidentiary Hearing shall be applied subject to necessary exceptions in light of the circumstances of the case, such that the time is to be split more or less equally between on the one part the Claimant and on the other part the Respondents. Time for either the Claimant or the Respondents may nonetheless be extended by the Tribunal in special circumstances, including the relative number of witnesses to be cross-examined, the scope of their evidence, whether any of the witnesses require translation and the relative complexity of the claim, defence, or any counterclaim. The amount of time available to each side for use at the hearing will be set by the Tribunal after consultation with the Parties during the PHC.

16.4 In view of the proceedings being conducted on a time limited basis as provided herein, if a Party has not called another Party's fact or expert witness for cross-examination, that will not be deemed as an admission by that Party, nor will it imply that the Party accepts that the substance of the relevant witness statement(s) or expert report(s) is correct or proven, and does not disentitle the Party from making submissions on the same. The statement or report of such a witness or expert shall be examined and weighed by the Tribunal, in its discretion, in light of all the evidence and submissions presented by the Parties. In exercising such discretion, the Tribunal shall have regard to the reasons given for not calling or for not putting any matter to the witness or expert.

16.5 Subject to further order from the Tribunal after consultation with the Parties, the Evidentiary Hearing shall proceed orally as follows:

(i)     the Claimant's opening statement;

(ii)    the Respondents' opening statement;

(iii)   oral testimony of the Claimant's factual witnesses;

(iv)    oral testimony of the Respondents' factual witnesses;

(v)     oral testimony of the Claimant's expert witnesses;

(vi)    oral testimony of the Respondents' expert witnesses; and

(vii)   oral closing submissions by the Parties (if required).

16.6    In its opening statement, a Party shall succinctly explain its case (including the relief claimed) in opposition to the other Party's case with the objective of giving the Tribunal a provisional view of the merits of the Parties' respective cases, subject to the evidence to be adduced from the evidence of the witnesses. The Parties are also to identify what matters are common ground or (if once disputed) no longer in dispute.

16.7    Subject to further order from the Tribunal after consultation with the Parties, the procedure for hearing oral witnesses at the Evidentiary Hearing shall be as follows:

(i)     Factual witnesses should not be examined-in-chief for more than 10 minutes, without prior permission from the Tribunal.

(ii)    The scope of the re-examination shall be limited to matters that have arisen in the cross-examination.

(iii)   The Tribunal shall have the right to interject with questions during the examinations by counsel for the Parties.

(iv)    The protocol for taking the evidence of experts on each discipline shall be determined by the Tribunal after consulting the Parties.

(v)     Expert witnesses may provide an oral presentation of their expert opinion if permitted by the Tribunal in place of evidence in chief.

(vi)    Experts on each discipline may give their evidence either separately or as a group with the Claimant's expert on the particular discipline speaking first followed by the Respondents' expert on that discipline, or by way of witness conferencing, the protocol of such conferencing to be determined by the Tribunal.

(vii)   The Tribunal shall have at all times complete control over the procedure in relation to any witness giving oral evidence, including the right to recall a witness and the right to limit or deny, on its own motion or at the request of a Party, the right of a Party to conduct any examination-in-chief, cross-examination or re-examination if it appears to

the Tribunal that such examination or evidence is unlikely to serve any material purpose.

(viii) Ordinarily, the Tribunal shall allow witnesses to be present in the oral hearing room during the opening statements. Unless the Parties agree otherwise, a fact witness shall not be present in the hearing room during the hearing of oral testimony, nor hear any recording, or read any transcript, of any oral testimony prior to his or her examination. This limitation does not apply to expert witnesses.

16.8 Time prescribed in this paragraph may be extended by the Tribunal in special circumstances, including the relative number of witnesses to be cross-examined, the scope of their evidence and the relative complexity of claim and counterclaim.

16.9 The Tribunal may, in its discretion, allow oral evidence of a witness to be given by video link.

16.10 For the avoidance of doubt: (i) the Tribunal shall not be bound by strict rules of evidence at the Evidentiary Hearing and the Parties may produce evidence in any form permitted by the Tribunal; and (ii) any common law rule that evidence not challenged is accepted does not apply and is replaced by the principle that relevance, weight and cogency to be attributed to any evidence is wholly a matter for the Tribunal.

## 17. THIRD PARTY FUNDING

17.1 Should a Party (or its counsel) benefit from the provision of funds or other material support for the pursuit or defence of its case in these proceedings, from a natural or juridical person that is not a party to this arbitration ("**third-party funder**"), it shall promptly disclose this fact and the identity of the third-party funder to the Tribunal and the other Parties.

## 18. DATA PROTECTION

18.1 The Tribunal, the Parties and their representatives acknowledge that the processing of their personal data is necessary for the purposes of these arbitration proceedings. They shall each comply with all data protection and privacy regulations that are applicable to them. Where it is necessary to do so under the applicable regulations, the Parties and their representatives shall endeavour to obtain the express consent of all relevant individuals involved in these arbitrations (including witnesses and experts) to the processing of their personal data for these purposes. The Parties shall indemnify and hold harmless the Tribunal with respect to any breach of the applicable data protection and privacy regulations by such Party and their representatives in relation to the arbitration proceedings.

