# Exhibit I

| From: | Stuart Isaacs KC Singapore |
| --- | --- |
| To: | Frederick TEO; bjroe@roecorp.com |
| Cc: | Lynnette Lee; Xuanzhong Wang; Thi Mai Anh Nguyen; Jamilah Basor; TIONG Teck Wee; Samuel TEO; Donny TRINH; KOH Chiu Hwee |
| Subject: | SIAC ARB 162/24 -Decision on Respondents" application for Mr Roe"s attendance for cross-examination to be waived and for his witness statement to be admitted in evidence |
| Date: | Saturday, July 5, 2025 6:18:18 PM |
| Attachments: | image001.png |

**USE CAUTION: External Email**

Dear Colleagues,

**Introduction**
1.     This email contains the Tribunal's decision on the Respondents' applications dated 20 June 2025 for the requirement for Mr Roe to attend and present himself for cross-examination at the evidentiary hearing be waived and that his witness statement dated 20 June 2025 be admitted into evidence (the "**Roe Application**").

2.     On the same day, the Tribunal directed the Claimant to respond to the Roe Application by no later than 25 June 2025 and stated that the Respondents might, if so advised, reply to the Claimant's response by no later than 27 June 2025. On 25 June 2025, the Tribunal granted the Claimant's application of that date for an extension of time until 30 June 2025 for the Claimant's response.

3.     On 30 June 2025, the Claimant provided its response in opposition to the Roe Application (the "**Response**"). It seeks the dismissal of the Roe Application, with costs. On the same day, the Tribunal informed the Respondents that they might, if so advised, reply thereto by 4 July 2025.

4.     By an email on 4 July 2025, the Respondents' counsel informed the Tribunal that they were thereby discharging themselves as the Respondents' solicitors in the present proceedings. Accordingly, the Respondents have not provided their reply to the Response as directed on 30 June 2025. The Tribunal therefore proceeds to determine the Roe Application on the basis of the submissions before it.

**Attendance of Mr Roe for cross-examination**
5.     The basis for the application that the requirement for Mr Roe to attend and present himself for cross-examination at the evidentiary hearing be waived is based on medical grounds.

6.     The Tribunal has assumed, and has not been advised otherwise by the Respondents, that it is the Respondents' position that Mr Roe's medical condition also prevents him being able to testify remotely. The Claimant states, without any admission, that it is prepared to proceed on the basis that Mr Roe is physically incapable of appearing in person at the evidentiary hearing but does not accept that he would be unable to give evidence remotely.

7.     The Respondents rely on a medical report dated 17 June 2025 by Dr Saad Abdul Sami Mir, Mr Roe's attending physician, to the effect that Mr Roe, who is stated in the medical report to be 81 years old, lacks the mental capacity to be cross-examined. They also submit that Mr Roe's physical state provides valid and cogent grounds for the application to be granted. Dr Mir is an assistant professor in clinical neurology at Weill Cornell Medicine and assistant attending neurologist at New York-Presbyterian/Weill Cornell Medical Center. The Respondents highlight the evidence that Mr Roe's medical history includes two ischaemic strokes and a left basal ganglia intracerebral haemorrhage in 2023; that Mr Roe has ongoing cognitive difficulties, right sided weakness and has to use a cane due to dragging of his leg; and that a recent examination confirmed that, as at 16 April 2025, Mr Roe continues to have slow cognition, poor recall and weakness in his right arm and leg. Mr Roe's evidence, in paragraph 6 of his statement, records Dr Mir's opinion that Mr Roe cannot (a) understand information relevant to a question raised in an oral examination, (b) retain information long enough to answer such a question, (c) weigh information as part of the process of answering such a question, (d) communicate his answer to such a question and that he "*lacks mental capacity in respect of being a witness put under oral examination*".

8.     The Claimant opposes any waiver of the requirement that Mr Roe attend and present himself for cross-examination at the evidentiary hearing. It submits that it is crucial that it has the opportunity to

cross-examine him so as to be able to test the veracity of his evidence in relation to a multiplicity of key issues highlighted in paragraph 4(b) of the Response. The Respondents recognise that Mr Roe is their key witness, with direct knowledge of the facts. The Claimant's wish to cross-examine him on those issues and to put to him the key factual tenets of its case which are not addressed in his statement is understandable. The Claimant submits that the medical report and the Respondents' assertion that Mr Roe is incapable of being cross-examined is at odds with his seeming ability to have given instructions for the filing of the Amended Statement of Defence, the provision of his statement and his involvement in the preparation of the Grant Thornton Investigation Report of 20 June 2025. The Claimant points out that Dr Mir's opinion on Mr Roe's fitness for oral examination in section 4 of the medical report is inconsistent with Mr Roe having engaged in those matters and that the Respondents' counsel must have been satisfied as to Mr Roe's mental capacity. At no time prior to the Roe Application was there any indication from the Respondents that Mr Roe's medical condition impeded compliance with the Tribunal's directions. Mr Roe's engagement in the matters referred to above indicates that there should be nothing to prevent him being cross-examined, if necessary with accommodations such as those mentioned in paragraph 15 of the Response.

<u>Tribunal's conclusion</u>
9. Having carefully considered the parties' submissions, in the exercise of its discretion, the Tribunal is not prepared to waive the requirement that Mr Roe attend and present himself for cross-examination at the evidentiary hearing. Were his evidence peripheral to the issues in the case, the Tribunal may have taken a different view. However, the parties agree that his evidence is of critical importance.

