# Exhibit N

# DFM
## v
# DFL

## [2024] SGCA 41

Court of Appeal — Civil Appeal No 6 of 2024
Sundaresh Menon CJ, Steven Chong JCA and Belinda Ang Saw Ean JCA
2 September 2024; 17 October 2024

*Arbitration — Enforcement — Foreign award — Appellant seeking to set aside enforcement order arising out of interim relief application on basis that arbitral procedure had not been in accordance with parties' agreement — Appellant not raising any jurisdictional objection before arbitral tribunal in respect of interim relief application — Whether appellant waived his right to challenge jurisdiction of arbitral tribunal to hear and determine interim relief application*

*Arbitration — Enforcement — Foreign award — Appellant seeking to set aside enforcement order arising out of interim relief application on basis that arbitral procedure had not been in accordance with parties' agreement — Whether inconsistent to find that appellant had submitted to jurisdiction of arbitral tribunal in respect of interim relief application while retaining his jurisdictional objection in respect of the rest of arbitral proceedings*

## Facts

Pursuant to a settlement agreement (the "Settlement Agreement"), the parties decided to dissolve their business relationship, with the respondent (the "Respondent") selling his 50% shareholding (the "Sale Shares") in a company (the "Company") to the appellant (the "Appellant"). It was contemplated that the Appellant would use the Respondent's Sale Shares to transact a merger between a third-party buyer and the Company (the "M&A Transaction"). As part of the Settlement Agreement, the Appellant was to pay the Respondent a total of US$114,097,487 in three tranches.

The Settlement Agreement contained an arbitration agreement (the "Arbitration Agreement") which provided for arbitration under the Dubai International Financial Centre – London Court of International Arbitration Rules, with the seat of the arbitration in London.

On or around 17 January 2019, the Appellant made the first payment under the Settlement Agreement to the Respondent. However, the Appellant did not make the second and third payments, with approximately US$90m remaining outstanding under the Settlement Agreement. The Respondent's position was that the Appellant had received proceeds from the M&A Transaction but had failed to pay the amounts that had fallen due, and that the Respondent had a proprietary interest in those proceeds by reason of a clause in the Settlement Agreement.

On 14 September 2021, the Ruler of Dubai issued a decree (the "Decree") which came into effect on 20 September 2021. Pursuant to the Decree, the Dubai International Arbitration Centre ("DIAC") was to replace the Dubai

International Financial Centre ("DIFC") in considering and determining all disputes arising out of arbitration agreements, unless otherwise agreed by the parties.

On 2 April 2022, the Respondent commenced an arbitration (the "Arbitration") in the DIAC by filing his request for Arbitration (the "Request for Arbitration"). On 3 August 2022, following a case management conference during which the tribunal ("Tribunal") gave directions for the conduct of the Arbitration, the Respondent made an interim relief application seeking a proprietary injunction over sums received by the Appellant and the Company pursuant to the M&A Transaction, a freezing order against the Appellant's assets for a value of up to US$90,826,522, and other ancillary reliefs (the "Interim Relief Application"). On 16 November 2022, after hearing the parties, the Tribunal issued the provisional award allowing the Interim Relief Application (the "Provisional Award"). The Interim Relief Application was heard and decided before the Tribunal finally ruled on its jurisdiction in relation to the Arbitration.

Thereafter, the Respondent brought enforcement proceedings in several jurisdictions and applied in Singapore by way of HC/OA 882/2022 for an order granting leave to enforce the Provisional Award (the "Leave Order"), which was granted on 28 December 2022 and then served on the Appellant. Thereafter, the Appellant applied in HC/SUM 2925/2023 ("SUM 2925") to set aside the Leave Order under s 31(2)(*e*) of the International Arbitration Act 1994 (2020 Rev Ed) on the basis that the composition of the arbitral authority or the arbitral procedure had not been in accordance with the agreement of the parties.

The judge in the General Division of the High Court (the "Judge") dismissed SUM 2925 on the basis that the Appellant had submitted to the jurisdiction of the Tribunal in respect of the Interim Relief Application.

**Held, dismissing the appeal:**

(1)    The sole issue in the appeal was whether the Appellant, having raised his objections to the Tribunal's jurisdiction to hear the Arbitration, had nonetheless submitted to its jurisdiction at least for the purpose of determining the Interim Relief Application: at [35].

(2)    Where an application for interim relief involved some consideration of issues that might appear to touch on the merits of the claims, it was not necessarily inconsistent for a party to submit to the jurisdiction of the arbitral tribunal in respect of the interim relief application, while retaining its jurisdictional objection in respect of the rest of the arbitral proceedings. This was because the standard to which an applicant had to establish the relevant facts in an interim relief application was typically different to that required for the resolution of the substantive dispute. This was precisely the situation in this case. In the Provisional Award, the Tribunal noted that it was required only to find on a *prima facie* standard that the claim might succeed on the merits and that the Company was a party to the Settlement Agreement. Findings made on a *prima facie* basis were typically provisional in nature and subject to revision. As a result, where a party acceded to an arbitral tribunal's jurisdiction in respect of an interim relief application, even where that application involved some consideration of the merits of the claims, this did not necessarily evidence an unequivocal, clear and consistent intention to submit to the jurisdiction of the

arbitral tribunal to finally determine the merits of the matters in dispute. There was therefore nothing inherently inconsistent in the Appellant's submission to the jurisdiction of the Tribunal for the purposes of the Interim Relief Application while reserving his position in relation to its jurisdiction to deal with the substantive dispute: at [39] to [41].

(3)     Purely for the purposes of the appeal, it was assumed that the Appellant's contention that the arbitral procedure had not been in accordance with the parties' agreement was well founded. However, even if that ground for resisting enforcement were made out, it was trite that a party might by his conduct be found to have waived his right to rely on this. Whether a party had waived his right to object to the jurisdiction of an arbitral tribunal, while being a question of Singapore law, had to be considered in the context of the law of the seat and the arbitral rules which the parties had chosen: at [43] and [44].

(4)     Under Singapore law, a waiver of the right to challenge an arbitral tribunal's jurisdiction might be found where a challenging party failed to make a timely objection to the arbitral tribunal's jurisdiction. A party that believed it had a basis to object to some intended act of the tribunal had to take the point before the tribunal and afford the tribunal the opportunity to consider and respond to the objection. That party could not hold the point in reserve and raise it only after the tribunal had made its decision. As the rules under the Arbitration Act 1996 (c 23) (UK) and the arbitral rules did not contemplate the situation in the present case where the Tribunal had to hear and determine the Interim Relief Application before the jurisdictional objection was to be finally determined, the court approached the question of waiver on the basis of that principle: at [45] and [55].