## 19. COSTS

19.1 Costs of, and incidental to, this PO1 are to be costs in the arbitration.

19.2 The Parties shall conduct themselves in a manner consistent with the efficient use of time and resources. When exercising its discretion to allocate costs under the Rules, the Tribunal shall take into account any unreasonable behaviour by a Party. Unreasonable behaviour could include excessive document requests, excessive legal argument or cross-examination, dilatory tactics, exaggerated claims, failure to comply with Procedural Orders and unjustified interim applications or failure to meet deadlines.

## 20. VARIATION OR MODIFICATION

20.1 The terms of this PO1, including the Procedural Timetable, may be amended or supplemented and the procedures for the conduct of this arbitration modified, in whole or in part, pursuant to such further directions or Procedural Orders as the Tribunal may from time to time issue, whether upon application from the Parties, upon proper notice, or by the Tribunal of its own motion.

**Place of Arbitration: Singapore**

**Date: 16 December 2024**

…………………………………………………….

**Stuart Isaacs KC**

Sole Arbitrator

**ANNEX A - DISCLOSURE OF DOCUMENTS REQUESTS**

**[Party]'s Request for Production of Documents**

| | | |
|---|---|---|
| **Request Number** | | |
| **Description of Documents or Category of Documents Requested** | | |
| **Justification, including Relevance and Materiality According to Requesting Party** | **Ref. to Pleadings, Submissions, Exh., WS. or ER.** | |
| | **Comments** | |
| **[Party]'s Response/Objections** | | |
| **[Party]'s Reply to Response/Objections** | | |
| **Tribunal's Decision** | | |

**Annex B − Procedural Timetable**

| No. | Procedural Activity | Party Concerned | With Expert Reports (All dates 2025) | Without Expert Reports (All dates 2025) |
|---|---|---|---|---|
| 1. | Statement of Claim | Claimant | 13 January | 13 January |
| 2. | Statement of Defence and Counterclaim | Respondents | 10 February | 10 February |
| 3. | Statement of Reply including Answer to Counterclaim | Claimant | 10 March | 10 March |
| 4. | Statement of Reply to Answer to Counterclaim | Respondents | 7 April | 7 April |
| 5. | Parties to inform the Tribunal if they will be adducing any expert witness evidence | Claimant and Respondents | 21 April | 21 April |
| 6. | Document Requests | Claimant and Respondents | 14 April | 14 April |
| 7. | Voluntary production of documents pursuant to Document Requests, if any, and/or reasoned objections to opposing Party's Document Request | Claimant and Respondents | 21 April | 21 April |
| 8. | Comments on opposing Party's reasoned | Claimant and Respondents | 28 April | 28 April |

| No. | Procedural Activity | Party Concerned | With Expert Reports (All dates 2025) | Without Expert Reports (All dates 2025) |
|---|---|---|---|---|
| | objections | | | |
| 9. | Order on Document Production | Tribunal | 5 May | 5 May |
| 10 | Production of documents ordered to be produced by the Arbitral Tribunal | Claimant and Respondents | 12 May | 12 May |
| 11 | Witness statements of fact together with all exhibits | Claimant and Respondents | 9 June | 9 June |
| 12 | Expert reports (if any) | Claimant and Respondents | 7 July | N.A. |
| 13 | List of Issues for experts (if any) | Claimant and Respondents | 21 July | N.A. |
| 14 | Rebuttal expert reports (if any) | Claimant and Respondents | 4 August | N.A. |
| 15 | Agreed and Non-Agreed List of Legal and Factual Issues and Statement of Agreed Facts | Claimant and Respondents | 18 August | 16 June |
| 16 | Designation of the other Party's witnesses, which each | Claimant and Respondents | 18 August | 16 June |

| No. | Procedural Activity | Party Concerned | With Expert Reports (All dates 2025) | Without Expert Reports (All dates 2025) |
|---|---|---|---|---|
| | **Party wishes to cross-examine.** **Notification to the Tribunal and the other Party of any witness whose oral evidence is to be given in a language other than English.** | | | |
| 17 | **Cut-off date for new documents subject to discretion of the Tribunal** | **Claimant and Respondent** | **1 September** | **23 June** |
| 18 | **Pre-hearing Video Conference Call by Zoom/Teams between the Tribunal and the Parties.** | **Tribunal and Parties** | **1 September** | **23 June (Time TBC by parties)** |
| 19 | **Agreed Bundle of Documents (including Core Bundle, Chronology, and Agreed *Dramatis Personae*, if ordered)** | **Claimant and Respondents** | **15 September** | **7 July** |
| 20 | **Written Opening Submissions** | **Claimant and Respondents** | **29 September** | **14 July** |
| 21 | **If no expert evidence on the quantum of the counterclaim, hearing of all issues on 21-25 July (26 July in reserve). The question** | **Tribunal and Parties** | | **21-26 July** |

| No. | Procedural Activity | Party Concerned | With Expert Reports (All dates 2025) | Without Expert Reports (All dates 2025) |
|---|---|---|---|---|
| | of written closing submissions TBD<br><br>If expert evidence on the quantum of the counterclaim, hearing of all issues with the exception of the expert evidence on the quantum of the counterclaim on 21-25 July 2025 (26 July in reserve) and the quantum of the counterclaim and oral closing submissions to be dealt with on 10-11 November | | 10-11 November | 21-26 July |
| 22 | TBD    Cost Submissions | Parties | TBD | TBD |