10. The Tribunal accepts, based on the medical report, that Mr Roe is unfit to travel to Singapore to give evidence but takes the view that this should not prevent him giving evidence remotely by video-link.

11. The Tribunal notes that the medical report does not identify the source of the information regarding Mr Roe's clinical history and does not state the basis of Dr Mir's opinion in respect of Mr Roe's mental capacity in respect of being a witness put under cross-examination. Cognitive impairment does not necessarily mean that Mr Roe lacks mental capacity and no explanation is provided as to why that is said to be so. It is not self-evident that his lack of mental capacity is "*patently obvious*" from his clinical history and examination. The Tribunal is also troubled by the absence of any information as to the origin of the medical report form and how it is dated 17 June 2025 when Dr Mir appears to have last examined Mr Roe in April 2025. Without much more information, of which none is available, with which to assess Dr Mir's evidence, the Tribunal does not regard it as conclusive. Mr Roe's presence as a witness will enable the Tribunal itself to evaluate the impact of his slow cognition and poor recall reported on by Dr Mir and to assess what, if any weight, can or should be given to his evidence, including his statement which may otherwise not be admitted in evidence (see further below).

12. The parties are directed to liaise with a view to agreeing the accommodations which can sensibly be made to enable Mr Roe's evidence to be given remotely, within the limitations of the evidentiary hearing as fixed, and to report back to the Tribunal no later than the day prior to the pre-hearing conference call. If the Respondents determine that Mr Roe is not going to appear at the evidentiary hearing despite the Tribunal's refusal of their application for the waiver of the requirement that Mr Roe attend and present himself for cross-examination at the evidentiary hearing, the Respondents are directed so to inform the Tribunal no later than the day prior to the pre-hearing conference call.

**Admission into evidence of Mr Roe's witness statement**
13. The basis for the application that Mr Roe's witness statement be admitted into evidence, notwithstanding his medical condition which is said to prevent him being available for cross-examination, is to ensure a fair hearing in circumstances where Mr Roe is an important witness whose evidence goes directly towards the Tribunal's assessment of important factual issues, as set our in paragraphs 3.2.5 and 3.2.6 of the Roe Application.

14. The Claimant submits that, if Mr Roe does not give oral testimony at the evidentiary hearing, his statement cannot be reliable or credible and lacks all probative value, in which case it cannot be admitted into evidence and must be disregarded. The Claimant refers to the arbitral tribunal's decision in *Libanesco Holdings Co. Ltd v Republic of Turkey*. It also posits that Mr Roe may not have been the person giving instructions which, if correct, leads to the same conclusion.

15. Where a witness does not appear despite being called, paragraph 8.9 of PO1 affords the Tribunal

a discretion whether to reduce the weight of his evidence or to disregard it altogether, depending on the reasons for the witness not attending. Article 4.7 of the IBA Rules provides that where a witness whose appearance has been requested fails to appear without a valid reason, his evidence shall be disregarded by the tribunal unless, in exceptional circumstances, the tribunal decides otherwise. As the Respondents point out, Article 4.7 of the IBA Rules is of no direct application because the effect of paragraph 8.10 of PO1 is that the Tribunal and the parties shall only be guided by the IBA Rules in all matters pertaining to factual evidence where paragraph 8 of PO1 makes no express provision. Here, paragraph 8.9 of PO1 *has* made express provision and so Article 4.7 of the IBA Rules does not apply. The Respondents nonetheless submit, somewhat paradoxically, that the guidance in Article 4.7 of the IBA Rules is relevant and instructive and they refer to the authorities on the IBA Rules cited in paragraphs 2.2.4 to 2.2.8 of the Reply and, in paragraph 3.2.2 of the Reply to passages from one of those authorities – *Khodykin* – on the importance of the principle of achieving a fair hearing.

Tribunal's conclusion
16.    As stated above, if Mr Roe appears at the evidentiary hearing, the question whether to disregard the evidence in his statement on that ground will not arise: his evidence will fall to be evaluated by the Tribunal in the usual way.

17.    Based on the Tribunal's determination concerning Mr Roe's attendance for cross-examination, if Mr Roe were not to appear at the evidentiary hearing, the Tribunal considers that there would be no valid reason for his non-attendance. In those circumstances, the Tribunal needs to consider whether to disregard his statement altogether or else to determine what, if any, weight should be attributed to it. (In practice, where a witness does not make himself available for cross-examination, very little, if any, weight is likely to be attributed to his statement, even if it is admitted into evidence at all). In the circumstances of the present case, having carefully considered the parties' submissions, the Tribunal determines in the exercise of its discretion that it would be unfair and inappropriate to admit Mr Roe's statement into evidence if he does not appear at the evidentiary hearing.

Kind regards,
Stuart Isaacs



Level 57 and 58 Republic Plaza
9 Raffles Place
Singapore 048619
Tel  +65 6823 1255
Fax +65 6823 1377
H/p +65 9810 6241
Email: stuart@stuartisaacskc.com
www.stuartisaacskc.com

Stuart Isaacs KC practises from Stuart Isaacs Chambers (Pte) Ltd (UEN 202013953D), a limited liability foreign law practice.