(5)     The Appellant chose to contest the Interim Relief Application on the merits, did not canvass or ventilate any arguments or submissions on the question of the Tribunal's jurisdiction to deal with that application and also did not seek to suspend the proceedings so that the Tribunal could first make a determination on the issue of jurisdiction. Having taken that course, the Appellant was not entitled to challenge the Provisional Award in enforcement proceedings by contesting the Tribunal's jurisdiction to decide the Interim Relief Application: at [62].

## Case(s) referred to

*A v B* [2017] EWHC 3417 (Comm) (refd)

*Akai Pty Ltd v People's Insurance Co Ltd* [1998] 1 Lloyd's Rep 90 (refd)

*Bi Xiaoqiong v China Medical Technologies, Inc* [2019] 2 SLR 595 (refd)

*Carona Holdings Pte Ltd v Go Go Delicacy Pte Ltd* [2008] 4 SLR(R) 460; [2008] 4 SLR 460 (refd)

*China Machine New Energy Corp v Jaguar Energy Guatemala LLC* [2020] 1 SLR 695 (folld)

*CJA v CIZ* [2022] 2 SLR 557 (refd)

*Deutsche Telekom AG v The Republic of India* [2024] 3 SLR 1 (refd)

*Giant Light Metal Technology (Kunshan) Co Ltd v Aksa Far East Pte Ltd* [2014] 2 SLR 545 (refd)

*Halley Optical Corp v Jagar Int'l Marketing Corp* 752 F Supp 638 (SDNY, 1990) (refd)

*Lao Holdings NV v Government of the Lao People's Democratic Republic* [2021] 5 SLR 228 (refd)

*Opals on Ice Lingerie v Bodylines Inc* 320 F 3d 362 (SDNY, 2003) (refd)

*RGA Holdings International Inc v Loh Choon Phing Robin* [2017] 2 SLR 997 (refd)

*Tan Ng Kuang Nicky v Metax Eco Solutions Pte Ltd* [2021] 1 SLR 1135 (refd)

*Tomolugen Holdings Ltd v Silica Investors Ltd* [2016] 1 SLR 373 (refd)

*Triulzi Cesare SRL v Xinyi Group (Glass) Co Ltd* [2015] 1 SLR 114 (refd)

**Legislation referred to**

International Arbitration Act 1994 (2020 Rev Ed) s 31(2)(*e*) (consd); ss 19, 29, 31(2)

Rules of Court 2021 O 48 r 6

Arbitration Act 1996 (c 23) (UK) ss 31(1), 73(1)

*Mahesh Rai s/o Vedprakash Rai, Yong Wei Jun Jonathan and Soon Ser Jia Clarissa (Drew & Napier LLC) for the appellant;*
*Zhuo Jiaxiang, Lau Hui Ming Kenny and Kyle Chong Kee Cheng (Providence Law Asia LLC) for the respondent.*

[Editorial note: This was an appeal from the decision of the High Court (General Division) in [2024] SGHC 71.]

17 October 2024

**Sundaresh Menon CJ (delivering the grounds of decision of the court):**

**Introduction**

1    The respondent in the present appeal (the "Respondent") obtained permission by way of HC/ORC 53/2023 (the "Leave Order") to enforce a provisional award granting interim relief on 16 November 2022 (the "Provisional Award") that had been issued by an arbitral tribunal (the "Tribunal") in Dubai International Arbitration Centre (the "DIAC") Arbitration No 60 of 2022 (the "Arbitration"). This appeal arose out of HC/SUM 2625/2023 ("SUM 2625"), which was an application by the present appellant (the "Appellant"), filed in HC/OA 882/2022 ("OA 882"), to set aside the Leave Order. By the interim relief application (the "Interim Relief Application") that led to the Provisional Award, the Respondent sought, among other orders, a freezing order against the Appellant's assets up to the value of US$90,826,522. In SUM 2625, the Appellant applied to set aside the Leave Order under s 31(2)(*e*) of the International Arbitration Act 1994 (2020 Rev Ed) ("IAA") on the basis that the composition of the arbitral authority or the arbitral procedure had not been in accordance with the agreement of the parties. A judge in the General Division of the High

Court (the "Judge") dismissed SUM 2625 on the basis that the Appellant had submitted to the jurisdiction of the Tribunal in respect of the Interim Relief Application.

2      The central issue in this appeal was whether the Appellant had waived his right to challenge the Provisional Award on the basis that the Tribunal lacked jurisdiction *to make that award*. The distinguishing feature of this appeal was that the Interim Relief Application had been heard and decided before the Appellant's jurisdictional objection in respect of the Arbitration had been finally determined. This raised an interesting conceptual question as to whether a party may accede to the jurisdiction of an arbitral tribunal to determine an interim relief application while maintaining his reservation to the jurisdiction of the same tribunal to determine the arbitration in a pending challenge. We found in the affirmative, dismissed the appeal and gave our reasons in brief. We now set out our reasons in detail in these grounds.

**Facts**

3      The Appellant is an Indian national and the business partner of the Respondent, who is a Qatari national and chairman of a Qatari company having diversified business interests in luxury and retail, hospitality, trading, manufacturing and industrial services, among other sectors.

*Settlement Agreement and Arbitration Agreement*

4      On 7 August 2018, pursuant to a settlement agreement (the "Settlement Agreement"), the parties decided to dissolve their business relationship with the Respondent selling his 50% shareholding (the "Sale Shares") in a company (the "Company") to the Appellant. It was contemplated that the Appellant would use the Respondent's Sale Shares to transact a merger between a third-party buyer and the Company (the "M&A Transaction").

5      As part of the Settlement Agreement, the Appellant was to pay the Respondent a total of US$114,097,487 in three tranches, as follows:

(a)    first payment of US$23,182,965 on 30 September 2018; and

(b)    second and third payments of US$45,413,261 each on 30 September 2019 and 30 September 2020 respectively.

6      The parties later entered into an addendum to the Settlement Agreement on 17 December 2018, under which the dates of the three payments were extended by three months to 30 December 2018, 2019, and 2020 respectively. A second addendum allegedly made on 5 January 2020 was disputed.

7      The Settlement Agreement contained an arbitration agreement at cl 17 (the "Arbitration Agreement"), which provided for arbitration under

the Dubai International Financial Centre–London Court of International Arbitration Rules (the "DIFC-LCIA Rules"), and stated as follows:

**17    Governing Law and Jurisdiction**

a.    This Agreement and any non-contractual obligations arising out of or in connection with this Agreement shall be governed by, and interpreted in accordance with, English law.

b.    Any dispute, claim, difference, question or controversy arising out of, relating to or having any connection with this Agreement, including any dispute as to its existence, validity, interpretation, performance, breach or termination or the consequences of its nullity and any dispute relating to any non-contractual obligations arising out of or in connection with it, shall be referred to and finally resolved by arbitration under the Dubai International Financial Centre – London Court of International Arbitration Rules (the *DIFC-LCIA*) (the *Rules*).

c.    The Rules are incorporated by reference into this clause and capitalised terms used in this clause, which are not otherwise defined in this Agreement, have the meaning given to them in the Rules.

d.    The number of arbitrators shall be three. First Party shall appoint one arbitrator, Second Party shall appoint one arbitrator, and one arbitrator who shall serve as chairman shall be nominated by the agreement of both parties. Failing such agreement within 30 days of the nomination of the party-nominated arbitrators, the arbitrator shall be nominated by the DIFC-LCIA.

e.    The seat or legal place of arbitration shall be London, United Kingdom. This agreement to arbitrate shall be governed by English law.

f.    The language used in the arbitral proceedings shall be English. All documents submitted in connection with the proceedings shall be in the English language, or, if in another language, accompanied by an English translation.

8    Relatedly, cl 16(i) of the Settlement Agreement also provided:

Where any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the Laws of any jurisdiction then such provision shall be deemed to be severed from this Agreement and, if possible, replaced with a lawful provision which, [*sic*] gives effect to the intention of the parties under this Agreement.

9    On or around 17 January 2019, the Appellant made the first payment under the Settlement Agreement to the Respondent. However, it was undisputed that the Appellant did not make the second and third payments. Therefore, approximately US$90m remained outstanding from the Appellant to the Respondent under the Settlement Agreement. The Respondent's position was that the Appellant had received proceeds from the M&A Transaction but had failed to pay the amounts that had fallen due, and that the Respondent had a proprietary interest in those proceeds by reason of a clause in the Settlement Agreement.

### Issuance of the Decree and conduct of the Arbitration

10    On 14 September 2021, the Ruler of Dubai issued a decree (the "Decree") which came into effect on 20 September 2021. Pursuant to the Decree, the DIAC was to replace the Dubai International Financial Centre ("DIFC") in considering and determining all disputes arising out of arbitration agreements, unless otherwise agreed by the parties.

11    On 2 April 2022, the Respondent commenced the Arbitration in the DIAC by filing his request for arbitration (the "Request for Arbitration"). The procedural history of the Arbitration was fairly involved and, to the extent necessary, this is detailed in the analysis below. For now, it suffices to recount the following.

12    On 7 and 18 July 2022, the DIAC appointed Mr Michael Black KC and Ms Sapna Jhangiani KC as members, and Prof Sir Bernard Rix as chairperson of the Tribunal.

13    On 3 August 2022, following a case management conference during which the Tribunal gave directions for the conduct of the Arbitration, the Respondent made the Interim Relief Application seeking a proprietary injunction over sums received by the Appellant and the Company pursuant to the M&A Transaction, a freezing order against the Appellant's assets for a value of up to US$90,826,522 and other ancillary reliefs.

14    On 16 November 2022, after hearing the parties, the Tribunal issued the Provisional Award allowing the Interim Relief Application.

### Subsequent enforcement proceedings and related applications

15    The Respondent thereafter brought enforcement proceedings in several jurisdictions, including Singapore, the Cayman Islands and the DIFC. In each of these jurisdictions, the Appellant relied on different grounds to resist the enforcement of the Provisional Award. The Appellant did not seek to set aside the Provisional Award at the seat of the Arbitration in London.

16    On 27 December 2022, the Respondent applied by way of OA 882 for the Leave Order, which was granted on 28 December 2022 and then served on the Appellant on 18 July 2023. Ordinarily, the Respondent would have been able to enforce the Provisional Award on 2 August 2023, pursuant to O 48 r 6 of the Rules of Court 2021. However, the Appellant commenced HC/SUM 2351/2023 ("SUM 2351") on 1 August 2023 seeking an extension of time until 31 August 2023 to file his application to set aside the Leave Order, this being SUM 2625, the application from which this appeal arose. A case conference was held on 17 August 2023, during which the Appellant's counsel stated that their lead counsel had "limited availability" for the hearing of SUM 2351. SUM 2351 was eventually heard on 28 August 2023, which all but rendered the application moot. The court ordered that

SUM 2625 be filed by 29 August 2023, one day after the hearing of SUM 2351.

17     On 29 August 2023, SUM 2625 was filed. In his supporting affidavit, the Appellant stated that he intended to seek leave to adduce a foreign law expert opinion to assist the court on certain issues. He did so almost a month later. The Appellant then filed the expert opinion on 31 October 2023, almost three and a half months after the Leave Order to enforce the Provisional Award had been served. The parties then filed their written submissions in SUM 2625 on 15 January 2024.

**Proceedings below**

*Appellant's arguments*

18     The Appellant first submitted that the Provisional Award was not an award capable of being enforced under s 19 of the IAA because it was subject to findings and holdings yet to be made after a final hearing, and therefore did not have preclusive effect on any claim or matter to be determined in the Arbitration.

19     The Appellant also submitted, relying on s 31(2) of the IAA, that even if enforcement of the Provisional Award could be sought under s 29 of the IAA, the Provisional Award should not be enforced in Singapore because the arbitral procedure leading to its issuance was not in accordance with the parties' agreement. The Appellant contended that the parties had only agreed to the application of the DIFC-LCIA Rules under the Arbitration Agreement, and the Decree did not substitute and/or amend the Arbitration Agreement in this regard. The Appellant also submitted that he had not submitted to the jurisdiction of the Tribunal in the Arbitration.

20     Finally, the Appellant made two further points. The first was in response to a point raised by the Respondent that the Appellant was estopped from bringing SUM 2625 because of separate proceedings that had been commenced by the Appellant in the DIFC and the Cayman Islands (see [23] below). In this regard, the Appellant argued that transnational issue estoppel was not engaged: the proceedings in the Cayman Islands were still pending and had not resulted in any final or conclusive judgment on the merits, while the grounds relied on in the DIFC for refusing enforcement were different. The second point was that the Provisional Award should be denied enforcement in Singapore as there was a pending jurisdictional objection in the Arbitration, and it would be inappropriate for the court to make a determination on jurisdiction when the Tribunal had not done so.

*Respondent's arguments*

21     The Respondent advanced four broad arguments below. First, he argued that the Appellant had submitted to and/or waived his objections to

the Tribunal's jurisdiction. As to the Interim Relief Application, the Appellant had submitted to the Tribunal's jurisdiction by not raising any jurisdictional objections before the hearing of the Interim Relief Application and contesting the application on the merits instead. In respect of the Arbitration as a whole, it was submitted that the Appellant should have contested the Tribunal's jurisdiction within seven days from the date of such fact or circumstance being known but did not do so and only raised his jurisdictional objections in his statement of defence in the Arbitration (the "Statement of Defence"). Moreover, the Appellant had attempted to advance a counterclaim in the Arbitration which should be construed as a submission to the Tribunal's jurisdiction.

22     Second, the Respondent submitted that the Arbitration had been conducted in accordance with the parties' agreement. The Arbitration Agreement and the Settlement Agreement provided an express mechanism by way of cl 16(i) for the incorporation of the Decree, which set out the DIAC as the successor-in-title to the DIFC-LCIA. Further, following the Decree, the London Court of International Arbitration ("LCIA") itself had refused to administer the arbitration and any suggestion by the Appellant's expert that the LCIA should administer the Arbitration was inconsistent with the intention of the parties.

23     Third, the Respondent submitted that the Appellant was estopped from raising his jurisdictional objections before the Singapore courts because he had cherry-picked different arguments before different enforcement courts so that he could argue that any final determination in such courts would not affect his resistance of enforcement in the other courts. It was argued that this "trial and error" approach was an abuse of process which, coupled with his dilatory conduct in the proceedings in Singapore, led to the irresistible inference that the Appellant was simply trying to delay and frustrate the enforcement of the Provisional Award.

24     Lastly, it was contended that the Singapore court should not deny enforcement of the Provisional Award simply because there was a pending jurisdictional objection in the Arbitration. The Respondent contended that it was a startling proposition that a tribunal could be prevented from issuing an interim or provisional award and/or that an enforcement court could be prevented from enforcing such an award, just because a jurisdictional objection had been raised and had yet to be determined as part of the final award.

### Decision below

25     On 6 February 2024, the Judge dismissed SUM 2625 and, in his grounds of decision, ruled on three points (see *DFL v DFM* [2024] SGHC 71 (the "GD")).

26    The first point was that the Arbitration Agreement could not be "saved" by cl 16(i) of the Settlement Agreement. In the Judge's view, it was not the case that the parties had intended, at the time they had signed the Settlement Agreement, to accept arbitration administered by *any* institute in Dubai (whether then existing or not) regardless of the rules under which the arbitration would be conducted. The Judge also observed that were significant differences between the DIFC-LCIA Rules and the Dubai International Arbitration Centre Rules 2022 (the "DIAC Rules"), which would have rendered an arbitration under the DIAC Rules fundamentally at odds with the parties' intention (see GD at [27]).

27    Second, the Judge held that the Appellant "had demonstrated an unequivocal, clear and consistent intention to submit to the [T]ribunal's jurisdiction" in respect of the Interim Relief Application (see GD at [39]). The Appellant had contested the merits of the Interim Relief Application without raising any jurisdictional objections in the Interim Relief Application itself (see GD at [39]). The Judge noted that, while the Appellant had objected to arbitration under the DIAC Rules in his Statement of Defence, it was "incumbent on the [Appellant] to specifically raise such objections if he intended to rely on them with respect to the [Interim Relief] Application" (see GD at [42]). The fact that the Appellant had chosen, in the Interim Relief Application, not to rely on the jurisdictional objections raised in the Statement of Defence, meant that he was not relying on those objections for the purposes of the Interim Relief Application (see GD at [43]). As for whether the Appellant had submitted to the Tribunal's jurisdiction in respect of the Arbitration itself, the Judge declined to decide that question since it was pending determination by the Tribunal and it was more appropriate for the Tribunal to deal with it (see GD at [49]).

28    Third, the Judge rejected the Appellant's contention that enforcement should be refused because the jurisdiction issue was pending in the Arbitration. The Tribunal had assumed jurisdiction with respect to the Interim Relief Application; and the conclusion that the Appellant had submitted to the Tribunal's jurisdiction in respect of the Interim Relief Application was separate and distinct from the question of whether the Tribunal had jurisdiction over the substantive claim in the Arbitration. If the Appellant subsequently succeeded on his jurisdictional objections in the Arbitration, the interim relief orders under the Provisional Order would necessarily be discharged. The Appellant could then enforce the Respondent's undertaking that had been proffered in the Arbitration to abide by any order or award as to costs or damages that the Appellant may have sustained by reason of the Provisional Award (see GD at [51]).

**Parties' cases on appeal**

*Appellant's case*

29     The Appellant appealed against the Judge's finding that he had submitted to the Tribunal's jurisdiction. This was the sole issue in this appeal. The Appellant made two broad submissions in this regard. The first was that he had not demonstrated an unequivocal, clear and consistent intention to submit to the Tribunal's jurisdiction in the Interim Relief Application. Secondly, he argued that he had not in fact submitted to the Tribunal's jurisdiction in the Arbitration and he suggested, at least implicitly, that this would be inconsistent with the finding that he had nevertheless submitted to the Tribunal's jurisdiction for the purposes of the Interim Relief Application.

30     On his first submission, the Appellant contended that he had consistently contested the Tribunal's jurisdiction. This included a challenge to the Tribunal's jurisdiction in the Arbitration that was reflected in the Appellant's Statement of Defence that had been filed with the Tribunal before it had heard the parties and issued the Provisional Award. The Tribunal was aware of his jurisdictional challenge but had not dealt with it in the Provisional Award. He also contended that his jurisdictional challenge had not been waived by any inconsistent conduct as he had expressly made reservations in his submissions contesting the Respondent's Interim Relief Application, stating that his participation in the Application was without prejudice to his jurisdictional objection against the Tribunal.

31     On the Appellant's second submission that he had not submitted to the Tribunal's jurisdiction in respect of the substantive dispute, he contended that his attempt to file a counterclaim was not relevant both to this appeal and SUM 2625. In this regard, he relied on the comment by the Judge that a decision by the Tribunal on its jurisdiction was forthcoming and it would be "more appropriate to leave it to the Tribunal to deal with the issue" (see GD at [49]). The Appellant further contended that the counterclaim included an express reservation of the Appellant's right to object to the jurisdiction of the Tribunal and that it had been pleaded as an alternative to his primary position that the Tribunal had no jurisdiction.

*Respondent's case*

32     The Respondent made three broad submissions. First, it was submitted that the Appellant had submitted to the Tribunal's jurisdiction to issue the Provisional Award and that the parties had agreed that the Appellant's jurisdictional objection would only be decided at the conclusion of the first phase of the Arbitration, which would lead to a partial final award that would also determine some of the claims. The Respondent further argued that the Appellant's approach was inconsistent with the principle of *kompetenz-kompetenz*, in that the Appellant had not

mounted a jurisdictional objection in the Interim Relief Application but had only sought to do so in enforcement proceedings.

33     Second, the Respondent argued that the Appellant had submitted to the Tribunal's jurisdiction in respect of the Arbitration as a whole. However, the Respondent accepted that if the court found that the Appellant had submitted to the Tribunal's jurisdiction in respect of the Interim Relief Application, there was no need to consider any other grounds on which SUM 2625 might be dismissed.

34     Third, the Respondent submitted that it was not necessary or proper for the Judge to decide that the Arbitration Agreement was frustrated and could not be saved by cl 16(i) of the Settlement Agreement, given that the issue was pending before the Tribunal. In any event, the Respondent submitted that the Judge's observations were incorrect and that the Decree, along with cl 16(i) of the Settlement Agreement, had the substantive effect of replacing the DIFC-LCIA Rules with the DIAC Rules in the Arbitration Agreement.

**Sole issue in this appeal**

35     The sole issue in this appeal was whether the Appellant, having raised his objections to the Tribunal's jurisdiction to hear the Arbitration, had nonetheless submitted to its jurisdiction at least for the purpose of determining the Interim Relief Application.

36     There was no dispute that the Tribunal had not finally ruled on its own jurisdiction in relation to the substantive Arbitration itself at the time of our decision. In our judgment, in line with the principle of *kompetenz-kompetenz*, an enforcement court should not determine the issue of jurisdiction in that regard before the Tribunal has done so (see, for a similar observation, the decision of the Court of Appeal in *Tomolugen Holdings Ltd and another v Silica Investors Ltd and other appeals* [2016] 1 SLR 373 at [67]). Furthermore, nothing in our analysis below required the determination of that question, and we accordingly make no finding in that regard (see the decision of the Court of Appeal in *Tan Ng Kuang Nicky (the duly appointed joint and several liquidators of Sembawang Engineers and Constructors Pte Ltd (in compulsory liquidation)) and others v Metax Eco Solutions Pte Ltd* [2021] 1 SLR 1135 at [62]). We confined our consideration to the Interim Relief Application.

**Appellant waived his challenge against Tribunal's jurisdiction to determine Interim Relief Application**

37     In our judgment, the Appellant did not object to the jurisdiction of the Tribunal to determine the Interim Relief Application and, in fact, challenged the application on its merits instead. He had therefore submitted to the Tribunal's jurisdiction for this purpose and had waived his right to

rely on s 31(2)(*e*) of the IAA in resisting enforcement. This was dispositive of the present appeal.

*Preliminary observation*

38    Before turning to the analysis, we first set out some observations on the Judge's findings. The Judge thought that the Appellant's conduct evidenced "an unequivocal, clear and consistent intention to submit to the [T]ribunal's jurisdiction with respect to the [Interim Relief] Application" (see GD ([25] *supra*) at [39]). However, the Judge also did not find that the Appellant had submitted to the jurisdiction of the Tribunal in respect of the Arbitration (see GD at [45]–[49]). This raised a question as to whether the finding that the Appellant had submitted to the Tribunal's jurisdiction in respect of the Interim Relief Application was consistent with the finding that he had not submitted to the jurisdiction in respect of the substantive Arbitration. As this issue has not been expressly considered in the case law, we set out our views.

39    Where an application for interim relief involves some consideration of issues that may appear to touch on the merits of the claims, it is not necessarily inconsistent for a party to submit to the jurisdiction of the arbitral tribunal in respect of the interim relief application, while retaining his jurisdictional objection in respect of the rest of the arbitral proceedings. This is because the *standard* to which an applicant must establish the relevant facts in an interim relief application is typically different to that required for the resolution of the substantive dispute. Counsel for the Appellant, Mr Mahesh Rai s/o Vedprakash Rai ("Mr Rai"), accepted in the course of oral arguments that determinations in an interim relief application, on issues such as jurisdiction, are often made applying a *prima facie* standard (see *Jurisdiction, Admissibility and Choice of Law in International Arbitration* (Neil Kaplan & Michael Moser gen eds) (Kluwer Law International, 2018) at p 112). In certain types of applications, it may also be that the applicant is required to show that it has a *prima facie* or a good arguable case on the merits (see the decision of the Court of Appeal in *Bi Xiaoqiong (in her personal capacity and as trustee of the Xiao Qiong Bi Trust and the Alisa Wu Irrevocable Trust) v China Medical Technologies, Inc (in liquidation) and another* [2019] 2 SLR 595 at [130]; and *RGA Holdings International Inc v Loh Choon Phing Robin and another* [2017] 2 SLR 997 at [28]). This was precisely the situation in this case. In the Provisional Award, the Tribunal noted that it was required only to find on *a prima facie* standard that the claim might succeed on the merits and that the Company was a party to the Settlement Agreement.

40    Findings made on a *prima facie* basis are typically provisional in nature and subject to revision after a full hearing. They are not meant to be final and determinative. The different purposes for which these findings are made highlights this: in an interim relief application, a consideration of the

merits of the claims on a *prima facie* standard serves as an anterior step in the inquiry into whether ancillary *interim* relief should be granted, typically at an early stage of the proceedings. This is plainly different from a final determination on the merits that would dispose of the substantive dispute between the parties. As a result, where a party accedes to an arbitral tribunal's jurisdiction in respect of an interim relief application, even where that application involves some consideration of the merits of the claims, this does not necessarily evidence an unequivocal, clear and consistent intention to submit to the jurisdiction of the arbitral tribunal to finally determine the merits of the matters in dispute.

41    Each case will turn on its facts, given that the inquiry into whether a party has submitted to an arbitral tribunal's jurisdiction is necessarily a fact-sensitive one (see the decision of the Court of Appeal in *CJA v CIZ* [2022] 2 SLR 557 at [38]). However, this did not pose any difficulty in the present case because it was clear that the determination of the Interim Relief Application had been on a *prima facie* basis, had not involved a final determination and had necessarily come well before the determination of the substantive dispute. There was therefore nothing inherently inconsistent in the Appellant's submission to the jurisdiction of the Tribunal for the purposes of the Interim Relief Application while reserving his position in relation to its jurisdiction to deal with the substantive dispute (see [39] above). The jurisdictional question raised in this appeal was therefore limited to the Interim Relief Application.

### Relevant principles

42    We turn to consider whether the Appellant did submit to the Tribunal's jurisdiction in respect of the Interim Relief Application. It will be recalled that, in resisting enforcement of the Provisional Award, the Appellant relied on s 31(2)(*e*) of the IAA, which provides as follows:

> (2)    A court so requested may refuse enforcement of a foreign award if the person against whom enforcement is sought proves to the satisfaction of the court that —
>
>> …
>
>> (*e*)    the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; …

43    Even if the ground for resisting enforcement is made out, it is trite that a party may by his conduct be found to have waived his right to rely on this (see the decision of the Singapore International Commercial Court in *Lao Holdings NV v Government of the Lao People's Democratic Republic and another matter* [2021] 5 SLR 228 at [156]). We assumed, purely for the purposes of this appeal, that the Appellant's contention that the arbitral procedure had not been in accordance with the parties' agreement was well

founded. The question then was whether the Appellant had nonetheless been content for the Tribunal to deal with the Interim Relief Application, while reserving the determination of whether it had jurisdiction to determine the Arbitration. It made no real difference whether this was framed in terms of the Appellant having submitted to the Tribunal's jurisdiction for this purpose or the Appellant having waived his objection. In a sense, these may be seen as two sides of the same coin.

44     Whether a party has waived his right to object, while being a question of Singapore law in these enforcement proceedings, must be considered in the *context* of the law of the seat and the arbitral rules which the parties have chosen (see the decision of the High Court in *Triulzi Cesare SRL v Xinyi Group (Glass) Co Ltd* [2015] 1 SLR 114 at [90]–[97]; and the decision of the Court of Appeal in *Deutsche Telekom AG v The Republic of India* [2024] 3 SLR 1 at [161]–[171]). The reason for adopting such a contextual approach was explained by the High Court in *Giant Light Metal Technology (Kunshan) Co Ltd v Aksa Far East Pte Ltd* [2014] 2 SLR 545 at [26], citing the decision of the High Court of England and Wales in *Akai Pty Ltd v People's Insurance Co Ltd* [1998] 1 Lloyd's Rep 90 at 97:

> The Court must consider the matter objectively; it must have regard to the general framework of its own procedural rules, but also to the domestic law of the Court where the steps were taken. *This is because the significance of those steps can only be understood by reference to that law.* If a step taken by a person in a foreign jurisdiction, such as making a counterclaim, might well be regarded by English law as amounting to a submission to the jurisdiction, but would not be regarded by that foreign Court as a submission to its jurisdiction, an English Court will take into account the position under foreign law. [emphasis added]

*Principles governing waiver under Singapore law*

45     Under Singapore law, a waiver of the right to challenge an arbitral tribunal's jurisdiction may be found where a challenging party fails to make a timely objection to the arbitral tribunal's jurisdiction. In *China Machine New Energy Corp v Jaguar Energy Guatemala LLC and another* [2020] 1 SLR 695 ("*China Machine*") (at [168]), we held that an aggrieved party cannot complain after the fact that its hopes for a fair trial had been irretrievably dashed by the acts of the tribunal, if it had conducted itself as if it had been content to proceed with the arbitration and obtain an award during the course of the arbitration before that tribunal. The principle is this: a party that believes it has a basis to object to some intended act of the tribunal must take the point before the tribunal and afford the tribunal the opportunity to consider and respond to the objection. That party cannot hold the point in reserve and raise it only after the tribunal has made its decision. We observed in *China Machine* (at [170]):

> … if a party intends to contend that there has been a fatal failure in the process of the arbitration, then there *must* be fair intimation to the tribunal

that the complaining party intends to take that point at the appropriate time if the tribunal insists on proceeding. This would ordinarily require that the complaining party, at the very least, seek to suspend the proceedings until the breach has been satisfactorily remedied (if indeed the breach is capable of remedy) so that the tribunal and the non-complaining party has the opportunity to consider the position. This must be so because if indeed there has been such a fatal failure against a party, then it cannot simply 'reserve' its position until after the award and if the result turns out to be palatable to it, not pursue the point, or if it were otherwise to then take the point. After all, the requirement of a fair process avails both parties in the arbitration and to countenance such hedging would be fundamentally unfair to the process itself, to the tribunal and to the other party. In the final analysis, it is a contradiction in terms for a party to claim, as CMNC now does, that the proceedings had been irretrievably tainted by a breach of natural justice, when at the material time it presented itself as a party ready, able and willing to carry on to the award. If a party chooses to carry on in such circumstances, it does so at its own peril. The courts must not allow parties to hedge against an adverse result in the arbitration in this way. [emphasis in original]

46    To similar effect is the observation of the US District Court for the Southern District of New York in *Opals on Ice Lingerie v Bodylines Inc* 320 F 3d 362 (SDNY, 2003), that if "a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration" (at 368). To conclude otherwise would "allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitrate" (at 369) (see also the decision of the same court in *Halley Optical Corp v Jagar Int'l Marketing Corp* 752 F Supp 638 (SDNY, 1990) at 639).

47    In the round, the court's assessment of whether a party has waived its right to contest the jurisdiction of an arbitral tribunal is conducted in a "practical and commonsensical way" which considers all the circumstances surrounding a party's conduct (see the decision of the Court of Appeal in *Carona Holdings Pte Ltd and others v Go Go Delicacy Pte Ltd* [2008] 4 SLR(R) 460 at [52]).

*Consideration of UK Arbitration Act and relevant arbitral rules*

48    We next considered the provisions under the Arbitration Act 1996 (c 23) (UK) ("UK Arbitration Act"), since it was common ground that the arbitration was seated in London (see [7] above), as well as the potentially relevant arbitral rules.

49    Section 31(1) of the UK Arbitration Act provides that an objection that an arbitral tribunal lacks substantive jurisdiction at the outset of the proceedings must be raised by a party "no later than the time he takes the first step in the proceedings to contest the merits of any matter in relation

to which he challenges the tribunal's jurisdiction". Section 73(1) of the same Act further provides:

> **73    Loss of right to object.**
>
> (1)    If a party to arbitral proceedings takes part, or continues to take part, in the proceedings without making, either forthwith or within such time as is allowed by the arbitration agreement or the tribunal or by any provision of this Part, any objection—
>
>> (a)    that the tribunal lacks substantive jurisdiction,
>>
>> (b)    that the proceedings have been improperly conducted,
>>
>> (c)    that there has been a failure to comply with the arbitration agreement or with any provision of this Part, or
>>
>> (d)    that there has been any other irregularity affecting the tribunal or the proceedings,
>
> he may not raise that objection later, before the tribunal or the court, unless he shows that, at the time he took part or continued to take part in the proceedings, he did not know and could not with reasonable diligence have discovered the grounds for the objection.

50    Hence, if a party fails to object to an arbitral tribunal's jurisdiction by the time he takes the first step in the proceedings to contest the merits of any matter in relation to which he challenges the tribunal's jurisdiction, he loses the right to take that objection before that arbitral tribunal or subsequently before a court.

51    As for what is meant by taking the "first step" in the proceedings, the High Court of England and Wales in *A v B* [2017] EWHC 3417 (Comm) noted that s 31(1) of the UK Arbitration Act was adopted from Art 16(2) of the United Nations Commission on International Trade Law, UNCITRAL Model Law on International Commercial Arbitration (UN Doc A/40/17, Annex I; UN Doc A/61/17, Annex I) (21 June 1985, amended 7 July 2006) (the "Model Law"). The only difference was the replacement of the requirement in the Model Law that the jurisdictional objection must be raised no later than the filing of a statement of defence, with the requirement that the objection be raised by the time the party "takes the first step in the proceedings to contest the merits" (at [33]). The court examined the drafting history of s 31(1) and held that, where pleadings are required, the jurisdictional objection must be raised by the time of submission of the statement of defence. Where formal pleadings are not required, the objection must be raised at the equivalent stage at which the merits of the case are contested (at [35]).

52    Turning to the arbitral rules, the Appellant appeared to accept in his written submissions that the DIAC Rules might be considered, which was in line with the Respondent's position. There were two rules which were potentially relevant. First, Art 6.4 provides that "[a]ny objection to the

jurisdiction of the Tribunal shall be raised no later than in the statement of defence or, as the case may be, in any statement of defence to counterclaim". Second, Art 42 provides that the parties may be taken to have waived their objections in some situations and stated as follows:

> A party which knows or ought reasonably to have known that any provision of, or requirement under, the Rules or other rules applicable to the arbitration or any direction given by the Tribunal has not been complied with shall raise an objection within 7 days (or such other period as may be prescribed by the procedural law applicable to the seat of the arbitration) from the date any such fact or circumstance became known or ought reasonably to have been known. Should the party fail to do so, it shall be deemed to have irrevocably waived its right to object and may not raise that objection later.

53 The Respondent relied on Art 42 of the DIAC Rules to contend that the Appellant should have raised his jurisdictional objections within seven days from 2 April 2022, that being the day he had been served with the Respondent's Request for Arbitration. However, the Respondent no longer pursued this point on appeal. In our view, the Respondent was right not to do so. Article 6.4 was specifically targeted at jurisdictional objections and so would likely prevail over the more general provision in Art 42.

54 For completeness, we also noted that the position was not materially different under the DIFC-LCIA Rules, which provided in Art 23.3 that a party that objects to the jurisdiction of an arbitral tribunal must raise its objection as soon as possible but no later than in the statement of defence:

> An objection by a Respondent that the Arbitral Tribunal does not have jurisdiction shall be raised as soon as possible but not later than the time for its Statement of Defence; and a like objection by any party responding to a counterclaim or cross-claim shall be raised as soon as possible but not later than the time for its Statement of Defence to Counterclaim or Cross-Claim. An objection that the Arbitral Tribunal is exceeding the scope of its authority shall be raised promptly after the Arbitral Tribunal has indicated its intention to act upon the matter alleged to lie beyond its authority. The Arbitral Tribunal may nevertheless admit an untimely objection as to its jurisdiction or authority if it considers the delay justified in the circumstances.

55 However, these rules related more generally to the issue of the arbitral tribunal's jurisdiction over the merits of the claims. They did not contemplate the situation in the present case, where the Tribunal had to hear and determine the Interim Relief Application before the jurisdictional objection was to be finally determined. Accordingly, we approached this question on the basis of the principle set out at [45] above and proceeded to examine the factual context to determine whether the Appellant had objected to the jurisdiction of the Tribunal to decide the Interim Relief Application.

*Appellant did not object to Tribunal's jurisdiction to decide Interim Relief Application*

56    Having regard to the procedural history of the Arbitration, it was evident that the Appellant had been content to proceed with the hearing of the Interim Relief Application without raising any objection to the Tribunal's jurisdiction *in that application*. It was accordingly not permissible for him, subsequently, to mount an attack against the Provisional Award at the enforcement stage after the award had been made against him.

57    The Appellant contended that he had expressly challenged the Tribunal's jurisdiction to hear the Arbitration "as a whole", which "necessarily applie[d] to the Tribunal's jurisdiction to hear the application". However, we did not think that this contention was borne out on the facts. In this regard, it was relevant to note the procedural history of the Arbitration:

(a)    On 18 May 2022, in his answer to the Respondent's Request for Arbitration, the Appellant stated that his "rights are reserved in relation to the Decree and its impact on this arbitration".

(b)    On 3 August 2022, there was a case management hearing following which the Respondent made the Interim Relief Application.

(c)    On 29 August 2022, the Appellant filed his answer to the Interim Relief Application with the caveat that it was filed "without prejudice to any of the [Appellant's] rights, defences, and objections, including, for the avoidance of doubt, objections to the jurisdiction of the Tribunal".

(d)    On 8 September 2022, the Appellant filed his Statement of Defence in the Arbitration containing his jurisdictional objection on the basis that the Arbitration had been improperly commenced under the DIAC Rules. In particular, he stated that:

> Arbitration is a consent-based form of dispute resolution, and the [Appellant] has never agreed to DIAC arbitration. It therefore follows that these proceedings have been improperly commenced by the [Respondent] and, *accordingly, the Tribunal lacks jurisdiction over the present arbitration.* [emphasis added]

(e)    On 29 September 2022, the Appellant filed his skeletal argument in the Interim Relief Application (the "Skeletal Argument"). Save to state generally that his filings were without prejudice to any of his rights, defences and objections, including "objections to the jurisdiction of the Tribunal", the Appellant did not raise any specific jurisdictional objections to the Tribunal hearing the Interim Relief Application and making orders in respect of the same.

(f)    On 3 October 2022, the Tribunal heard the Interim Relief Application. It was significant that, even though the other respondent to the Arbitration raised jurisdictional objections, the Appellant did not raise any jurisdictional objections to the Tribunal's attention for the purposes of the Interim Relief Application.

(g)    On 25 October 2022, the Appellant filed his statement of rejoinder in the Arbitration maintaining his jurisdictional objection. Specifically, the Appellant stated that he "ha[d] never consented to arbitrate under the DIAC Rules and ha[d] reserved his rights in this regard since filing his Answer" [emphasis in original omitted].

(h)    On 4 November 2022, the Tribunal issued the Provisional Award to the parties directly, without formal notification from the DIAC.

(i)    On 9 November 2022, the Appellant filed an application for discharge, suspension and modification of the Provisional Award (the "Discharge Application").

(j)    On 16 November 2022, the Tribunal dismissed the Discharge Application and made minor corrections to the Provisional Award. In a document titled "Tribunal's Responses to the [Appellant's] Application to Discharge, Suspend or Modify the Provisional Award, and to other requests to modify and/or clarify the Provisional Award", the Tribunal noted that the four grounds relied on by the Appellant were as follows:

    1.    Material Misquotation of the Key Contractual Provision of the Settlement Agreement

    2.    The [Appellant] Has Not Received the Sum of USD 244 Million

    3.    The 26 March 2022 Letter

    4.    The [Appellant's] Position in These Proceedings

While the Tribunal also noted that the Appellant had raised "due process concerns" regarding the "timetabling and the length of the [I]nterim [R]elief [A]pplication" in his Discharge Application, this was not in relation to the jurisdictional objection that had been raised by the Appellant in the Arbitration. Instead, the statement was made in the context of the Tribunal's observation that "[t]he Tribunal has rarely come across interim relief proceedings which have been as carefully directed and prepared for, in the pleadings and evidence supplied, the written submissions allowed without limitation of page numbers, and the full four hours of oral argument entertained". The Tribunal also noted that this objection was "distinguish[able]" from the Appellant's reservation as to his jurisdictional objection to the Arbitration.

(k)   On the same day (16 November 2022), the Tribunal issued the Provisional Award with the minor corrections to which we have referred (see [57(j)] above). The contents of the Provisional Award demonstrated that the Tribunal had understood that the Appellant's jurisdictional objection would only be determined at a subsequent stage of the Arbitration.

58    In our view, three points regarding the conduct of the Appellant in connection with the Interim Relief Application were material.

59    First, while the Appellant had raised his jurisdictional objections by the time of his Statement of Defence on 8 September 2022 (see [57(d)] above), the Appellant was content to allow the hearing on the merits of the Interim Relief Application to proceed without his jurisdictional objections being canvassed or argued before the Tribunal. In his Skeletal Argument in the Interim Relief Application (see [57(e)] above), the Appellant did not make any arguments on the issue of jurisdiction, which would have been reasonably expected if the Appellant had in fact believed that the issue of jurisdiction was a threshold question that had to be determined by the Tribunal before it could rule on the merits of the Interim Relief Application (see [57(e)] above). While Mr Rai argued before us that the Tribunal ought to have satisfied itself that it had *prima facie* jurisdiction over the Appellant, he also readily conceded that no authorities or submissions on that point had been put before the Tribunal.

60    Second, it was the Tribunal's own understanding that the issue of its jurisdiction over the Appellant was only to be finally determined at a later stage of the Arbitration. The Provisional Award stated that it was rendered "without prejudice to [the] jurisdictional objections … which the Tribunal will *subsequently have to decide*" [emphasis added]. The Tribunal also explained that "[i]t may be a matter for consideration whether the [Appellant's] jurisdictional objection to an arbitration conducted under the DIAC Rules … should be brought within the Phase 1 hearing". Further, it was noted in the Provisional Award that, unlike the Appellant, the other respondent in the Arbitration had made its own jurisdictional objections in the Interim Relief Application and these were addressed by the Tribunal applying the *prima facie* standard. Taken together, the irresistible inference was that it had been understood by the Tribunal and the parties that the Appellant had not pursued his jurisdictional objections in the Interim Relief Application.

61    Third, and perhaps most tellingly, the Appellant also raised no jurisdictional objections *after* the Provisional Award had been rendered. After the Provisional Award was first circulated to the parties on 4 November 2022, the Appellant raised several objections in his Discharge Application, but none of these related to the issue of jurisdiction (see [57(j)] above). This fact was consistent with *only* the conclusion that the objection had not been raised and pursued in the Interim Relief Application.

62    In our judgment, while the Appellant did register a jurisdictional objection in respect of the Arbitration "as a whole", this was not the whole picture. Notwithstanding that objection, he chose to contest the Interim Relief Application on the merits, did not canvass or ventilate any arguments or submissions on the question of the Tribunal's jurisdiction to deal with that application and also did not seek to suspend the proceedings so that the Tribunal could first make a determination on the issue of jurisdiction. Having taken that course, the Appellant was not entitled to challenge the Provisional Award in enforcement proceedings by contesting the Tribunal's jurisdiction to decide the Interim Relief Application (see *China Machine* ([45] *supra*) at [170], reproduced at [45] above).

63    For completeness, while the Respondent also relied on the fact that the Appellant had attempted to advance a counterclaim in his Statement of Defence (see [33] above), we did not think that this was relevant to the issue of whether the Appellant had submitted to the Tribunal's jurisdiction in respect of the Interim Relief Application. The attempt to amend the Statement of Defence only occurred on 28 July 2023, *after* the Provisional Award had been rendered on 16 November 2022 (see [57(k)] above). In any event, the Appellant withdrew his counterclaim on 15 August 2023, five days after the Tribunal queried the Appellant on whether his original objection to the Tribunal's jurisdiction could withstand his application to plead his counterclaim.

**Conclusion**

64    We therefore dismissed the appeal with costs fixed in the aggregate sum of $31,000 with the usual order as to payment out of the security.

Reported by Chong Fu Shan.

───────────────